UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| C. WESTBROOK MURPHY<br>400 Fairlea Dr.<br>Edgewater, MD 21037<br>　　　　　　　Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS, LLP<br>1301 K St., NW<br>Suite 800<br>Washington, DC 20005<br>　　　　　　　Defendant. | CASE NUMBER 1:05CV01054<br>JUDGE: Richard J. Leon<br>DECK TYPE: Employment Discrimination<br>DATE STAMP: 05/26/2005 |

**COMPLAINT FOR RELIEF FROM
AGE DISCRIMINATION IN EMPLOYMENT**

1. This is an action to remedy the age-based refusal of defendant PriceWaterhouseCoopers (PwC) to promote plaintiff C. Westbrook Murphy to the position of partner in July 2004, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., and the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 et seq. PwC has likewise discriminated against other similarly situated older employees by refusing to consider them for promotion to partner because of their age. This action preserves the right to seek relief on behalf of all such similarly situated employees whom PwC has refused to promote to partner because of their age, pursuant to 29 U.S.C. § 216, as incorporated by 29 U.S.C. § 626(b). This Court has jurisdiction over the ADEA claim under 29 U.S.C. § 626(c), and over the DCHRA claim under 28 U.S.C. §§ 1332, 1367. Civil Action No. 02-0982 (RJL/DAR), which is

currently pending in this Court, challenges PwC's refusal to promote Murphy to partner in 2000 and 2001.

## Parties

2. Plaintiff Murphy was born on January 30, 1940 and is now 65 years old. He has been employed with PwC since 1989 and serves in the position of Managing Director.

3. Defendant PwC was formed in July 1998 as the result of a merger between Price Waterhouse, LLP, and Coopers & Lybrand, LLP. PwC is a nationwide accounting and professional services firm, employing more than 27,000 individuals in the United States, including hundreds of employees in its Washington, D.C. offices. PwC is an employer as defined in 29 U.S.C. § 630(b), and D.C. Code § 2-1401.02(10).

## Background

4. The PwC partnership consists of "partners," who are certified public accountants (CPA's), and "principals," who are not CPA's. "Partner" as used in this complaint includes any member of the partnership, whether or not he or she is a CPA.

5. PwC is a limited liability partnership. There are more than 2000 "partners." PwC is governed by a Board of Partners and Principals. The Board exercises broad authority over all aspects of Firm management. Partners are not generally liable (beyond the amount of their capital contribution) for the debts of the Firm. Most partners have little input into the day-to-day management of the Firm. The Board controls partner compensation, controls partners' ability to accept new clients, controls the manner in which partners supervise other employees, and controls other aspects of partners' employment in ways that are inconsistent with these individuals being considered

"employers" as defined in the ADEA and the DCHRA. Except for members of the Board, and perhaps a few other PwC management officials, the limited liability partners of PwC are "employees" within the meaning of the ADEA, 29 U.S.C. § 630(f), and the DCHRA, D.C. Code § 2-1402.11, and thus are protected against age-based discrimination in the terms and conditions of their employment.

6. While limited in their autonomy to govern the Firm, partners at PwC generally receive higher compensation than other professionals, and are afforded more generous pension benefits and greater work-related responsibilities than other professionals within the Firm. Thus, partnership with PwC is a very lucrative asset.

7. The formal instrument governing PwC is the Partners and Principals Agreement. Section 10.1 of the Agreement states:

> Section 10.1. Retirement
>
> (a) An Individual's association with the Firm shall cease at the end of the Fiscal Year in which he or she attains age 60.
>
> (b) Upon the recommendation of the Senior Partner and the approval of the Board of Partners and Principals, an Individual may defer retirement for such periods as the Board of Partners and Principals may determine until the end of the Fiscal Year in which the Individual attains age 61. Thereafter, upon the recommendation of the Senior Partner and the approval of the Board of Partners and Principals, an Individual may further defer retirement of an Individual for such periods as the Board of Partners and Principals may determine until the end of the Fiscal Year in which the Individual attains age 62.

This provision acts as a mandatory retirement provision which PwC routinely applies to compel partner/employees to retire from the Firm at age 60. In no event may a partner/employee remain with the Firm beyond age 62. PwC's policy and practice of requiring such "partners" to retire at age 60 discriminates against such employees on the

basis of age in violation of the ADEA and the DCHRA by denying them the opportunity to continue their employment with PwC after age 60. This mandatory retirement age for partners also disqualifies Murphy and other older PwC employees from being considered for promotion to partnership, as alleged in Paragraphs 20 through 29.

