UNITED STATES DISTRICT COURT
District of Columbia

C. WESTBROOK MURPHY )
400 Fairlea Drive )
Edgewater, Maryland 21037

CASE NUMBER  1:02CV00982

JUDGE: Richard J. Leon

and

DECK TYPE: Employment Discrimination

HAROLD SCHULER
1521 Crowell Road
Vienna, Virginia 22182

DATE STAMP: 05/20/2002

Plaintiffs )                    JURY DEMAND
)
)
v. )
)
PRICEWATERHOUSECOOPERS, LLP; )
PRICEWATERHOUSECOOPERS' )
U.S. BOARD OF PARTNERS, and its Members, )
including DENNIS M. NALLY, as Chair and )
SAMUEL A. DiPIAZZA, DONALD A. MCGOVERN, )
DAVID J. BREEN, JAY BRODISH, JOHN R. )
DUNLEAVY, ROBERT H. HERZ, STEPHEN D. )
HIGGINS, EUGENE S. KATZ, SCOTT W. KAUFMAN )
RICHARD R. KILGUST, KEITH D. LEVINGSTON, )
DENNIS LUBOZYNSKI, ANN L. MACDOUGALL; )
ROBERT C. MORRIS, JR., WALTER G. RICCIARDI, )
DENIS J. SALAMONE, PAUL J. SULLIVAN, )
ROBERT P. SULLIVAN, ANN M. THORNBURG, )
GARY W VAN WAGNEN, GERALD M. WARD )
and Other Members of the Board, Each as a Member, )
and Individually )
1900 K Street, N.W. )
Washington, DC 20006 )
)
Defendants. )
)
_____ )

COMPLAINT

1.     This suit is brought to obtain and secure rights granted by the Age Discrimination in

Employment Act, as amended, 29 U.S.C. 621 et seq. ("ADEA"), and by the District of Columbia

Human Rights Act, D.C. Code 2-1401, et seq. ("DCHRA") and the Human Rights Law of New

York("NY HRA"), Executive Law Article 15, et seq.

2.    This Court has jurisdiction under 28 U S C. 1331, 1343, 1367 and 29 U.S.C  216(b), 217, and 626 (b) and (c).

3.    Defendant PricewaterhouseCoopers, LLP ("PwC") is an employer within the definition and coverage of the ADEA, 29 U.S.C. 630(b), the DCHRA, D.C. Code 2-1401.02(10), and the NY HRA, 292.5.

4.    PwC is a Delaware limited liability partnership engaged in the business of providing professional services throughout the United States  The headquarters of PwC is in New York City  At all material times it has had an office and done business in the District of  Columbia.

5    PwC is part of a worldwide organization called PricewaterhouseCoopers Global ("PwC Global"). PwC Global and its affiliated offices do business throughout the world.  PwC Global employs approximately 160,000 individuals worldwide, including more than 9,000 partners or principals, and during the fiscal year ended June 30, 2000, had revenues exceeding $19 billion.

6    PwC employs more than 45,000 individuals in the United States.  PwC has approximately 2,600 individuals who are its partners or principals.  During the fiscal year ended June 30, 2000, defendant PwC's revenues exceeded $8 billion.

7.    PwC's partners received an average income of approximately $690,000 from PwC for the fiscal year ending June 30, 2000.

8    Of the 2,600 individuals who are called "partners" or "principals" of defendant PwC, approximately 21 are members of the U.S. Board of Partners and Principals ("Board of Partners"or "Board").  The defendant Board and its members are responsible for the policies and significant management decisions of defendant PwC, including policies and practices regarding admission to partnership, and decisions as to the promotion of employees to partnership.

-2-

9    The members of PwC's U.S. Board of Partners and Principals ("Board Members") since January 1, 2000, include Dennis M. Nally, Chair, Samuel A. DiPiazza, Jr., Donald A. McGovern, David J. Breen, Jay Brodish, John R. Dunleavy, Robert H. Herz, Stephen D. Higgins, Eugene S. Katz, Scott W. Kaufman, Richard R. Kilgust, Keith D. Levingston, Dennis Lubozynski, Ann L. MacDougall, Robert C. Morris, Jr., Walter G. Ricciardi, Denis J Salamone, Paul J. Sullivan, Robert P Sullivan, Ann M. Thornburg, Gary W. Van Wagnen, Gerald M. Ward and other Board Members whose names are not known to plaintiffs. Other Board Members include John Doe and Richard Roe. These Board members collectively and individually have been and are responsible for the discriminatory policies, practices and conduct alleged in this Complaint, and they have maintained and implemented the discriminatory policies and practices set forth below.

