# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 2 7 2004

Clerk, U.S. District Court
District of Columbia

|  |  |
|---|---|
| **C. WESTBROOK MURPHY and HAROLD SCHULER.** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) ) |
| **PRICEWATERHOUSECOOPERS, LLP, et al.** | ) ) ) |
| **Defendants.** | ) ) |

**Civ. No. 02-982 (RJL)**

## MEMORANDUM ORDER AND OPINION
(September **27**, 2004) [#30, 59, 66]

Before the Court are the defendants' motion to dismiss, and the defendants' and

plaintiffs' cross-motions for summary judgment on the plaintiffs' "pattern and practice"

claim. The defendants, PriceWaterhouseCoopers, its U.S. Board of Partners and

Principals, and twenty-one individual members of its Board (collectively "PwC"), move

for partial dismissal of the plaintiffs' complaint, brought under the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the District of Columbia Human

Rights Act, D.C. Code § 2-1401, et seq. ("DCHRA"), and the Human Rights Law of New

York ("NYHRL"), Executive Law Article 15, et seq., on the grounds that the Court lacks

subject matter jurisdiction and personal jurisdiction over several of the plaintiffs' claims.

The defendants also move for dismissal of the U.S. Board of Partners and Principals as a

party to this action because it is not a legal entity, and for dismissal of the plaintiffs'

claims under the NYHRL for failure to state a claim. Finally, the defendants urge this



Court not to exercise supplemental jurisdiction over the plaintiffs' DCHRA claims because these issues predominate over the plaintiffs' federal claims.

The plaintiffs, C. Westbrook Murphy ("Murphy") and Harold Schuler ("Schuler"), move for summary judgment on their "pattern and practice" claim on the grounds that the undisputed facts demonstrate that PWC denies promotion to partner based on unlawful age-based policies. The defendants cross-move for summary judgment on several grounds, including that individual non-class defendants cannot bring such a claim, and that the claim, as a matter of law, is not cognizable under the ADEA. For the following reasons, the Court will GRANT in part and DENY in part the defendants' motion to dismiss. The Court will also GRANT in part and DENY in part the defendants' motion for summary judgment, and will DENY the plaintiffs' motion for summary judgment on the plaintiffs' "pattern and practice" claim.

## BACKGROUND

### I.    *Statutory Framework: The ADEA, DCHRA, and NYHRL*

The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Kimel v. Florida Board of Regents*, 528 U.S. 62, 67 (2000) ("*Kimel*"). However, the statute provides several exceptions to

this prohibition. For example, it allows an employer to rely on age when it "is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business..." 29 U.S.C. § 623(f)(1). In addition, an employer may also engage in conduct that would otherwise be prohibited under ADEA if such conduct "is based on reasonable factors other than age" or where the employer discharges or disciplines an employee "for good cause." 29 U.S.C. §§ 623(f)(1), (f)(3). ADEA covers individuals age forty and over, 29 U.S.C. § 631(a), and aggrieved employees may bring suits in "any court of competent jurisdiction" against any employer, including a public agency,[1] for relief from violations of the statute. 29 U.S.C. § 626(c)(1). ADEA also incorporates section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), thus permitting aggrieved employees to enforce certain FLSA provisions under ADEA. 29 U.S.C. § 216(b); *Kimel*, 528 U.S. at 67-68.

The District of Columbia Human Rights Act, D.C. Code § 2-1401, et seq. ("DCHRA"), provides in relevant part, that it shall be unlawful for any employer, "wholly or partially for a discriminatory reason based on race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, disability, matriculation, or political affiliation of any individual" to "[t]o fail or refuse to

---

[1] Although when first enacted, ADEA only applied to private employers, Congress extended the application of the statute to the states. *Kimel*, 528 U.S. at 68. The term "employer" also means "a State or political subdivision of a State or a political subdivision of a State." 29 U.S.C. § 630(b). The United States and any corporation wholly owned by the United States are exempted from the definition of "employer" under ADEA. Id.

hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion..." D.C. Code. § 2-1402.11.

In applying the provisions of the ADEA and DCHRA, courts in this district have drawn on Supreme Court precedent regarding race and gender discrimination under Title VII of the Civil Rights Act of 1964. *Arnold v. U.S. Postal Service*, 863 F.2d 994, 996 (D.C. Cir. 1988); *Mianegaz v. Hyatt Corp.*, 319 F.Supp.2d 13, 18 (D.D.C. 2004); *see also Futrell v. Dep't of Labor Federal Credit Union*, 816 A.2d 793, 802 (D.C. 2003). Courts thus apply the *McDonnell Douglas* burden-shifting framework developed in the context of Title VII claims in evaluating age discrimination claims at the summary judgment phase. *Mianegaz*, 319 F.Supp.2d at 18 (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973)). Under this framework, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802)). If the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were in reality a pretext for discrimination. Id. Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the

4

plaintiff remains at all times with the plaintiff." Id.

The third statutory basis advanced in the plaintiffs' complaint is the Human Rights

Law of New York ("NYHRL"). Executive Law Article 15, et seq. Under the NYHRL, it

is unlawful "[f]or an employer or licensing agency, because of the age, race, creed, color,

national origin, sexual orientation, military status, sex, disability, genetic predisposition or

carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to

discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment." Executive Law

Article 15, § 296(1)(a). Section 298-a of the NYHRL provides that the statute applies to

acts committed outside of New York "if such act would constitute an unlawful

discriminatory practice if committed within [the] state." However, the statute does not

provide a non-resident with a private cause of action for allegedly discriminatory conduct

that occurred outside of New York by a New York corporation. *Beckett v. Prudential

Insurance Co.*, 893 F.Supp. 234, 238 (S.D.N.Y. 1995). The statute also does not provide

a cause of action to a New York resident for allegedly discriminatory conduct committed

outside of New York by a foreign corporation. Id.

## II.     *Factual Background*

### A.     <u>The Parties</u>

PwC is part of a worldwide organization, PriceWaterhouseCoopers Global ("PwC

Global"), that is engaged in the business of providing professional services throughout the

United States. Compl. ¶¶ 4, 5. PwC is a Delaware limited liability corporation that is

headquartered in New York. Id. According to the plaintiffs, PwC employs more than

45,000 individuals in the United States, and has approximately 2,600 individuals who are

partners or principals.[2] Compl. ¶ 6. The firm was formed as of July 1, 1998 by a merger

of Coopers & Lybrand and Price Waterhouse LLP. Def. Mem. Cross-Mot. 5. PWC was

organized and operates pursuant to the PwC Partners and Principals Agreement, which

sets forth the rights and obligations of the partners. Compl. ¶¶ 8-9. PwC's U.S. Board of

Partners and Principals ("the Board") and twenty-one individuals alleged to be members

of the Board[3] are also defendants in this case. The plaintiffs allege that the Board and its

members "are responsible for the policies and significant management decisions of

defendant PwC, including policies and practices regarding admission to partnership, and

decisions as to the promotion of employees to partnership." Compl. ¶ 8.

