UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| C. WESTBROOK MURPHY, and HAROLD SCHULER, <br><br> Plaintiffs, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, LLP, et al., <br><br> Defendants. | Case No. 1:02CV00982 (RJL/DAR) |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
212-294-6700

Attorneys for Defendants

(id.). That does not constitute "direct" evidence of a facially discriminatory policy that might relieve plaintiffs of their burden of establishing a prima facie case under the McDonnell Douglas standard.[15]

The real point here is not that it would not make sense for PwC to admit a new partner over age 60, but that it would make no sense for an employee (not subject to mandatory retirement at any age) to seek partner status at that age, only to subject himself to immediate retirement pursuant to the lawful provision in the partnership agreement. Of course, Murphy asked to be considered at age 61 without any genuine interest in actually becoming a partner. The undisputed evidence, including Murphy's own admissions, reveals that he belatedly asked to be a candidate for partner only to obtain leverage to cut an early retirement deal as an employee (see Def. Mem. at 15-18).

### B.   Murphy Is Not "Aggrieved" by His Non-Admission as Partner, and Lacks Standing to Complain of an "Adverse Employment Action"

Plaintiffs recognize that partners may lawfully subject themselves to a mandatory retirement agreement (Murphy Opp. at 26; Schuler Opp. at 13; Nelson Reply Decl., Exh. B at 32-33). Plaintiffs argue that, although the ADEA does not proscribe discrimination against partners, a partnership may not discriminatorily deny partnership consideration to its employees on the basis of age, where such consideration is a term, condition or privilege of employment (Murphy Opp. at 22, citing Hishon v. King & Spaulding, 467 U.S. 69, 75 (1984), and Hopkins, 490 U.S. at 233 n.1 (1989)).[16]

---

[15] Moreover, apart from being indirect and circumstantial, such evidence of general or systemic discrimination can only be "collateral to evidence of specific discrimination against the actual plaintiff" (Mem. Op. at 32-33, quoting Williams v. Boorstin, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980)), and cannot suffice to meet plaintiffs' burden to establish a prima facie case of individual disparate treatment (see Point II.E., infra).

[16] Both Hishon and Hopkins were Title VII sex discrimination cases. Thus, neither case considered or addressed the situation involved here, where partners, once admitted, lawfully subject themselves to mandatory retirement based on age.

17

Hishon decided nothing more than the legal viability of a Title VII sex discrimination complaint, at the pleading stage, of a female law firm associate alleging that she was discriminatorily denied admission as a partner. Notably, in his concurring opinion in Hishon, Justice Powell emphasized that, while an employer cannot discriminatorily deny partnership status to its employees, there is nothing to preclude a partnership from expelling or retiring a partner, even for discriminatory reasons, once partnership status is conferred (see Hishon, 467 U.S. at 79-80 (Powell, J., concurring)). However, Justice Powell further noted in a footnote that an employer "may not evade the strictures of Title VII simply by labeling its employees as partners" (id. at 80 n.2).

Later, in Hopkins, following remand of that case from the Supreme Court, the D.C. Circuit cited Justice Powell's footnote in Hishon in recognizing that a person in the plaintiff employee's position, "may find protection under the statute [Title VII] should she be admitted to the partnership on unequal terms or suffer retaliation on becoming a partner based on her previous assertion of Title VII rights. Under such conditions, the admission to partnership may amount to a subterfuge for discriminating against the employee and the victim of discrimination arguably would remain protected by the statute" (Hopkins v. Price Waterhouse, 920 F.2d 967, 978 n.10 (D.C. Cir. 1990)). The courts have otherwise recognized no limitation, under the employment discrimination statutes, on a partnership's right to retire or expel a partner.

Accordingly, Murphy would be lawfully subject to immediate retirement if he were to be admitted as a partner at PwC. Since the mandatory age-60 retirement provision for partners has been in place at PwC (and its predecessor firms) for decades (see Murphy Opp. at 21), Murphy could have no claim that it was adopted as a pretext for retaliation or a subterfuge for discrimination against him as a newly admitted partner (see Hopkins, 920 F.2d at 978 n.10).

Under the circumstances, Murphy lacks standing to complain of his non-admission as a partner. The ADEA authorizes a civil action only by employees who have allegedly suffered an "adverse employment action" (Brown v. Brody, 199 F.3d 446, 455 (D.C. Cir. 1999)). Since the sole impact of Murphy's admission as a partner would be his immediate retirement, Murphy cannot complain that the denial of admission is an "adverse employment action."

The requirement that an employment action be "adverse" to be actionable is fundamental. The ADEA makes it unlawful to discriminate against an individual (29 U.S.C. § 623(a)(1)) or otherwise "adversely affect" an individual's status as an employee because of his/her age (29 U.S.C. § 623(a)(2)). To have standing to bring a civil action under the ADEA, a person must be "aggrieved" by an unlawful employment action (29 U.S.C. § 626(c)(1); see Brown, 199 F.3d at 455 (under similar provision of Title VII, "there must still be some kind of injury for an . . . employee to state a claim")).

