UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| C. WESTBROOK MURPHY )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PRICEWATERHOUSECOOPERS, LLP, )<br>et al. )<br>)<br>Defendants. )<br>) | Civil Action No. 05-1054<br>(RJL) |

**PLAINTIFF'S OPPOSITION TO MOTION TO STAY PROCEEDINGS**

PriceWaterhouseCoopers' ("PwC's') argument that this case presents an "essentially identical" claim [Motion at 2] to those pending before the Court in <u>Murphy & Schuler v. PwC</u>, C.A. 02-0982, is incorrect. There is no basis to stay this proceeding simply because PwC has filed a motion for summary judgment in the earlier case. Moreover, such a stay would be prejudicial to the plaintiff's interest in conducting discovery while memories are fresh and in establishing his right to partnership before the end of his remaining productive work years.

**A. Murphy's Lawsuits Do Not Present "Essentially Identical" Claims"**

PwC's only premise for seeking a stay is that the claims prosecuted in this case are "essentially identical" to or "substantially the same" as those at issue in CA-02-0982. However the test is phrased, PwC's fundamental assertion is incorrect.

The Supreme Court has unmistakably held that each time an employer rejects an employee for promotion the employer has taken a discrete employment action, giving rise

to a discrete claim of discrimination. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In Morgan, the Court expressly rejected the contention that a series of promotion denials should be viewed as a "continuing violation" and pursued under a single claim. Murphy thus filed with the EEOC on March 4, 2005, a charge of employment discrimination directed at PwC's failure to promote him to partner effective July 1, 2004, and subsequently filed with this Court the instant complaint based on the facts asserted in that charge. This procedure was the proper way to challenge discriminatory conduct occurring in 2004, even though this Court already had before it a case addressing PwC's discriminatory failure to promote Murphy in the years 2000 and 2001.

While some of the evidence presented will be common to both cases, they will also involve significant differences. For example, a central issue in the 2004 denial will be a comparison of the qualifications between Murphy and the person selected from his office for partner, Jeff Lavine. In his Complaint, Murphy alleged that "Lavine worked under Murphy's supervision within RAS prior to his promotion to partner, and has less tenure with PwC, less experience and knowledge of financial institution regulation, and less managerial experience than Murphy." [Complaint, ¶ 22] Lavine was 39 when PwC promoted him to partner, whereas Murphy was 64 years old. [Id.]

Evidence that Murphy was significantly better qualified than Lavine would be highly probative because,

> If a factfinder can conclude that a reasonable employer would have
> found the plaintiff to be significantly better qualified for the job,
> but this employer did not, the factfinder can legitimately infer that
> the employer consciously selected a less-qualified candidate--
> something that employers do not usually do, unless some other

2

> strong consideration, such as discrimination, enters into the picture. . . .

See Aka v. Washington Hospital Center, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc). The comparison in qualifications between Murphy and Lavine is one example of a key issue in the present case that is not presented by Murphy's original claim.

There is another important difference between the two cases. In CA-02-0982, this Court held that Murphy would be permitted to proceed on his individual claims, but not as a collective action, because his original administrative charge "cannot reasonably be read to represent or assert claims on behalf of other employees who may also have been affected by discrimination." [September 27, 2004 Memorandum Opinion at 21]. The administrative charge in the present case cures for employment actions PwC took in 2004 the defect found by the Court in the original administrative charge for 2000 and 2001, and expressly preserves the right to proceed as a collective action under 29 U.S.C. § 216, as incorporated by 29 U.S.C. § 626(b), with respect to PwC's 2004 promotions.[1] Thus, while the original case will proceed as an individual action, Murphy and others similarly situated could choose to prosecute this as a collective action.

None of the authority cited by PwC offers an even remotely comparable situation. For example, in NL Chemicals, Inc. v. Southern Clay Products, Inc., 704 F. Supp. 299, 300 (D.D.C., 1989), Judge Green issued a temporary 90-day stay of the litigation where "all issues which the parties have raised in the pleadings up to this point will be determined by the Patent and Trademark Office in the previously filed interference

---

[1] The charge that Murphy filed with the EEOC on March 4, 2005, specifically alleges: "This charge is filed on behalf of Murphy and on behalf of similarly situated PwC professional employees. . . . Complainant alleges that during 2004 PwC discriminated against other older PwC employees in work assignments, in pay and benefits, and in consideration for promotion because of their ages. . ." [See Complaint, Ex. 1]

3

proceedings." Here, in contrast, PwC's only argument for seeking a stay -- its assertion that the two cases are essentially identical -- is simply wrong.

