UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
C. WESTBROOK MURPHY,                 )
                                                    )
                                                    )
            Plaintiff                           )
                                                    )        Civil Action Nos. 05-1054 (RJL/DAR)
            v.                                   )                         02-982 (RJL/DAR)
                                                    )
PRICEWATERHOUSECOOPERS, LLP,   )
                                                    )
                                                    )
            Defendant.                        )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFF MURPHY'S
MOTION TO COMPEL DISCOVERY RESPONSES**

These two actions challenge Defendant PwC's refusal to consider Plaintiff for promotion

to partner because of his age ("Case 1", No. 02-982, challenges non-promotion in 2000 and

2001; "Case 2," No. 05-1054, concerns non-promotion in 2004). Judge Leon has extended

discovery in these two cases until July 6, 2006. On December 8, 2005, Plaintiff served 14

interrogatories and 31 requests for documents in Case 1, and 21 interrogatories and 56 requests

for documents in Case 2, by personally handing them to counsel for PwC. [See Tab 1 to this

Motion] Today – over three months later – PwC has not provided substantive responses to **any**

of the interrogatories and has provided documents that are responsive to only a handful of

Plaintiff's requests. Defendant's conduct is at best evasive and is certainly not calculated to

permit the parties to complete the discovery process within the time allowed by the Court.

PwC's recalcitrance forces Plaintiff to seek the Court's assistance in compelling compliance with

the discovery process.

As more fully described below, the parties agreed in reports filed with the Court on September 16 and December 6, 2005, that:

- Discovery remains open in both cases until July 6, 2006,

- Discovery taken in either action should be deemed applicable to the other action, and,

- Discovery would not be bifurcated between liability and damages.

On March 13, 2006 (having earlier been informed that Plaintiff was about to file this Motion to Compel) defendant produced some records relevant to the "owner employee issue" -- whether most PwC partners are treated more like employees in terms of being subjected to control by the firm, or whether they actually have true ownership of the firm.  See Clackamas Gastroenterology Associates v. Wells, 538 U.S. 440, 451 (2003).  Aside from requests pertaining to that issue, however, the **only** responsive materials provided by PwC are portions of personnel files of two coworkers who have been promoted to partner.  Instead of cooperating with legitimate discovery requests, PwC continually asked for delays, requested a meeting for several hours to discuss the requests in detail on January 31, 2006, and then served Plaintiff with 49 pages of objections.  [Id.]  To date PwC has wasted three months of a contemplated seven month discovery period.

This Motion focuses on PwC's failure to provide appropriate discovery in five substantive areas, all of which are reasonably tailored and directly relevant to Murphy's claims.  Plaintiff seeks information and documents concerning (a) other professional employees within Plaintiff's practice area who were either promoted into or denied partnership during relevant years (i.e., "comparative information"), (b) other complaints of age discrimination, (c) complete information about Murphy's employment history with PwC and qualifications for partnership, (d) damages

information concerning the pay and benefits that Murphy likely would have earned had he not

been denied partnership due to his age, and (e) all responsive information about PwC's operation

of the firm relevant to the owner/employee issue (a matter on which PwC has stated it will file

yet another dispositive motion).  This is bedrock discovery that is undoubtedly relevant to

Plaintiff's discrimination claim, and should be produced.

    None of defendant's objections have merit, and Murphy hereby moves to compel

defendant to provide fully responsive answers to his discovery requests within ten days of the

date of the Court's Order on this Motion.

## I.  Background

    Since PwC's creation on July 1, 1998, no employee age 60 or older has ever been

promoted to partner.  The average age of a PwC employee selected for partnership is 37.  From

July 1, 1998 through September 15, 2003, the firm promoted 1,263 employees to partnership.  Of

those, 75% were under age 40, 4 individuals were age 55 or older; and none was age 60 or older.

[See Summary Judgment Opposition ("SJO") Exhibit 29; Exhibit 1, ¶ 23] [1]  PwC partners with

management authority have openly declared their preference for promoting younger employees

into the partnership, and have admitted that employees who are 60 or older cannot be considered

for partnership.  [SJO Ex. 1, ¶ 24-25; Ex. 14]

    This is not random or informal bias at work.  Age discrimination is a policy emanating

from PwC's governing instrument -- the Partnership and Principals Agreement.  PwC enforces a

mandatory retirement policy requiring all partners to retire from the firm by age 62, and most

partners must retire by age 60.  [SJO Ex. 2, ¶ 10.1]  The mandatory retirement policy means that,

whether qualified or not (indeed, whether or not demonstrably better qualified than younger

---

   [1]  To avoid burdening the record with duplicative documents, citations in this section are to the exhibits to Plaintiff's March 11, 2005 Opposition to Summary Judgment (Docket No. 121), unless otherwise noted.

professionals), PwC will not even consider promoting anyone 60 or older into the partnership.

PwC's answer in Case 2 specifically ". . .admits that the sole impact of Murphy's admission to

the PwC partnership would be his immediate retirement." [Answer, ¶ 23]

It is beyond contention that "decisions pertaining to advancement to partnership are

subject to challenge under Title VII," Price Waterhouse v. Hopkins, 490 U.S. 228, 233 n.1

(1989) (or, as here, the ADEA and DCHRA), and PwC's age policy affects the promotion

potential for older employees who otherwise merit promotion.  Westbrook Murphy is 66 years

old, and as we explain below, is exceptionally well-qualified for partnership.

Murphy joined Price Waterhouse in 1989, and has an impeccable record of performance.

He has repeatedly earned outstanding performance appraisals, served as a leader on complicated

and successful ventures, brought significant business to the firm, and mentored junior

professionals.  [SJO Exs. 1, 3-6, 18-20, 25-26]  PwC has twice promoted Murphy, most recently

in the fall of 2004 to Managing Director, a position which the firm has described as:

> A highly experienced professional who functions in most respects, as a
> partner, has the appropriate experience credentials of a partner and
> possesses established skills in marketing, practice building, technology,
> and staff development.

[SJO Ex. 17]  Murphy possesses all qualities that a firm would seem to want in a partner.

Because of his age, however, PwC will not even consider him for partnership.

Murphy worked in the Regulatory Advisory Service (RAS), a relatively small consulting

group within PwC's Banking Practice, which in turn is part of the Financial Services Practice.

