Tab
2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                              :
In the Matter of:            :
                              :
C. WESTBROOK MURPHY           :
and HAROLD SCHULER,           :
                              :
     Plaintiffs,             :
                              :
          vs.                 :   Civil Action No. 02-0982
                              :
PRICEWATERHOUSECOOPERS, L.L.P., :
et al.,                       :
                              :
     Defendants.             :
                              :   Washington, D.C.
- - - - - - - - - - - - - - - x   November 4, 2004


TRANSCRIPT OF DISCOVERY AND STATUS HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For the Plaintiff:          DAVID L. ROSE, ESQ.
                            DAVID M. WATCHTEL, ESQ.


For Defendants:             STEPHEN SHEINFELD, ESQ.
                            ERIC M. NELSON, ESQ.



Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
**M8759V/bf**

1          P R O C E E D I N G S

2          THE CLERK:  Civil Case Number 02-982, C.

3   Westbrook Murphy versus Harold Schuler.  For the Plaintiff

4   present in the Court is David Rose, also David Wachtel.

5   For the Defendant is Stephen Sheinfeld and Eric Nelson.

6   This is billed as a discovery, status and scheduling

7   conference.

8          THE MAGISTRATE JUDGE:  Now, again, good afternoon

9   to all of you.  It was, of course, the Court's hope that

10  after Judge Leon's determination of the dispositive motions

11  that the parties would be in agreement with respect to the

12  course of further discovery and that indeed the course of

13  further discovery would be relatively limited.  I have

14  reviewed the second supplemental joint report.  I have, of

15  course, reviewed Judge Leon's memorandum and order.  And

16  the parties obviously have widely disparate views with

17  respect to the scope of and timing issues with respect to

18  further discovery.

19          I am also aware that the Plaintiffs filed a

20  motion to alter or amend the memorandum order and opinion.

21  While I am generally familiar with the issues that are

22  raised in that motion, I'm certain that you all appreciate

23  that that motion is not before me.  To the extent that you

24  believe that the pendency of the motion is a circumstance

25  that this Court should take into account in determining

1  what further discovery, if any, is appropriate and when

2  such further discovery should be taken, I will certainly

3  hear your proffers and arguments in that relatively limited

4  context.

5        Because it is the Plaintiffs who are the, I will

6  say the proponents of the need for significant further

7  discovery, I will hear first from you, Mr. Rose or

8  Mr. Wachtel, then I will hear from you, Mr. Nelson or

9  Mr. Sheinfeld.

10       Now, good afternoon.

11       MR. ROSE:  Good afternoon.  I prefer to stand,

12  Your Honor.  I appreciate you're willing to let us sit down

13  but I've doing it so long this way, that --

14       THE MAGISTRATE JUDGE:  Well, you're certainly

15  welcome to stand.  Because I realize that all of you have

16  significant materials on the table in front of you, that it

17  may be easier for your to remain seated -- if you wish to

18  stand, you certainly may.

19       MR. ROSE:  Well.  Let me say, Your Honor, that

20  Judge Leon's ruling with respect to the sole issue -- we

21  agree that the sole issue left is the claims of the

22  individual Plaintiffs.  I think we agree that the

23  Plaintiffs may use evidence on pattern or practice to prove

24  their individual claims, but I think the biggest

25  disagreement is on the individual claims because much of

1   the evidence in the pattern or practice cases before the

2   Court, there are some intervening events that we think are

3   relevant and we are seeking discovery on events in 2004 for

4   the first _____ promotions and also there were a bunch

5   of persons named managing director, we think most of those

6   persons were older but we don't have the age, date of birth

7   information yet.  So.

8           THE MAGISTRATE JUDGE:  Before you address the

9   basis of your argument that further discovery is required

10  at this time, I believe it would aid the parties in what I

11  hope will be an ongoing effort to narrow the disputes

12  regarding discovery and it would also help the Court if you

13  would summarize the discovery which has already been

14  conducted to date.  That is, from the time the case was

15  filed, some two years ago.

16          MR. ROSE:  Mr. Wachtel can provide more detail,

17  but why don't I provide a stab, Your Honor.

18          THE MAGISTRATE JUDGE:  Very well.

19          MR. ROSE:  Let me say one thing in response to

20  your earlier comments about the pendency of the motion to

21  alter or amend.  We're not suggesting -- I know that

22  motions to alter or amend are rarely granted, and we're not

23  asking the Court to defer anything based on that.  We're

24  assuming the Judge is going to adhere to the substance, at

25  least, if not the -- if he makes a few changes in language,

5

1    at least the substance of his ruling.  So, I just want to

2    put that aside.

3           Before I get to the specific items, we wrote a

4    very long -- well, a detailed letter to Mr. Nelson, I think

5    it was Tuesday, and we recited everything that we thought

6    was a matter of priority.  We'd be glad to make that letter

7    a part of the record.  We asked for eight depositions and

8    we asked for a substantial amount of documentary material,

9    none of which, in our view, would be difficult for them to

10   produce.  Or costly, is what I mean.  And the updating

11   information that we asked for is very, very similar to

12   documents they've already produced.

13          They've produced documents showing the date of

14   hire and the date of birth of all the partners -- of all

15   the people that have become partners at PWC, all the people

16   that PWC has promoted from employee to partner.  And we

17   have 1,137 or something like that -- almost 1400, well over

18   1300; not one of them is 60 or over, almost the great

19   majority of them are under 40, and we think the statistics

20   that Judge Leon alluded to are very strong evidence, but we

21   also think the more recent events tend to confirm the same

22   thing, because we believe that people promoted in 2004 are

23   predominantly young, and the older employees have been

24   given a new title and perhaps would be given some more

25   money, it's called -- it's not a brand-new title, but it's

1  a new title for the recent past, called "managing

2  director," and that may or may not increase their pay but

3  it would be well, well, well below -- like $400,000.00

4  below the average pay for partners.

5          THE MAGISTRATE JUDGE:  Now, Mr. Rose, you

6  referred to updated information or current information with

7  respect to intervening events.  Are you speaking of the

8  supplementation of responses --

9          MR. ROSE:  Yes.

10          THE MAGISTRATE JUDGE:  -- that the Federal Rules

11  would contemplate even without any intervention --

12          MR. ROSE:  It would, Your Honor.

13          THE MAGISTRATE JUDGE:  -- of the Court, or are

14  you speaking of something else?

15          MR. ROSE:  No, it's the sort of thing that the

16  materials produced were not produced in the form of answers

17  to interrogatories or requests.  They weren't labeled that

18  way, but they are the sorts of things that are very much

19  like what happened before and therefore would fall within

20  that ambit.

21          THE MAGISTRATE JUDGE:  Very well, thank you.

22  You may continue.

23          MR. ROSE:  We have agreed, by the way, that

24  Plaintiffs should be able to take additional testimony of

25  the two Plaintiffs and we will arrange a time, either today

1   if we have time after this session, or shortly after that,

2   and we expect that that will be done by the end of this

3   month.  I think Mr. Nelson estimated a half-day for each

4   one.  I understand that's not a promise, but I think we

5   could certainly fit -- we're likely to be able to finish it

6   in one day and at most two days.  So the additional

7   discovery that the Defendants, and it's really PWC

8   primarily, has asked for will be produced promptly.

