# Tab 3

COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


C. WESTBROOK MURPHY, ET AL.,    :    CV02-982 AND CV05-1054
                                :    October 18, 2005
            Plaintiffs,         :
                                :    4:00 p.m.
                                :
v.                              :
                                :
PRICEWATERHOUSECOOPERS, LLP,    :
ET AL.,                         :
            Defendants.         :
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:          DAVID L. ROSE, ESQ.
                             TERRI N. MARCUS, ESQ.
                             Rose & Rose, PC
                             1320 19th Street, NW
                             Suite 601
                             Washington, D.C. 20036
                             RICHARD SALZMAN, ESQ.
                             Heller, Huron, Chertkof, Lerner,
                             Simon & Salzman
                             1730 M Street, NW
                             Suite 412
                             Washington, D.C. 20036


For the Defendant:           ERIC M. NELSON, ESQ.
                             STEPHEN L. SHEINFELD, ESQ.
                             Winston & Strawn, LLP
                             200 Park Avenue
                             New York, New York 10166

```
Court Reporter:                    PATTY ARTRIP GELS, RMR

                                   Official Court Reporter

                                   Room 4800-C, U.S. Courthouse

                                   Washington, D.C. 20001

                                   (202) 962-0200



Proceedings reported by machine shorthand, transcript produced

by computer-aided transcription.
```

```
 1                 P R O C E E D I N G S
 2          COURTROOM DEPUTY:  This is Civil Case CV02-982, et al.
 3  versus PriceWaterhouseCoopers, LLP, et al.  Also on the calendar
 4  is C. Westbrook Murphy versus PriceWaterhouseCoopers LLP, Civil
 5                      Action 05-1054.
 6     Will counsel come forth and state your appearances for the
 7                       record, please?
 8          MR. ROSE:  Your Honor, my name is David Rose.  I am
 9  counsel for Plaintiff Schuler.
10          THE COURT:  All right.
11          MR. SALZMAN:  Good afternoon, your Honor.  I am Richard
12  Salzman and with at counsel table is Tammany Kramer on behalf of
13  C. Westbrook Murphy.
14          MR. NELSON:  Good afternoon, your Honor, Eric Nelson at
15  Winston & Strawn for Defendant PWC, PriceWaterhouseCoopers.
16          THE COURT:  All right.  Welcome back.  All right.
17  Counsel, I thought I would hear from you as to where we proceed
18  from here from each of your point of view.  Obviously the
19  Defendants made it clear that they would like to see these cases
20  consolidated and move forward to trial, but I wanted to hear
21  from both sides on the record.  I don't care what order you go,
22  Mr. Rose, Mr. Salzman, but take it away.
23          MR. SALZMAN:  Thank you, your Honor.  I think probably
24  it makes sense for me to address that first because we are the
25  Plaintiff in both of the cases.
```

1        THE COURT:  Right.

2        MR. SALZMAN:  We would oppose consolidation, your

3   Honor.  It is our view that there is a great deal to be done in

4   the most recent case that we filed, obviously that that case has

5   just gotten off the ground.

6        We are prepared to start Discovery in that case and

7   then obviously the Defendant would have the right to file

8   Dispositive Motions.  I think we have a long track in front of

9   us on that case, your Honor.  And that case, of course, deals

10  with a non promotion in 2004.

11       Certainly some of the issues are similar, but it is a

12  separate and discrete non promotion from the claims in the first

13  case which involved non promotion in 2000 and 2001.

14       THE COURT:  2001.

15       MR. SALZMAN:  Right.  And, your Honor, in the first

16  case, the Court denied the opportunity to proceed with a

17  collective action and we understand the Court's ruling on that.

18  We think that we have cured the problems in the administrative

19  filing with respect to the 2004-case and certainly would like

20  the opportunity to explore a collective action in the later case

21  which I think is going to be a more complicated proceeding and

22  perhaps a longer fuse towards Dispositive Motions and trial.

23       So for all of those reasons, your Honor, we think it

24  would be appropriate to move forward with the first case towards

25  trial.  It is our view that we are very close to ready, being

Page 5

1    ready for trial in that case.  There is a much more limited

2    amount of Discovery that we think would be appropriate in that

3    case which I would be happy to address.