<u>PwC's Partner Admission Process</u>

8. PwC's fiscal year begins on July 1. Each fiscal year, PwC evaluates more than 100 non-partner employees for promotion to partnership. Those whose candidacy is successful are admitted to partnership as of July 1, the following year.

9. PwC does not post vacancies for partnership and employees are not expected to apply for admission.

10. The partnership admission process begins with management (typically a Practice's Managing Partner) identifying professional employees for consideration for partner, and those candidates are then asked to assist in the process of completing paperwork describing their qualifications and the business case for their admission. Candidacy forms used by PwC required candidates to specify their age.

11. Successive levels of PwC management and partner committees then review recommended partnership candidates, and an increasingly wide range of partners provide comments and opinions on the proposed candidate. This process culminates in a dispositive vote at the Board of Partners and Principals on whether to admit the proposed candidates to partnership.

<u>PwC Has Refused to Consider Murphy for Partnership Because of his Age</u>

12. Since his hiring in 1989, Plaintiff Murphy has been employed in the Regulatory Advisory Services (RAS) Practice in Washington, D.C. RAS until 2004 was

one component of PwC's Banking Practice, which included more than 50 partners.

13. The Banking Practice was part of a larger group called Financial Services Institutions (FSI), with over 200 partners. FSI, in turn, was part of a line of service known as Assurance and Business Advisory Services.

14. Murphy is, and at all times relevant to this lawsuit was, exceptionally well qualified for promotion to partnership. He is a graduate of Duke University and Yale Law School. He served for two years as a Trial Attorney in the Department of Justice, and more than ten years in the Office of the Comptroller of the Currency ("OCC"), where he held increasingly responsible managerial positions. At PwC, Murphy has regularly received positive performance appraisals and promotions, and has brought considerable business to the Firm. He currently occupies the highest non-partnership professional position within PwC -- Managing Director. PwC has described the Managing Director position as:

> A highly experienced professional who functions in most respects, as a partner, has the appropriate experience credentials of a partner and possesses established skills in marketing, practice building, technology, and staff development.

15. Murphy's contributions to the growth and success of the RAS practice have included:

    (a) Leading major client engagements;

    (b) Managing responses by a number of financial institutions to urgent regulatory demands;

    (c) Providing innovative advice on regulatory and structural issues to major clients;

(d) Assisting with major client engagements that result in millions of dollars of follow-on work;

(e) Training RAS staff;

(f) Assisting PwC itself in avoiding regulatory difficulties; and

(g) Authoring publications and speaking at public events.

16. In the fall of 2004, PwC activated the position of Managing Director, and appointed 206 employees to this position, including Murphy. According to PwC management, those selected to this position were "tremendously talented," and, after a selection process of "very serious rigor" were determined to have met a "very high level bar criteria." The selection process required consideration both of personal qualifications and of the business case justifying promotion. Those appointed to the position of managing directors were determined by PwC to possess "a very significant depth of skill, highly significant technical market expertise, recognized expertise, management responsibility, demand in the marketplace, [and] the ability to deal with and solve complex business issues."

17. Although he was formally given the title in October 2004, Murphy in fact had been serving at the level of a Managing Director for several years. PwC also held him out publicly as a Managing Director.

18. PwC does not use age as criteria for appointing employees to the position of Managing Director, but age is a factor in partner admission decisions. Managing Directors generally earn considerably less in salary and benefits than do partners.

19. Murphy has repeatedly and expressly informed PwC management of his interest in promotion to partnership.

20. Notwithstanding Murphy's outstanding qualifications for partnership, PwC has refused to consider him for partnership because of his age. The mandatory partner retirement age described in Paragraph 7 has created an age-based bar to partnership admission which disqualifies plaintiff from being considered for partnership. As a result, Murphy was not considered for promotion to partnership when 103 other employees were promoted to partnership effective July 1, 2004. PwC has also refused to consider other older employees for partnership because of their age.

21. PwC promoted Jeff Lavine (as well as 102 other younger PwC employees) to partnership in July 2004. Lavine worked under Murphy's supervision within RAS prior to his promotion to partner, and has less tenure with PwC, less experience and knowledge of financial institution regulation, and less managerial experience than Murphy. Lavine was 39 when PwC promoted him to partner.

22. No partner inquired whether Murphy wished to be included in the group of PwC employees promoted to partnership as of July 1, 2004.