10    Plaintiffs are employees within the definition and coverage of the ADEA, 29 U.S C. 630(f), the DCHRA, Code § 1401.02(9); and the NY HRA, 292.6.

11.    Plaintiff Murphy was born on January 30, 1940. Plaintiff Schuler was born on October 21, 1944

12    Plaintiff Schuler was hired by PwC in 1988 as a senior manager. Soon thereafter he was promoted to Director, and later he was promoted to Managing Director in defendants' Regulatory Advisory Services practice in its Washington, DC office.

13.    Plaintiff Murphy was hired by PwC in 1989 as a senior manager  Soon thereafter he was promoted to Director in PwC's Regulatory Advisory Services practice in its Washington, DC office.

-3-

14.   At all material times PwC's partnership agreement, like the agreements of its predecessors. has required a partner or principal to retire in the fiscal year that he or she becomes 60 years old.

15.   The great majority of PwC's partners and principals are not and have never been Board Members. Such "partners" have little or no role in the governance and management of PwC. Such "partners" are in fact employees of PwC.

16.   PwC's policy and practice of requiring such "partners" to retire at age 60 discriminates against such employees on the basis of age by denying them the opportunity to continue their employment with PwC after age 60.

17   Each year defendants promote/hundreds of professional employees to "partner" or principal. Defendants do not promote employees who are 60 years old or older to partnership, and do not consider them for such promotion. As a matter of policy and practice, defendants rarely if ever promote an employee who is over the age of 50 to "partner" or "principal."

18.   In accordance with the employment practices and policies of PwC described above, defendants have promoted few employees to partner or principal who were over 41 years old when selected for promotion to partner.

19.   Defendants have followed a pattern and practice of employment procedures in promotion, mandatory retirement and other terms, conditions. and privileges of employment that discriminate because of age against plaintiffs and other similarly situated experienced professional employees, and that discriminate in favor of less experienced, younger professional employees, in violation of the ADEA and the DCHRA and the NY HRL   The pattern and practice of discrimination against older in favor of younger employees has continued and is

-4-

continuing. In the absence of an order of this Court, PwC's pattern or practice of discriminating in employment against older employees is likely to continue.

20.    Plaintiffs Murphy and Schuler have been and are well qualified for promotion to partner or principal. Before their employment by defendants, both had been supervisory executives in the Office of the Comptroller of the Currency ("OCC"), U.S. Department of the Treasury, the office responsible for the regulation and supervision of national banks.

21.    Plaintiff Murphy is an attorney who is nationally recognized in bank regulatory matters who has more than 30 years' experience in such matters. Plaintiff Murphy served as an attorney in the Civil Division of the U.S. Department of Justice, and has served as Deputy Comptroller and General Counsel to the Comptroller of the Currency. While at the Office of the Comptroller of the Currency ("OCC"), plaintiff Murphy represented the OCC before the federal courts, helped to structure the closing of the two largest banks to fail in the history (at that time) of the United States, testified on OCC's behalf before Congressional committees, and played a leading role in developing OCC regulatory policies.

22.    Plaintiff Murphy was employed by defendant in 1989 as a Senior Manager in defendants' Regulatory Advisory Service, and soon thereafter was promoted to the position of Director. He has successfully managed difficult client engagements, with bills for professional services reaching one million dollars, and has advised both PwC itself and its clients on highly complex and sensitive regulatory issues. He is the author or editor of a number of books published by PwC to advise its clients and others of legal and regulatory requirements for financial institutions. Since 1996 he has brought to defendants engagements generating revenue of more than $6 million.

-5-

23.    Plaintiff Murphy performed the duties of a Managing Director in PwC's Regulatory Advisory Services Department from the spring of 1998 at least until March, 2001.

24.    Plaintiff Schuler is a nationally recognized former supervisory executive in international banking with the OCC, and is a widely recognized expert in international credit, finance and the resolution of problem debt. He served as National Bank Examiner and Director of the International Division in the OCC, where he planned and supervised the examinations of the international divisions and overseas units of the largest U.S. national banks. He also initiated important OCC supervisory policies and regulations. Plaintiff Schuler also served as Director, Latin America and Director, Banking at the Institute for International Finance, and was a policy executive in the Farm Credit Administration who helped design solutions for a national crisis in the Farm Credit System.