The plaintiffs, Murphy and Schuler, are employees who have worked with the

Regulatory Advisory Services practice ("RAS") in PwC's Washington, DC office.

---

[2] PwC appears to dispute these facts, alleging in its cross-motion for summary judgment that PwC has more than 20,000 employees and 2,000 partners and principals who offer public accounting and other services in offices through out the United States. Def. Mem. in Support of Cross-Mot. for Summ. J. 5 ("Def. Mem. Cross-Mot."). However, for the purposes of the defendants' motion to dismiss, the Court assumes that the plaintiffs' allegations are true.

[3] The twenty-one individual defendants include Dennis M. Nally, Samuel A. DiPiazza, Donald A. McGovern, David J. Breen, Jay Brodish, John R. Dunleavy, Robert H. Herz, Stephen D. Higgins, Eugene S. Katz, Scott W. Kaufman, Richard R. Kilgust, Keith D. Levingston, Dennis Lubozynski, Ann L. MacDougall, Robert C. Morris, Jr., Walter G. Ricciardi, Denis J. Salamone, Paul J. Sullivan, Robert P. Sullivan, Ann M. Thornburg, Gary W. Van Wagnen, and Gerald M. Ward. The plaintiffs also name "[o]ther members of the Board, [e]ach as a member, and individually" as defendants. Compl. 1.

Compl. ¶¶ 12-13. Murphy, born on January 30, 1940 (sixty-two years of age at the time

this action was brought), was hired by PwC in 1989 as a senior manager. Id. at ¶ 13. He

was promoted soon thereafter to the position of Director in the RAS practice. Id.

Schuler, born on October 21, 1944 (fifty-seven years of age at the time this action was

brought), was hired by PwC in 1988 as a senior manager. Id. at ¶ 12. He was promoted

to Director soon thereafter, and later was promoted to Managing Director in the RAS

practice. Id. Neither of the plaintiffs was promoted to partner or principal during the

course of his employment. Id. at ¶ 27.

### B.    The PwC Partnership and Principals Agreement

The plaintiffs allege that "[a]t all material times PwC's partnership agreement, like

the agreements of its predecessors, has required a partner or principal to retire in the fiscal

year that he or she becomes 60 years old." Compl. ¶ 14. Section 10.1 of the PwC

Partnership and Principals Agreement ("the Partnership Agreement"), effective April 1,

2001, states that: "[a]n Individual's association with the Firm shall cease at the end of the

Fiscal Year in which he or she attains age 60." [4] Pl. Mot. for Summ. J., Ex. 1, Art. 10,

---

[4] Under Rule 12(b)(6), the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Brown v. United States*, 271 F.Supp.2d 225, 228 (D.D.C. 2003) (citing *Gustave-Schmidt v. Chao*, 226 F.Supp.2d 191 (D.D.C. 2002)). If upon a motion to dismiss for failure to state a claim, matters outside of the pleadings are presented and not excluded by the Court, the motion shall be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b). As the plaintiffs' complaint references the Partnership Agreement, the Court may consider this agreement in evaluating the defendants' motion to dismiss under Rule 12(b)(6).

Sec. 10.1(a). The term "Individual" is defined as "a person who is either a Partner or a

Principal." Id. at Art. 1. Notwithstanding this "Retirement" provision, the Partnership

Agreement also provides that upon the recommendation of a Senior Partner and with

approval of the Board, an Individual "may defer retirement for such periods as the Board

of Partners and Principals may determine until the end of the Fiscal Year in which the

Individual attains age 61." Id. at Art. 10, Sec. 10.1(b). The sole parties to the Partnership

Agreement are the Partners and Principals of PwC. The agreement is binding on these

individuals, their legal representatives, heirs, and successors. Id. at Art. 13, Sec. 13.7,

13.10.

### C.    Plaintiffs' Administrative Charges

On March 14, 2001, plaintiff Murphy filed an administrative charge with the

District of Columbia Office of Human Rights ("DCOHR") and delivered a copy of that

charge to his supervisor at PwC. Compl. ¶ 32. This charge, which was cross-filed with

the U.S. Equal Employment Opportunity Commission ("EEOC"), alleges that PwC had

denied Murphy "promotional opportunities on the basis of [his] age." Compl. ¶ 32; Def.

Mot. to Dismiss, Ex. B (Murphy Discrimination Complaint).[5] Murphy alleges in his

charge that PwC discriminated against him because the Partnership Agreement requires

partners and principals to retire at age 60, and as a result, "no professional employee of 60

---

[5] The March 14, 2001 administrative charge was referenced in the plaintiffs' complaint
in this case, and thus will be considered by the Court for the purpose of evaluating the
defendants' motion to dismiss. *See* note 3, *supra*.

years or older can be promoted partner/principal." Id. at 1-2. More specifically, Murphy

states that he is sixty-one years old and although he possesses more than thirty years of

experience as a "nationally recognized attorney in bank regulatory matters[,]" PwC has

refused to approve his promotion or "seriously consider" him for promotion to partner.

Id. at 2. The charge details his educational and employment background and then alleges

that PwC failed to consider him in May 2000 for promotion to partner or principal. Id. at

2-3. Murphy subsequently amended his administrative charge on September 19, 2001,

alleging that since he filed his original charge, PwC had once again failed to consider him

for partnership in 2001. Def. Mot. to Dismiss, Ex. D.

     Plaintiff Schuler filed an administrative charge with DCOHR on June 29, 2001,

also alleging age discrimination as a result of the Partnership Agreement. Compl. ¶ 32;

Def. Mot. to Dismiss, Ex. E. (Schuler Discrimination Complaint). This charge, also

cross-filed with the EEOC, states that PwC has denied Schuler promotional opportunities

on the basis of age because the Partnership Agreement requires partners and principals to

retire at 60, and as a result, "no professional employee who is 60 years old or older can be

promoted to partnership." Id. at 1. Schuler's charge then alleges that although he is

qualified for partnership based on his previous work experiences and his successful

management and development of programs at PwC, he has not been promoted to partner.

Id. at 2-3. Similar to Murphy's original charge, Schuler's administrative charge provides

a summary of his educational and employment background, and references the

partnership promotions in 2000. Id.

Schuler subsequently amended his original charge, on December 12, 2001, to allege that PwC refused to consider him for partnership in 1999, 2000, and 2001.[6] Def. Mot. to Dismiss, Ex. G. Schuler alleges in his amended charge that a specific individual in his "specialty," who was younger and less qualified, was promoted to partnership on July 1, 2001. Id. at 1-2. Schuler further alleges in the amended charge that in July 2001, younger colleagues were awarded substantially larger pay increases, and in August 2001, younger colleagues also received significant bonuses, which were denied to him even though his level of performance was equal to others. Id. at 2. Finally, Schuler alleges he was, and continues to be, denied job assignments which, instead, are given to individuals who are younger and less qualified. Id.