Thus, to complain of disparate treatment, an individual must establish, *inter alia*, that he/she "suffered an adverse employment action" (Forkkio v. Powell, 306 F.3d 1127, 1130 (D.C. Cir. 2002), citing Brown, 199 F.3d at 452). As the D.C. Circuit held in Brown, and reaffirmed in Forkkio, "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm" (Forkkio, 306 F.3d at 1131, citing Brown, 199 F.3d at 457). While a failure to promote generally constitutes an adverse employment action, not so in this case, where plaintiff Murphy's "promotion" to partner would result in an immediate termination of his employment that would otherwise continue indefinitely in the absence of such "promotion."[17]

---

[17] PwC has no mandatory retirement age for employees.

19

In sum, since Murphy cannot establish that he suffered an adverse employment action as a consequence of his not being admitted as a partner, he cannot complain of his nonpromotion to that status.

Recognizing that the lawful mandatory retirement provision for partners precludes a failure to admit Murphy as a partner from constituting an actionable "adverse employment action," Murphy suggests that PwC "partners" should be deemed "employees" under <u>Clackamas Gastroenterology Associates v. Wells</u>, 538 U.S. 440 (2003), and, as such, cannot lawfully be subject to the retirement provision in the partnership agreement (Murphy Opp. at 26). Yet Murphy makes no attempt to support the allegations of his complaint in this regard (<u>see</u> Complaint, ¶¶ 15-18), asserting that the issue "is <u>not</u> presented by his motion" (Murphy Opp. at 26).[18]

However, plaintiffs squarely raise the issue in their opposition to this motion by seeking to resurrect the partner retirement provision as purported "direct" evidence of disparate treatment, and noting that "PwC will surely answer, as it has in the past, that Murphy has no standing to complain about the mandatory retirement provision because it applies only to partners ..." (Murphy Opp. at 25) (further quoting from PwC's memorandum on the prior cross-motions that, "the sole impact of Murphy's admission as a partner would be his immediate retirement"). Moreover, the issue of whether PwC partners should be deemed "employees" under the <u>Clackamas</u> standard was extensively briefed by the parties on the prior motions (<u>see</u> Docket No. 59 at 9-11, 18-22; Docket No. 68 at 50-63). PwC's memorandum concluded (Docket No. 68 at 63):

---

[18] Murphy testified that all large accounting firms -- including, Deloitte Touche, Ernst & Young and KPMG Peat Marwick, as well as PwC -- have mandatory retirement provisions for partners at age 60 or 62, and that, in his view, all those provisions are unlawful (Murphy Dep. at 187-88*).

20

> In sum, consideration of each of the six factors adopted by the Supreme Court in <u>Clackamas</u> confirms the status of PwC partners as partners. Taken together, the factors overwhelmingly compel the conclusion that the partners of PwC cannot properly be characterized as "employees" within the coverage of the ADEA. Accordingly, plaintiffs' claim that the mandatory partner retirement provision of the [PwC partnership agreement] violates that statute must be rejected [citation omitted].

Without mention of the fact that the parties previously cross-moved for summary judgment on the question, Schuler now asserts that "PwC has not moved for summary judgment on the question of whether its partners are employers or employees" (Schuler Opp. at 13). The Court did not reach the issue on the prior motions in light of its ruling that plaintiffs' claim predicated on the partner retirement provision was a "disparate impact" claim, not actionable under the ADEA (<u>see</u> Mem. Op. at 34-35). To the extent plaintiffs' opposition to this motion again raises the <u>Clackamas</u> issue, PwC incorporates by reference herein its prior briefing of the point (Docket No. 68 at 2-3, 50-63).

## C. The Partner Retirement Provision Is Entirely Irrelevant to Schuler's Nonpromotion Claims

Schuler was 54 years of age when he filed his charge of discrimination in June 2001 (Nelson Reply Decl., Exh. B at 28, 34), and was, therefore, 53 when he was not admitted as a partner in the July 1, 2000 admission cycle. Murphy quotes statements of PwC's counsel -- at the hearing and in PwC's memorandum on the prior motions -- that the partner retirement provision would have an "impact" on Murphy, and that "the sole impact of Murphy's admission as a partner would be his immediate retirement . . ." (Murphy Opp. at 3) (record citations omitted).[19] Schuler makes no reference to the immediately preceding statement of PwC's counsel at the

---

[19] The latter quotation omits the conclusion of the sentence, which states: "Murphy cannot complain that the denial of admission is an 'adverse employment action'" (Docket No. 68, at 49).

21

## Conclusion

It is respectfully submitted that PwC's motion for summary judgment should be granted.

Dated: April 15, 2005

                        Respectfully submitted,

                        WINSTON & STRAWN LLP

                        /s/
                        Eric M. Nelson (admitted *pro hac vice*)
                        Stephen L. Sheinfeld (admitted *pro hac vice*)
                        Mark A. Konkel
                        WINSTON & STRAWN LLP
                        200 Park Avenue
                        New York, New York 10166
                        (212) 294-6700

                        Thomas M. Buchanan # 337907
                        WINSTON & STRAWN LLP
                        1400 L Street, N.W.
                        Washington, D.C. 20005
                        (202) 371-5700

                        Counsel for the Defendants