### B. PwC's Flawed Motion for Summary Judgment in the Original Case Cannot Be Dispositive Here

PwC is also being disingenuous when it argues that the motion for summary judgment it filed in CA-02-0982 could result in the disposition of this case. PwC proffered two very precise arguments in support of its motion for summary judgment with respect to Murphy's claims. Each argument was specific to only a single year. For the promotion denial in 2000, PwC argued that Murphy did not apply for or express sufficient interest in partnership, and hence failed to meet the first prong of a prima facie case. [See PwC's Memorandum in Support of Motion for Summary Judgment, pp. 33-38] For the promotion denial in 2001, PwC argued that no one from Murphy's office (the Regulatory Advisory Service) was selected, and that, therefore, no vacancy existed and Murphy thus could not carry the fourth prima facie element. [Id., at 40-44]. While both arguments are flawed for the reasons explained in Murphy's Opposition Memorandum, [2] the point for present purposes is that those were the only arguments presented for summary judgment in the prior case, each argument was specific to a single prior year, and neither applies to the 2004 claim at issue in the instant case. [3]

---

[2] In brief, Murphy has shown that no PwC partnership candidates apply for or are required to "express interest" in promotion to partnership; instead, PwC's partner promotion process is initiated top-down, by management identifying candidates it wishes to consider. Moreover, Murphy can establish that, even if application for partnership was necessary (and it was not) his application would have been futile, because PwC refuses to even consider any employee over the age of 60. And for 2001, PwC is wrong in arguing that Murphy is required to show, as part of his prima facie burden, that another employee from his particular work group was promoted to partner. Finally, all of these arguments were irrelevant, because Murphy presented direct evidence of age bias, and hence prima facie analyses are not needed.

[3] Not only were these the only two bases on which PwC sought judgment in its Memorandum, but PwC's Undisputed Statement of Facts provided factual assertions pertinent only to those two narrow arguments. PwC presented to the Court no other basis for summary judgment.

4

Faced with a second lawsuit, PwC suddenly has discovered that in the prior case it additionally is seeking summary judgment on the basis that Murphy "lacks standing to complain of his nonpromotion to partner" (Motion at 5), and contends that this argument (if accepted) would be equally dispositive of the claim here. PwC's argument is riddled with flaws.

First, a purported lack of standing was <u>not</u> a basis on which PwC sought summary judgment on the 2000 and 2001 claims. Rather, PwC is referring to an argument it raised for the first time in its reply memorandum (<u>not</u> in its motion), and it was presented in an effort to deflect Murphy's argument that he had presented direct evidence of age discrimination, and that a <u>prima facie</u> analysis was not required.[4] Arguments raised for the first time on reply need not even be considered [<u>Sierra Club v. EPA</u>, 292 F.3d 895, 900 (D.C. Cir. 2002) ("our caselaw makes clear that an argument first made in the reply comes too late")], and certainly cannot be viewed as dispositive of a separate claim.

Moreover, Murphy's case is not anchored solely in the mandatory retirement provision of the Partners and Principals Agreement. He will proffer other evidence (including statements by decision-makers, statistics and comparative qualifications) to prove his claims. Indeed, this Court has already held that "plaintiffs may still use evidence of systemic or general discrimination in establishing their *individual* claims." [Memorandum Opinion and Order at 33]. Thus, whether the Court ultimately finds that the mandatory retirement provision is direct proof of bias (as Murphy contends) or irrelevant (as PwC contends), there is abundant evidence upon which Murphy can prove his claim.