During Murphy's tenure, several markedly younger employees have been promoted over him to

partner.  David Albright, who had been working as a Director in RAS -- the same position

Murphy occupied in 2000, but with significantly less experience and less seniority -- was

elevated to partner in July 2000.  [SJO Ex. 1, ¶ 12]  Just two years earlier, Murphy had managed

Albright on a complicated consulting project for Toronto Dominion Securities.  Albright was 37 years old when PwC made him a partner.  PwC again overlooked Murphy when it promoted 140 younger firm employees into the partnership in July 2001.  [SJO Ex. 27]  And in July 2004, PwC promoted Jeff Lavine (as well as 102 other younger PwC employees) to partnership.  Before his promotion to partner, Lavine worked under Murphy's supervision within RAS as a law clerk and (upon graduation from law school) as an entry-level employee.  Lavine possesses less tenure with PwC, less experience and knowledge of financial institution regulation, and less managerial experience than Murphy.  Lavine was 39 when PwC promoted him to partner.  [Case 2 Complaint, ¶ 21]

No one within PwC has ever sponsored Murphy for partnership, or even talked to him about doing so.   Harold Schuler, a co-plaintiff in this case, is another extremely talented but older professional within RAS who also has been denied promotion. While Schuler initially was proposed for partnership in the 2000 promotion cycle, his candidacy was swiftly rejected in the sounding process when FSI senior partner Robert Moritz voted not to admit him.  [SJO Ex. 11 at 124-25]  Schuler was 55 years old at the time.

This case would be relatively simple if PwC would admit that it refused to consider Murphy because he was too old under the firm's policies to be promoted to partner.  In that event, the parties would litigate the issue of relief, i.e., whether the firm's mandatory retirement policy for partners is lawful, and whether it could have immediately forced Murphy's retirement had he been admitted to the partnership.  The lawfulness of the mandatory retirement policy turns on whether most of the firm's partners are truly owners, unprotected by the age discrimination laws, or are more like employees who are subject to significant control by the firm.  See Clackamas Gastroenterology Associates v. Wells, 538 U.S. 440, 451 (2003) ("Today

there are partnerships that include hundreds of members, some of whom may well qualify as 'employees' because control is concentrated in a small number of managing partners").

But PwC maintains that Murphy's age played no role in his partnership denial, and that the firm had (as yet unarticulated) legitimate reasons to overlook him. This places intent squarely at issue, and <u>all</u> avenues for proving discrimination (including comparing Murphy's record at PwC with similarly situated, but younger professionals promoted past him) are appropriate. Plaintiff has repeatedly asked for such information, and PwC's refusal to provide it is untenable.

PwC now argues that such routine discovery is in many instances precluded by earlier orders of this Court. PwC takes this position for both Case 1 and Case 2, even though Case 2 had not even been filed at the time of the earlier rulings. Defendant is wrong. To explain why, a brief discussion of the procedural history is necessary.

## II.  <u>Procedural History</u>

According to the initial discovery plan in Case 1, discovery was to be conducted in various phases. In February 2003, pursuant to the Court's instructions, the parties met and conferred about discovery, preparing the way for "initial disclosures and an initial round of discovery." [Tab 4, Feb. 11, 2003 scheduling conference at 29.] On February 28, 2003, the Court ordered that defendant produce a handful of particular items, including "all personnel files <u>and other records</u> relating to the employment of each of the plaintiffs"(emphasis added), as well as make available for depositions two named individuals. [Tab 5, Feb. 28, 2003 Order] Importantly, that order additionally stated that "the parties shall confer in good faith with respect to any further discovery that either plaintiffs or defendants believe to be appropriate in the initial phase of discovery." [<u>Id.</u>]

Early in the litigation (and before a discovery deadline was ever entered), both sides filed partially dispositive motions. Defendant moved to dismiss certain claims and individual defendants, and Plaintiffs sought partial summary judgment on their "pattern and practice" claims.[2] These motions appeared to affect the course of discovery. On August 21, 2003, the Court stayed <u>damages</u> discovery until after resolution of the dispositive motions. [Tab 6, Aug. 21, 2003 Order.] The Court also denied without prejudice a motion to compel additional particular discovery sought by the Plaintiffs. [<u>Id.</u>]

Plaintiff continued to press for discovery on liability issues, and on March 3, 2004 defendant moved to <u>stay</u> further discovery pending the Court's decisions on the three partially dispositive motions (defendants' motion to dismiss, and the parties' cross-motions for summary judgment on the "pattern or practice" claims). On April 9, 2004, that motion to stay further discovery was granted.

On September 27, 2004, Judge Leon denied defendants' motion to dismiss the plaintiffs' individual disparate treatment claims, though granting defendants' motion for summary judgment on the "pattern or practice" claims and partially granting the motion to dismiss (especially with respect to individually-named defendants). In that memorandum opinion, the Court specifically noted that the record was not yet fully developed on the circumstances under which plaintiffs were not advanced to partnership. <u>Murphy v. PricewaterhouseCoopers, LLP</u>, 357 F. Supp. 2d 230, 249 (D.D.C. 2004).

---

[2] Plaintiff's motion, if granted, would not have resulted in a liability finding in his favor but would have established that PwC had (as a matter of law) adopted a policy of discriminating against older employees seeking partnership, and would have shifted the burden of proof to PwC to establish that it did not discriminate against Murphy in particular. <u>See</u> <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324 (1977). The Court denied Plaintiff's motion, as well as PwC's motion for summary judgment on Murphy's individual non-promotion claims, leaving for trial the issue of whether age motivated his non-admission.

By this point, discovery on the individual claims was finally set to resume, and there was no deadline in place for its completion. In a November 4, 2004 status conference with this Court, defendant stated that it would again be moving for summary judgment, this time on Plaintiff's individual non-promotion claims, but promised that the motion was "not going to be based in any way on the qualifications or performance of either of the Plaintiffs or of any other PwC employees." [Nov. 4 conference at 38.] Therefore, defense counsel argued that discovery on comparative qualifications for partnership (i.e., obtaining records and employment information about other employees either promoted into or denied partnership) should at the very least be stayed. Defense counsel claimed that Plaintiffs would not be prejudiced by any delay attendant upon such a stay. [Id. at 39-40.] This Court seemed to agree, inquiring of Plaintiff's counsel during the conference whether the outstanding discovery requests "might be deemed premature, since we don't know at this point what argument might be made in any motion for summary judgment."

After the hearing, on November 22, 2004, the Court issued the Order upon which defendant now relies to argue that virtually all of Plaintiff's current discovery is barred. The Court noted that "Plaintiffs have failed to demonstrate that further discovery is warranted," apparently because the Court believed that there was no basis to conclude that "the discovery had to date was incomplete." [November 22, 2004 Order at 2] The Court elaborated:

> Plaintiff's have not shown that they need additional discovery in order to file their opposition to the dispositive motion which Defendants will file in January 2005; accordingly, further discovery, even if such discovery were otherwise warranted, is appropriately stayed pending the determination of the dispositive motion.