9          What we're asking for, as I say, except for the

10  depositions, is simply the production of documents they

11  already  have.  There is some cost of copying, there is, as

12  far as the updating information, that's kept on a computer,

13  so they have to use the same program and I think they

14  probably have the data.  It's the kind of data they are

15  likely to have on their payroll, but if it's not actually

16  on their payroll it's something like that.  Any event, it

17  should not be difficult for them to produce.

18          The other items we specified, they're quite

19  specific, they are generally -- the biggest category, Your

20  Honor, fits into the following category.  Judge Leon noted

21  that the record was not fully developed regarding the

22  particular circumstances under which the two Plaintiffs

23  were not advanced to partnership.  That's on page 32 of his

24  ruling.  He also had earlier noted that the parties may use

25  evidence of the pattern or practice -- I've already alluded

1    to that.

2         Most of what is new, Your Honor, is evidence

3    showing that our two Plaintiffs were better qualified, we

4    think, and certainly were as well qualified as those people

5    who actually got promoted.  Now, qualifications not just in

6    the traditional sense because it was clear that bringing in

7    business was a major consideration, as you might expect,

8    Your Honor, in a partnership.  Attracting new clients and

9    performing work that results in increased sales, if you

10   will.  Services -- both of them did very, very well for

11   professional employees in bringing in business.

12        THE MAGISTRATE JUDGE:  Before you move on, let me

13   ask you to backtrack for a moment to address two concerns

14   that you have not yet addressed.  The first concerns the

15   discovery that has been had to date.  I did want you, and I

16   will ask you, Mr. Nelson and Mr. Sheinfeld, to do the same

17   thing, and that is to summarize the discovery that has

18   already taken place.

19        Next, you referred to depositions of an

20   additional eight witnesses, both during your oral

21   presentation and in the joint report that the parties

22   submitted.  I cannot determine, based on what I've read in

23   the joint report or what you've said, who the eight

24   individuals are.  I don't mean names, which would likely be

25   meaningless to me at this point, but only some indication

1    of the positions that the individuals hold and what

2    relevant evidence you would expect to elicit from them.

3              MR. ROSE:  Your Honor, some of the witnesses are

4    present employees, other present employees of PWC, who we

5    believe will testify that they have been treated less

6    favorably -- these are long-term professional employees,

7    like the two named Plaintiffs, who will, we believe,

8    testify that they have been subject to some kinds of the

9    same discrimination based on age that Schuler and Murphy

10   have been subjected to as employees.

11             THE MAGISTRATE JUDGE:  And how many of the eight

12   witness --

13             MR. ROSE:  Four.

14             THE MAGISTRATE JUDGE:  -- fall into that

15   category?

16             MR. ROSE:  I believe it's four, Your Honor.

17   Half.

18             THE MAGISTRATE JUDGE:  And what is your proffer

19   with respect to the proximity of any non-promotion to the

20   timing of the Plaintiffs' allegations?

21             MR. ROSE:  These four are somewhat younger, but

22   they are certainly all overlapped in 2001 and 2002, I

23   believe, and some of them, I think, will testify that they

24   had similar -- they had not been considered for partnership

25   but they had similar events occurring as early as 2000.

1   And those are the years, critical years, for this case.

2           THE MAGISTRATE JUDGE:  What is your proffer with

3   respect to the positions that the four individuals held?

4           MR. ROSE:  The four -- three others, I'm sorry,

5   (inaudible) -- excuse me, Your Honor.

6           THE MAGISTRATE JUDGE:  You may take a moment and

7   confer.

8           MR. ROSE:  Okay.  Sorry, Your Honor.  Let me do

9   it by category.  Two of them are clerical employees who

10  know where records are and whose titles suggest that they

11  are the keepers of records, for example, there's something

12  called the "RACK" (phonetic), which is -- it's a part of

13  the banking practice, the financial practices practice, and

14  it's an assessment of all professional employees.  We seek

15  the information to show that younger people were considered

16  and older people were not.  So two of the people have

17  information on their own, but they also _____ identify

18  documents that we think are disclosable and that probably

19  we have asked for but we're not sure.

20          Two more, or three more are -- two more, excuse

21  me, are David Albright, who was a partner from over in

22  2000, whose qualifications in general terms are much like

23  those of Mr. Schuler, and you can't tell at PWC whether

24  there's competition for promotions, because they don't have

25  them fixed under slots, but if there's any contention that

1   the people they've promoted are as well qualified or better

2   qualified than our two Plaintiffs, we think his testimony

3   would indicate that that's not true.

4          William J. Lewis is a partner who is now the

5   supervisor of Messrs. -- he's the managing partner of the -

6   - it's called the -- sorry, Regulatory and Advisory

7   Services Group.  Mr. Bench was the prior managing director

8   -- managing partner for that office.  We've taken his

9   deposition, and we think his deposition was helpful to our

10  cause.  He in fact had recommended both of the Plaintiffs

11  for promotions (inaudible) promotions (inaudible).  But we

12  think that Albright and Lewis -- well, Lewis has two

13  things.  He was promoted himself, but he's also been the

14  supervisor, so one of his main goals is to ensure that the

15  Court is fully advised as to how well Murphy and Schuler

16  have been doing in more recent years.

17         There is another person, whose name is Robert

18  Morris, who is the only Defendant -- individual Defendant

19  left in the lawsuit, because he's stationed in Washington,

20  D.C., and we would take his deposition to adduce further

21  evidence of the income of partners and about the

22  differences between the duties, if any, of people who are

23  managing directors and those who are partners as the job

24  description, insofar as there is a partnership job

25  description.  What they do is very much the same.

1          Now, have I left out anybody?  Getting back to

2  your question about what's been done in discovery, Your

3  Honor, there's been a lot of documents produced --

4          THE MAGISTRATE JUDGE:  Just one moment, Mr. --

5          MR. ROSE:  I'm sorry.  Rose.

6          THE MAGISTRATE JUDGE:  -- Rose.  You indicated

7  that of the eight individuals you wish to depose, two hold

8  positions which you described as clerical in nature?

9          MR. ROSE:  Right.

10          THE MAGISTRATE JUDGE:  And two or three are

11  partners, including one who was promoted in 2000 and

12  another who is the individual Defendant.  That accounts for

13  --

14          MR. ROSE:  Yes.  Mr. Lewis is also -- I believe

15  he was promoted in the relevant period, I'm not sure.  He's

16  not.  He was a partner when Murphy was working there, and

17  he has been Murphy's supervisor for more than a year.

18          THE MAGISTRATE JUDGE:  My question is, who are

19  the remaining individuals.  I don't believe you have

20  discussed all eight.

21          MR. ROSE:  All right.  Let me -- well, Shay and

22  Johnson are two, they're the clerical people.  Morris is

23  one, he's the remaining partner.  Albright and Lewis are

24  two more.  They're both partners in the same unit that

25  Messrs. Murphy and Schuler are in.  So that's five.  That's

1   five.  And then there are one, two, three other employees.