4           THE COURT:  How much time would you need for Discovery?

5           MR. SALZMAN:  Your Honor, our view would be the end of

6    January we could complete it and look for the trial at the

7    Court's earlier opportunity after that.  Perhaps the spring,

8    March or April if the Court is available or whenever is the

9    earliest opportunity from that point on.

10          But we think that we have some document requests and

11   Interrogatories and a few depositions on some matters, but that

12   after that this first case is ready to be tried and that's what

13   should happen.

14          THE COURT:  How long a trial do you think it would be?

15          MR. SALZMAN:  Your Honor, I would think it may be four

16   to 5 days of trial in the first case would be our best estimate.

17          THE COURT:  Is that your case or is that all of it?

18          MR. SALZMAN:  No, I would think all of it.  I think

19   that's the first case would be my best guess.  I would think

20   that the Plaintiffs could put on their case in two and a half

21   days.

22          THE COURT:  How many witnesses roughly?

23          MR. SALZMAN:  I would think, your Honor, we would be

24   talking about maybe seven to eight witnesses on the Plaintiff's

25   side from the perspective of Mr. Murphy is our Plaintiff for the

1    presentation of the evidence.  Some of those would be adverse

2    witnesses that we would probably call in our case in chief.

3              THE COURT:  All right.  Let's hear from your colleague.

4              MR. SALZMAN:  Thank you, your Honor.

5              THE COURT:  All right.  Mr. Rose.

6              MR. ROSE:  Your Honor, Mr. Schuler is not a part of the

7    second case, your Honor; and I will explain that in a moment so

8    we think it should not be consolidated for trial.

9              I should say that Mr. Schuler has filed a charge

10   concerning the same years, well, 2004 and it was encompassed in

11   our view the 2005 events.  I would note that if there is a

12   ruling for the Plaintiffs as we obviously wish there will be,

13   hope there will be, that PriceWaterhouseCoopers would be bound

14   to by the findings I think if the findings are that the -- that

15   it has engaged in age discriminatory practices, so I don't think

16   there would be a need for a separate trial except conceivably on

17   the grounds of damages; and I really don't think that's terribly

18   likely.

19             So I think if we proceed to trial in the first case,

20   which has both Plaintiffs, that would be highly superior and

21   would expedite the resolution of both cases.

22             I should say that Mr. Schuler has filed the charges as

23   I indicated so that we would -- if there is a likelihood that

24   that has been stayed by agreement of the parties, that is, by

25   agreement of PWC and us so we can privately work out something

1    along those lines.

2        THE COURT:  How long do you think it would take for you

3    to put your case on?

4        MR. ROSE:  I think that Mr. Salzman and I had discussed

5    that and we join with the general time frame, four or 5 days,

6    eight, ten possibly twelve witnesses, but I think it is more

7    like ten, nine or ten.  I don't think it is going to take too

8    long.  That would include the adverse witnesses who would be

9    witnesses --

10       THE COURT:  Yes, but if the -- if each Plaintiff has

11   seven or eight witnesses --

12       MR. ROSE:  No, no, no.  Most of them are the same.

13       THE COURT:  Okay.

14       MR. ROSE:  They worked in the same unit, your Honor.

15   They had the same supervisor, that partner Bench reported to

16   partner Ryan; partner Ryan reported to partner Moritz.  So we

17   have got the same general cast of characters.  Obviously there

18   will be a few others of the eight to ten or twelve is an

19   educated guess obviously, but -- so we think it would be most

20   efficient to, in most cases it is easier to consolidate and it

21   is more efficient; but in this particular instance, we think it

22   would be - -lend to efficiency to keep them separate.

23       THE COURT:  All right.  Very good.  Mr. Nelson.

24       MR. NELSON:  Judge, the underlying issues in both cases

25   are identical and the Plaintiffs are relying principally on the

1    partner retirement provision which PWC asserts as a defense to

2    both actions.

3         And in addition the Plaintiffs at least to date and

4    maybe they have abandoned this I thought intended to place

5    considerable reliance on statistics, and I don't hear any

6    mention of that at this point.

7         I will note that in the joint report, 16.3 report that

8    we just submitted in the second action the parties agreed that

9    expert Discovery reports, depositions would proceed after the

10   conclusion of the fact Discovery and that that Discovery I think

11   we reserved the total of 150 days for that.