23. PwC has acknowledged that, because of his age, the Firm has not even considered Murphy for PwC's partnership. In litigation in this Court, PwC stated that "the sole impact of Murphy's admission as a partner would be his immediate retirement." PwC thus admits that the mandatory retirement age for employees who are called "partners" directly interferes with Murphy's right to be considered for promotion without regard to his age.

### PwC Has Engaged in a Pattern and Practice of Age Discrimination

24. Since PwC's creation on July 1, 1998, no employee age 60 or older has ever been promoted to partner.

25. The average age of a PwC employee selected for partnership is 37.

26. From PwC's creation on July 1, 1998 through September 15, 2003, the Firm has promoted 1,263 employees to partnership. Of those:

> (i) 949, or 75%, were under age 40;
>
> (ii) 85, or 7 %, were age 45 or older;
>
> (iii) 25, or less than 2% were age 50 or older;
>
> (iv) 4 were age 55 or older; and
>
> (v) none was age 60 or older.

27. PwC partners with management authority have stated their preference for promoting younger employees into the partnership, including that employees who are 60 or older cannot be considered for partnership, and that PwC prefers to admit only those individuals who can serve as partners for 20 years or more (i.e., employees under the age of 40).

28. PwC's preference for admitting partners under age 40, who can serve as partners for 20 years, encourages PwC's partners to assign the management of large and complex client engagements to non-partner employees in their 30's, so that these younger employees will have opportunities to demonstrate their managerial and client relationship abilities and thereby improve their chances for being selected for partnership. This practice discriminates in work assignments given to Murphy and to other older PwC non-partner employees.

29. PwC's explicitly age-based qualification for partnership has resulted, and continues to result, in a pattern and practice of age-based discriminatory treatment of Murphy and other older PwC employees who are candidates and potential candidates for

admission to the PwC partnership. In the absence of an order of this Court, PwC's pattern or practice of discriminating in employment against older employees is likely to continue.

### Damages

30. PwC's actions as described herein have caused Murphy monetary and non-monetary loss. Monetary damage includes loss of salary, bonuses, benefits, as well as the opportunity to become a PwC partner. PwC's actions have harmed Murphy's career and caused him frustration, distress and loss of enjoyment of life.

31. PwC's actions as described herein were malicious, willful, wanton and in reckless disregard of Murphy's rights.

32. Unless enjoined by this Court, PwC will continue the illegal age-based employment practices alleged herein.

### Exhaustion of Administrative Remedies

33. Murphy's claims under the District of Columbia Human Rights Act require no exhaustion of administrative remedies. His claims under the ADEA have been administratively exhausted. On March 4, 2005, Murphy filed with the Equal Employment Opportunity Commission a charge of age discrimination on behalf of himself and other similarly situated employees (attached hereto as Exhibit 1, and included herein as if fully set forth). More than 60 days have elapsed since the filing of that charge.

### COUNT ONE
### DISCRIMINATION BASED ON AGE IN VIOLATION OF THE ADEA

34. Paragraphs 1-33 are realleged.

35. PwC has discriminated against Murphy, and against similarly situated older employees, on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a).

## COUNT TWO
## DISCRIMINATION BASED ON AGE IN VIOLATION OF THE DCHRA

36. Paragraphs 1-33 are realleged.

37. PwC has discriminated against Murphy, and against similarly situated older employees, on the basis of age in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

## RELIEF

Plaintiff asks that this Court:

1) declare that PwC has violated the law by refusing to promote plaintiff, and other similarly situated employees, to partnership based upon age;

2) enjoin PwC from engaging in further acts of age discrimination and prohibit PwC from engaging in any acts of retaliation;

3) order that plaintiff be promoted to the position of partner, effective the date that he would have been promoted in the absence of discrimination, along with all back pay and benefits due;

4) award plaintiff liquidated damages under the ADEA in an amount equal to lost compensation;

5) award plaintiff compensatory damages in an amount to be proved at trial;

6) award plaintiff punitive damages in an amount to be proved at trial;

7) award plaintiff reasonable attorneys' fees and expenses;

8) award plaintiff prejudgment interest on all monetary sums awarded;

9) award such other relief as the Court deems just.

## JURY DEMAND

Plaintiff requests trial by jury as to all issues in this case.

*[signature]*

Douglas B. Huron  89326
Richard A. Salzman  422497
Tammany M. Kramer  483146
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for Plaintiff Murphy