25.    Plaintiff Schuler was employed by defendant in 1988 as a Senior-Manager. Soon thereafter he was promoted to Director, and later to Managing Director in PwC's Regulatory Advisory Services practice. He has successfully led many large, complex, sensitive and highly profitable projects of PwC for major clients, including the World Bank, the Peoples Bank of China, the Financial Supervisory Authority of Korea, Barclay's Bank plc, Ashai Bank (then the world's twentieth largest bank) and other multi-national financial institutions. He has been responsible for assessing the quality of asset and liability management and financial instrument trading management of other banking and securities institutions, and has advised many of PwC's largest clients on how to establish the kind of sound practices expected by governmental supervisors. He has secured or managed PwC client engagements generating revenue of more than $12 million.

-6-

26.    Plaintiffs Schuler and Murphy were, respectively, the first and second professional employees hired to work with the managing partner in PwC's Regulatory Advisory Services practice. That practice has been successful, and now employs more than twenty professionals.

27.    The growth and success of the Regulatory Advisory Services practice in Washington is due in large part to the accomplishments of plaintiffs Schuler and Murphy, yet neither has been promoted to partner.

28.    Plaintiffs have received excellent performance evaluations throughout their employment with PwC before they filed administrative complaints of age discrimination by PwC.

29.    Pursuant to the practices described in paragraphs 14-19 above, Defendants denied plaintiffs Murphy and Schuler promotion to partner in 1999, 2000, and 2001, although defendants promoted many younger, less qualified employees to partner in those years, in violation of the ADEA, the DCHRA and the NY HRA.

30.    Plaintiffs have notified defendants informally and formally that their mandatory retirement provisions of their partnership agreement and their other policies and practices described above discriminate against older employees in violation of law, but defendants have refused to end or modify their discriminatory policies and practices, and instead have maintained and continued those policies.

31.    Defendants have engaged in the discriminatory policies and practices set forth above in violation of their own written code of ethical conduct

32    Plaintiff Murphy filed a charge with the District of Columbia Office of Human Rights on or about March 14, 2001, and that day delivered a copy of the charge to his supervisor

-7-

at PwC. Plaintiff Schuler filed a charge with the District of Columbia Office of Human Rights on or about June 29, 2001. Each of the charges was cross-filed as a charges under the ADEA.

33.    In addition to its discriminatory promotion policies and practices, PwC has discriminated against older employees in awarding raises and bonuses, and in work assignments.

34.    In July 2001, PwC awarded younger employees (who had no better job performance) substantially higher pay increases than they awarded plaintiff Schuler.

35.    In August 2001, PwC granted significant bonuses to younger employees whose performance, based on PwC's criteria, was no better than plaintiff Schuler's   PwC did not award a bonus to plaintiff Schuler.

36.    During and after 2001 PwC has denied Schuler job assignments which it gave to employees who are younger and less qualified to perform them.

37.    Defendants have retaliated against plaintiffs for exercising their rights to complain of defendants' discriminatory practices.

38.    After plaintiff Murphy filed his charge, PwC sharply reduced the work assigned to him on client engagements, while increasingly emphasizing the importance of client-billable hours to decisions affecting compensation and advancement of professional staff members.

39.    After plaintiff Murphy filed his charge, PwC stopped assigning him managerial duties, and has reduced the quality of his assignments

40    After plaintiff Murphy filed his charge, PwC has denied him the opportunity to carry out the activities specified in his personal development plan, which PwC approved. These activities included attending professional meetings of attorneys specializing in legal and regulatory issues affecting financial institutions. PwC in the past has sponsored plaintiff Murphy's attendance at such meetings, and these meetings have provided plaintiff Murphy with

-8-

a valuable source of continuing professional education and with business leads resulting in multimillion dollar engagements for PwC. The denial of the opportunity to carry out his personal development plan will adversely affect decisions relating to his compensation and advancement within PwC.

41.     After PwC was served with his charge, PwC excluded plaintiff Schuler from participating in or managing major client engagements for which he was well qualified and/or which he developed, and assigned younger and less experienced employees to manage and participate in such engagements.

## Count One

42.     Plaintiffs hereby incorporate the allegations of paragraphs 1-41 above.

43.     PwC has discriminated against plaintiffs and others employees who are similarly situated, including professional employees who are called partners, and continues to discriminate against plaintiffs and other similarly situated employees of PwC because of their age.