**D.    The Current Lawsuit**

The plaintiffs filed the current action on May 20, 2002, alleging violations of Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401, et seq. ("DCHRA"), and the Human Rights Law of New York ("NYHRL"), Executive Law Article 15, et seq. Specifically, the plaintiffs allege that PwC has denied the plaintiffs promotion to partnership in 1999, 2000, and 2001, and has instead promoted many younger, less qualified employees during

---

[6] For whatever reason, the plaintiffs do not reference either Schuler's or Murphy's amended administrative charges in their complaint. They do, however, reference the amended charges in their opposition brief to the motion to dismiss. *See, e.g.,* Pl. Opp. 14.

10

those years. Compl. ¶ 29. In addition to their claims regarding PwC's promotion

practices and policies, the plaintiffs allege that PwC has "retaliated against [the] plaintiffs

for exercising their rights to complain" about its discriminatory policies, by for example,

reducing the managerial duties and work assignments given to Murphy and excluding

Schuler from participating in and managing major client engagements. Id. at ¶¶ 37-41.

Schuler also alleges that PwC denied him pay raises and bonuses awarded to younger,

less experienced employees. Id. at ¶¶ 33-35. Thus, both plaintiffs seek relief for PwC's

alleged failure to promote them to partnership and for retaliation, in violation of ADEA,

the DCHRA, and the NYHRL, and Schuler also seeks relief for the denial of pay

increases and bonuses.

On August 16, 2002, PwC moved for dismissal of the following of plaintiffs'

claims: (1) claims under ADEA for retaliation and failure to promote Murphy in 1999 and

Schuler in 1999 and 2000 for lack of subject matter jurisdiction because the plaintiffs

failed to file a timely administrative charge for these claims; (2) claims under ADEA on

behalf of "other employees similarly situated" because the plaintiffs failed to make class

allegations in their administrative charges; (3) claims against the Board because it is not a

legal entity capable of being sued; (4) claims against the individual defendants for lack of

subject matter and personal jurisdiction; (5) claims under the NYHRL for failure to state a

claim; and (6) claims under the DCHRA because an exercise of the Court's supplemental

jurisdiction is not appropriate in this case.

11

With the motion to dismiss still pending, on August 12, 2003, the plaintiffs moved for partial summary judgment on their "pattern and practice" claim regarding PwC's promotion practices and policies. In support of their motion, the plaintiffs assert that PwC's "written policy and practice forcing 'partners' to retire at age 60" and its adherence to that policy, as demonstrated by their statistical evidence, establish that PwC unlawfully discriminates against older employees with regard to promotion to partnership. Pl. Mem. in Support of Mot. for Summ. J. 14 ("Pl. Mem. Summ. J."). On October 24, 2003, PwC cross-moved for summary judgment on the "pattern and practice" claim on several grounds. PwC argues, *inter alia*, that individual non-class plaintiffs cannot bring these claims. Def. Mem. Cross-Mot. 21. PwC also argues that the plaintiffs' "pattern and practice" claim is essentially a "disparate impact" claim, which is not cognizable under the ADEA. Id. at 26.

For the following reasons, the Court GRANTS the defendants' motion to dismiss with regard to the plaintiffs' (1) claims with regard to retaliation and failure to promote Murphy in 2000 and Schuler in 1999 and 2000; (2) class allegations; (3) claims against the Board; (4) claims against the individual defendants, except with regard to Robert Morris, Jr., in his individual capacity; and (5) claims under the NYHRL. The Court DENIES the defendant's motion as to the plaintiffs' claims under the DCHRA. The Court also GRANTS in part and DENIES in part the defendants' motion for summary judgment on the "pattern and practice" claim and finds that although the plaintiffs cannot

12

proceed on a "disparate impact" theory, there are genuine issue of material fact as to

whether the plaintiffs' can establish their individual ADEA claims under a "disparate

treatment" theory. The plaintiffs' motion for summary judgment is thus DENIED.

## DISCUSSION

### I.    *Standards of Review*

The Court will only dismiss a complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.

1994). However, even if the Court accepts as true all of the factual allegations set forth in

the complaint, *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1102 (D.C. Cir.

1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United*

*States*, 617 F.2d 605, 608 (D.C. Cir. 1979), it "need not accept inferences drawn by [the]

plaintiff[] if such inferences are unsupported by the facts set out in the complaint."

*Kowal*, 16 F.3d at 1276.

Summary judgment is appropriate when the pleadings and the record demonstrate

that "there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary

judgment may support its motion by "identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the

pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for

trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). The Court must view the facts in

the light most favorable to the non-movant, giving the non-movant the benefit of all

justifiable inferences derived from the evidence in the record. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).

## II.    *Defendants' Motion to Dismiss*

### A.    <u>Claims under ADEA for Retaliation and Failure to Promote</u>
         <u>in 1999 and 2000</u>

PwC first moves for dismissal of the plaintiffs' ADEA claims to the extent that

they are based on conduct occurring more than 300 days prior to the plaintiffs' initial

administrative charges and on conduct that was not alleged in these charges. Section

626(b) of ADEA sets forth the administrative prerequisites for commencing a civil action

for a violation of the statute. 29 U.S.C. § 626(d). This provision provides, in relevant

part:

> No civil action may be commenced by an individual under this section until
> 60 days after a charge alleging unlawful discrimination has been filed with
> the Equal Employment Opportunity Commission. Such a charge shall be

filed --

(1)     within 180 days after the alleged unlawful practice occurred; or

(2)     in a case in which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d).[7]  The Court thus lacks jurisdiction over alleged discriminatory conduct for which a plaintiff fails to file a timely administrative charge.  *Macellaro v. Goldman*, 643 F.2d 813, 816 (D.C. Cir. 1990); *see also Rann v. Chao*, 346 F.3d 192, 198-99 (D.C. Cir. 2003).  "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.  It may constitute relevant background evidence...but separately considered, it is merely an unfortunate event in history which has no present legal consequences."  Id. (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).  Furthermore, as "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" for which an administrative charge must be filed, plaintiffs in this case may not avail themselves of a

---

[7]     In addition to the requirements of Section 626, ADEA also provides that "[i]n the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated..."  29 U.S.C. § 633(a)-(b); *see also Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003).

"continuing violation" theory to support a claim based on conduct not alleged in a timely

charge. *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).[8]

Accordingly, any conduct that forms the basis of the plaintiffs' ADEA claims must have

been timely alleged in their administrative complaints.

PwC asserts that since Murphy and Schuler never alleged any retaliation claims in

their initial or amended charges, they should be precluded from asserting retaliation

claims here. Def. Mot. to Dismiss 11. PwC also moves for dismissal of the plaintiffs'

failure to promote claims to the extent that they rely upon conduct occurring more than

300 days prior to the filing of the plaintiffs' administrative charges (*i.e.*, with regard to

Murphy, May 18, 2000, and with regard to Schuler, September 2, 2000). Id. at 15-16.