---

[4] The argument fell under the heading "PwC's Retirement Provision for Partners Does Not Constitute Direct Evidence of Intentional Discrimination In Promotion Against Employees, And Does Not Otherwise Support a Claim of Disparate Treatment." [See Reply Memorandum, p. 12]

5

Second, PwC is wrong when it contends that Murphy has no "standing" to challenge his employer's refusal, because of his age, to make him a partner. A party has standing to sue if he can allege any "injury or aggrievement which is real, perceptible, concrete, specific and immediate, rather than one that is conjectural, hypothetical or speculative." York Apts. Tenants Ass'n v. D.C. Zoning Comm'n, 856 A.2d 1079, 1085 (D.C. 2004). Partnership is perhaps the most lucrative benefit that an employer can offer, and the Supreme Court has twice held that employees have standing to challenge discriminatory partnership denials. Price Waterhouse v. Hopkins, 490 U.S. 228, 233 (1989) ("decisions pertaining to advancement to partnership are subject to challenge under Title VII"); Hishon v. King & Spalding, 467 U.S. 69, 75 (1984) ("nothing in the change in status that advancement to partnership might entail means that partnership consideration falls outside the terms of the statute.") [5] Thus, even if PwC had presented

---

[5] PwC's appears to be misconstruing the concept of standing with issues about the equitable relief that might be afforded to Murphy upon a finding of discrimination. But it is only after this case is tried, and only if Murphy prevails, that the Court need consider whether to compel his admission to the partnership. And by that time, PwC may no longer have a partnership agreement mandating age-specific retirement, or there may be record evidence that it does not consistently enforce such a policy. Moreover, even if PwC still consistently enforced partner retirement at a particular age, the Court would have to determine whether that policy could lawfully be enforced. True owners are not protected by Federal employment laws, but employees (regardless of their designation) are protected. And the label that an employer places on its professional staff (partners versus employees) is not controlling. See Clackamas Gastroenterology Associates v. Wells, 538 U.S. 440, 446 (2003) ("Today there are partnerships that include hundreds of members, some of whom may well qualify as 'employees' because control is concentrated in a small number of managing partners"). PwC did not seek summary judgment on that basis, in the original case, and there is no factual record on which to decide it now (indeed, had PwC moved on that issue, Murphy would have sought additional discovery under Fed. R. Civ. Proc. 56(f) so that the Court would have a sufficient factual record to resolve it).

Finally, even if PwC's mandatory retirement policy, as applied to its partners, ultimately is found to be lawful, that at most would affect the imposition of equitable relief. Murphy would nevertheless be entitled to seek compensatory relief, in whatever amount deemed appropriate by the jury, for the indignity, frustration, pain and suffering he has experienced from PwC's discriminatory conduct. PwC's argument that the mandatory retirement provision would eviscerate all relief, and therefore precludes Murphy from standing to sue, is unavailing.

this argument as a basis for summary judgment in the earlier case (and it did not), it is wrong and equally erroneous here.

### C. **Murphy Would Be Prejudiced By Staying this Case**

Congress enacted the ADEA with an understanding that it was designed to protect the rights of "older citizens to whom, by definition, relatively few productive years are left." See Oscar Mayer & Co. v. Evans, 441 U.S. 750, 757 (1979), citing the comments of Senator Javits, 113 Cong. Rec. 7076 (1967). Substantial delay in the prosecution of ADEA cases is inherently prejudicial, and this case is no exception. Murphy turned 65 in January, and unnecessary delay is prejudicial to him. Moreover, Murphy is further prejudiced by being prevented from engaging in timely discovery, while memories are fresh and before evidence grows stale. He should not be required to suspend the prosecution of this lawsuit indefinitely, until the resolution of a pending motion in a different case.

Finally, as with virtually every other significant filing in this case, PwC's unseemly personal attacks on Murphy are unwarranted. PwC complains that "the filing of this action amounts to nothing more than a further ploy in Murphy's protracted campaign for leverage to achieve ulterior ends" [Motion at 3] and accuses Murphy of some unexplained impropriety because he did not move to amend this case to his earlier lawsuit. But there was obviously no deception in Murphy's separate filing, as he indicated in both the body of the Complaint and the associated forms that it was "related" to his original claims. But related cases need not be consolidated, and here Murphy should be permitted to prosecute them separately so as to avoid the prejudice of delay

described above. In any event, PwC's constant drumbeat of personal attacks does a disservice to the litigants and to the Court.

## CONCLUSION

This case properly raises a separate cause of action arising from PwC's failure to promote Murphy in 2004. The reasons why PwC argues that it is entitled to summary judgment in the prior case are fact specific to the years 2000 and 2001, and can provide no defense to PwC's allegedly unlawful action in 2004. PwC's motion to stay all proceedings therefore should be denied.

                                                                     /s/
Douglas B. Huron  89326
Richard A. Salzman  422497
Tammany M. Kramer  483146
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for Plaintiff Murphy