[Id.] Read in context, it is plain that the Court was persuaded by PwC's assurance that it could move for summary judgment without the necessity of further discovery, and that the Court was

8

not barring future discovery should summary judgment be denied.  Indeed, by that point PwC had provided <u>no</u> discovery on damages, on other complaints of discrimination, or on the qualifications of other employees who had been promoted into the partnership -- even within Murphy's small unit (RAS) -- information that is vital to any individual disparate treatment claim.  Since PwC had assured that its Motion would not implicate these issues, the Court denied any further discovery pending resolution of that anticipated motion.

On February 5, 2005, defendant filed its long-awaited motion for summary judgment.  On August 30, 2005, Judge Leon denied it.  At that point, the stay on discovery in Case 1 was no longer justified.

Earlier that year Murphy had filed civil action 05-1054 (Case 2), and Judge Leon scheduled a status conference to discuss the next steps for both Cases 1 and 2.  The parties met with the Court on October 18, 2005.  During that conference, counsel for PwC acknowledged that "damages discovery was deferred in August of 2003 and all discovery was <u>stayed</u> in November of 2004.  And I would think in the normal course we would go back to Magistrate Judge Robinson to pick up and develop a discovery plan for the rest of the case."  [Oct. 18, 2005 conference at 9 (emphasis supplied)]  Judge Leon suggested that the parties work out a discovery plan applicable for both cases, and another status conference was scheduled for December 8, 2005.

Prior to that status conference, the parties agreed that discovery taken in each case would be applicable to the other and that the protective order in place for Case 1 would be in effect for Case 2.  They also agreed that discovery would not be bifurcated between liability and damages. In the December 8 conference, Judge Leon denied defendant's request formally to consolidate the cases at that time (as there might be valid reasons to try them separately), but the cases were

joined provisionally for the completion of discovery.  In a January 9, 2006 Order, the parties were instructed that all factual discovery should be completed in 210 days from December 8, 2005 (i.e., July 6, 2006).

Plaintiff served Case 1 and Case 2 discovery requests on December 8, 2005 by hand, meaning that defendant's responses were due on January 7, 2006.  Defense counsel requested an extension of time to respond, and Plaintiff agreed so long as any objections would by provided by January 20.  Defendant did in fact object to the temporal and geographic scope of some of those requests [see Tab 8 to this filing, Jan. 20, 2006 e-mail from E. Nelson to R. Salzman], but PwC did not try to argue that this Court's November 2004 ruling barred further discovery.  The parties met on January 31 for more than four hours to try to resolve objections over the particular requests with limited success.  But there again, PwC did not suggest that the requested discovery was somehow precluded by this Court's earlier rulings.  On February 23, 2006, however, Defendant delivered 49 pages of objections, and claimed that most of the discovery Plaintiff sought was barred by this Court's November 22, 2004 ruling in Case 1.  [See Tab 1]

As of now, PwC has answered no interrogatories and has produced only selected documents relating to the owner/employee issue, and portions of two personnel files.  In short, defendant has successfully delayed answering Plaintiff's discovery, but there is no tenable basis for its continuing refusal to fully engage in the discovery process.  PwC's bid to avoid a trial in Case 1 has failed, and fact discovery remains open in both cases until July 6, 2006.  All of the requests Plaintiff has proffered seek relevant information, and full responses should be produced. We now turn to the particular requests at issue in each case.

### III.  **CASE 1 DISCOVERY**

Most of the discovery that still remains in Case 1 can be grouped into a few main categories: damages, comparators and the remaining information about Plaintiff's qualifications, and the owner-employee issue.

### A.  **Plaintiff is Entitled to Discovery on Damages**

Plaintiff seeks discovery relevant to damages in *Interrogatories 1, 3,* & 4 and *Document Requests 3, 18, 20, 21,* & *29-31.*  At PwC's request, damages discovery was <u>deferred</u> in Case 1, pending decisions on the dispositive motions.  Defendant now inexplicably argues that the Court's November 22, 2004 order bars <u>all</u> damages discovery.  Defendant is attempting a flim-flam.

*Interrogatory 1* and *Document Request 3* seek information on the total annual compensation for all <u>Financial Services</u> employees admitted to partnership between January 1, 1998 and December 31, 2001.  This is the relevant pool of comparators, as Plaintiff worked within the Financial Services practice, and he seeks this information only about co-professionals who were promoted into partnership status during a relevant time frame (i.e., within two years of the first non-promotion claim at issue).  We believe this pool is fewer than 75 persons. Defendant proffers no justifiable basis to withhold this information, and it should be produced.

*Interrogatory 3* and *Document Request 20* seek information about how PwC determines partner compensation annually.  While defendant says it will produce some documents from which responsive information may be derived or ascertained for fiscal year 2000 and 2001, defendant apparently will not produce the requested studies of partner compensation or documents relating to consideration by PwC management of partner compensation policies. Plaintiff is entitled to these responsive materials as well.  Similarly, *Document Request 21* seeks

documents relating the process for determining retirement benefits, including studies and review of the policies by PwC management.  Here defendant refuses to provide any responsive documents.  Plaintiff is entitled to explore information about how the firm determines partner compensation and retirement benefits, and the firm's self-examination of these policies.  These requests are relevant for damages purposes as well as the "owner-employee" issue (discussed below).

   *Interrogatory 4* and *Document Request 18* seek information about the benefits afforded partners who retired between January 1, 1998 and December 31, 2001 and the method of calculating those benefits.  Defendant states that it will produce information about the benefits plaintiff would have been entitled to had he been admitted on July 1, 2000 or 2001 and then immediately retired, or else defendant will produce business records from which such information may be derived or ascertained.  This response is insufficient.  Plaintiff need not adopt defendant's theory that he would have been immediately retired upon becoming a partner after he turned 60; rather, defendant is required to produce the information sought by plaintiff – the actual benefits afforded those partners who retired in the period in question.  Plaintiff is entitled to explore this area as well as perform his own calculations.  He is not required to "take defendant's word for it" regarding the benefits he would have received, and he is entitled to test defendant's assertions on this subject.  <u>Sanchez v. U.S Airways Inc.</u>, 202 F.R.D. 131, 135 (E.D. Pa. 2001) ("it is not for a party to determine, by unilateral review of a document, whether information is relevant to the case.").  PwC should produce all relevant information, not simply a few hand-picked records of its choosing.

   In *Document Requests 30 & 31*, plaintiff seeks PwC's partnership tax returns and copies of financial statements for 2003-2005.  These materials are relevant for the purposes of punitive

damages (and may also contain information relevant to the issue of liability or the owner-employee issue). Under the District of Columbia Human Rights Act, the Plaintiff may present evidence of the defendant's financial capacity for the jury to consider in its analysis of a punitive award [see Daka v. McCrae, 839 A.2d 682, 694 (D.C. 2003)], and hence the requested discovery is undoubtedly relevant. The scope is narrow and gathering these materials will not be an unduly burdensome exercise.

In short, PwC offers no basis to further delay the production of damages information. All of the requested information should be promptly produced.