2   Two are physically in Washington, D.C., and have worked

3   closely with Mr. Murphy.  One of them is in North Carolina,

4   and he does similar kinds of work but his personal story,

5   as we understand it, is substantially identical to Murphy

6   and Schuler; that is, as soon as he hit a certain age he

7   began to have important matters assigned to younger people,

8   and he was denied a promotion.  He is a similar

9   discriminatee.  And to a certainly extent, the two local

10  people are too.  They're in their mid-50s, I think, and

11  they have also not been promoted, and their view is they

12  were bypassed because of the explicit age provision in the

13  partnership agreement.

14          THE MAGISTRATE JUDGE:  What is your proffer with

15  respect to the extent to which the positions they hold are

16  comparable to the positions of the Plaintiffs?

17          MR. ROSE:  The positions -- they are in the same

18  group.  They're called professional employees.  They do

19  similar work.  As I indicated, Mr. Albright, his background

20  previously with the comptroller's office and then with PWC

21  is almost identical to Schuler's, except he was a lot

22  younger and had a lot less experience and had less

23  responsibility (inaudible).  So he was promoted to exactly

24  the same kind of position, and Morris is the person who is

25  the partner here from Washington, D.C., and his is not --

1    he's further advanced in the partnership structure of the

2    partners than either of our Plaintiffs is likely to be in

3    his career, so he's not as close as the two of them.

4         Blackburn and Powers and Welch are all very

5    similarly situated, and they've experienced the same kinds

6    of discriminatory conduct, although Blackburn is the only

7    one of those who got recommended to partner as did

8    Mr. Schuler.  And the recommendation by his immediate

9    supervisor was turned down.  Very, very similar to Schuler.

10         Murphy was a lawyer in a non-lawyer's job, and he

11   had a unique position.  He represented the full firm before

12   the Congress in the Sarbanes-Oxley legislative initiative.

13   He was indeed the spokesman on the floor of the whole

14   industry, and was extremely successful.  We have some of

15   that in the record already, but Mr. Lewis, his present

16   supervisor has given him rave reviews for the last couple

17   of years as well.

18         THE MAGISTRATE JUDGE:  How many depositions have

19   the Plaintiffs taken already?

20         MR. ROSE:  My memory is four.  And my worthy

21   opponents had the same number.

22         I should say that there are two of those people

23   that follow up a shortfall of depositions we have also

24   requested.  They are critical.  They probably -- together,

25   they were probably the -- certainly Mr. Moritz, who is --

1    they're quite young but they're are two levels above the

2    immediate supervisors of the Plaintiffs who are -- so they

3    are fairly -- he's very high in the structure.  Mr. Ryan is

4    one level above the supervisor, but they're all in the

5    direct chain of command and they all had an input, and the

6    evidence thus far suggests that Mr. Moritz's "no" was the

7    decisive factor in the decision not to promote Schuler.

8         THE MAGISTRATE JUDGE:  Now, let me ask you to

9    discuss the 27 categories of documents to which you refer

10   at the top of page 6.

11        MR. ROSE:  Okay.

12        THE MAGISTRATE JUDGE:  My question is essentially

13   that you proceed as you did in your discussion of the

14   depositions.  In other words, to discuss the categories and

15   the issues which remain to which documents responsive to

16   the requests in those categories might be relevant.

17        MR. ROSE:  Okay.  Let me start with two

18   documents, two sets -- two kinds of records that we've

19   asked for.  These are personnel records for RAS employees,

20   that is, the Regulatory Advisory Services, of which there

21   are only a handful, less than 20, and there are fewer

22   professional employees than that.  And what we're asking

23   for is the records of employees who either were selected

24   for promotion or were considered for promotion and not

25   promoted.  That's one category.

1          The next category I'd like to describe is the

2     same records for those people who were not selected,

3     whether or not they were considered.  Just so that if there

4     seems to be a likely -- I'm sorry?

5          THE MAGISTRATE JUDGE:  You may continue.

6          MR. HANSEN:  There seems to be an argument --

7     we're not sure, Your Honor, we haven't seen it yet -- but

8     the Defendant is planning to move for summary judgment as

9     the papers, I think, before you indicate, and we think that

10    one of the arguments they may make is that there are

11    objective reasons essentially for why -- or maybe they're

12    subjective, I'm not sure, but there may be some good

13    reason.  I think what the Judge had in mind, Judge Leon,

14    when he's talking about the particular circumstances in

15    which they were not advanced to partnership, the only major

16    category that comes to our mind is the possibility that

17    they were not as well qualified.  They never argued that in

18    the summary judgment papers but they're not foreclosed from

19    arguing that now, so we think they are likely to.

20         THE MAGISTRATE JUDGE:  Does that observation that

21    you just shared suggest that your request might be deemed

22    premature, since we don't know at this point what argument

23    might be made in any motion for summary judgment, and

24    should the argument be made you would at that point be free

25    to indicate that further discovery is needed in order to

1   permit you to oppose the motion?

2           MR. ROSE:  I think that's a possibility, Your

3   Honor.  But I also think that under the Defendant's

4   proposed schedule they're not going to file their motion

5   for summary judgment until January the 15th.  We don't know

6   why it takes them three months to file a motion for summary

7   judgment where they've taken depositions of three and two

8   days of our Plaintiffs already, but that's what they want

9   to do and we won't know until mid-January what their

10  argument is, or is likely to be, and we won't know for sure

11  until we get it.  We don't see why that time between now

12  and then, and we ask for three months from this order,

13  shouldn't be used for discovery.

14          THE MAGISTRATE JUDGE:  How many of the

15  categories, how many of the 27 categories relate to matters

16  which would relevant only if raised by the Defendants in

17  their motion for summary judgment?

18          MR. ROSE:  I'm going to need a few minutes with

19  my colleague --

20          THE MAGISTRATE JUDGE:  Certainly.  Please feel

21  free to have a seat and confer.

22          MR. ROSE:  I'm sorry, we didn't introduce

23  Mr. Murphy, but I think you met him last time.

24          THE MAGISTRATE JUDGE:  I do recall.  Good

25  afternoon to you.

1      MR. MURPHY:  Thank you, Your Honor.

2      MR. ROSE:  I'm not positive I can respond

3  exactly, Your Honor.  Let me try.

4      Certainly the first two categories that I

5  described to you fit into that.  The problem with trying to

6  decide now is the problem that Plaintiffs have in

7  discovery, and that is they don't know what the records

8  show.  There could be -- it's unlikely that _____ but

9  it's possible.  Or they could have used other language to

10  indicate that -- to describe either people they were

11  selecting or considering for selection than those that were

12  not.

13      THE MAGISTRATE JUDGE:  Now, what are the two

14  categories?  You said that there are two.

15      MR. ROSE:  I'm sorry, the personnel records of

16  the RAS employees, both those who were selected, those who

17  were considered, and those who were not considered and not

18  selected.  They're all the same category.