12        I am not sure whether that's still part of this case or

13   not.

14        THE COURT:  So if we started with Discovery let's say

15   at least in theory now, I am only talking hypothetically, I

16   haven't made a decision yet here, but if we started Discovery on

17   the second case, say, next month, November, from your point of

18   view, do you think Discovery might be completeable in four,

19   5 months?  Let's say 6 months.

20        MR. NELSON:  Yes, I think it probably could be

21   completed in 6 months.  I think that, you know, we have -- under

22   the supervision of Magistrate Judge Robinson, Discovery in the

23   first action was to be conducted in phases and Discovery in that

24   action to date has been extensive but limited to questions of

25   liability on promotion claims.

1          Damages Discovery was deferred in August of 2003 and

2     all Discovery was stayed in November of 2004.

3          And I would think in the normal course we would go back

4     to Magistrate Judge Robinson to pick up and develop a Discovery

5     plan for the rest of the case.

6          THE COURT:  Sure.

7          MR. NELSON:  I mean the cases really are identical.

8     You have the pending action involves the alleged denial of

9     promotion in 2001 and the newer action by Mr. Murphy involves

10    the denial of promotion in 2004.

11         I am not really sure what consolidation means.  I do

12    know we mentioned that in the joint report, but Mr. Salzman in

13    the second action has agreed that all Discovery taken in that

14    action and all Discovery, Protective Orders that are entered

15    should be deemed taken -- I am sorry, in the first action should

16    be deemed and fully applicable to the second action as if it

17    were taken in a that action.

18         I think Discovery in these 2 cases should proceed in

19    tandem.  Mr. Rose just said that he thinks the cases are in

20    essence identical because he is saying that a resolution of the

21    first case on the merits should resolve the issues in the

22    second.  So that they are the same.

23         As I said, I just think that Discovery should proceed

24    in tandem.  The parties in the joint statement in the second

25    action are in agreement on a number of things.  We have agreed

1    to dispense with initial disclosures recognizing that what

2    occurred in the first action would apply to the second action.

3    We have agreed the case should be referred to Magistrate Judge

4    Robinson as it was in of the first action.

5            THE COURT:  Sure.

6            MR. NELSON:  As I mentioned we have agreed that all

7    Discovery and Protective Orders entered in the first action or

8    taken and entered in the first action should apply to the

9    second.  So I think -- and I think in the second action, Mr.

10   Murphy's counsel has suggested that Discovery, fact Discovery,

11   should be taken over a period of 180 days.

12           We suggested 240 days, and both parties agree that that

13   should be followed by expert Discovery.

14           This case has had a sort of haphazard history because

15   certain Motions were made early by the Plaintiffs and we got

16   delayed in making McDonald Douglas Motion.  We also believe that

17   that there is and remains a dispositive issue that would apply

18   to both these actions.

19           And it was an issue that was fully briefed by the

20   parties on the initial Cross Motions for Partial Summary

21   Judgment on the pattern and practice claims.  Your Honor did not

22   reach that issue because the claim then at issue was dismissed

23   on other grounds.

24           And on PWC's more recent Summary Judgment Motion on

25   Plaintiff's individual claims under the McDonald Douglas

1    standard, the issue was raised by the Plaintiffs in opposition

2    and it was briefed by PWC in reply, but it was not affirmatively

3    asserted on that Motion.

4         As I mentioned, the parties cross moved -- the Court

5    did not reach it.  The facts are not in dispute and it is an

6    issue that consistently has been resolved by courts on Summary

7    Judgment.  There were a number of cases, Circuit Court decisions

8    from various Circuits cited in the -- on the initial Cross

9    Motions on the pattern and practice claim and in every single

10   case the question was resolved, the question partner employee

11   issue was resolved on Summary Judgment and at least one or two

12   Circuit Courts, you know, actually discussed the fact that

13   that's the way it should be resolved.