44      The policies and practices of PwC and the other defendants described in paragraphs 14 through 19 and 28 above discriminate against older professional employees of PwC because of their age, including older professional employees who are called "partners", and in favor of younger professional employees in violation of the rights of older employees under the ADEA.

45.     The age discriminatory policies and practices of PwC have been adopted and implemented and maintained by the defendants knowingly, wilfully and with reckless disregard for the rights of others under ADEA.

WHEREFORE Plaintiffs pray for:

-9-

a) an order authorizing notice to the former and current professional employees of PwC who are similarly situated to plaintiffs of their right under the ADEA to participate in this suit by filing a consent to participate as a plaintiff;

b) an order declaring PwC's age based promotion and mandatory retirement policies unlawful under the ADEA, and also declaring unlawful any PwC policy or practice that denies employees promotion or continued employment or other term or condition of employment because of age:

c) a preliminary and permanent injunction prohibiting PwC from denying promotion or continued employment to employees because of age, or using any like or related policy or practice to deny older employees promotion to partnership or other positions on the basis of age, or requiring employees to retire because of age, and an order requiring PwC to engage in promotion practices that are free from discrimination based upon age;

d) an order requiring PwC to promote plaintiffs to partnership at the same level and with the same benefits they would have received if PwC had not declined to consider them for promotion because of their age; and an order preventing PwC from engaging in any act or practice that disadvantages plaintiffs because of age or retaliation;

e) an award of damages to plaintiffs for the loss of income each of them has suffered, including the loss of fringe benefits and pre-judgment interest,

f) an award of liquidated damages to each of the plaintiffs to the extent permitted by law under the ADEA.

g) costs of litigation including attorneys' fees and expert witness fees; and

h) such other relief as may be just and proper

-10-

## Count Two

46    The allegations of paragraphs 1 through 42 are hereby incorporated by reference.

47.    The policies and practices of PwC and the other defendants described in paragraphs 12 through 19 and 29-30 above discriminate against older professional employees of PwC because of their age, including older professional employees who are called "partners", and in favor of younger professional employees, in violation of the DCHRA and the NY HRA.

48.    The age discriminatory policies and practices of PwC described above have been maintained and implemented the defendants knowingly, wilfully and with reckless disregard for the rights of others under the DCHRA and the NY HRA

49.    The professional employees harmed by the discriminatory promotion and retirement policies of the defendants are so numerous as to make joinder of them impracticable.

50.    The requirement of PwC in PwC's partnership agreement that mandates retirement at age 60 and the defendants' practices in carrying out that agreement and the other age discriminatory practices described above are applicable to the plaintiffs and other professional employees of PwC who do not participate in the governance and management of PwC, thereby making appropriate injunctive and other equitable relief applicable to all of the professional employees who were harmed or are threatened with harm by the discriminatory practices of the defendants.

51.    The defendant Board Members participated in the age discriminatory policies and practices and decisions described above against plaintiffs and others similarly situated employees and therefore aided and abetted and caused the discriminatory decisions described above, in violation of the NY HRA with DCHRA

-11-

WHEREFORE plaintiffs pray for:

a) an order declaring defendants' age based promotion and mandatory retirement policies unlawful under the NY HRA and the DCHRA, and also declaring unlawful any policy or practice of defendants that denies promotion or continued employment or other term or condition of employment because of age;

b) a preliminary and permanent injunction prohibiting defendants from denying promotion or continued employment to employees because of age, and prohibiting any like or related policy or practice that operates to deny older employees promotion to partnership or other positions on the basis of age, or requiring employees to retire because of age, and an order requiring defendants to engage in promotion practices that are free from discrimination based upon age;

c) an order requiring defendants to promote plaintiffs to partnership at the same level and with the same benefits they would have received if they had been promoted in the years before they had filed charges of discrimination; and an order preventing defendants from engaging in any act or practice that disadvantages plaintiffs because of age or retaliation;

d) an award of damages to plaintiffs for the loss of income each of them has suffered, including the loss of fringe benefits and pre-judgment interest;

e) compensatory damages to each of the plaintiffs to the extent permitted by law;

f) punitive damages from each of the defendants to each of the plaintiffs to the extent permitted by law;

g) costs of litigation including attorneys' fees and expert witness fees; and

h) such other relief as may be proper.

Respectfully submitted,

David L. Rose (376379)
Linda Y. Sroufe (399290)
Rose & Rose, P.C
1320 19th St. N.W.. Suite 601
Washington, D.C  20036
(202) 331-8555

Plaintiffs demand a trial by jury.

May 20. 2002

-13-