Instead of directly addressing the defendants' arguments, the plaintiffs respond

that with regard to the retaliation claims, amendments relate back to the first charge under

Title VII and ADEA. Pl. Opp. 14. In addition, they argue that with regard to the failure

to promote claims, "whether their claims go back to 2000 or earlier years depends upon

the facts to be discovered" and that under the FLSA, the plaintiffs can recover up to three

years of damages for willful conduct. Id. at 13-14. Simply stated, these arguments are

unresponsive.

First, with regard to the retaliation claims, even if the Court were to acknowledge

---

[8] The Supreme Court did, however, recognize that hostile work environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115. Accordingly, a plaintiff may bring such claims based in part on acts outside of the statutory period under certain circumstances. *Id.* at 117.

any basis for relating claims back to the initial charge, in this case, the plaintiffs did not allege retaliation in their initial charges and there is no indication that they made any subsequent retaliation claim in their amended charges that could relate back to an initial charge. Indeed, the plaintiffs don't even acknowledge in their complaint that they ever amended their initial charges in the first place.

With regard to the failure to promote claims, the issue of what claims were timely filed can clearly be determined from the plaintiffs' administrative charges without extensive discovery. In addition, the plaintiffs' argument that they could conceivably recover damages for up to three years is inapposite. The plaintiffs merely conflate the time period for filing an administrative charge with time limits for recovering lost income and other damages. In presenting these arguments, the plaintiffs fail to directly address the dispositive facts alleged by PwC – that the plaintiffs' complaint in this case alleges conduct occurring more than 300 days prior to the filing of the plaintiffs' initial administrative charges and conduct that was never alleged in those charges. The plaintiffs neither respond to these facts nor set forth any basis, legal or equitable, for the Court to deem the conduct timely alleged. Accordingly, the Court will grant PwC's motion to dismiss the plaintiffs' ADEA claims to the extent that they rely on alleged conduct occurring more than 300 days prior to the filing of their initial administrative charges, as well as their retaliation claims, which were not raised during the administrative process.

17

**B.** **Class Allegations**

PwC also moves for dismissal of the plaintiffs' class allegations. In their complaint, the plaintiffs allege that PwC "has discriminated against plaintiffs and other[] employees who are similarly situated, including employees who are called partners, and continues to discriminate against [the] plaintiffs and other similarly situated employees of PwC because of their age." Compl. ¶ 43. PwC argues that under Section 626(d) of ADEA, the scope of the plaintiffs' complaint is strictly defined and limited by the scope of the administrative charge filed, and that the plaintiffs in this case expressed no intention to sue on behalf of anyone but themselves in their administrative charges. Def. Mot. to Dismiss 16-17 (citing *Macellaro*, 643 F.2d at 66 and *Kloos v. Carter-Day Co.*, 799 F.2d 397, 400 (8th Cir. 1986)). While it is clear that ADEA adopts the "opt-in" provisions of FLSA, which allow an employee to maintain an action on behalf of other similarly situated employees, 29 U.S.C. § 626(b), PwC asserts that the plaintiffs' administrative complaints set forth only individual claims and thus cannot support a class action in district court. Def. Mot. to Dismiss 17.

In response, the plaintiffs argued in their September 4, 2002 opposition that the issue of whether a class action can be maintained is premature until putative class plaintiffs sought to opt-in to the suit or the plaintiffs in this case sought to give court-approved notice. Pl. Opp. 18-19, n.6. As the plaintiffs subsequently sought leave to file notice to putative class members on December 12, 2003, the Court rejects this contention.

However, the plaintiffs also argue that individuals who are similarly situated may opt into

an ADEA suit if they are within the scope of another plaintiff's charge. Pl. Opp. 19

(citing *Anderson v. Montgomery Ward*, 852 F.2d 1008 (7th Cir. 1985) and *Tolliver v.*

*Xerox Corp.*, 918 F.2d 1052 (2d Cir. 1990)).

The Court agrees with the plaintiffs that the dispositive issue regarding the class

claims is whether an administrative charge alleges class-wide discrimination and informs

and gives notice to the employer "that the consequences of an individual plaintiff's

charge 'may transcend[] an isolated [sic] individual claim.'" *Anderson*, 852 F.2d at 1017

(citing *Kloos*, 799 F.2d at 400); *see also Jackson v. Merck & Co., Inc.*, 1999 WL 962522,

at *5-6 (E.D. Pa. Oct. 21, 1999); *Oberg v. Allied Van Lines, Inc.*, 1994 WL 419679, at *4-

5 (N.D. Ill. Aug. 5, 1994). For example, in *Tolliver*, a case cited by the plaintiffs in their

opposition, the court found that adequate notice had been given of the intent to proceed as

a class where one class plaintiff alleged in his administrative charge that Xerox had

discriminated "'against persons such as myself over forty *as a class* particularly with

respect to the implementation of a reduction in salaried work force.'" 918 F.2d at 1058

(emphasis in original). In *Anderson*, another case cited by the plaintiffs, the court found

that administrative charges filed by class plaintiffs contained "plain allegations of class

based discrimination" where they made specific references to other employees who were

affected by the discrimination. 852 F.2d at 1010, n.3 (noting the charge of one plaintiff

who alleged: "It is my belief that Respondent is attempting to remove its older employees

19

and replace them with young employees. Other older employees (over age 50) have been

terminated. Some are Kenneth Gould age 54, Jerry Seckinger age 56, Edward Condon

age 51, Richard Watson age 60").

In contrast, in this case, although the plaintiffs reference the Partnership

Agreement and indicate that it means that "no professional employee of 60 years or older

can be promoted[,]" their administrative complaints focus solely on their individual

circumstances and seek relief for their personal claims. *See* Def. Mot. to Dismiss, Ex. B,

D, E, G. For instance, in Murphy's March 14, 2001 administrative charge, the brief

description of the Partnership Agreement is preceded by the statement "Respondent has

denied *me* promotional opportunities on the basis of *my* age." Id. at Ex. B (emphasis

added). The charge then includes a four-paragraph discussion of Murphy's qualifications

for partnership, and concludes with the statement: "Therefore, I charge the Respondent

with an unlawful discriminatory practice on the basis of my age..." Id. Schuler's June 29,

2001 charge is similar, except for that it includes a more extended discussion of his prior

work experience. Id. at Ex. E. Schuler's charge also closes by stating, "[t]he

Respondent's discriminatory actions against me have continued to this date. I charge the

Respondent with unlawful discriminatory practices against me on the basis of my age..."

Id. at 3.