## B.    Plaintiff is Entitled to Discovery on Comparators

In Aka v. Washington Hospital Center, 156 F.3d 1284, 1298 (D.C. Cir. 1998), the D.C. Circuit, sitting en banc, recognized that comparative information about how other employees are treated in the workplace is of central importance to proving unlawful discrimination. In particular, when attempting to prove that a denial of promotion or hiring was the result of unlawful bias, the plaintiff must be afforded the opportunity to show that he was better qualified than those who have been hired into the position:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate -- something that employers do not usually do, unless some other strong consideration, such as discrimination, enters the picture.

Id. at 1294; see also Ash v. Tyson Food Inc., ___ U.S. ___, 163 L. Ed. 2d 1053 (2006) (per curiam) citing Aka and rejecting the argument that the qualifications of the Plaintiff must be so superior as to "slap you in the face" to be probative of discrimination).

Since at trial, Plaintiff is permitted to try to prove that his qualifications were superior to younger employees promoted past him into the partnership, discovery requests targeting such

information are plainly appropriate.  See, e.g., Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.D.C. 2002) (Facciola, J) ("[I]n Title VII cases, plaintiffs have been permitted a very broad scope of discovery," and "it is well established that statistical data and comparative information concerning an employer's treatment of minorities is relevant evidence in an individual discrimination claim against that employer.").

### 1.  Plaintiff's Requests Are Relevant and Reasonably Tailored

In *Document Requests 2, 4* and *9-13*, plaintiff seeks information relating to others' candidacy for partnership, including soundings (communications regarding a prospect's candidacy), recommendations, and votes regarding a candidate at various levels in the organization.  *Document Request 2* asks for all documents relating to the candidacy of any Financial Services employee admitted to partnership between January 1, 1998 and December 31, 2001, including soundings, recommendations, and votes.  *Document Request 4* seeks this same information for all Financial Services employees sponsored for partnership, overlapping with *Document Request 2* but also encompassing those employees proposed who were ultimately rejected.  *Document Request 9* seeks all documents, for that same three-year period, relating to the proposal for partnership of any employee aged 50 or over.

This material may include direct evidence, such as comments about age of an applicant; in addition, it will provide comparative qualifications about other candidates as well as information about defendant's promotional process.  Similarly, PwC's primary argument for summary judgment on the 2000 claim was that Plaintiff did not sufficiently express interest in partnership; these materials relate to defendant's practice of pre-selecting and coaching candidates for partnership from above, rather than employees initiating their own candidacy. These requests are unquestionably relevant and should be fully answered.

*Document Request 11* seeks all records and charts kept by RAS head Bob Bench, comparing assignments, hours, revenue, or performance of RAS staff, and *Document Request 12* seeks similar documents kept by Robert Moritz, Tim Ryan, John Fletcher, or Rick Richardson. These individuals were all in plaintiff's chain of command, and this information is relevant for comparing plaintiff's and others' performance. If defendant intends to argue that other professionals promoted to partner out-performed Murphy in areas such as these, then Plaintiff is certainly permitted to obtain contemporaneous information about these factors. Defendant should respond in full.

*Document Request 13* seeks all minutes, notices, and related documents for the U.S. Board of Partners and Principals, the Board's Committees on Admissions and on Partner Affairs, and similar entities within PwC. These records likely contain contemporaneous information about the qualifications that the Board was seeking in partner candidates, and may also contain direct evidence regarding bias against older candidates. These entities did not meet often, and plaintiff's narrow temporal scope renders these requests reasonable and not overbroad. There is no persuasive basis to deny Plaintiff this information, which is directly relevant to his claims. Defendant should respond in full.

In *Document Request 1*, plaintiff also seeks the personnel files of Financial Service employees admitted to partnership between January 1, 1998 and December 31, 2001. These files will contain relevant historical data on those employees who PwC have deemed worthy of partnership, such as how long the employee had been at PwC prior to admission, whether the candidate held leadership positions on projects or not, their billable hours, information about revenue generation, types of assignments, and performance reviews. These individuals may also be potential witnesses and the information may lead to the discovery of additional witnesses in

the case. The requested information will enable a comparison between plaintiff and other partnership candidates -- a comparison that is central to the case so long as PwC continues to argue that its failure to consider Murphy for partnership was based on his lack of qualifications rather than on a partnership agreement which on its face precludes anyone over age 60 from remaining as a partner. Plaintiff has the right to this information and it should be produced.

*Interrogatory 14* asks defendant for any factual support for the argument it raised in its summary judgment motion, that a set number of partnership slots are allocated to particular business units. Since defendant has injected this issue into the case, discovery on it is clearly appropriate. Here again, PwC incorrectly argues that this Court barred such discovery by its November 22, 2004 Order.

### 2. Geographic/ organizational scope

Defendant seemingly concedes that comparator information is relevant but contends that the proper geographic/organizational scope for discovery is the small RAS unit where plaintiff worked and no more. This argument is faulty.

The record generated in this case so far reveals that partnership consideration is a top down process, and that it begins when the leadership within the practice areas (here, the larger Financial Services practice and its sub-units Banking and then RAS) identify the candidates that they would like to consider for admission. For example, Timothy Ryan, who in 2001 headed the Banking Practice, explained at a meeting in September 2003 how the partnership track works. He described that twice a year he solicited the Banking Practice partners for their recommendations about which employees should be promoted to partner within the next few years. Ryan then used these recommendations in creating and maintaining a list from which each summer he would select candidates, typically 5 to 8 employees, whom he would

recommend for partnership effective the following July 1. The prospective candidate then would be informed, and asked to assist a sponsoring partner in completing a partnership proposal form. [Summary Judgment Opposition Ex. 1, ¶ 18; Ex. 13, 3rd page]. The sponsoring partner would then take the lead role in lobbying for the candidate's admission. As Ryan explained, "one of the most important things is having a sponsoring partner who is going to pound the table for you." [Id.]

Ryan's boss, FSI practice head Robert Moritz, also explained that the FSI leadership reviews the anticipated need for partners, considering factors such as the firm's business prospects, anticipated partner retirements, and projected partner income. Moritz then is told how many FSI Practice partnership candidates he may recommend for partner admission. So far as this record shows, he may select these candidates from anywhere within the FSI Practice, including RAS. [SJO Ex. 13, 3rd page].

While the partnership consideration process begins in the practice areas, it by no means ends there. Under Section 5.6(c) of the partnership agreement, decisions to admit or deny individuals to the partnership are ultimately the province of the U.S. Board of Partners and Principals. The "sounding" process, in which partners give feedback on the candidates for admission, moves up the chain from Banking, to Financial Services and ultimately to a vote at the governing Board of Partners and Principals.