19      Another item, Your Honor, that we've asked for

20  that should be trivial in terms of problems is age

21  discrimination charges filed against PWC, at least for the

22  last several years and at least from '99 through 2004.

23  That can't cause them -- unless there are even more than we

24  expect, that can't cause them very much problems.

25      THE MAGISTRATE JUDGE:  Now, that's two of the

1  27 categories.

2          MR. ROSE:  Yes.

3          THE MAGISTRATE JUDGE:  What are the remaining 25?

4          MR. ROSE:  Well, let me give you the ones that we

5  wrote in our letter yesterday, because these are the

6  priority ones.  All three of those were -- and another one

7  that I described earlier but I didn't mention with

8  particularity is there's a board of admissions for

9  admissions committee, there may be a number of admissions

10  committees that deal with who should be recommended to the

11  board for promotion.  The board is the ultimate -- the 21

12  people who are the officers and who own the company are

13  called the Board of Managers, and they're in New York.  But

14  this is the minutes of the committees of the various units

15  within the financial services practices and other

16  practices, and we've asked for them since '67 but obviously

17  if we got the last five years that would be fine.

18          And we would like to have complete records for

19  the annual review committee of the RAS, which is a very

20  small -- relatively small organization, and that committee

21  meets every spring to determine not only who is admitted to

22  partnership but also who is -- who's going to be a

23  _____ and who isn't.  _____.  So you get a very

24  good image, we think, if you get access to that, as to not

25  only how the immediate supervisor considers an employee but

1    also how as to some of the other people further up the line

2    consider that performance.  And also it could be very

3    illuminating as to reasons --

4         THE MAGISTRATE JUDGE:  Now, what documents -- I

5    apologize, I did not mean to interrupt you.

6         MR. ROSE:  Oh, that's all right.  You're much

7    better at not interrupting than I am, sometimes.

8         THE MAGISTRATE JUDGE:  You may complete your

9    argument on that point.  My question was going to be what

10   documents have already been produced in discovery.  What

11   categories of documents.

12        MR. ROSE:  Well, there's been a little sliver of

13   information from the RAS committee.  Well, let me tell you

14   the order that we agreed upon last -- a year ago this

15   spring, I guess.  The document that we submitted for your

16   approval that you did approve, personnel files of the two

17   Plaintiffs.  That's been produced.  Number of persons

18   admitted, the information showing date of hire and date of

19   birth and date of admission, that's been admitted, as I

20   said, through 2003.

21        Policies and procedures of PWC relating to

22   partnership agreement, there has been a set of documents

23   for 2003.  It may be that those are the only written

24   policies, but I don't think that PWC has stated that to us.

25   It's possible that it is, but -- and it's conceivable that

1   they stated it to us but we don't remember whether it has

2   been.

3           Minutes of meetings of the PWC admissions

4   committee concerning consideration of Plaintiffs partners,

5   I believe that we've been advised that there is no such

6   document.

7           With respect to the promotions of Bench --

8   Partner Bench's -- Managing Partner Bench's recommendations

9   to promote Schuler to partner and Bench's recommendations

10  to promote Murphy to managing director, they produced the

11  recommendations themselves but they produced no records

12  showing anything else about those promotion and

13  recommendations and why they were not approved.

14          THE MAGISTRATE JUDGE:  Now, to what extent does

15  the discovery in the categories, the discovery of documents

16  in the categories that you've just identified, compare to

17  the discovery which was at issue in the second motion to

18  compel, which I ultimately denied without prejudice.  In

19  other words, is this the same material --

20          MR. ROSE:  I think not, Your Honor.

21          THE MAGISTRATE JUDGE:  -- or is this broader?

22          MR. ROSE:  I'm having trouble remembering, Your

23  Honor.  There's one motion to compel that we sought

24  discovery damages, and my memory is that your order on that

25  was that those damages would not be produced until there

1  was a ruling on the not-yet-filed third motion for summary
2  judgment by PWC.  I'm sorry, second motion, the one to
3  dismiss the individual claim.
4         There was a motion to dismiss, there was a
5  partial motion for summary judgment.  What's expected to be
6  filed by January 1st is -- I'm sorry, January 15, is
7  Defendant's motion for full summary judgment, that is,
8  (inaudible).  So that one is sort of on hold in accordance
9  with Your Honor's ruling of more than a year ago, and we
10  are not asking -- I mean, we think it's be great if you
11  wanted to modify that ruling, but we haven't asked that you
12  do so.
13         THE MAGISTRATE JUDGE:  Now, I'm speaking of the
14  motion which bears Docket Number 96.
15         MR. ROSE:  Yes, I think that's the Shay and
16  Johnson depositions, Your Honor.  I'm not positive.
17         THE MAGISTRATE JUDGE:  I will hand you our copy
18  if that will assist you.
19         MR. ROSE:  Yes.
20         THE MAGISTRATE JUDGE:  Because it did appear to
21  the Court that there was some overlap between the discovery
22  that you've addressed this afternoon and the discovery
23  which was addressed in the second motion to compel.
24         MR. ROSE:  I think there is.
25         THE MAGISTRATE JUDGE:  I want to determine

1 | whether your entire request is confined to this second
2 | motion to compel or whether it is broader than that.
3 |     MR. ROSE:  It's broader.  But I'd like to look at
4 | it.
5 |     THE MAGISTRATE JUDGE:  Very well.  Do you have
6 | your copy, Mr. Nelson and Mr. Sheinfeld?
7 |     MR. NELSON:  I'm sorry, of what document, Your
8 | Honor?
9 |     THE MAGISTRATE JUDGE:  The motion bearing Docket
10 | Number 96.
11 |     MR. NELSON:  I may have it someplace.  I think I
12 | can answer Your Honor's question without looking at it.
13 |     THE MAGISTRATE JUDGE:  I'll see whether we can
14 | print it for you so that you can also review it.  It may
15 | aid us if all of you would take a look at it so that if
16 | there is some other document in which all of these requests
17 | were memorialized, I'll be able to refer to it.
18 |     Let's take a brief recess and we will print a
19 | copy for you.  You may remain seated while we take a brief
20 | recess.
21 |     MR. ROSE:  Thank you.
22 |     (Whereupon, a brief recess was taken.)
23 |     THE MAGISTRATE JUDGE:  Now, Mr. Rose.
24 |     MR. ROSE:  Yes, Your Honor.  There's a great deal
25 | of overlap, Your Honor, and I'm sorry I didn't recall from

1  the reference to the document that most of the things we

2  asked for -- the majority of things that are under

3  consideration in this motion are the same or are extremely

4  similar to what we asked for some time ago.

5          Obviously, the updating information is new.  We

6  have asked for 15 people that Mr. Ryan gave counseling to,

7  we've asked for their ages and dates of hire.  With all

8  this information, we're not particularly concerned about

9  the name of the person; indeed, PWC did not produce the

10 names of other people.  They gave us information by number

11 or some other designee.  In some sense they identified them

12 by date of hire and date of birth, but anyhow.

13         The other things that are due -- we have

14 eliminated from that longer document some of the documents

15 that might be related to willfulness, because those are not

16 a high priority to determine the liability, which is our

17 major concern.