14        The fact of the matter is is that if the partner

15   retirement provision is lawful and we don't think this is even a

16   close question or a difficult question, neither of these

17   Plaintiffs have a claim.  Neither of them do.

18        THE COURT:  Okay.

19        MR. NELSON:  So we think that frankly that that issue

20   and Plaintiffs have most recently said they need further

21   Discovery on the allegation that PWC Plaintiffs should be deemed

22   employees, then they previously moved on what presumably they

23   thought was a complete Discovery record, if they want more

24   Discovery on that issue, let's have this Discovery and let's

25   have this issue resolved as it has been in every other case in

1    which it has been raised.

2         THE COURT:  Okay.

3         MR. NELSON:  Thank you.  Mr. Salzman, what's your

4    take -- I mean obviously Mr. Rose's situation is a little

5    different.  He is not in the second case.

6         MR. SALZMAN:  Yes, your Honor.

7         THE COURT:  But as to your client's Discovery needs in

8    the second case, do you think if we started Discovery the

9    beginning of November, we could get it wrapped up within

10   6 months?

11        MR. SALZMAN:  Your Honor, I think that it is possible

12   to do that and likely that we could do that if we are dealing

13   only with an individual claim for Mr. Murphy.

14        The second case, however, does expressly reserve the

15   right to proceed under the ADA under a collective action and I

16   do think that one of the initial rounds of Discovery that we

17   would be involved in would be getting the names and addresses of

18   the other people who are similarly situated to Mr. Murphy within

19   PWC for a particular level within the management ranks of PWC

20   and at a particular age so that they may be considered under the

21   law to be similarly situated to Mr. Murphy and to assess whether

22   we have a collective action here.

23        THE COURT:  How long is that going to take?

24        MR. SALZMAN:  I think we will be ready to serve upon

25   them some Discovery requests getting that information, your

1    Honor, but then as the Hoffman LaRoche case I believe it is

2    talks about I think we would be involved with the Court in

3    sending out a notice out to those potential Plaintiffs.

4         My sense is that there would be comment on from both

5    sides and probably with the Court, necessity for the Court to

6    resolve that issue, and then be mailing out the notices to the

7    potential Plaintiffs to find out -- and give them sufficient

8    time to respond so that we find out whether there is anyone out

9    there who wants to join this action.

10        We don't know whether there is.  But that is a process

11   that I think might take some time and could certainly slow down

12   the second case.

13        THE COURT:  Let's say it gets us into the fall.  This

14   case can't get tried in this Court between now and next summer.

15   There is zero chance.

16        MR. SALZMAN:  Okay.

17        THE COURT:  Zero.  I have a 12-week Colombian drug

18   trial starting the end of January.

19        MR. SALZMAN:  Understood, your Honor.

20        THE COURT:  And we have a U.S. Attorney's Office until

21   the private bar can figure out a way to influence it differently

22   that inundates us with these small criminal cases --

23        MR. SALZMAN:  Right.

24        THE COURT:  -- that have constant trial demands and

25   Speedy Trial Act Motions and all kind of issues and, you know,

1    we are just constantly in trial.  Constantly.

2          So all civil cases have to take, you know, give way to

3    criminal which is our law, that's our system; and getting a

4    civil trial in this District right now is very difficult.

5          I have had to bump I think three this year that I had

6    scheduled at different times to accommodate the Speedy Trial Act

7    and we just have this constant deluge of criminal cases coming

8    in here.  And that's not the kind of cases like my Washington

9    Teachers' Union trial, that was 13 weeks this summer and my

10   Colombian drug case coming up which will be 12 weeks starting in

11   January, so when you get a big one, what happens is the little

12   ones get put on hold and then when that ends, then the little

13   would ones have to get the first, as is the law and as is

14   understandable under the Constitution, they get the first bite

15   at the apple.

16         So civil trials, months, months, years out and I tell

17   all the civil litigators who come in here realize what you are

18   dealing with and, if you want to get a resolution and get it

19   behind you, go have a mediation or go have an arbitration or,

20   you know, come up with another way of dealing with it; but if

21   you want a civil trial in this District right now until things

22   change across the street, it is a long wait.

23         So this case, this case one, there is no way it is

24   getting tried between now and next summer and next summer it is

25   just not realistic.  So you are looking at the earliest of next

1   fall.  I mean if then and you have got six, eight, 9 months

2   where you could maybe get the second case Discovery wrapped up

3   in theory at least.

4        We don't know where this issue of the collective action

5   will come out.  I mean no one knows.  I don't think you even

6   know for certain.  I don't know.  How could I know?