Although an administrative claim need not formally specify that the claimant

purports to represent a class or others similarly situated, *Tolliver*, 918 F.2d at 1058, the

Court finds that "[a]llowing class actions without administrative charges that fairly anticipate class claims would undermine the notice and conciliation purposes of [ADEA's] filing requirement." *Kloos*, 799 F.2d at 400. In this case, neither of the plaintiffs' administrative charges gives fair notice of an intent to proceed as a class action. Indeed, the Court finds that their charges cannot reasonably be read to represent or assert claims on behalf of other employees who may also have been affected by discrimination. Accordingly, the Court grants the defendants' motion to dismiss with regard to the class allegations of the complaint.

### C.    Claims against the Board of Partners and Principals

PwC's third claim in its motion to dismiss is that its Board should be dismissed from the action because it is not a legal entity with the capacity to sue or be sued. Def. Mot. to Dismiss 20. In response, the plaintiffs merely argue that dismissal of the Board "makes no difference, because no relief is sought against that entity separately..." Pl. Opp. 12.

The Court finds based on the facts in the record that the Board is not a legal entity with capacity to sue or be sued apart from PwC. Unincorporated divisions of a corporation lack the capacity to be sued. *See, e.g., EEOC v. St. Francis Xavier Parochial School*, 77 F.Supp.2d 71, 75-76 (D.D.C. 1999); *United States v. BCCI Holdings, Inc.*, 833 F.Supp. 32, 38-39 (D.D.C. 1993). Moreover, the plaintiffs have neither argued nor demonstrated that the Board is an "unincorporated association" that would be subject to

21

suit pursuant to Federal Rule of Civil Procedure 17(b) or District of Columbia law.[9]

Accordingly, the Court grants the defendants' motion to dismiss with regard to the Board.

### D.    Claims against the Individual Defendants

PwC also moves to dismiss the twenty-one individual defendants named in the

plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

jurisdiction.  Def. Mot. to Dismiss 21-22.  PwC further argues that even if the Court

found it had personal jurisdiction over these alleged Board members, individual

defendants are not subject to suit under ADEA.  Id.

---

[9] Federal Rule of Civil Procedure 17(b) provides, in relevant part:

> "The capacity of a corporation to sue or be sued shall be determined by the law
> under which it was organized.  In all other cases capacity to sue or be sued shall
> be determined by the law of the state in which the district court is held, except (1)
> that a partnership or other unincorporated association, which has no such capacity
> by the law of such state, may sue or be sued in its common name for the purpose
> of enforcing for or against it a substantive right existing under the Constitution or
> laws of the United States..."

Fed. R. Civ. P. 17(b).  Whether the Board qualifies as an "unincorporated association" under
Rule 17(b)(1) is governed by federal law. *Kauffman v. Anglo-American School of Sofia*, 28 F.3d
1223, 1225 (D.C. Cir. 1994).  Federal courts, including courts in this district, have held that an
"unincorporated association" under Rule 17(b)(1) is a body of persons, acting without a charter,
for the purposes of promoting a common objective. *See, e.g., EEOC v. St. Francis Xavier
Parochial School*, 77 F.Supp.2d 71, 76-77 (D.D.C. 1999); *see also Penrod Drilling Co. v.
Johnson*, 414 F.2d 1217, 1222 (5th Cir. 1969).  "[A] division of a corporation does operate with
a charter -- the charter of the larger corporation." *St. Francis*, 77 F.Supp.2d at 77.  Thus, the
Board, which acts under the charter of PwC would not be subject to federal claims under Rule
17(b)(1).  Moreover, with regard to claims under state or local laws, the Board's capacity to be
sued would be governed by District of Columbia law, under which unincorporated associations
cannot be sued in their own names. *Kauffman*, 28 F.3d at 1225.

22

### 1.    Personal Jurisdiction Over the Individual Defendants

"To thwart dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiffs must establish personal jurisdiction over each defendant." *Biton v. Palestinian Interim Self-Government Authority*, 310 F.Supp.2d 172, 176 (D.D.C. 2004). The plaintiffs thus carry the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over the defendants. *Crane v. New York Zoological Society*, 894 F.2d 494, 456 (D.C. Cir. 1990). In evaluating whether such a basis exists, the Court will resolve factual discrepancies appearing in the record in favor of the plaintiff. Id.

In this case, PwC argues that the plaintiffs have failed to put forth any specific facts concerning the conduct of the individual defendants that would support personal jurisdiction. PwC acknowledges that the Court must resolve factual discrepancies in favor of the plaintiffs with regard to personal jurisdiction, but argues that there are no allegations even creating a dispute. Def. Mot. to Dismiss 21. For instance, PwC asserts that the complaint does not allege the residence of business of any of the individual defendants, and the summonses filed in this case reveal that only one of the individual defendants, Robert C. Morris, Jr., has an address in the District of Columbia. Id. at 22. Moreover, PwC argues that the plaintiffs have not alleged that the individual defendants are subject to long-arm jurisdiction under D.C. Code § 13-423,[10] which provides that

---

[10]  Under this long-arm statute, personal jurisdiction is proper "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's (1) transacting business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of

personal jurisdiction may be asserted under circumstances where defendants, through their conduct related to the District, may be subject to the Court's exercise of personal jurisdiction even if they do not reside or maintain their principal place of business in the District. Id. at 22.

The plaintiffs respond that under the D.C. long-arm statute, the individual defendants are subject to personal jurisdiction under sections 13-423(a)(1) and (3), Pl. Opp. 15-16, which provide that personal jurisdiction may arise from "transacting business in the District of Columbia" or "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendants] regularly do[] or solicit[] business" in the District. D.C. Code Ann. §§ 13-423(a)(1), (3). They believe they have sufficiently pled a basis for personal jurisdiction because they have alleged that the individual defendants have engaged in discriminatory practices and policies regarding retirement and have implemented that policy in the District of Columbia. Pl. Opp. 16. The plaintiffs further allege that to the extent that the Court finds that the complaint requires more specific allegations regarding each individual defendants' contacts with the District of Columbia, the "fair and appropriate" procedure is to allow the plaintiffs to conduct discovery regarding the role of each defendant in the discrimination at issue. *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987).

---

Columbia; [or] (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the District of Columbia." D.C. Code Ann. §§ 13-423(a)(1)-(4).

24

The Court finds that the plaintiffs' complaint and subsequent pleadings fail to put forth any specific basis for personal jurisdiction over twenty of the twenty-one individual defendants. Contrary to the arguments set forth in their opposition, the plaintiffs merely allege the following in their complaint: "These Board members collectively and individually have been and are responsible for the discriminatory policies, practices and conduct alleged in the Complaint, and they have maintained and implemented the discriminatory policies and practices set forth below." Compl. ¶ 9. The plaintiffs then allege that these individual defendants "participated in the age discriminatory policies and practices and decisions described above against plaintiffs and other[] similarly situated employees..." Id. at ¶ 51. Nowhere in the complaint is it alleged that the individual defendants specifically made decisions regarding employees in PwC's District of Columbia office or had any contact with that office or the plaintiffs that would satisfy the "minimum contacts" analysis. Moreover, the Court has no basis to believe that twenty of the twenty-one individual defendants reside in, or maintain their principal place of business, in this district. While the D.C. Circuit has held that a plaintiff should have "a fair opportunity to inquire into [the defendant's] affiliations with the District[,]" when it did so in *Crane v. Carr*, 814 F.2d at 764, the plaintiff had at least alleged several "links" the individual defendants had with the district, including "occasional attendance at meetings, correspondence, and telephone calls." Id. at 760-61. Moreover, our Circuit Court noted that the claims in that suit, libel and "false light," are the "kind in which the

25

injury, foreseeably, is felt with the greatest force in the place where the plaintiff lives."
Id. at 760.