There is absolutely no support for defendant's argument that partnership decisions are made solely at the lowest level -- here within RAS. Indeed, as the Supreme Court explained in describing the process used to deny Ann Hopkins partnership because of her sex:

> At Price Waterhouse, a nationwide professional accounting partnership, a senior manager becomes a candidate for partnership when the partners in her local office submit her name as a candidate. **All of the other partners**

> **in the firm are then invited to submit written comments on each candidate. . . .**

Price Waterhouse v. Hopkins, 490 U.S. 228, 233 (1989) (emphasis added).  Moreover, as noted above, Plaintiff specifically propounded an interrogatory asking defendant to describe all facts that would support an argument that Murphy's competition for partnership slots was limited to members of RAS, but PwC refused to respond.  [Tab 1, Response to *Interrogatory 14*.]

    PwC's objection to the organizational scope of Plaintiff's discovery requests is particularly feeble, because, on this record Plaintiff could have sought "firm-wide" discovery.  In light of the uncontested fact that no employee age 60 or older has ever been admitted to the partnership, the existence of the mandatory retirement policy set by PwC's governing Board, and the comments by high-level partners regarding their interest in younger candidates, there is sufficient evidence of a culture of bias against older workers in the partner consideration process at PwC to justify firm-wide discovery.  As Judge Facciola explained in rejecting a similar argument for narrowing discovery requests:

> I cannot accept the defendant's argument. While other decisions by the same decision-maker may establish discriminatory intent and are, therefore, admissible as prior bad acts under Fed. R. Evid. 404(a), it does not follow that decisions made by any other decision-maker are not, ipso facto, discoverable. An agency or business organization can act only through its agents and employees. To permit discovery only of a single decision-maker's prior decisions so atomizes the organization that it ignores the possibility that **isolated decisions are the result of an organizational culture or ethos that encourages or condones discriminatory behavior**. What may superficially appear to be decisions made by individual decision-makers may, when linked together, form what the courts call a "pattern or practice" of treating people of a certain protected class in a certain way. Thus, to say, that only the acts of the decision-maker who made the decision in plaintiff's case are discoverable takes as established what has never been proven, that this decision-maker acted in splendid isolation without the possibility of being influenced by anyone else in the organization. That may well be true, but to assume it is gratuitous. To require plaintiff to establish a "pattern or practice" of similarly motivated acts as a condition of getting information about other

decision-makers requires, once again, that plaintiff prove her case as a condition of getting discovery.

Waters v. United States Capitol Police Bd., 216 F.R.D. 153, 158 (D.D.C. 2003) (emphasis added);   See also Hollander v. American Cyanamid Co., 895 F.2d 80, 84-85 (2d Cir. 1990) ("Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees," that was relevant to an individual case).  Indeed, Judge Leon has already held that "plaintiffs may still use evidence of a systematic or general discrimination in establishing their *individual* discrimination claims."  Murphy, 357 F. Supp. 2d at 247 (emphasis supplied).  Because Plaintiff could justify seeking firm-wide discovery on this record, his more narrowly tailored requests for information within only the Financial Services Practice (one of several PwC practices) are certainly reasonable. [3]

Of course, at this stage plaintiff is not required to establish that the discovery he seeks will ultimately be probative of his claims, since "a party is entitled to discover information even when such evidence will be inadmissible at trial, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); see, e.g., Planells v. Howard University, 1983 U.S. Dist. LEXIS 19786, *1-3 (D.D.C. 1983) (Penn, J.).  It would certainly be relevant if younger, less qualified employees are being promoted to partner, while other deserving older employees are bypassed for promotion.

---

[3] In fact, plaintiff restricted the scope of *Document Requests 11* and *12* to RAS, seeking documents which were created containing comparative information about assignments, revenues, hours, and performance by RAS professional staff members.  But even using defendant's own parameters, defendant still refuses to produce responses.

Finally, like his request for comparative data about the qualifications of other FSI employees considered for partnership, Murphy's requests for information about other complaints of age discrimination are also appropriate.  Discovery of such complaints is relevant as prior bad acts admissible under Fed. R. Evid. 404(b), and this discovery is calculated to lead to admissible evidence by, for example, identifying other actors -- complainants, witnesses, and accused -- in alleged age-bias contexts.  Thus defendant should respond to *Document Requests 15, 16* and *29*, which seek information about other age discrimination complaints.  Plaintiff has tailored his discovery requests to the appropriate geographic/organizational scope, and defendant should respond to these requests in full.

**3.     All Information About Plaintiff's Qualifications Should Be Produced**

Defendant also refuses to produce information directly relevant to Plaintiff's own qualifications for partnership, as well as any communications with or about him concerning partnership. [*Document Requests 5-8.*]  Indeed, defendant even refuses to answer the simple question of why Plaintiff was not admitted to partnership.  See *Interrogatory 13*.  All of defendant's objections to producing fully responsive information are specious.

*Interrogatory 13* asked PwC to specify each reason why Murphy was not sponsored for partnership between 1998 and 2001.  Since the claims in Case 1 relate directly to those years, this interrogatory is undoubtedly relevant.  PwC refuses to answer, however, citing the Court's November 22, 2004 Order.  But PwC has never explained on the record why Murphy was not sponsored, and this Court certainly did not intend to immunize defendant from ever providing such basic information.  The interrogatory should be fully answered.

*Document Request 5* seeks the prospectus attached to Robert Bench's April 9, 1999 e-mail recommending plaintiff's promotion to Managing Director.  Defendant merely states that this discovery is barred.  This long-requested document should be produced.

*Document Request 6* seeks all documents showing that any PwC partner considered and/or talked with plaintiff about partnership.  *Document Request 7* seeks all documents concerning plaintiff's performance since January 1, 1998, while *Document Request 8* seeks all documents that would be pertinent to consideration of plaintiff's being admitted to partnership.  Documents relating to plaintiff's performance and his potential candidacy are at the core of this action and should be produced.  Remarkably, PwC objects to this request as somehow not being calculated to lead to the discovery of admissible evidence.  This is absurd.

Plaintiff is entitled to information PwC possesses about his performance, promotion, eligibility for partnership, and qualifications.  As discussed above, plaintiff's own qualifications are an essential part of proving his case.  While earlier in the case, defendant eventually produced plaintiff's personnel file, plaintiff is entitled to discovery beyond this.  (Indeed, this obligation goes back to the original February 28, 2003 scheduling order in the case, ordering defendant to produce "all personnel files <u>and other records</u> relating to the employment of each of the plaintiffs" (emphasis added).)   Defendant should respond in full to these requests.