18         There is also something that we didn't ask for,

19 namely, Bench's notes or files on the productivity of all

20 of the people that were under his employees or under his

21 supervision, and there are some partners that were also

22 under his supervision.  And he's left the firm, so it's not

23 clear but they produced him as a witness while he was still

24 employed by -- they wouldn't say "employed by," but when he

25 still was connected, an active partner.

1        And we didn't ask for other discrimination

2    complaints.  And I think that's a summary of the

3    differences between -- is that what you -- the motion was

4    denied without prejudice.  We think this is the time to

5    essentially grant a similar motion.

6        THE MAGISTRATE JUDGE:  Very well.  Thank you very

7    much, Mr. Rose.

8        MR. ROSE:  Thank you for your time, Your Honor.

9    Appreciate the time that you're giving us.

10        THE MAGISTRATE JUDGE:  Thank you, Mr. Rose.

11    Mr. Nelson or Mr. Sheinfeld.

12        MR. NELSON:  Good afternoon, Your Honor.

13        THE MAGISTRATE JUDGE:  Good afternoon.

14        MR. NELSON:  Eric Nelson.

15        THE MAGISTRATE JUDGE:  Mr. Nelson, good

16    afternoon.

17        MR. NELSON:  Not sure where to begin, so I think

18    it'd probably be best to start at the beginning.

19        Plaintiffs appear to be wanting to start all over

20    again, but when we're already at the finish line here, Your

21    Honor.  And I think --

22        THE MAGISTRATE JUDGE:  Perhaps it would be

23    helpful to the Court and to the parties if you would

24    summarize from the Defendant's perspective the discovery

25    that has already been conducted.  Whether that be through

1   the production of documents, the taking of depositions, or

2   any other means.

3          MR. NELSON:  I will try to do that.  I would like

4   to summarize the procedural and the discovery history here,

5   because I think in order to understand where we are we need

6   to understand how we got here and where we've been.  In the

7   course of that, I will include, obviously, Defendant's --

8   the discovery provided by the Defendants.

9          THE MAGISTRATE JUDGE:  Very well, you may.

10         MR. NELSON:  And to start briefly at the very

11  beginning, the complaint in this action was filed in May of

12  2002.  It initially asserted various employment

13  discrimination claims.  A principal claim related to the

14  denial of partnership status to each of the Plaintiffs in

15  1999, 2000, and 2001, but the complaint, Your Honor, also

16  asserted retaliation claims, class or collective claims,

17  and claims against over 20 Defendants in addition to

18  PriceWaterhouseCoopers, PWC, the Plaintiffs' employer.

19         And as Your Honor is aware, in lieu of answering

20  the complaint Defendants moved to dismiss all claims

21  against all Defendants except certain of the denial of

22  promotion claims against PWC.  And following a conference

23  before Your Honor in February of 2003, the parties filed

24  their first supplemental joint report and a proposed

25  scheduling order which incorporated the provisions from

1   that joint report.  And as set forth in the joint report

2   and the scheduling order, discovery was to proceed during

3   the pendency of the motion to dismiss only on the claims

4   that were not addressed by the motion, namely, the non-

5   promotion claims against PWC.

6            Now, following the disposition of the motion to

7   dismiss, the parties were to then confer again on any

8   additional phases of discovery that would be necessary if

9   any claim survived the Court's decision on the opening

10  dispositive motion.  I think it's important to understand

11  here that the scheduling order and the first supplemental

12  joint report were intended to cover all discovery on

13  liability on the promotion claims.  Those were the only

14  claims not subject to the pending dispositive motion.

15           Now, the scheduling order and joint report

16  provided that the Plaintiffs would produce all documents

17  in their possession concerning the promotion claims to be

18  followed by the Plaintiffs' depositions and that PWC would

19  produce five categories of documents to be followed by the

20  depositions of two of its partners, Timothy Ryan and Robert

21  Bench.  Again, this scheduling order was intended to cover

22  all discovery on liability on Plaintiffs' non-promotion

23  claims.

24           Now, the scheduling order and joint report

25  further provided that the parties were to confer in good

1    faith regarding any other discovery either of the parties

2    deemed to be necessary on those claims.  With regard to the

3    discovery actually conducted pursuant to the provisions of

4    the scheduling order, Plaintiffs produced documents and

5    they submitted to depositions.  At the Plaintiffs'

6    depositions, it was disclosed that the Plaintiffs had not

7    produced all documents concerning their claims as provided

8    in the scheduling order, but instead had only produced

9    documents they believed to support their claims.

10          So following this disclosure, Plaintiffs agreed

11    to produce the remaining documents and then to submit to

12    depositions on those documents.  Plaintiffs later produced

13    the remaining documents in installments, but declined to

14    appear for the conclusion of their depositions pursuant to

15    the scheduling order and that ultimately led to PWC's

16    motion to compel Plaintiffs to submit to the depositions

17    and for sanctions.

18          Now, for its part, PWC produced all documents

19    specified in the scheduling order and partners Ryan and

20    Bench were deposed pursuant to the scheduling order.

21    Plaintiffs made numerous requests for additional discovery,

22    including the depositions of two other PWC partners, Paul

23    Sullivan and Robert Moritz, moving right up the ladder.

24    Mr. Sullivan sat on the board of PWC and he was also on the

25    admissions committee.  And he was deposed by Mr. Rose for a

1    full day.  And Mr. Moritz was also a high-level partner.

2    We produced additional documents, we answered some

3    interrogatories pursuant to the terms of the scheduling

4    order, Your Honor.

5         Counsel conferred in good faith with respect to

6    all of these various requests for additional discovery on

7    these very claims, the non-promotion claims, and the result

8    of the conferences was that PWC agreed to provide certain

9    additional discovery, including, as I mentioned, more

10   documents and information and the depositions of Messrs.

11   Sullivan and Moritz, and actually provided that discovery.

12        At the same time, PWC declined to provide other

13   discovery that was requested by the Plaintiffs.  Plaintiffs

14   then moved to compel some of that discovery, which bore on

15   damages as well as other issues, and this is now -- we're

16   now in the summer of 2003, and this is significant, Your

17   Honor.  They elected not to include in their motion --

18   their initial motion to compel other discovery that

19   Plaintiffs had previously requested and PWC had refused to

20   provide, after conferring in good faith in accordance with

21   the scheduling order.

22        PWC agreed to provide some of the discovery that

23   Plaintiffs had included in their initial motion to compel,

24   after they filed that motion.  PWC opposed the motion to

25   compel to the extent that it sought discovery relating to

1    damages, and cross-moved, as Your Honor may recall, to

2    defer damages discovery pending decision on PWC's

3    contemplated motion for summary judgment dismissing

4    Plaintiffs' individual claims.

5              THE MAGISTRATE JUDGE:  The Court does recall.

6              MR. NELSON:  And the Court, I'm sure, also

7    recalls that Your Honor granted PWC's motion to defer

8    damages discovery pending this motion.