7        If it should come to pass that it doesn't pan out at

8   least in theory, then we would have everything done for the

9   other -- for the parties, the case we could move forward and do

10  it in one fell swoop it would seem to me.  Boy, two separate

11  trials under the current situation, that second trial might not

12  take place for two, three, 4 years now.

13       MR. SALZMAN:  Understood, your Honor.

14       THE COURT:  So I would be concerned about pushing, keep

15  pushing it back and, I don't know, if you all could see your way

16  to getting your Discovery done in say the next 9 months, maybe

17  there is a chance we could get this all tried and behind you by

18  next fall.  At least a chance.

19       MR. SALZMAN:  Your Honor, I have one thought with

20  respect to that, but then also if that's the schedule that we

21  are looking at, I think fairly that does change things.  But,

22  your Honor --

23       THE COURT:  I am trying to be realistic.

24       MR. SALZMAN:  I appreciate that, your Honor.

25       THE COURT:  I don't want the parties -- I like to give

Page 16

1    the parties a chance to digest this too.

2            MR. SALZMAN:  Yes.

3            THE COURT:  Because you are hearing it for the first

4    time here and I know, you know, I have been in your shoes.  You

5    have got to sit down and talk amongst yourselves, talk to your

6    clients.  You have to take the temperature and then you might

7    want to talk amongst yourselves both sides, say where are we

8    going here?

9            MR. SALZMAN:  Yes, sir.

10           THE COURT:  You know, I am heartened to hear that you

11   think it can be tried in 4 days because now that may or may not

12   be realistic but it sounds to me if you combine these 2 cases,

13   we are looking at a two-week trial.  Maybe more than 2 weeks but

14   certainly at least a week and half to 2 weeks.

15           And that's with the economy of scale.  There is

16   actually advantages I think to doing them together from an

17   economy, trial economy and jury selection economy.

18           So a two-week trial, you know, like I say, late

19   probably mid to late fall at the earliest and it could very well

20   be into the next year.  I don't know.

21           MR. SALZMAN:  Your Honor, just one thought that our

22   firm has had several trials in front of the Magistrate Judges.

23   We would certainly be prepared to try the first case in front of

24   the Magistrate Judge since in our view that case is very close

25   to being ready to be tried with the second case, you know,

1    proceeding --

2         THE COURT:  It has to be a mutual deal.

3         MR. SALZMAN:  Understood, your Honor.  If that is not

4    mutually agreed upon, then I would like to talk with my client

5    about it and Mr. Rose about it and I do understand what the

6    Court is saying.  I don't think anyone wants to have more trials

7    than we need to resolve all of the issues in this case.

8         I would also say, your Honor, that one concern I have

9    is the number of bites at the apple of Dispositive Motions that

10   I think the Defendant should have in this case and, if the cases

11   are consolidated, it is our view that this Court has addressed

12   the material issues in this case of motive --

13        THE COURT:  The first case is done in terms of that.

14        MR. SALZMAN:  That is certainly our view, your Honor.

15        THE COURT:  If the cases were consolidated for trial

16   purposes let's say, I mean at least in theory, and I want to

17   think about this myself, but at least in theory we could proceed

18   on separate tracks at the moment for the Discovery in the second

19   case, have a separate Discovery schedule in the second case with

20   the idea of joining them both later for trial.  I mean that's

21   one possibility.  Like I say, I want you all to be able to

22   digest a little of this too.

23        My thought would be go back to your corner so to speak,

24   think about it, talk to your clients and then maybe within the

25   next 2 weeks submit whatever thoughts you have.  It doesn't have

1    to be in a Motion but, you know, could be I guess in a Motion

2    format.  We don't tend to do things in letter format in this

3    District, but I guess my ideal would be if we are not going to

4    consolidate them for Discovery purposes, then both parties for

5    the second case submit a joint proposed Discovery plan for the

6    second case and we get the Discovery moving on the second front,

7    but we be thinking down the road to the idea of getting them

8    consolidated for the purposes of trial.

9            So let me think about that.  I am not asking you to

10   commit today.  I am asking you to think about it.