In this case, the plaintiffs have made no effort to allege any specific "links" with regard to twenty of the twenty-one individual defendants that could be further explored through discovery. Indeed, the plaintiffs evinced their impression, in the motions hearing before this Court, that whether the Board and its members were included in this suit does not "as a practical matter...make any difference." Hr. T. 35:16-18. Thus, the Court will not allow the plaintiffs to pursue discovery with regard to defendants for whom they fail to allege any acts connecting them to this district. With regard to defendant Robert C. Morris, Jr., however, the Court finds that there is an issue as to whether this defendant would be subject to personal jurisdiction under either the D.C. long-arm statute or section 13-422, which provides for personal jurisdiction over those who reside in or keep their principal place of business in the district. Accordingly, the Court grants the defendants' motion on the issue of personal jurisdiction as to all individual defendants except for Robert C. Morris, Jr., who appears to have been served with summons in the District of Columbia.

### 2.    ADEA Claims Against Individual Defendants

PwC also moves for dismissal of the plaintiffs' ADEA claims against the individual defendants. Given the Court's ruling on the issue of personal jurisdiction with regard to twenty of the individual defendants, this claim is relevant now only to defendant

26

Morris. PwC argues that Board members are not subject to suit under ADEA in their individual capacities, and that to the extent that the plaintiffs seek to sue the individual defendants in their official capacities, these allegations duplicate the claims against PwC itself. Def. Mot. to Dismiss 23.

ADEA does not provide for liability against individual defendants in their personal capacities. *Amariglio v. Nat'l Railroad Passenger Corp.*, 941 F.Supp. 173, 178 (D.D.C. 1996) (citing *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (Title VII)); *see also EEOC v. AIC Security Investigations*, 55 F.3d 1276, 1279-81 (7th Cir. 1995); *Birbeck v. Marvel Lighting Co.*, 30 F.3d 507, 510-111 (4th Cir. 1994). Moreover, with regard to the Board members in their official capacities, the Court finds that "[b]ecause an official capacity suit against an individual is the functional equivalent of a suit against the employer," the plaintiffs' claims against the Board members under ADEA are "redundant and an inefficient use of judicial resources." *Cooke-Seals v. District of Columbia*, 973 F.Supp. 184, 187 (D.D.C. 1997). For these reasons, the Court grants the defendants' motion to dismiss the ADEA claims against all of the individual defendants.

### E.   NYHRL Claims

PwC's fifth ground for dismissal is that the plaintiffs fail to state a claim under the NYHRL, New York's anti-discrimination statute. Executive Law Article 15, et seq. As previously noted, the NYHRL does not provide a non-resident plaintiff with a cause of action for discriminatory acts committed by a New York corporation that occurred outside

27

of New York. *Beckett*, 893 F.Supp. at 238.  For a non-resident to assert a claim under this

statute, he must allege that the actual impact of the discriminatory act was felt in New

York. *Wahlstrom v. Metro-North Commuter Railroad Corp.*, 89 F.Supp.2d 506, 527-28

(S.D.N.Y. 2000); *see also Lucas v. Pathfinder's Personnel, Inc.*, 2002 WL 986641, at *1-

2 (S.D.N.Y. May 13, 2002).  The plaintiffs fail to allege an impact in New York.

Moreover, even though their complaint expressly cites the NYHRL as a basis for their

allegations, Compl. ¶ 1, the plaintiffs appear to concede that they have failed to state a

claim under this statute:  "[T]here are no claims sought under the NYHRL that are not

sought under the DCHRA...No relief is sought separately under the NYHRL."  Pl. Opp.

12.  Accordingly, the Court will dismiss any claims under the NYHRL.

## F.    DCHRA Claims

The final ground set forth in PwC's motion to dismiss is that the Court should

decline to exercise supplemental jurisdiction over the plaintiffs' claims under the

DCHRA, the District of Columbia's anti-discrimination statute.  D.C. Code § 2-1401.

Under section 1367 of Title 28 of the United States Code, this Court may exercise

supplemental jurisdiction over the plaintiffs' state law claims where they "are so related

to the claims in the action within such original jurisdiction that they form part of the same

case or controversy..."  28 U.S.C. § 1367(a).  However, the Court may decline to exercise

its jurisdiction under several circumstances, including when the state law claims

"substantially predominate[] over the claim or claims over which the district court has

original jurisdiction..." 28 U.S.C. § 1367(c)(2).

PwC asserts that the Court should decline supplemental jurisdiction over the DCHRA claims in light of the dismissal of the plaintiffs' retaliation and certain of the failure to promote claims because the DCHRA claims predominate over the remaining federal claims under the ADEA. Def. Mot. to Dismiss 28. The plaintiffs respond that if they prove their claims under ADEA, they will also have demonstrated a basis for relief under the DCHRA. Pl. Opp. 11. Thus, the adjudication of these claims does not raise the issue of judicial economy. Pl. Opp. 11-12.

The Court agrees with the plaintiffs and thus denies the defendants' motion as to the DCHRA claims. As previously noted, courts in this district have oft evaluated claims under federal anti-discrimination statutes and the DCHRA in tandem. *See, e.g., Arnold v. U.S. Postal Service*, 863 F.2d 994, 996 (D.C. Cir. 1988); *Mianegaz v. Hyatt Corp.*, 319 F.Supp.2d 13, 18 (D.D.C. 2004). Furthermore, PwC does not dispute that the plaintiffs' federal and DCHRA claims share a common factual basis and would thus not involve vastly different analyses by this Court. Accordingly, the Court denies the defendants' motion on this issue.

**III.     *Cross-Motions for Summary Judgment on the Plaintiffs' "Pattern and Practice" Claims***

The parties have cross-moved for summary judgment on the plaintiffs' "pattern and practice" claim under ADEA. The plaintiffs move for summary judgment on the grounds that they have demonstrated that PwC has a policy and practice of denying older

29

employees promotion to partner in favor of younger employees. As primary evidence of

this policy and practice, they cite the Partners Agreement, which expressly requires each

partner to withdraw from the firm the year he or she reaches sixty, and also data showing

that from July 1, 1998 through July 1, 2002, none of the individuals who advanced to

partnership were age sixty or older, and only four individuals were over the age of fifty-

five. Pl. Mot. for Summ. J. 14. According to the plaintiffs, these undisputed facts

establish clear violations of the ADEA and DCHRA, which prohibit an employer from

offering promotion to partnership for a discriminatory reason, such as age. Id. at 16

(citing *Hishon v. King and Spalding*, 467 U.S. 69, 75 (1984)).