C.    <u>Plaintiff is Entitled to Discovery on the "Owner/Employee" Issue</u>

A central factual issue in this case is whether PwC partners are treated more like employees in terms of being subjected to control by the firm, or whether they actually have true ownership of the firm.  <u>See</u> <u>Clackamas Gastroenterology Associates v. Wells</u>, 538 U.S. 440, 451 (2003) ("[t]he mere fact that a person has a particular title – such as partner, director, or vice president – should not necessarily be used to determine whether he or she is an employee or a

proprietor. . . .    Rather . . . the answer to whether a shareholder-director is an employee depends on 'all of the incidents of the relationship.' ").  This is a very fact-intensive issue.  In <u>Clackamas</u>, the Supreme Court stated that numerous aspects of the entire work environment are relevant to determining whether someone is a true owner or an employee, including:

> (1) Whether the organization could hire or fire the individual or set the rules and regulations of the individual's work.
> (2) Whether and, if so, to what extent the organization supervised the individual's work.
> (3) Whether the individual reported to someone higher in the organization.
> (4) Whether and, if so, to what extent the individual was able to influence the organization.
> (5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts.
> (6) Whether the individual shared in the profits, losses, and liabilities of the organization.

<u>Clackamas</u>, 538 U.S. at 449-451.

This issue is significant in the present case because of PwC's mandatory retirement age for partners, who must retire at age 60.  True owners are not protected by Federal employment laws, but employees (regardless of their designation) are protected.  The outcome of the owner/employee issue has implications for the kind and amount of relief plaintiff would be entitled to if he prevails at trial, because PwC has steadfastly maintained that under the policy, Murphy would have been immediately forced to retire had he been admitted into the partnership.  But if junior partners are more like employees than owners under <u>Clackamas</u>, the mandatory retirement policy is unlawful and could not have been used to force Murphy's departure from the firm.

At the October 18, 2005 status conference, PwC's counsel said that defendant intended to file yet another motion for summary judgment (in both cases) seeking judgment on the "owner/ employee" issue.  At that conference, counsel told the Court that if plaintiff wants "more

discovery on that issue, let's have this discovery and let's have this issue resolved." [Oct. 18, 2005 conference at 11.]  Then on December 8, 2005, counsel for defendant "urged" plaintiff to "promptly" serve discovery requests on this issue as soon as possible.  [Dec. 8 hearing at 8.] Plaintiff complied and served his discovery requests in person that same day.

In Case 1, Plaintiff served ten interrogatories and seven document requests relevant to this issue.  For the interrogatories (nos. 2-3 and 5-12) defendant refused to answer, but said that it would provide "business records from which information responsive to this interrogatory may be derived . . . " [See, e.g., Tab 1, p.3].  On March 13, 2006, having been informed that Plaintiff was about to file this Motion, defendant provided roughly 900 pages of documents that are apparently intended to be responsive to the interrogatories.  Defendant did not, however, identify which interrogatories or requests the documents were purportedly responding to, nor do any of the documents appear to fully and fairly answer any of the particular interrogatories.  This response is clearly deficient, as Fed. R. Civ. Proc. 33(d) requires that when a party answers an interrogatory by reference to business records, the party must "specify the records from which the answer may be derived or ascertained" and "a specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer may be ascertained."

With respect to Document Requests 19, 20 and 22 (which seek documents pertaining to the evaluation of partner performance, setting of partner compensation, and policies relating to the procedures partners must go through to engage clients), defendant has provided some responsive materials.  But it is clear from the documents (and from defendant's responses to the requests) that PwC has only provided selected documents, but not all responsive documents.

Plaintiff is not required to accept only the documents that defendant would like to share; he is entitled to all responsive documents.

Defendant flatly refuses to produce documents (such as minutes, notices, etc.) in response to *Document Request 13*, which seeks documents relating to the U.S. Board of Partners and Principals, the Board's Committees on Admissions and on Partner Affairs, and similar entities within PwC. These documents are relevant for a number of reasons, but most pointedly for the "owner/employee" issue, as they directly reflect how the firm runs itself, including its partnership admission policies and decisions.[4] These organizational entities met a handful of times each year, so this request is far from unduly burdensome. During the parties' discovery conference, counsel for defendant admitted that he had previously examined all meeting minutes, thus demonstrating that these documents are readily accessible. Defendant should produce these materials.

Defendant also refuses to respond to *Document Request 16* and produce communications about the mandatory retirement age for partners or any other age-based employment practice, and defendant further refuses to respond to *Document Request 17* and produce documents relating to scrutiny of PwC's procedures for selecting employees for partnership. These requests go to basic elements of the case -- who is selected for partnership and what role age plays in that process. The requests are narrow in temporal scope and are well calculated to lead to the discovery of admissible evidence. Defendant should be ordered to produce this information.

*Document Request 14* asks for records of any involuntary withdrawals from partnership. The Supreme Court recognized that the issue of whether partners can be forced out of the firm is pertinent to the "owner/employee" issue. Clackamas, 538 U.S. at 449-451. During the parties'

---

[4] Section 5.6(c) of the Partner and Principals Agreement vests the U.S. Board of Partners and Principals with the sole authority to approve the admission of persons to the PwC partnership.

discussion on January 31, defense counsel indicated they would respond.  Since then, defendant

had a change of heart.  This information is relevant and should be produced.

> **D.**    **Plaintiff is Entitled to Discovery on his Internal Complaints about the**
> **Independence Investigation**

Plaintiff has long requested documents relating to the defendant's investigation of the

complaints Murphy filed within PwC -- such as his internal complaints to PwC's Office of Ethics

and Business Conduct, the Human Resources Director, and the Chief Diversity Officer --

attempting to call the firm's attention to its discriminatory employment practices. [*Document*

*Requests 23-27.*]  Defendant produced Murphy's submissions, but has refused to produce any

documents concerning PwC's consideration of these issues.  This refusal is even more glaring

since Defendant's counsel questioned Murphy at length about these internally made allegations.

Moreover, the Court's initial February 28, 2003, Scheduling Order required PwC to produce

"records relating to the employment of each of the plaintiffs," an order with which PwC has yet

fully to comply.

> **IV.**    **CASE 2 DISCOVERY**

Case 2 is a brand-new case focusing on Murphy's partnership denial in 2004 (Case 1

concerns the denials in 2000 and 2001).  Plaintiff filed this action on May 26, 2005, and the first

status conference was held on October 18, 2005.  Plaintiff's discovery requests are relevant,

appropriately tailored, and designed to get at the issues in this case.  Moreover, Case 2 is a

potential collective action, [5] and certain discovery requests are targeted at developing this issue

as well.  As described above, Judge Leon instructed the parties to complete fact discovery before

---

[5] The Age Discrimination in Employment Act permits similarly situated employees to join in challenging a policy or practice of discrimination, see 29 U.S.C. § 216, as incorporated by 29 U.S.C. § 626(b), and Plaintiff has reserved the right to pursue a collective action in Case 2 (the Court granted summary judgment on the collective action issue in Case 1 due to exhaustion of administrative remedies issues that have been cured in Case 2).

the status conference set for July 27, 2006. However, defendant has refused altogether to respond to a number of discovery requests (*Interrogatories 5, 17, 18, & 21* and *Document Requests 4, 15, 16, 20, 24, 29, 32, 44, 46, 46-53 & 55-56*) and balks at providing fully responsive answers to other requests (*Interrogatories 4, 6, 19 & 20* and *Document Requests 2, 3, 5, 9, 10, 11, 17, 18, 19, 25, 27, 28, 30, 31, 34 & 54*). For others, defendant has promised to respond but not yet done so (see response to Interrogatory 1). Defendant's objections are without merit and, combined with defendant's dilatory pace for producing whatever it has agreed to produce, serve only to slow the discovery process.