9              It's also, I think, important to understand that

10   counsel for each of the parties had, by then, disclosed

11   their intention to move for summary judgment on the

12   non-promotion claims at the conclusion of initial phase

13   discovery under the scheduling order.  Which again, that

14   scheduling order was intended to cover all discovery on

15   Plaintiffs' non-promotion claims.  That was the initial

16   phase, the only claims not addressed by the motion to

17   dismiss.

18             Shortly after PWC had disclosed its intention to

19   move for summary judgment at the conclusion of discovery

20   and Plaintiffs had similarly made that disclosure,

21   Plaintiffs shortly thereafter made their motion for summary

22   judgment on liability on their non-promotion claims,

23   relying on a pattern or practice theory.  And

24   significantly, Your Honor, they made that motion without

25   seeking or reserving the right to seek any further

1    discovery under the scheduling order.

2            PWC cross-moved for summary judgment dismissing

3    the claims on that pattern or practice theory and expressly

4    noted its intention to move for summary judgment dismissing

5    Plaintiffs' individual non-promotion claims at the

6    conclusion of Plaintiff's depositions on their later

7    produced documents.

8            On October 24, 2003, counsel appeared at a status

9    hearing before Judge Leon.  On behalf of PWC, I reported to

10   Judge Leon on the status of discovery, the status of

11   dispositive motions.  I advised Judge Leon that the

12   parties, by agreement, intended to conclude all discovery

13   under the scheduling order within 30 days, which included

14   the concluding sessions of the Plaintiffs' depositions,

15   which I made clear were to be followed by PWC's submission

16   of its motion for summary judgment, and also noted that --

17   and this would happen within 30 days and it did in fact

18   happen, that PWC by agreement had voluntarily produced and

19   were to produce within 30 days of that hearing some

20   additional documents.  PWC did that.

21           Plaintiffs' counsel did not take issue with any

22   of my statements at that status hearing, or suggest the

23   need for any additional discovery to oppose PWC's

24   contemplated motion or otherwise.  So as I said, on

25   November 4, 2003, a year ago today as a matter of fact, we

1    produced the remaining documents that Plaintiffs had

2    requested.  This went beyond the five categories, and we

3    made other productions beyond the five categories.  And I

4    guess this is resolved at this point, but the Plaintiffs

5    unilaterally canceled the concluding sessions of the

6    Plaintiffs' depositions which had been scheduled for

7    November 20 and November 21 a year ago.

8            THE MAGISTRATE JUDGE:  Am I correct in my

9    assumption that your reference in the second supplemental

10   joint report of the parties is to those depositions?  That

11   is, the two depositions which you suggest should be

12   concluded are those depositions.

13           MR. NELSON:  Yes, Your Honor.

14           THE MAGISTRATE JUDGE:  And are those also the

15   depositions that are addressed in the motion bearing Docket

16   Number 92, the Defendant's motion to compel Plaintiffs to

17   submit to depositions, which I denied without prejudice?

18           MR. NELSON:  Yes, Your Honor.

19           THE MAGISTRATE JUDGE:  All right.

20           MR. NELSON:  Those are the same depositions --

21           THE MAGISTRATE JUDGE:  Very well.

22           MR. NELSON:  -- and if, in fact, the Plaintiffs

23   do appear before the end of this month, as Mr. Rose alluded

24   to, that would moot that motion to compel.

25           THE MAGISTRATE JUDGE:  Very well.

1         MR. NELSON:  There is still -- and we're not

2    pressing that at the moment but we're reserving our rights

3    -- there is still a motion for sanctions.  We understand

4    that's been denied without prejudice, and as I say, we just

5    want to reserve our rights on that.  But the motion to

6    compel the two Plaintiffs will be moot if they appear

7    before the end of this month.

8         THE MAGISTRATE JUDGE:  Very well, you may

9    continue.

10        MR. NELSON:  As Your Honor is aware, Judge Leon,

11   on September 27th, about a month or so -- little over a

12   month ago, decided the previously submitted partially

13   dispositive motions and dismissed all claims except

14   Plaintiff Murphy's denial of promotion claims for the year

15   2000 and 2001, and Plaintiff Schuler's non-promotion claim

16   for 2001.  There were other non-promotion claims that were

17   dismissed because they were not timely asserted and they

18   weren't supported by timely filed administrative charges.

19        THE MAGISTRATE JUDGE:  Now, I have reviewed Judge

20   Leon's September 27th, 2004, order.

21        MR. NELSON:  I didn't intend to go through it.

22   I think actually that's -- fine.  Thank you, Your Honor.

23   I did not intend to go through it, but I do want to note

24   that the claims remaining, the only claims remaining, were

25   the ones subject to discovery under the scheduling order.

1  And in light of Judge Leon's decision, there are no other

2  surviving claims to require any additional phases of

3  discovery.  All the other claims have been dismissed.

4          PWC's position is that the scheduling order, as I

5  guess I've said it enough times, was intended to cover all

6  discovery on Plaintiffs' individual non-promotion claims

7  which are the only claims surviving Judge Leon's decision,

8  that PWC has previously provided all discovery to which

9  Plaintiffs are entitled on those claims under the

10 provisions of the scheduling order, and that Plaintiffs

11 have otherwise waived any right to additional discovery for

12 a number of reasons.

13         First, by failing to include such discovery in

14 their motion to compel in July 2003 after PWC had refused

15 to provide it following counsel's good faith conferences

16 pursuant to the terms of the scheduling order.

17         Second, by moving for summary judgment on

18 liability in August, 2003, after previously stating their

19 intention to make such a motion following the completion of

20 their discovery under the scheduling order.

21         Third, by failing to inform the Court at the

22 status hearing in October, 2003, of any need for any

23 additional discovery in connection with PWC's contemplated

24 motion for summary judgment dismissing their individual

25 claims.

1        And finally, by failing to move to modify any of

2    the terms of the scheduling order.

3        Now, Plaintiffs have literally been bombarding

4    PWC with additional discovery requests since Judge Leon

5    issued his decision a few weeks ago.  And in the joint

6    report recently submitted to Your Honor in anticipation of

7    this conference, as Your Honor noted, Plaintiffs assert

8    that they're seeking another eight depositions in addition

9    to the four depositions of PWC partners which have already

10   been taken, is seeking the production of, I guess, 27

11   categories of additional documents, and quite frankly they

12   appear to be proceeding on the assumption that if they

13   simply ask for enough they'll get something here.  Judge

14   Leon's decision did not give rise to the need for any

15   additional discovery.

16       THE MAGISTRATE JUDGE:  What is your response,

17   Mr. Nelson, to Mr. Rose's suggestion that some updating, to

18   use Mr. Rose's term, is indicated.  Some updating of

19   responses.

20       MR. NELSON:  Well, I'm first of all not clear.

21   As I said, we have literally been bombarded with requests,

22   and none of them have been stated in terms of updating, as

23   far as I know.  None of them.

24       We have an obligation, as Your Honor noted, to

25   update under the Federal Rules.  And I don't know whether

1    updating here -- I can't answer that, Your Honor.  If I had

2    a straightforward request to update something, I could

3    evaluate whether or not there's any relevance to anything

4    here or there any updating to be done.  So I'm prepared to

5    try to address any updating requested, but there's an awful

6    lot that's been thrown out here.