11           Maybe what makes some sense as I ruminate a little bit

12   with you is just set a status in about 4 weeks.  That would give

13   you a little time to digest it, talk to your client, figure it

14   out.  File something if you want in the next couple of weeks and

15   then I will set a hearing sometime in late November or mid

16   November, something like that; and then we can take the

17   temperature.  How does that sound?

18           MR. SALZMAN:  That sounds great, your Honor.  Thank

19   you.  We will be happy to do that.

20           THE COURT:  Mr. Nelson, come on back.  Mr. Rose, do you

21   want to get in on this second case thing?  I mean you don't

22   really have a dog in that fight.

23           MR. SALZMAN:  I do really, your Honor.  I do.

24           THE COURT:  Go ahead.  I will give you a chance to

25   speak.

1          MR. ROSE:  We have a second charge which if the cases

2     are going to continue in litigation, would result in a case of

3     the same kind and it would make sense for the parties to agree

4     that the 2 cases be consolidated, that is, the two -- there is

5     not yet a 2005-case.

6          THE COURT:  I was going to say I am not aware of any

7     other case.

8          MR. ROSE:  No, there is not but the parties have

9     agreed -- we have filed a charge.  It is mature.  We could have

10    filed but we agreed to hold off.

11         THE COURT:  Okay.

12         MR. ROSE:  So I do have a dog in that.  Let me just say

13    one other thing, your Honor.  That is as far as whether or not

14    the parties -- whether or not partners are employees and there

15    is a difference between the parties on that, the right to be

16    promoted to partnership is a right even with a true partnership,

17    one where the partners are real partners and are not simply one

18    of a large number who don't have very much control which is what

19    we think the situation is.

20         So I don't think that that issue is at all dispositive.

21    It is the Hopkins versus PriceWaterhouse case.  PriceWaterhouse

22    was obviously a predecessor to the present company and Mr. Huron

23    handled that case for Miss Hopkins and so we are quite familiar,

24    he is more familiar with it than I, but --

25         THE COURT:  I understand.

1          MR. ROSE:  But we are quite familiar with it.  So there

2     is a right to equality and opportunity for partnership even

3     apart from the question of whether many of the partners are

4     employees or not.

5          THE COURT:  All right.  Okay.  Mr. Nelson.

6          MR. NELSON:  Judge, I am not going to argue the

7     employee/partner issue today.

8          THE COURT:  Not today.

9          MR. NELSON:  Just a couple comments.  One, I think I

10    understand what Mr. Rose is saying that there might be a third

11    case filed.

12         THE COURT:  I think we are all on the same page.

13         MR. NELSON:  Yes.  I just wanted to comment on Mr.

14    Salzman's mention of a collective action in the second case.  He

15    mentioned the Hoffman LaRoche case.  I just want to be clear

16    that we don't concede that the second action is appropriate for

17    collective action treatment.

18         THE COURT:  Right.

19         MR. NELSON:  The Supreme Court in Hoffman LaRoche held

20    that notice in a collective opting action of this type should be

21    nailed down if at all early in the litigation similar to the

22    provision in Rule 23, the class notice be sent at an early

23    practicable time.

24         Mr. Murphy's first action was filed over 3 years ago

25    and there has been extensive Discovery and dispositive Motion

1    practice since then.

2         Mr. Salzman has agreed that all Discovery and all

3    Discovery and Protective Orders entered in the first action be

4    deemed taken in the second action so in essence with regard to

5    pretrial proceedings, the new action for all intents and

6    purposes has the equivalent of over 3 years of Discovery Motion

7    practice in it.

8         I mean it is already by stipulating that Discovery in

9    one plus the other it is already in some sense been

10   consolidated.

11        The point is that this is not really an early juncture

12   in the case when notice might be appropriate.  Moreover, and Mr.

13   Salzman says we don't know what will happen if the notice went

14   out and even if notice was timely here, we submit that the only

15   similarly situated employees are those in the practice group

16   over the age of 60.

17        Mr. Murphy has testified that he is already solicited

18   the intervention of just about every employee who is arguably

19   similarly situated here and they have all declined the

20   invitation and we have extensive deposition testimony.

21        Under these circumstances I think notice would be

22   probably be nothing more than a waste of time and money.

23        Let me just add one more point with respect to notice.

24   And that is that anyone who responded to an opt in notice by

25   seeking to join the action to intervene would be entitled to

1    appear by their own counsel.