PwC does not dispute that its Partnership Agreement requires mandatory

retirement for partners or that fewer employees are admitted in higher age brackets,[11] but

cross-moves for summary judgment on several legal grounds. First, PwC asserts that

individual non-class plaintiffs cannot maintain a "pattern and practice" claim, and that

even if they could, the plaintiffs failed to allege a "pattern and practice" claim in their

administrative charges and thus are prohibited from bringing such a claim in federal

district court. Def. Mem. Cross-Mot. 21-24. Second, PwC argues that the plaintiffs'

"pattern and practice" claim is essentially a "disparate impact" claim, which is not

cognizable under ADEA. Id. at 26. Third, PwC argues that the plaintiffs have not also

---

[11] PwC does, however, challenge the plaintiffs' statistical evidence on the grounds that it
omits a sizeable number of PwC partners admitted from positions outside of the firm. Def. Mem.
Cross-Mot. 18. PwC also also contests the significance and interpretation of the plaintiffs'
statistical evidence. Id. at 18, 34-43.

established a *prima facie* case for "disparate treatment." Id. at 33. Finally, PwC asserts

that its Partnership Agreement is lawful and is not subject to a challenge because its

partners are not "employees" under ADEA and the plaintiffs' have not suffered any

adverse employment action under the statute as a result of the agreement.[12] As PwC

challenges the plaintiffs' ability, as a matter of law, to assert a "pattern and practice"

claim, the Court will first address these arguments to determine whether an evaluation of

the claim on the merits is warranted. For the following reasons, the Court will DENY the

plaintiffs' motion for summary judgment, and will GRANT in part and DENY in part the

defendants' motion for summary judgment.

### A.    "Pattern and Practice" Claim by Individual Non-Class Plaintiffs

PwC's first challenge to the plaintiffs' "pattern and practice" claim is that they

may not proceed on this theory in an individual action for discrimination. The Court

agrees. Cases from our Circuit reflect an important distinction between the assertion of a

"pattern and practice" claim[13] and the use of statistical or other evidence of systematic

---

[12]    It should be noted that the Court has not considered an opposition by the plaintiffs to
the defendants' motion for summary judgment. The plaintiffs' opposition was due on November
5, 2003. On November 21 and 24, 2003, the plaintiffs filed motions for extension of time, which
the Court subsequently denied.

[13]    With regard to "pattern and practice" claims, in the seminal case *Int'l Brotherhood of
Teamsters v. United States*, 431 U.S. 324 (1977), the Supreme Court held that "proof of the
pattern or practice supports an inference that any particular employment decision, during the
period in which the discriminatory policy was in force, was made pursuant to that policy." Id. at
362. Thus, in a "pattern and practice" case, the plaintiffs need not establish the merits of their
individual discrimination claims under the *McDonnell Douglas* burden-shifting framework,
rather it is presumed that as a member of the class, each plaintiff has been the victim of the
discriminatory conduct. Id. at 362.

discrimination to prove an individual discrimination claim. *See Palmer v. Shultz*, 815

F.2d 84, 90-91 (D.C. Cir. 1987) (discussing the "pattern and practice" theory in a class

action context); *Williams v. Boorstin*, 663 F.2d 109, 115 n. 38 (D.C. Cir. 1980)

(discussing use of evidence of systematic or general discrimination in an individual action

for discrimination). Indeed, it has previously held that in an individual case for

discrimination, "evidence of systematic or general instances of discrimination can only be

collateral to evidence of specific discrimination against the actual plaintiff[,]" suggesting

that the "pattern and practice" approach is not a permissible method of proof for an

individual non-class plaintiff. *Williams*, 663 F.2d at 115 n.38. And, where courts in this

Circuit have recognized "pattern and practice"-type claims, the plaintiffs were proceeding

on behalf of a class. *See, e.g., Cook v. Boorstin*, 763 F.2d 1462 (D.C. Cir. 1985); *Hyman

v. First Union Corp.*, 980 F.Supp. 38 (D.D.C. 1997). Thus, in light of this Court's earlier

finding that the plaintiffs may not proceed with their class allegations because they failed

to adequately allege such claims at the administrative level, it additionally concludes that

they are barred from proving their discrimination claims under a "pattern and practice"

---

Other federal circuits have explicitly held that the "pattern and practice" approach set
forth in *Teamsters* is not an available method of proof in a private non-class action suit. *See
Lowery v. Circuit City Stores*, 158 F.3d 742, 760-61 (4th Cir. 1998), *vacated on other grounds*,
527 U.S. 1031 (1999). The court in *Lowery* stated: "The Supreme Court has never applied the
*Teamsters* method of proof in a private, non-class suit charging employment discrimination.
Rather, the Court has noted that there is a 'manifest' and 'crucial' difference between an
individual's claim of discrimination and a class action alleging a general pattern or practice of
discrimination." Id. at 761 (citing *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867,
876 (1984)); *see also Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990).

theory.

However, notwithstanding the unavailability of a "pattern and practice" theory, the plaintiffs may still use evidence of systematic or general discrimination in establishing their *individual* discrimination claims. *See Williams*, 663 F.2d at 115, n.38; *see also Cook v. Boorstin*, 763 F.2d 1462, 1468 (D.C. Cir. 1985) (noting that as a part of her *prima facie* case, a plaintiff may introduce statistics tending to demonstrate that the defendant's operating procedure was the standard practice). Indeed, the D.C. Circuit has held that statistical evidence, may establish a *prima facie* case of discrimination in an individual action. *Davis v. Califano*, 613 F.2d 957, 962 (D.C. Cir. 1980). However, the individual plaintiff is still subject to the burden of persuasion set forth in *McDonnell Douglas*, and must respond to the defendant's proof of a legitimate reason for the alleged discriminatory act with evidence that the proffered justification was pretext. Id. at 961-62. Accordingly, the plaintiffs are not precluded from introducing statistical evidence demonstrating systematic or general discrimination as evidence collateral to evidence of individual discrimination, but may not advance a "pattern and practice" theory as individual non-class defendants.

**B.    "Pattern and Practice" Claim as "Disparate Impact" under ADEA**

PwC also challenges the plaintiffs' "pattern and practice" claim on the grounds that it is essentially a "disparate impact" claim, which it argues is not a cognizable theory under ADEA. To the extent that it is, the Court agrees with PwC, and for the following

33

reasons, grants PwC's motion for summary judgment as to the plaintiffs' ability to bring a

"pattern and practice" claim under ADEA based on a "disparate impact" theory.