Defendant bizarrely asserts that the November 22, 2004 order bars discovery in Case 2, a case that had not even been filed yet. It is an untenable assertion for defendant to claim that a ruling in a separate case could bar discovery in any future action, and Plaintiff certainly never agreed to any such restraints in discovery in Case 2.

For other discovery requests, defendant merely responds that, subject to its stated objections, it will "provide business records from which information responsive to this interrogatory may be derived or ascertained." (*Interrogatories 3 & 7-16* and *Document Requests 6, 7, 8, 26, 30, 33 & 35-42*.) Plaintiff has pressed PwC to specify when it will complete production of documents that it intends to produce, but defendant has declined to do so.

### A.     Plaintiff is Entitled to Information About Comparators and to Information Relevant to a Potential Collective Action.

Plaintiff has served a number of discovery requests dealing with comparators: *Interrogatories 4, 5, 17, 18 & 20* and *Document Requests 2-11, 17-20 & 26-28*. For all of the reasons discussed at pp. 14-20, <u>supra</u>, these requests are relevant and should be fully answered.

Moreover, there is another reason exclusive to Case 2 that such discovery is relevant. Plaintiff has reserved the right to pursue this claim as a collective action under 29 U.S.C. § 216,

as incorporated by 29 U.S.C. § 626(b), in which case obtaining information about "similarly situated" employees is appropriate.  See, e.g., Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989) (discovery of names and addresses of potential group of collective action was clearly relevant and appropriate).

Here, it appears that high-performing older employees are moved into the "Managing Director" position, as a kind of second-best option to partnership.  As noted above, PwC describes a "Managing Director" as

> A highly experienced professional who functions in most respects, as a partner, has the appropriate experience credentials of a partner and possesses established skills in marketing, practice building, technology, and staff development.

[SJO Ex. 17]

Not surprisingly, Managing Directors generally earn considerably less in salary and benefits than do partners, and very few employees at PwC above 50, and none aged 60, have ever been promoted into the partnership.  If, as seems evident, PwC has established second class citizenship for outstanding professionals who are too old for partnership, then this discovery may assist in establishing a pattern or practice of age discrimination and in defining the contours of the "similarly situated" group appropriate for a collective action.  Discovery on this issue is appropriate, and *Interrogatories 5 & 17* and *Document Request 17 & 20* seek information relevant to the collective action analysis.

Additionally, the temporal scope of plaintiff's requests is reasonable.  The non-promotion decision at issue here was in 2004.  In almost all instances, plaintiff is requesting comparator information starting from January 1, 2003 – merely one year prior.  And here, discovery about prior years is of particular relevance because of management's practice of establishing a "pipeline" of potential candidates for several years before a formal proposal is made. In any

event, discovery related to comparators routinely encompasses several years prior to the events at issue, and defendant's objections as to time frame are without merit.  Defendant should produce information for the requested time period.

>    **B.**     **Plaintiff is Entitled to Discovery on Damages.**

Plaintiff has served a number of discovery requests related to damages:  *Interrogatories 5-7, 19 & 20* and *Document Requests 4, 27-29, 31, 32, 34, 43-45, 51 & 52*.  The parties are likely to disagree vehemently about the nature and amount of relief Plaintiff can obtain should he prevail, and Plaintiff is entitled to information that lets him explore appropriate relief.  Certain of these requests are also relevant to the potential collective action claims.  For all of the reasons discussed in pp. 11-13, <u>supra</u>, Defendant should fully respond to these requests for damages discovery.

>    **C.**     **Plaintiff is Entitled to Discovery Related to His Own Performance and Potential Eligibility for Partnership**

Plaintiff is entitled to discovery relating to his performance, promotion, eligibility for partnership, and qualifications.  [*Interrogatory 2* and *Document Requests 12-16 & 46-50.*] Plaintiff's own qualifications are an essential part of proving his case, and defendant should fully respond to these requests.

*Interrogatory 1* simply asks defendant to explain in detail why Plaintiff Murphy was not sponsored for partnership from January 2003 to the present (a time frame narrowly tailored to the claims in Case 2).  Defendant said that it would answer this interrogatory, but as of today (more than two months after responses were initially due) no answer to this basic question has been provided.

*Interrogatory 2* seeks information about everyone involved in the decision not to sponsor plaintiff for partner.  Defendant merely responds that no partner ever sponsored plaintiff and "no

collective decision" not to sponsor him was made.  This response is insufficient.  Plaintiff is

entitled to a full explanation of why PwC has overlooked him for partnership, and the identity of

those responsible for plaintiff's non-sponsorship.

*Document Request 12* asks for all documents showing that any PwC partner discussed

with plaintiff his prospects for partnership. *Document Request 13* seeks all documents showing

that any PwC partner considered plaintiff for partnership.  Defendant objects to the extent that

this is barred by the November 22, 2004 order and says that subject to this objection, it will (at

some unspecified time) update and supplement its production from Case 1.  *Document Request*

*14* seeks all documents from January 1, 2003 to the present that would be pertinent to plaintiff's

potential candidacy for partnership.  Defendant generically objects to this as vague and unduly

burdensome but says that, subject to these objections, it will respond exclusive of anything

produced in Case 1.  However, plaintiff is entitled to a full response without any material being

held back subject to objections.  Defendant should respond in full and confirm that it has not

withheld responsive documents.

*Document Request 15* asks for all documents since January 1, 2003 reflecting any alleged

performance and/or conduct problems relating to plaintiff.  Defendant objects to this request as

vague.  However, this request is not vague, but more importantly, defendant had ample

opportunity during the four-hour discovery meeting on January 31 to seek clarification. If

defendant contends that plaintiff has demonstrated any performance problems or any conduct

problems, defendant should produce all documents relating to any such problem.  Defendant

should be ordered to respond in full.

*Document Request 16* asks for the prospectus attached to Robert Bench's April 9, 1999 e-

mail recommending Plaintiff's promotion to Managing Director.  Defendant refuses to produce

this, and can come up with no other objection than claiming it is barred by the November 22, 2004 order.  Notwithstanding the fact that Plaintiff has been asking for this document since 2003, this document is relevant to Plaintiff's claim that older employees are promoted to Managing Director instead of partnership.  This document has direct information about Plaintiff's performance and his eligibility for promotion, and it should be produced.