7            THE MAGISTRATE JUDGE:  You may continue.

8            MR. NELSON:  But, you know, I think -- Plaintiffs

9    really proffer no explanation or need for any of this

10   discovery.  You know, much of it, as I noted, was

11   previously requested by Plaintiffs' counsel and abandoned

12   after conferring in good faith with PWC's counsel and

13   electing not to include it in their initial motion to

14   dismiss.  And then failing to reserve it in their

15   previously filed motion for summary judgment.  Or failing

16   to mention it at the status hearing.  These issues were

17   raised.  And, you know, at best, Your Honor, the additional

18   discovery now sought by the Plaintiffs appears to be a mere

19   afterthought.  Actually, it appears to us to be a ploy to

20   continue to forestall PWC's summary judgment motion --

21           THE MAGISTRATE JUDGE:  What accounts --

22           MR. NELSON:  --  disposing of the remaining

23   claims.

24           THE MAGISTRATE JUDGE:  I apologize, Mr. Nelson.

25   What accounts for the need for a period as long as two

1    months, or actually in excess of two months, to file the

2    motion for summary judgment?

3         MR. NELSON:  That's not an unfair question, Your

4    Honor.  Let me first of all say I think Mr. Rose alluded to

5    the January 15th date.  I think, you know, that date was by

6    agreement.  I conferred mostly with, at the end, with

7    Mr. Wachtel, Mr. Rose's partner, and it's set forth in the

8    joint statement that that date -- the last date for

9    dispositive motions was by agreement.  That was a date that

10   I had suggested and Plaintiffs' counsel had agreed to.

11        This case has been dormant now for quite some

12   time, and there's a lot of refreshing to do, we need in the

13   next month to conclude these depositions.  To be perfectly

14   honest with Your Honor I have, as this case was dormant for

15   so long, many other professional commitments between now

16   and actually the end of January.  I don't think that, under

17   the circumstances, that's unreasonable period of time.

18        It's not going to be an insubstantial motion,

19   on the one hand.  On the other hand, we've pretty much

20   disclosed the basis for this motion.  It's set forth, I

21   believe, in our original cross-motion to defer damages

22   discovery, and it's set forth in our cross-motion for

23   partial summary judgment dismissing the pattern or practice

24   claims.  There's no secrets here.  I mean, Mr. Rose -- he

25   doesn't know what our motion is going to be all about, and

 1    it may address, for example, the qualifications of the

 2    Plaintiff for partnership.

 3             And actually, the joint report just filed, we

 4    state categorically that PWC's contemplated motion is not

 5    going to be based in any way on the qualifications or

 6    performance of either of the Plaintiffs or of any other PWC

 7    employees.  The motion, Your Honor, will be based factually

 8    on certain admissions by the Plaintiffs at the initial

 9    sessions of their depositions and may be supplemented by

10    testimony to be given at the concluding sessions of the

11    Plaintiffs' depositions.

12             THE MAGISTRATE JUDGE:  Mr. Nelson.

13             MR. NELSON:  Yes.

14             THE MAGISTRATE JUDGE:  A moment ago you indicated

15    that the Defendants indicated in their joint report that

16    the motion would not be predicated upon any issue having to

17    do with the Plaintiffs' experience.  Can you point to the

18    page number where that --

19             MR. NELSON:  Yes, Your Honor.

20             THE MAGISTRATE JUDGE:  -- indication is made,

21    please?

22             MR. NELSON:  Yes.  It's on the bottom of page 10,

23    over to 11.  This is on the copy I have, which I think is

24    the one that was filed.

25             THE MAGISTRATE JUDGE:  Very well, I apologize.

1    I see it. You may continue.

2            MR. NELSON:  Okay.  We've made that very clear.

3            Now, yesterday, as Mr. Rose mentioned or I think

4    he indicated on Tuesday -- I didn't receive it until

5    yesterday -- we received a letter from Plaintiffs' council

6    prioritizing the eight additional depositions and the

7    27 categories of additional documents Plaintiffs now

8    purport to seek.  Again, without any explanation of need.

9    And most of this, Your Honor, appears to relate to the

10   qualifications and performance of Plaintiffs and other PWC

11   employees.  And none of it -- and I think this is important

12   -- none of it has any bearing whatsoever on any issues we

13   believe will be dispositive of Plaintiffs' remaining

14   claims.

15           Plaintiffs will not be prejudiced -- assuming

16   that they had a right, which we believe they do not,

17   assuming they had a right to any additional discovery,

18   under the circumstances they would not be prejudiced in the

19   absence of this additional discovery at this juncture.  The

20   upshot, Your Honor, is that even if, as I just mentioned,

21   even if they were entitled to additional discovery on their

22   remaining claims, which are the original claims, at some

23   point before a possible trial, which we submit they are

24   not, this presents a classic situation warranting a stay of

25   further discovery pending resolution of PWC's dispositive

1    motion.  There's really no reason to take further discovery

2    that will be or would be unnecessary if PWC's motion is to

3    be granted, as we believe it will, and there's really no

4    need to further delay the making of that motion.

5           So I guess just to sum up where we are, PWC

6    should be and apparently will be permitted to conclude

7    Plaintiffs' depositions under the terms of the scheduling

8    order and to make its dispositive motion, which really has

9    been delayed for well over a year now, solely as a result

10   of Plaintiffs' preemptive motions and their refusals to

11   appear for the conclusion of their depositions.

12          We have not been responsible for this delay, and

13   at the same time, the decision on the initial motions took

14   some time.  There were a lot of claims asserted here, and

15   there was a lot for Judge Leon to review.  It took some

16   time.  But we think that where we go from here is quite

17   straightforward and we're not suggesting anything that

18   would prejudice the Plaintiffs at all.  In fact, I think it

19   would reduce expense for everyone, and after the extended

20   period of time that we've waited to depose the Plaintiffs,

21   I don't think that requesting a deadline now of January

22   15th to make the motion is unreasonable.

23          Thank you.

24          THE MAGISTRATE JUDGE:  Very well.  Thank you,

25   Mr. Nelson.

1        Mr. Rose, I'll hear your brief reply.

2        MR. ROSE:  Well, if Mr. Nelson is willing to

3    stipulate that PWC will not address the relative

4    qualifications and performance of Plaintiffs and other PWC

5    employees, that would be a change from the statement that

6    they've made in their prior arguments that there are no

7    similarly situated persons in the practice group, and we

8    would certainly believe that such a stipulation would make

9    much of what we're requesting today -- some of what we're

10   requesting today unnecessary.

11        THE MAGISTRATE JUDGE:  Do you need a moment to

12   review the language which appears near the end of page 10

13   and the top of page 11?

14        MR. ROSE:  That's what I was just referring to,

15   Your Honor.

16        If we could insert the word "evaluations of

17   qualifications or performance," and say, "evaluations of

18   the relative qualifications and performance of Plaintiffs

19   and younger PWC employees," we would think that a great

20   deal of this could certainly _____ disposition of

21   their long-awaited but never filed motion on the merits.