2         And at this late date any opt-ins would have to agree

3    to be bound by the extensive prior proceedings as Mr. Murphy has

4    or PWC would otherwise be subjected to duplicative Discovery and

5    duplicative Motion practice.

6         PWC in any event would be entitled to take Discovery

7    including from any opt-ins including the depositions and we

8    simply submit that it is too late in the game for that.

9         Plaintiffs should be proposed early in the litigation,

10   not after substantial Discovery and Motion practice and a new

11   Plaintiff intervening in this case.  Even in the so-called new

12   case which is not a new case at this stage would give rise to

13   further delay, potential prejudice and some very, you know,

14   difficult management problems I think.

15        In any event, we are not agreeing, that seems to be

16   assumed that notice is appropriate, we don't think it is and if

17   they make the Motion, then we will probably oppose it but this

18   is an issue that we will certainly discuss with --

19        THE COURT:  Well, what might be doable, I am thinking

20   out loud here so don't hold me to any of this, what might be

21   doable is for the two of you, three of you in discussing it,

22   three parties discussing it to structure Discovery process which

23   anticipates a filing deadline of any Motion that would object or

24   challenge an opt in process and then, of course, with a response

25   time factored into it and then that could at least get so to

1    speak raised initially or early and while it is being considered

2    by the Court, other Discovery could proceed and hopefully

3    progress could be made and with any luck, we could get a ruling

4    not too long after.

5         It is hard to guarantee that.  One doesn't know what

6    else is coming around the next bend, but try to get a ruling

7    sooner than average in order to give you guidance as to how are

8    we going to deal -- if the Defendant were to lose, for example,

9    such a Motion, then how do we proceed in dealing with the

10   Plaintiff's need to notify people and do all the things that a

11   Plaintiff needs to do to see if there is a realistic opt in

12   class.

13        So when you are talking, you might want to think about

14   how to structure the process in a way that would get that issue

15   raised early, get it briefed early.  Separate and apart from any

16   ultimate Dispositive Motions that could be filed which really

17   you need the benefit of Discovery before you can really

18   realistically be in a position to either raise it or oppose it,

19   so kind of a bifurcated Motion track for lack of a better way of

20   putting it.

21        MR. NELSON:  I think your Honor's suggestion especially

22   in light of your Honor's advice as to circumstances of the

23   Court, the criminal calendar and the like, I think your Honor's

24   suggestion that the three of us confer about how to proceed with

25   Discovery, dispositive Motion issues and the class notice issue,

1    the opt in class issue.

2         I just point out though that the suggestion that

3    Discovery proceed before the class, collective action is

4    resolved could be problematic and we don't expect anyone would,

5    if anyone did opt in, as I say, they would be entitled to come

6    in with counsel of their own choice and the case becomes even

7    further advanced.  You know, it could create some difficulties

8    at this juncture.

9         Also I think the best suggestion was that we confer in

10   light of what your Honor has advised us.  I am not sure where we

11   stand with the question of experts and I am happy if it is out

12   of the case because that is quite an extensive exercise.  I

13   don't know where things are.  I know what was in the joint

14   report.  I am not sure what I am hearing today is the same.

15        THE COURT:  I think the other thing that I think gives

16   rise to hope is that there is at least a mutual agreement at the

17   moment as far as I can tell to have the assistance of one of our

18   Magistrate judges to keep moving things along.

19        And so while I am being tied down on the criminal

20   docket front, you all can hopefully keep moving things forward,

21   getting to a point where you are getting to either Dispositive

22   Motions or trial preparation and trial --

23        MR. NELSON:  I think the Magistrate Judge has

24   supervised Discovery to be conducted in phases.  We left off at

25   a certain juncture.  I think we can pick up.  I think your

Page 25

1    Honor's suggestion that we come back to see your Honor in an

2    about a month and that we --

3                THE COURT:  Let's do that.

4                MR. NELSON:  -- and discuss all these issues among

5    ourselves is a good one including, you know, to what extent the

6    Magistrate Judge can help here.

7                THE COURT:  Good.

8                MR. NELSON:  Thank you.

9                THE COURT:  Get your calendars out.  Take a look at

10   November 21st. See how that day is looking.  That's a Monday.

11               MR. NELSON:  I know I am clear.  When is Thanksgiving?

12               THE COURT:  That's the 24th.  That's Thursday.

13               MR. SALZMAN:  Your Honor, November 21st is fine with

14   me.