In *Segar v. Smith*, the D.C. Circuit distinguished between two theoretical

approaches in the Title VII context. 738 F.2d 1249, 1265-66 (D.C. Cir. 1984). In a

"disparate *treatment*" claim, a plaintiff seeks to prove that "an employer intentionally

'treats some people less favorably than others because of their race, color, religion, sex, or

national origin.'" Id. (citing *Teamsters*, 431 U.S. at 335 n. 15). Proof of illicit motive to

discriminate is essential to such a claim. Id. at 1266. In contrast, in a "disparate *impact*"

claim, a plaintiff "challenges 'employment practices that are facially neutral in their

treatment of different groups but that in fact fall more harshly on one group than another

and cannot be justified by business necessity.'" Id. at 1266 (citing *Teamsters*, 431 U.S. at

336 n.15). To prevail on a "disparate impact" theory, "a plaintiff need not prove illicit

motive; 'Congress directed the thrust of [Title VII] to the consequences of the

employment practices, not simply the motivation.'" Id. at 1266 (citing *Griggs v. Duke

Power Co.*, 401 U.S. 424, 432 (1971)). In this case, PwC contends that the plaintiffs are

essentially asserting a "disparate impact" claim because the focus of their allegations is

the mandatory retirement provision of the Partnership Agreement and the data showing

that employees close to the age of sixty are not advanced to partnership at PwC,

allegations which lack discriminatory intent. Def. Mem. Cross-Mot. 29-30. Furthermore,

according to PwC, because the Partnership Agreement has no application to employees

like the plaintiffs, it is "facially neutral" with respect to such employees. Id. at 30.

Characterizing the plaintiffs' claims in this manner, PwC argues that although a plaintiff

may sue under Title VII for "disparate impact," the Supreme Court has never recognized

the applicability of this theory in the ADEA context and district courts in this Circuit have

previously held that "disparate impact" claims are not cognizable under the ADEA. The

Court agrees.

First, although it had previously recognized the "disparate impact" theory in the

Title VII context in *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971), the Supreme

Court specifically noted, in *Hazen Paper Co. v. Biggins*, that it has never ruled that this

theory is available to plaintiffs in the ADEA context. 507 U.S. 604, 609-10 (1993).

Indeed, the Court acknowledged the existence of reasons for not recognizing such a

theory:

> [N]othing in the Court's opinion should be read as incorporating in the
> ADEA context the so-called "disparate impact" theory of Title VII...As
> the Court acknowledges, we have not yet addressed the question of
> whether such a claim is cognizable under the ADEA, and there are
> substantial arguments that it is improper to carry over disparate impact
> analysis from Title VII to ADEA.

Id. at 618 (Kennedy, J., concurring) (citations omitted).

Second, although this issue has arisen twice before our Circuit, in each case, the

D.C. Circuit has declined to rule as to whether the "disparate impact" theory is cognizable

under ADEA. *See Arnold v. United States Postal Service*, 863 F.2d 994, 995-96 (D.C.

Cir. 1998); *Koger v. Reno*, 98 F.3d 631, 639 (D.C. Cir. 1996). Several other circuits,

however, have either held that the "disparate impact" theory is not cognizable under

ADEA or have questioned its viability. *See, e.g., Adams v. Florida Power Corp.*, 255

F.3d 1322, 1326 (11th Cir. 2001); *Mullin v. Raytheon Co.*, 164 F.3d 696, 704-06 (1st Cir.

1999); *Ellis v. United Airlines*, 73 F.3d 999, 1007 (10th Cir. 1996); *DiBiase v. SmithKline

Beecham Corp.*, 48 F.3d 719, 732 (3d Cir. 1995); *Lyon v. Ohio Education Assoc.*, 53 F.3d

135, 139 n.5 (6th Cir. 1995); *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994);

*Fobian v. Storage Tech. Corp.*, 959 F.Supp. 742, 747 (E.D. Va. 1997). Moreover, at least

two district courts in this Circuit have held that in the absence of a congressional mandate

amending ADEA to provide for such a claim (as Title VII does), the "disparate impact"

theory is not cognizable under ADEA. *See Evans v. Atwood*, 38 F.Supp.2d 25, 30

(D.D.C. 1999); *Hyman v. First Union Corp.*, 980 F.Supp. 38, 46 (D.D.C. 1997).

This Court agrees with the *Hyman* decision that to allow a plaintiff to proceed

under a "disparate impact" theory in an ADEA case ( *i.e.,* permitting the plaintiff to prove

discrimination by showing that an employer relied on a facially neutral practice that was

correlated with age) would be entirely inconsistent the framework of ADEA, which

provides an important exception for action by an employer "where the differentiation is

based on reasonable factors other than age..." 29 U.S.C. § 623(f). 980 F.Supp. at 42.

Accordingly, this Court finds that to the extent the plaintiffs are alleging a "disparate

impact" theory, it is not cognizable under ADEA.

36

C.    **Disparate Treatment Claim**

PwC also moves for summary judgment on the plaintiffs' claims to the extent that they allege a "disparate treatment" theory. Def. Mem. Cross-Mot. 33. As previously noted, under a "disparate treatment" theory, a plaintiff must demonstrate that an employer intentionally treated some people less favorably because of their age. *Hazen Paper*, 507 U.S. at 609; *Segar*, 738 F.2d at 1266. PwC argues that the plaintiffs' statistical analyses fail to demonstrate an "intent to discriminate" on the part of PwC. Def. Mem. Cross-Mot. 37. In their motion for summary judgment, the plaintiffs argue that the facts are undisputed that PwC discriminates against older employees in its Partnership Agreement and its promotion policies.

The Court will deny both parties' motions for summary judgment based on the existence of genuine issues of material fact regarding a "disparate treatment" theory. First, the Court finds there is a genuine issue as to whether the plaintiffs can allege any discriminatory conduct other than the Partnership Agreement, which the Court believes cannot form the sole basis of a "disparate treatment" theory, given that neither addresses nor binds the plaintiffs in any way. The plaintiffs have alleged that they were advised several times that they would not be advanced based on their age and other factors (*e.g.,* structure of PwC retirement plans) and the Court believes that whether the plaintiffs can show an "intent to discriminate" by PwC has yet to be determined. Second, the Court will not grant summary judgment to PwC merely on its argument that the plaintiffs' statistical

analyses are inadequate, when the plaintiffs have at least demonstrated that there is a disparity in the ages of individuals promoted to partnership and the record is, as of yet, not fully developed regarding the particular circumstances under which the two plaintiffs were not advanced to partnership. Accordingly, the Court will deny the defendants' motion and the plaintiffs' motion as to the plaintiffs' "disparate treatment" claim.

## ORDER

It is this 27th day of September, 2004, hereby

**ORDERED** that the defendants' motion to dismiss [#30] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the plaintiffs' motion for summary judgment [#59] is **DENIED**; and it is further

**ORDERED** that the defendants' motion for summary judgment [#66] is **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

RICHARD J. LEON
United States District Judge