*Document Requests 46-50* seek documents relating to Plaintiff's referral to PwC's Office of Ethics and Business Conduct, Chief Diversity Officer, and Director of Human Resources, in reference to the handling of the investigation into Plaintiff's internally submitted allegations of discrimination based on his age and on his having filed a complaint with the DC Office of Human Rights.  Defendant refuses to produce these materials.  As discussed above, defendant asked Plaintiff numerous questions during his Case 1 deposition about these issues, and also argued about them in its failed motion for summary judgment.  Relevant documents exist, and these requests are exceedingly narrow in scope and cannot be unduly burdensome.

      **D.**    **Plaintiff is Entitled to All Responsive Information on the Owner/Employee Issue.**

For all the reasons discussed at pp. 21-24, <u>supra</u>, Plaintiff is entitled to full discovery on the "owner/employee" issue.  *Interrogatories 3, 7-16 & 19* and *Document Requests 25, 26, 29-42 & 52* pertain to this issue.

      **E.**    <u>**Other Matters**</u>

*Document Request 45* seeks all documents relating to defendant's handling of plaintiff's allegations of age discrimination.  During the January 31, 2006 discovery meeting, plaintiff agreed that communications with attorneys could be exempted from this request, thereby avoiding the necessity for defendant to generate a privilege log.  Plaintiff expressly noted that this exemption did not apply to communications that were merely "funneled" through an

attorney – that is, communications that were simply copied to an attorney for the sole purpose of rendering the document privileged.  Plaintiff expanded on his request for illustrative purposes, to enumerate some individuals whose communication were of particular interest, but did not provide an exhaustive list.  [See Tab 9, January 31, 2006 e-mail from T. Kramer to E. Nelson.] Defendant's response indicates that it will provide documents relating to communications with the enumerated individuals, as if this were an exhaustive list.  Defendant should produce all additional responsive communications regarding the handling of plaintiff's discrimination complaint.

Document Request 51 seeks PwC's partnership tax returns for 2003-2005 and Document Request 52 seeks PwC's financial statements for 2003-2005 – both requests are routine and are directly relevant for punitive damages purposes.  These are not burdensome for defendant to produce, and they should be produced.

Interrogatory 21 is a standard request that defendant identify each person known or believed to have knowledge relating to facts set forth in defendant's Answer and to describe that knowledge.  Defendant refuses to answer, claiming that the parties' agreement to dispense with initial disclosures bars any inquiry such as this.  However, this agreement to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(a)(A) has to do with timing issues and non-duplication of resources – it does not bar any discovery requests that seek information similar to what would have been provided in initial disclosures.  Defendant's objection cannot be serious, and defendant should respond in full.

Document Request 24 requests personnel files for Robert Bench, Robert Moritz, and Tim Ryan.  These three individuals were all supervisors over plaintiff -- Bench in RAS, Ryan in Banking Services, and Moritz in Financial Services -- and they are witnesses in this case.

Accordingly, their involvement and history with the firm is relevant and discoverable.  Plaintiff's standard request for their personnel files is not objectionable and defendant should respond in full.

*Document Request 53* asks for all documents relating to any affirmative defense defendant may raise in this case.  Defendant objects to this standard request as "overbroad, premature and hypothetical."  However, defendant has already raised a number of affirmative defenses in its Answer to plaintiff's complaint, and plaintiff is entitled to explore these defenses during discovery.  Defendant should respond in full.

*Document Request 54* asks for all documents consulted or identified in connection with defendant's response to plaintiff's interrogatories.  Defendant objects, *inter alia*, to the extent that it seeks disclosure of attorney-client privileged material, material prepared in anticipation of litigation, or attorney work product.  Plaintiff requests that the Court order defendant to produce a privilege log in addition to whatever responsive documents defendant will produce.


V.    **CONCLUSION**

Judge Leon has ordered that all discovery in both of these action be completed by July 6, 2006.  The parties are already three months into the seven-month discovery period, and defendant has only produced a meager amount of materials and an ever-changing and ever-growing list of discovery objections.  For the foregoing reasons, defendant should be ordered to respond in full to Plaintiff's discovery requests for both Case 1 and Case 2 within ten days of the Court's resolution of this Motion.  An appropriate Order is attached.


    /s/   Richard A. Salzman                           .
Richard A. Salzman 422497
Douglas B. Huron  89326

Tammany M. Kramer  483146
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW   Suite 412
Washington, DC  20036
(202) 293-8090
fax:  (202) 293-7110

Plaintiff Schuler is a co-plaintiff in No. 02-982, challenging the partnership denials in 2000 and 2001 and has a separate lawsuit, No. 05-2355, challenging the 2004 and 2005 partnership denials.  Plaintiffs Murphy and Schuler are sharing discovery in these three cases, as recognized by the Scheduling Order entered in the three cases.  Plaintiff Schuler served his discovery requests after Plaintiff Murphy's discovery requests.  Schuler's requests were designed not to overlap plaintiff Murphy's, since all discovery is being shared.  Plaintiff Schuler has an interest in seeing that plaintiff Murphy's motion to compel is granted because much of the discovery material is likely to be pertinent to his claims.  Plaintiff Schuler joins in and endorses plaintiff Murphy's motion to compel.  Plaintiff Schuler expects to file a separate motion to compel which will address the refusal of defendant PwC to disclose any documents and answer any interrogatories.

   /s/    David L. Rose            .
David L. Rose
Terri N. Marcus
ROSE & ROSE

Attorneys for plaintiff Schuler

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
C. WESTBROOK MURPHY,                )
                                    )
                                    )
        Plaintiff                   )
                                    )    Civil Action Nos. 05-1054 (RJL/DAR)
    v.                              )                     02-982 (RJL/DAR)
                                    )
PRICEWATERHOUSECOOPERS, LLP,        )
                                    )
                                    )
        Defendant.                  )
_____ )

## PROPOSED ORDER

For the reasons set forth in Plaintiff's Motion to Compel and memorandum in support of that motion, Plaintiff Murphy's Motion to Compel is hereby granted.  Within ten (10) calendar days from entry of this Order, defendant shall provide full and complete responses to the following of Plaintiff's discovery requests.

For Case No. 02-982 ("Case 1"), defendant shall respond in full to *Interrogatories 1-14* and shall produce all responsive records for *Document Requests 1-22 and 29-31.*

For Case No. 05-1054 ("Case 2"), defendant shall respond in full to *Interrogatories 1-21* and shall produce all responsive records for *Document Requests 2-11, 15-20, 24-34 and 46-56.*

SO ORDERED

_____                 _____
Date                                UNITED STATES MAGISTRATE JUDGE