22        THE MAGISTRATE JUDGE:  Is that an issue that all

23   of you would like to take a moment to discuss?  If so,

24   I'm happy to take a recess and you can, for the sake of

25   expediency, simply read the stipulation into the record if

1    indeed there is a stipulation.  If there is no stipulation,

2    then I will hear the balance of your argument, Mr. Rose,

3    and take the issue of the need for and the timing of

4    further discovery under advisement.  If you have a

5    stipulation --

6            MR. ROSE:  Of course.

7            THE MAGISTRATE JUDGE:  -- then we are essentially

8    finished here.  That would mean that the depositions of the

9    Plaintiffs would be concluded, and that the Defendants

10   would file their motion for summary judgment in accordance

11   with the deadline to which you agreed.  So let's take a

12   brief recess.  You're welcome to remain here and confer,

13   and then if there is a stipulation one of you will simply

14   read it into the record.

15           MR. ROSE:  Your Honor --

16           THE MAGISTRATE JUDGE:  All right, thank you.

17           MR. ROSE:  Okay.  And I will discuss this -- I'm

18   mentioning it now because I want to discuss this also.  The

19   two things that we've asked for that I called updating are

20   things that are not covered by what I just said, because

21   they are things that occurred subsequent to the appointment

22   of partners and management directors, and the list of

23   Mr. Ryan's 15 (inaudible).

24           THE MAGISTRATE JUDGE:  I will suggest that the

25   parties first determine whether there will be a

1    stipulation, and that you next consider whether by updating

2    you mean the supplementation that is required by the

3    Federal Rules without the need for any order of the Court.

4            Very well.  Just --

5            MR. ROSE:  Thank you, Your Honor.

6            THE MAGISTRATE JUDGE:  Just please let Ms. Miller

7    know when you're ready to continue.

8            (Whereupon, a brief recess was taken.)

9            THE CLERK:  Please come to order.  Your Honor,

10    we're back on the record.

11            THE MAGISTRATE JUDGE:  Thank you.  Now, were the

12    parties able to reach a stipulation?  Mr. Rose?

13            MR. ROSE:  I'm afraid not, Your Honor.  The

14    parties were not able to reach the stipulation that we

15    proposed, and --

16            MR. NELSON:  Well, perhaps Mr. Rose should

17    indicate what that stipulation --

18            MR. ROSE:  I'll be glad to read it.

19            MR. NELSON:  -- turned out to be, which we don't

20    think has any bearing on what we're talking about today or

21    our motion for summary judgment.  No bearing on it.

22            MR. ROSE:  May I read it?

23            THE MAGISTRATE JUDGE:  What is the stipulation

24    that you proposed, Mr. Rose?

25            MR. ROSE:  We proposed the following stipulation,

1  "For purposes of all proceedings in this case, the parties

2  stipulate that Plaintiffs were as well qualified for

3  partnership and performed their responsibilities as well

4  as many of the younger employees that PWC promoted to

5  partner in 2000, 2001, and 2002."

6       THE MAGISTRATE JUDGE:  Now, that is radically

7  different from the stipulation that was proposed on the

8  record, which appeared to have been limited only to the

9  issues that would be addressed in the motion for summary

10  judgment.  And because that is the case, I am not certain

11  what purpose we would serve by continued discussion of the

12  stipulation that you just read into the record.

13       So if you have no further reply, I'm prepared to

14  take the parties' arguments under advisement and enter an

15  order with respect to the extent and timing of further

16  discovery.

17       MR. ROSE:  I think that's right.  I think I left

18  out a word or should have read the word "relatively" as

19  well qualified, but I think it means the same either way,

20  so I don't think that matters.

21       MR. NELSON:  Your Honor, just --

22       THE MAGISTRATE JUDGE:  Very well, thank you,

23  Mr. Rose.

24       I am prepared to take your oral arguments and

25  your written submissions under advisement and enter an

1   order regarding the scope and the timing and the extent of

2   further discovery.  So you will receive the ruling

3   electronically.

4          Very well.  I thank all of you very much.  You

5   may be excused.

6          MR. ROSE:  Your Honor?  May I be --

7          THE MAGISTRATE JUDGE:  Mr. Rose?

8          MR. ROSE:  Excuse me, I'm sorry.  I meant to hand

9   this up before.  If you have any -- this is the letter I

10  referred to and read from.  I thought we might hand it up

11  so Your Honor --

12         THE MAGISTRATE JUDGE:  Well, because it is your

13  letter to counsel, I would be prepared to receive it only

14  if that is without objection from the Defendants.  I don't

15  believe that it would be appropriate for me to receive it

16  otherwise.  Is there any objection to it, Mr. Nelson?

17         MR. NELSON:  Your Honor, I received that letter

18  yesterday, haven't responded to it, we don't really think

19  we will respond to it.  If it's handed up, we would --

20         THE MAGISTRATE JUDGE:  Well, may I ask you --

21         MR. NELSON:  I don't think it adds anything.  The

22  letter Mr. Rose referred to prioritizes the 27 categories

23  of documents and eight depositions.  That's what it

24  purports to do.

25         THE MAGISTRATE JUDGE:  Is there any objection to

1  allowing Mr. Rose to offer it with the understanding that

2  I do not intend to file it as a portion of any order that

3  I enter and I would consider it only in the context of

4  further evaluation of the parties' oral arguments?

5          MR. NELSON:  Under those circumstances, Your

6  Honor, I have no objection to Mr. Rose handing it up.

7  I would just add that if Your Honor believes that it bears

8  on anything that we've discussed today or would change

9  anything, that we be given an opportunity to respond to it.

10          THE MAGISTRATE JUDGE:  That is a reasonable

11  request.  Very well, you may hand it to Ms. Miller.

12          MR. ROSE:  Thank you, Your Honor.

13          THE MAGISTRATE JUDGE:  Well, very well, you may

14  hand it to my law clerk since she's closer.

15          MR. ROSE:  Oh, I'm sorry.

16          THE MAGISTRATE JUDGE:  That's all right.  That's

17  all right.

18          MR. NELSON:  Could I just ask if you have another

19  copy of that --

20          MR. ROSE:  Of course.  Sure.

21          MR. NELSON:  -- Mr. Rose, so I'm clear on what

22  was handed up?

23          THE MAGISTRATE JUDGE:  Very well.  We have a

24  copier here, and we'll be certain that before you leave

25  that you have a copy of it.  In fact, we can do that before

1    I see it.

2            Very well, with that, you may all be excused.

3    Thank you very much.

4            MR. ROSE:  Thank you for your time, Your Honor.

5            MR. NELSON:  Thank you very much, Your Honor.

6            THE MAGISTRATE JUDGE:  Thank you.

7            (Whereupon, proceedings were concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES OF AMERICA )
                         ) Civil Action No. 02-0982
DISTRICT OF COLUMBIA     )

I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

_____
PAUL R. CUTLER

I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

_____
BONNIE FURLONG