15               MR. NELSON:  That's a Monday?

16               THE COURT:  It is a Monday.  Are you away that whole

17   week?

18               MR. NELSON:  No, sir.  I wish I was.

19               THE COURT:  So do I.

20               MR. NELSON:  If it is a Monday, I appreciate the

21   afternoon because we are going to come down from New York.

22               THE COURT:  That's right.

23               MR. NELSON:  That's fine if we could do it in the

24   afternoon of the 21st.

25               THE COURT:  Well, unfortunately I have a Motion Hearing

1    all afternoon.  So that's the issue on Monday, but what if I did

2    late morning?

3          MR. NELSON:  We could do that, your Honor.

4          THE COURT:  Let's say like 11:30.  That gives you time

5    to take the Acela train and get down here.

6          MR. NELSON:  Right.  Thank you, Judge.

7          THE COURT:  We don't need probably much more than an

8    hour.

9          MR. NELSON:  I would hope not.

10         MR. SALZMAN:  I think that's probably right, your

11   Honor.  I would ask, and sorry to ask for one more comment on

12   this.

13         THE COURT:  Sure.  Go ahead.

14         MR. SALZMAN:  We agreed to use the prior Discovery in

15   this case because we thought that made sense not to duplicate

16   Discovery.  I think that is an efficient way to do it.

17         THE COURT:  That's right.

18         MR. SALZMAN:  But it is our view if we are looking at

19   another month before we come back, we can use that time.  If it

20   is clear that there is going to be Discovery to be done in these

21   cases, then we would ask for the green light to go ahead and

22   issue it now.

23         THE COURT:  Well, what I was envisioning, and maybe I

24   am not envisioning it correctly or most efficiently, but what I

25   was envisioning was in a couple weeks, a couple weeks to digest

1    and talk with your clients.

2         MR. SALZMAN:  Yes, sir.

3         THE COURT:  Maybe a day or two or three to talk to one

4    another.  Then I was hoping, again I use the word hope, I was

5    hoping that maybe there could be an agreement or meeting of the

6    minds about a kind of a proposed joint Discovery approach.  Now,

7    it is a little more complex than I initially thought because Mr.

8    Rose has indicated there may be a need for another suit which I

9    hadn't thought about frankly so I need to give you all a chance

10   to think about that and factor that in.

11        And that might indeed -- I think especially if there is

12   another suit it might make it a little more complicated to do

13   all the things that I think you need to do plus that Discovery

14   in the space of the next 4 weeks.  I just got a feeling that I

15   have given you a little bit of an ambitious set of goals to even

16   get done.  Maybe I am wrong.

17        But I got a feeling that I have.  So the ideal from my

18   point of view would be if you could all reach -- if Mr. Rose is

19   going to proceed, then, fine.  Draft and file the new suit.

20   Then the three of you, three teams so to speak sit down and

21   figure out a mutually agreeable Discovery game plan that

22   everyone can see makes some sense, build into it the issue about

23   the separate group.

24        And then I think at least then we will have kind of a

25   game plan to proceed on so that time doesn't get wasted and you

Page 28

1  all can get going.

2          MR. ROSE:  That's fine, your Honor.

3          MR. NELSON:  I think we can endeavor to do that.

4          MR. SALZMAN:  I think we will be okay.

5          THE COURT:  It is in everyone's interest.

6          MR. NELSON:  Mr. Rose mentioning the possibility of a

7  third action, I mean this could end up being a perpetual case

8  because each year new partners are made in each July 1st cycle

9  and they can file charges and continue this.  It could multiply

10 each year.  I don't know what the intentions are, but in any

11 event, I think what we have is what we have at the moment and I

12 am confident that Mr. Salzman and Mr. Rose will take a good

13 crack at the trying to figure out the best way to proceed here.

14         THE COURT:  I think that makes some sense.  All right.

15 Have a good evening everyone.  Talk to you later.

16         (Whereupon, at 5:04 p.m., the proceedings were

17 concluded.)

18

19

20

21

22

23

24

25