UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| C. WESTBROOK MURPHY )<br><br>Plaintiff, )<br><br>v. )<br><br>PRICEWATERHOUSECOOPERS, LLP )<br><br>Defendant. ) | Case Nos. 1:02CV00982 (RJL/DAR)<br>1:05CV01054 (RJL/DAR) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF MURPHY'S
MOTION TO COMPEL DISCOVERY RESPONSES**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Attorneys for Defendant

## **TABLE OF CONTENTS**

Page

Table of Authorities .......................................................................................... ii

Preliminary Statement ....................................................................................... 1

Statement of Facts ............................................................................................ 5

    A.   Stipulated Statement of Procedural History through October 2004 ............. 5

    B.   The November 22, 2004 Order Denying Further Discovery ........................ 9

    C.   The Application of the November 22, 2004 Order to Case 2 Pursuant to the January 9, 2006 Scheduling Orders and the Filed Stipulations of Counsel .......................................................................................... 12

    D.   Damages Discovery ................................................................................. 14

    E.   Clackamas Discovery .............................................................................. 15

    F.   Comparator Discovery ............................................................................. 16

    G.   Murphy's Discovery Requests .................................................................. 20

    H.   Discovery Conferences between Counsel ................................................. 21

Argument ......................................................................................................... 23

    I.   THE NOVEMBER 22, 2004 ORDER BARS FURTHER FACT DISCOVERY ON LIABILITY IN CASE 1 AND LIMITS SUCH DISCOVERY IN CASE 2 ....... 23

    II.   DISCOVERY ON MURPHY'S NONPROMOTION CLAIMS SHOULD BE LIMITED TO THE RAS UNIT IN WHICH MURPHY WAS EMPLOYED .......... 27

    III.   THE "DAMAGES" DISCOVERY SOUGHT IS OVERBROAD AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE ................................................................. 32

        A.   Back Pay/Compensatory Damages .......................................................... 32

        B.   Partner Retirement Benefits ..................................................................... 34

        C.   Punitive Damages .................................................................................... 34

    IV.   PwC HAS AGREED TO PROVIDE, AND HAS PROVIDED, ADDITIONAL DISCOVERY ON CLACKAMAS ISSUES ................................................. 37

Conclusion ....................................................................................................... 39

i

## TABLE OF AUTHORITIES

### CASES

Arthur Young & Co. v. Sutherland, 631 A.2d 354 (D.C. 1993).......................................35

Berger v. Iron Workers Reinforced Rodmen Local 201,
    170 F.3d 1111 (D.C. Cir. 1999)....................................................................33, 34

Burns v. Hy-Vee, Inc., No. 02-254 (JRTFLN),
    2002 WL 31718432 (D. Minn. Nov. 21, 2002)......................................................30

Byers v. Illinois State Police, No. 99 C 8105,
    2002 WL 1264004 (N.D. Ill. 2002).................................................................31-32

Carman v. McDonnell Douglas Corp., 114 F.3d 790 (8th Cir. 1997) .............................28

Carter v. George Washington University, 387 F.3d 872 (D.C. Cir. 2004) ......................27

Chenoweth v. Schaaf, 98 F.R.D. 587 (W.D. Pa. 1983).................................................36

Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440 (2003)...............3

Daka v. McCrae, 839 A.2d 682 (D.C. 2003) .............................................................35, 36

Daniels v. Goldin, Civ. A. No. 90-1533 (NHJ), 1995 WL 57467
    (D.D.C. Jan. 30, 1995) ..........................................................................................33

E.E.O.C. v. Colgate-Palmolive Co., 612 F. Supp. 1476 (S.D.N.Y. 1985) .................33-34

Earley v. Champion International Corp., 907 F.2d 1077 (11th Cir. 1990) .................28-29

Hazeldine v. Beverage Media, Ltd., No. 94 CIV. 3466 (CSH),
    1997 WL 362229 (S.D.N.Y. Jun. 27, 1997)...........................................................37

Holcomb v. Powell, 433 F.3d 889 (D.C. Cir. 2006) ......................................................27

Hussain v. Nicholson, 435 F.3d 359 (D.C. Cir. 2006) ..............................................25-26

James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979)..............................29

John Does I-IV v. Yogi, 110 F.R.D. 629 (D.D.C. 1986)..................................................36

Koonce v. Merit Oil Co. of the District of Columbia, Inc., Civ. A. No. 89-2977
    (JHG), 1991 WL 102634 (D.D.C. Jun. 4, 1991) ....................................................36

Link v. Wabash R.R. Co., 370 U.S. 626 (1962) ............................................................26

Macintosh v. Building Owners and Managers Association International, 231
    F.R.D. 106 (D.D.C. 2005) ................................................................................26n.

Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179 (1st Cir. 1989) .............29

Marshall v. Westinghouse Electric Corp., 576 F.2d 588 (5th Cir. 1978) ........................29

Mitchell v. National Railroad Passenger Corp., 208 F.R.D. 455 (D.D.C. 2002) .............32

Mungin v. Katten Muchin and Zavis, 116 F.3d 1549 (D.C. Cir. 1997)........................27-28

Murphy v. PricewaterhouseCoopers LLP, 357 F. Supp. 2d 230 (D.D.C. 2004)...............4

Olgyay v. Society of Environmental Graphic Design, Inc., 169 F.R.D. 219
    (D.D.C. 1996)....................................................................................................26

Peskoff v. Faber, 230 F.R.D. 25 (D.D.C. 2005) ............................................................36

Pleasants v. Allbaugh, 208 F.R.D. 7 (D.D.C. 2002).......................................................32

Scales v. J.C. Bradford & Co., 925 F.2d 901 (6th Cir. 1991) .........................................28

Security Insurance Company of Hartford v. Meyer Trading Co., Inc.,
    Civ. A. No. 86-4522, 1987 WL 8207 (E.D. Pa. Mar. 20, 1987).......................36-37

Sundaram v. Brookhaven National Laboratory, No. CV-94-2330,
    1996 WL 563829 (E.D.N.Y. Mar. 11, 1996) ...................................................29-30

Vernon v. Port Authority of New York & New Jersey, No. 95 Civ 4594 (PKL),
    2003 WL 1563219 (S.D.N.Y. March 26, 2003) ..................................................33

Walker v. Dalton, 89 F. Supp. 2d 20 (D.D.C. 2000).......................................................33

Waters v. United States Capitol Police Board, 216 F.R.D. 153 (D.D.C. 2003) .....26n., 30

## FEDERAL RULES

Fed. R. Civ. P. 16(b)......................................................................................................25

## Preliminary Statement

These related cases involve straightforward denial of promotion claims under the Age Discrimination in Employment Act ("ADEA").  Plaintiff C. Westbrook Murphy ("Murphy"), a professional employee of defendant PricewaterhouseCoopers LLP ("PwC"), complains in Case 1 (No. 02-982) of his nonpromotion to partner effective July 1, 2000 and July 1, 2001, and, in Case 2 (No. 05-1054), effective July 1, 2004, allegedly because of his age.[1]

Case 1 was filed in May 2002, and the parties have since completed fact discovery on liability in that action pursuant to Orders of this Court.  Case 2 was filed in May 2005.  Pursuant to Joint Statements filed by counsel for the respective parties in Case 2, and Scheduling Orders issued in accordance with those Joint Statements, all discovery taken and to be taken in either Case 1 or Case 2 is deemed applicable to both cases, and all discovery and protective orders previously entered in Case 1 are deemed applicable to Case 2.

Apart from those provisions of the recent Scheduling Orders, Judge Leon admonished counsel at a status hearing on December 8, 2005 to attempt to proceed with discovery in these related cases "with maximum efficiency" to contain the expenses and burden of "costly litigation" (Murphy Motion, Tab 7 at 14).  Judge Leon emphasized the point by stating that he "would appreciate any effort" by counsel "to keep this streamlined and keep it efficient because this can get real expensive" (id.).

---

[1] Murphy's co-plaintiff in Case 1, Harold Schuler, is the plaintiff in a third related case (Schuler v. PricewaterhouseCoopers LLP, No. 05-2355) (Case 3), complaining of Schuler's nonpromotion to partner effective July 1, 2004, allegedly because of his age.  PwC has moved for judgment on the pleadings in that case.

Despite the advanced state of discovery, which commenced in March 2003 --
and notwithstanding the above-noted provisions of Judge Leon's recently entered
Scheduling Orders -- Murphy's counsel served a total of 122 separate interrogatories
and document requests (exclusive of subparts) immediately following Judge Leon's
"maximum efficiency" and "streamlining" comments at the December 2005 status
hearing.  Moreover, for whatever reason, Murphy's counsel chose to serve separate
and, in many instances, overlapping and redundant requests in each of the two actions.

The potential for undue burden and oppression is compounded by the fact that
PwC is a large firm, with over 20,000 employees and more than 2,000 partners
dispersed among 86 offices in 36 states around the country.  Until his voluntary
retirement, with fully vested benefits, a few weeks ago, Murphy had been employed in
PwC's District of Columbia office in its Regulatory Advisory Services ("RAS") unit,
described by Murphy as "a relatively small consulting group within PwC's Banking
Practice" (Murphy Mem. at 4).  Murphy seeks to predicate a *prima facie* case of age
discrimination on the admission as partners of two younger employees in the RAS unit
in the District of Columbia -- David Albright and Jeff Lavine -- effective July 1, 2000
(Case 1) and July 1, 2004 (Case 2), respectively (id. at 4-5).

If Murphy had been admitted as a partner -- despite his lack of qualifications for
partnership and of a genuine interest in becoming a partner -- he would have been
subject to immediate retirement under the provisions of PwC's partnership agreement,
without the more recently vested benefits he is now receiving as a retired employee.
Under the circumstances, Murphy is not aggrieved by an "adverse employment action,"
and therefore lacks standing, as a matter of law, to complain of his non-admission as a

partner.  To avoid dismissal on this ground, Murphy claims that the partner retirement provision, which is outside the coverage of the ADEA, is unlawful based on his allegations that PwC partners should be deemed "employees" within the scope of that statute under the standard articulated by the Supreme Court in Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440 (2003).

Murphy's motion -- seeking to compel discovery in five substantive areas (Murphy Mem. at 2-3) -- is ill conceived and largely unnecessary.  PwC has provided discovery, and will provide additional discovery, in those five areas:  (a) comparative information concerning other professional employees within Murphy's practice area (namely, RAS) who were admitted as partners in the relevant time frame (namely, Albright and Lavine); (b) other complaints of age discrimination; (c) damages; (d) Murphy's complete personnel files; and, (e) documents Murphy contends are relevant to the Clackamas issue.

Murphy asserts that "[a]s of now, PwC has answered no interrogatories and has produced selected documents relating to the owner/employee issue, and portions of two personnel files" (id. at 10), states that PwC's "conduct is evasive at best" (id. at 1), and suggests that PwC provided discovery only after being informed that Murphy "was about to file this Motion" (id. at 23).  None of those assertions are true.  As detailed below, PwC's counsel continues to provide discovery in accordance with Murphy's counsel's request that they do so on a "rolling basis" as they receive responsive materials gathered from various sources at PwC.  At this point, Murphy's motion to compel is largely moot.

It is most disappointing that Murphy has seen fit to base his discovery motion on a materially incomplete and distorted statement of the procedural history of this litigation.  Among other things, Murphy's memorandum:

- presents a procedural history that is inconsistent with the stipulated Procedural History recited in the parties' Second Supplemental Joint Report entered October 27, 2004 (Case 1, Docket No. 111);

- states that discovery was to be conducted in phases pursuant to the initial Scheduling Order (Robinson, J.) entered February 28, 2003 (Case 1, Docket No. 47) (see Murphy Mem. at 6), but makes no reference to the fact that the initial phase, which was concluded, was limited to the only claims in Case 1 that were not dismissed by the Memorandum Order and Opinion (Leon, J.) entered September 27, 2004 (Case 1, Docket No. 104) (Murphy v. PricewaterhouseCoopers LLP, 357 F.Supp.2d 230 (D.D.C. 2004));

- fails to note that the partner/employee issue was extensively briefed by the parties under the Clackamas standard on cross-motions for partial summary judgment initiated by Murphy's counsel based on a discovery record that Murphy then considered to be complete (Case 1, Docket No. 59 at 18-22,  Docket No. 68 at 50-63);

- recites dicta in the Order (Robinson, J.) entered November 22, 2004 (Case 1, Docket No. 115), while omitting any reference to the holding that discovery in Case 1 had been concluded in accordance with the initial Scheduling Order or to the order denying Murphy's motion to take further discovery (id.);

- materially misstates a key provision in the Scheduling Orders (Leon, J.) entered January 9, 2006 in accordance with stipulations set forth by the parties in joint reports and proposed scheduling orders (Case 1, Docket No. 132-2; Case 2, Docket Nos. 13, 19, 22-2) -- directing that all protective and discovery orders entered in Case 1 shall be deemed applicable to Case 2, as if entered therein -- and instead asserts only that "the protective order in place for Case 1 would be in effect for Case 2" (Murphy Mem. at 9);

- notes that damages discovery was deferred by Order (Robinson, J.) entered August 21, 2003 (Case 1, Docket No. 61), and that the Order also denied without prejudice Murphy's fully submitted motion to compel specified damages discovery but, in again moving to compel such discovery, ignores the issues as to the appropriate scope of such discovery raised in PwC's opposition to that motion (Docket No. 55 at 19-21), with supporting affidavits (Docket Nos. 55, 58).

4

PwC regrets burdening the Court with a memorandum of this length in opposition to Murphy's motion to compel discovery. However, the scope of PwC's opposition is necessitated, not only by Murphy's materially misleading and incomplete recitation of the procedural history and of PwC's responses and objections to Murphy's discovery requests, but by the extraordinary length and breadth of the discovery requests at issue.

## Statement of Facts

### A.    Stipulated Statement of Procedural History through October 2004

Following Judge Leon's Memorandum Order and Opinion, entered September 27, 2004, on the parties' partially dispositive motions (Case 1, Docket No. 104), counsel conferred pursuant to the direction of Magistrate Judge Robinson (Docket No. 103) on the status of discovery. Based on those conferences, counsel prepared, signed and filed a Second Supplemental Joint Report of the Parties ("Supplemental Joint Report") on October 27, 2004 (Docket No. 111) (Tab A hereto), which included a joint statement of the Procedural History (id. at 1-5). Inasmuch as counsel for the respective parties jointly prepared, signed and filed that agreed statement of "Procedural History" -- and Murphy purports to now set forth a new and different version of the procedural history, without reference to the stipulated statement previously submitted -- it is appropriate to set forth that statement in full herein (id.) (emphasis supplied):

> This action asserting employment discrimination claims was commenced in or about May 2002. In lieu of filing an answer to the complaint, defendants moved to dismiss all claims against all defendants except certain non-promotion claims asserted by plaintiffs, individually, against defendant PricewaterhouseCoopers LLP ("PwC") (see Docket No. 30).

In the First Supplemental Joint Report of the Parties on Planning Conference dated February 25, 2003 ("Joint Report"), the parties agreed to proceed during the pendency of the motion to dismiss with an initial phase of discovery "limited to discovery relating to plaintiffs' promotion claims against PwC" -- the only claims not addressed by the then pending dispositive motion (Docket No. 46 at 2). The provisions of the Joint Report were embodied in a Scheduling Order filed February 28, 2003 ("Scheduling Order") (Docket No. 47).

The Scheduling Order and the Joint Report provided for the exchange of initial disclosures, and detailed the discovery to be taken on plaintiffs' non-promotion claims against PwC. Plaintiffs were to produce all documents "concerning" those claims, and thereafter submit to depositions (Docket No. 46 at 2-3; Docket No. 47 at 2). PwC was to produce five specified categories of documents, to be followed by the depositions of two of its partners, Robert Bench and Timothy Ryan (id.). After exchanging initial disclosures, the parties proceeded to engage in discovery pursuant to the Scheduling Order.

At his deposition, plaintiff C. Westbrook Murphy disclosed that, rather than producing all documents "concerning" their claims, as provided in the Scheduling Order and the Joint Report, plaintiffs had produced only those documents they believed to "support" their claims (see Docket No. 92 at 1, 5). Plaintiffs thereafter produced additional documents pursuant to the Scheduling Order and the Joint Report, and agreed to submit to depositions concerning those documents (see id. at 5-9). Plaintiffs' subsequent refusals to appear for the concluding sessions of their depositions ultimately gave rise to PwC's motion to compel and for sanctions in February 2004 (id. at 8).

For its part, PwC produced to plaintiffs all documents in its possession, custody or control that were specified in the Scheduling Order and the Joint Report, and Messrs. Bench and Ryan were deposed. The Scheduling Order further provided that "the parties shall confer in good faith with respect to any further discovery that either plaintiffs or defendants believe to be appropriate in the initial phase of discovery" (Docket No. 47 at 2). After good faith conferences between counsel, PwC voluntarily produced additional documents not specified in the Scheduling Order and the Joint Report, and produced two additional partners

for deposition, Robert Moritz and Paul Sullivan (see Docket No. 46 at 3).  During the course of those conferences, PwC declined to produce other additional discovery requested by plaintiffs on the ground that such discovery was beyond the scope of its obligations under the Scheduling Order, irrelevant and unduly burdensome.

In June 2003, following those good faith conferences, plaintiffs moved to compel PwC to provide certain additional discovery (Docket No. 50).  Plaintiffs elected not to include in their motion to compel other requests for additional discovery PwC had previously refused to provide after the parties conferred in good faith.  PwC opposed plaintiffs' motion, and cross-moved for a protective order and to defer damages discovery pending disposition of its contemplated motion for summary judgment dismissing the claims subject to the Scheduling Order (Docket Nos. 54 & 55).  Each of the parties had by then disclosed their intention to move for summary judgment at the conclusion of initial phase discovery under the Scheduling Order (see Docket No. 55 at 14, 21; Docket No. 92, Exh. I).

On August 21, 2003, the Court (Robinson, J.) granted PwC's cross-motion, directed that damages discovery be deferred pending disposition of PwC's contemplated dispositive motion on plaintiffs' individual claims, and denied without prejudice plaintiffs' motion to compel (Docket No. 61). Shortly before the Court issued that Order, plaintiffs had filed a motion for summary judgment on liability on a "pattern or practice" theory (Docket No. 59), asserting that such motion should be decided before PwC's contemplated motion for summary judgment dismissing plaintiffs' individual claims could properly be considered (see Docket No. 92 at 6-7). PwC cross-moved for summary judgment dismissing plaintiffs' "pattern or practice" claims (Docket Nos. 66 & 68), noting that its contemplated motion on the individual claims would be submitted following the conclusion of the plaintiffs' depositions pursuant to the Scheduling Order (see Docket No. 68 at 1, 12-13).

In both its cross-motion for partial summary judgment on the "pattern or practice" claims (id. at 13-14), and its earlier cross-motion to defer damages discovery (Docket No. 55 at 21), PwC outlined the basis for its contemplated motion for summary judgment on plaintiffs' individual non-promotion claims.  As detailed in those motion papers, PwC's dispositive motion will be based on certain admissions of the

plaintiffs at their initial depositions, and may be supplemented by testimony to be given at the concluding sessions of plaintiffs' depositions.

At a Status Hearing before Judge Leon on October 24, 2003, PwC's counsel advised the Court that defendants had concluded their initial phase discovery pursuant to the Scheduling order, except that defendants "need[ed] to conclude the depositions of the plaintiffs on documents that were produced after their initial depositions" (Docket No. 92, Exh. M at 7). PwC's counsel further stated the expectation that this remaining discovery would be completed within 30 days, at which point defendants would file their motion for summary judgment dismissing plaintiffs' individual claims (id. at 8). PwC's counsel reiterated these points (id. at 10), and plaintiffs' counsel did not respond to those statements or otherwise suggest that plaintiffs would not submit to their depositions within 30 days of the Status Hearing or that they required any further discovery to oppose defendants' contemplated motion for summary judgment.

Following the Status Hearing, plaintiffs' counsel agreed that plaintiffs would be deposed on November 20, 2003 and November 21, 2003 (Docket No. 92, Exhs. N & O). At the same time, plaintiffs requested the depositions of certain PwC employees (id., Exh. O), which additional discovery was not contemplated by the Scheduling Order, and was not mentioned by plaintiffs' counsel at the October 24, 2003 Status Hearing (id., Exh. Q). PwC's counsel rejected plaintiffs' request for additional depositions on various grounds. (id.). Plaintiffs' counsel then unilaterally cancelled the scheduled conclusion of plaintiffs' depositions (id., Exh. P).

After efforts to reschedule the examinations were unsuccessful (see Docket No. 92 at 8-9), PwC filed its motion to compel plaintiffs to submit to deposition and for sanctions for failure to obey the Scheduling Order (Docket No. 92). Plaintiffs responded with a motion to compel additional discovery (Docket No. 96). The Court (Robinson, J.) stayed consideration of those motions, along with all further discovery, pending determination of the then pending partially dispositive motions (Docket Nos. 97 & 101). By Order entered September 21, 2004, the Court (Robinson, J.) sua sponte vacated those stays, denied the discovery motions without prejudice, and directed the parties to meet and confer on "the appropriate scope of discovery with

> respect to all claims and defenses not determined by the
> court's resolution of the dispositive motions," and to submit
> this joint report (Docket No. 103).
>
> By Memorandum Order and Opinion dated September 27,
> 2004 (Docket No. 104), the Court (Leon, J.) decided the
> dispositive motions by dismissing all claims against PwC,
> except certain individual non-promotion claims. Accordingly,
> the only claims remaining against PwC are the claims that
> were subject to discovery pursuant to the Scheduling Order
> and the Joint Report.

After setting forth the foregoing stipulated "Procedural History," each of the

parties separately stated in the Supplemental Joint Report their respective positions on

the propriety of further discovery (id. at 5-11). PwC's position was that fact discovery on

liability was concluded for seven reasons it detailed in the Supplemental Joint Report

(id. at 8-10). Apart from its position that Murphy was not entitled to any further

discovery, PwC asserted, in the alternative, that it would otherwise be appropriate to

stay or defer consideration of Murphy's additional discovery requests pending resolution

of PwC's dispositive motion on his remaining nonpromotion claims (id. at 10-11).

**B.**     **The November 22, 2004 Order Denying Further Discovery**

Counsel appeared at a Discovery and Status Hearing before Magistrate Judge

Robinson on November 4, 2004, at which each side was afforded an extensive

opportunity to argue their respective positions with regard to the issue of further

discovery addressed in the Supplemental Joint Report (see Murphy Motion, Tab 2). At

the conclusion of the hearing, the Court stated that it would take counsels' oral

arguments and written submissions under advisement, and enter an order regarding the

scope, timing and extent of further discovery (id. at 44-45).

The Court (Robinson, J.) thereafter issued an Order filed November 22, 2004 (Case 1, Docket No. 115) (Tab B hereto).  The Order noted plaintiffs' request for leave to take eight additional depositions and to notice the production of 27 categories of additional documents, and PwC's position "that plaintiffs were not entitled to further discovery because the only claims remaining are those claims as to which discovery was taken pursuant to the provisions of the initial Scheduling Order" (id. at 1-2) (citation omitted).  The Court found that plaintiffs were not entitled to any further discovery (id. at 2) (citations omitted):

> The undersigned finds that Plaintiffs have failed to demonstrate that further discovery is warranted.  Plaintiffs do not dispute that the discovery for which the initial scheduling order provided has concluded, and that the trial court's September 27, 2004 Memorandum Opinion and Order limited Plaintiffs' claims to those as to which discovery was conducted pursuant to the initial scheduling order.  Plaintiffs have not demonstrated that "the discovery had to date was incomplete"; nor have they offered authority for the proposition that the initial scheduling order was "a starting point, not a limitation."

The Court, therefore, "ORDERED that Plaintiffs' request for leave to take further discovery is denied" (id.).

The Court also concluded that "further discovery, even if such discovery were otherwise warranted, is appropriately stayed pending the determination of the dispositive motion" (id.) (emphasis supplied) (citation omitted).  However, in light of the Order denying leave to take further discovery for the reasons stated by the Court, no stay was issued (see id.).  Plaintiffs did not seek review of the Order by Judge Leon.

In support of the instant motion to again compel additional discovery, Murphy now presents a materially incomplete and distorted summary of the November 4, 2004

Hearing and the November 22, 2004 Order. Remarkably, Murphy makes no reference to the Supplemental Joint Report, to the decretal provision in the Order denying leave to take further discovery, or to the finding of this Court supporting that Order. Instead, Murphy now seeks to assert that PwC merely sought, and this Court ordered, that discovery be stayed pending resolution of PwC's then contemplated motion for summary judgment (see Murphy Mem. at 8-9).

Murphy engages in pure sleight of hand in suggesting that the Court found that "plaintiffs have failed to demonstrate that further discovery is warranted" "apparently because" they demonstrated no need for additional discovery to oppose PwC's contemplated dispositive motion (id.). There is no need to speculate as to the basis for that finding as it is unambiguously set forth in the succeeding two sentences of the Order quoted above. There is simply no arguable basis for Murphy's effort to conflate the unequivocal Order that "further discovery is denied" because discovery pursuant to the initial scheduling order on the remaining claims in Case 1 had been concluded, with the dictum that a stay would otherwise be appropriate because no further discovery was needed to oppose a dispositive motion.

Murphy's reliance on PwC's counsel's passing mischaracterizations of the Order at a status conference a year later as "staying" all discovery (id. at 9) cannot serve to rewrite the provisions of an unambiguous Order of this Court. The Order was entered based on written submissions and extensive oral argument of counsel for both parties, and speaks for itself.

**C.    The Application of the November 22, 2004 Order to Case 2 Pursuant to the
January 9, 2006 Scheduling Orders and the Filed Stipulations of Counsel**

Murphy attempts a similar ploy in misdescribing Judge Leon's recent Scheduling
Orders entered January 9, 2006, and ignoring the written stipulations of counsel on
which those Orders are based.  Murphy asserts that "the parties agreed . . . that the
protective order in place for Case 1 would be in effect for Case 2" (Murphy Mem. at 9).
In fact, counsel for the respective parties stipulated numerous times in papers jointly
filed with the Court that "all discovery taken, <u>and all discovery and protective orders</u>
<u>entered</u>, in [Case 1] should be deemed applicable to [Case 2], as if taken and entered in
[Case 2]" (Parties' Joint Meet and Confer Statement Pursuant to Local Rule 16.3(d),
Case 2, Docket No. 13 at 4, ¶ 8; Supplemental Joint Statement Pursuant to Local Rule
16.3(d), Case 2, Docket No. 19 at 2; <u>see</u> Joint Proposed Scheduling Order, Case 1,
Docket No. 132-2 at 1-2; Joint Proposed Scheduling Order, Case 2, Docket No. 22-2
at 1-2) (emphasis supplied).  The Joint Proposed Scheduling Orders were filed by
Murphy's counsel under a consolidated caption created by them (<u>see</u> Case 1, Docket
No. 132-2; Case 2, Docket No. 22-2).

By Minute Orders entered in each of Case 1 and Case 2 on January 9, 2006, the
Court (Leon, J.) approved the Joint Proposed Scheduling Order and, accordingly,
"ORDERED that all factual discovery taken and to be taken in [Case 1], [Case 2], and
[Case 3] shall be deemed applicable to each of the other cases as if taken therein;" and,
"FURTHER ORDERED that <u>all discovery and protective orders entered</u> and to be
entered in each of the aforementioned cases shall be deemed applicable to each of the
other cases, <u>as if entered therein</u>" (emphasis supplied).

12

Murphy refers to those Minute Orders only for the provision that factual discovery is to be completed within 210 days. PwC most certainly would not have agreed to that schedule if Murphy had disclosed that he intended to serve well over 100 separate interrogatories and document requests in complete disregard of the November 22, 2004 Order and the stipulation that the order would be deemed applicable to both actions.

The November 22, 2004 Order -- a discovery order entered in Case 1 -- is deemed applicable to Case 2, as if entered therein. In other words, under the provision in the recent Scheduling Orders, Murphy is barred from taking discovery in Case 2 to the extent that it would be barred by the November 22, 2004 Order entered in Case 1. PwC thus objected to Murphy's discovery requests in Case 2 "to the extent the discovery sought is barred by the Order entered November 22, 2004 [Case 1], which Order is applicable to [Case 2] pursuant to the Minute Orders entered January 9, 2006, and the written stipulation of counsel" (Murphy Motion, Tab 1, p. 22 of 50, ¶ 4).

Murphy overstates the extent of that objection, disingenuously asserting that PwC argues "that virtually all of plaintiff's current discovery is barred" (Murphy Mem. at 8), including "all damages discovery" (id. at 11). In this regard, Murphy simply ignores a February 2, 2006 letter from PwC's counsel alerting his counsel of PwC's objection based on the November 22, 2004 Order (Tab C hereto). That letter notes PwC's intention to assert an objection based on the November 22, 2004 Order, and explains the reasons for the objection. Further, and directly contrary to Murphy's dramatic statements in support of his motion, PwC's counsel noted the discovery it would provide in Case 1 (id.):

13

> We will, however, provide damages discovery in the '02
> action since that discovery had been deferred pursuant to
> Magistrate Judge Robinson's prior Order filed August 21,
> 2003.  We also acknowledge that the expert discovery phase
> has not yet been conducted.  In addition, as we had recently
> indicated that we would provide reasonable additional
> discovery on Clackamas issues to facilitate a resolution of
> the partner/employee allegations, we will not assert the
> November 22, 2004 Order as a complete bar to such further
> discovery.  The additional discovery we do provide on those
> issues will apply to both the '02 and '05 actions, as we do not
> believe there have been any material factual changes in this
> regard.  Finally, we will supplement and update the
> discovery previously provided in the '02 action, as may be
> required.

**D.**     **Damages Discovery**

On the pretext of seeking discovery relevant to damages, Murphy again moves to

compel precisely the same kind of information regarding the specific compensation of

individual partners sought on his motion to compel filed in June 2003 (Case 1, Docket

No. 50).  Murphy makes no mention of his prior motion, or of PwC's opposition (Docket

No. 55), supported by Affidavits of Elizabeth Carol Nebe, a Director of Partner Affairs at

PwC familiar with the firm's partner compensation system (Tab D hereto).

As set forth in the Nebe Affidavits (id.), the compensation of newly admitted

partners at PwC is not established by reference to the compensation of existing

partners.  Rather, under PwC's policies and practices, compensation is based

principally on responsibility and performance, and, to some extent, on the newly

admitted partner's prior year's compensation as an employee.  In determining an

individual partner's compensation, no consideration is given to the compensation of

other partners.

In response to Murphy's recent discovery requests, PwC has produced

documents concerning its compensation system for partners, but stands on its

objections to disclosing the actual compensation of its partners and employees.  As a matter of law, determination of the amounts a plaintiff would have received upon and following promotion must be based on the compensation policies and practices of his employer during the period in question (see Point III.A., infra).

E.      **Clackamas Discovery**

Murphy filed a motion for partial summary judgment on liability on August 12, 2003 (Case 1, Docket No. 59).  Among other relief, Murphy's motion sought "a declaration that PwC's promotion and mandatory retirement policies are unlawful" (id. at 1).  In his memorandum in support -- under the heading, "Most of PwC's Partners Are Employees within the Meaning of the ADEA" --Murphy fully briefed the issue under the Clackamas standard (id. at 18-22).  On its cross-motion for partial summary judgment, PwC also briefed the partner/employee issue based on the same discovery record that Murphy considered to be complete  (Docket No. 68 at 50-63).  Judge Leon did not reach the issue in his Memorandum Order and Opinion deciding the cross-motions, as he dismissed the claim then at issue on other grounds.

Although further discovery on the Clackamas issue is barred by the November 22, 2004 Order, PwC is voluntarily providing additional discovery Murphy deems to be relevant to the resolution of an issue that PwC considers to be dispositive of Murphy's claims.  PwC stated its intention to provide such discovery in counsel's February 2, 2006 letter to Murphy's counsel (Tab C hereto).  There is no basis or need for Murphy's motion to compel such discovery.

F.    **Comparator Discovery**

In these disparate treatment cases, Murphy recognizes his burden is to prove that PwC intentionally discriminated against him because of his age in not admitting him as a partner, and asserts that "comparing Murphy's record at PwC with <u>similarly situated</u>, but younger professionals promoted past him" may be relevant to prove age bias (Murphy Mem. at 6) (emphasis supplied). With respect to discovery on comparators (<u>id.</u> at 13), Murphy claims that his requests are "relevant and reasonably tailored" (<u>id.</u> at 14) in geographic and organizational scope (<u>id.</u> at 16).

Until his voluntary retirement on February 28, 2006, Murphy worked in the RAS unit in PwC's D.C. office, which Murphy describes as "a relatively small consulting group within PwC's Banking Practice, which in turn is part of the Financial Services Practice" (<u>id.</u> at 4). The discovery record further shows that RAS is one of two specialized units within the firm's Banking practice, the other unit being Mortgage Banking (Tab E hereto, at 163-64). Banking, along with four other units (Capital Markets, Insurance, Investment Management and Real Estate), is part of the Financial Services ("FS") practice (<u>id.</u> at 102). FS, in turn, is part of the firm's Audit and Business Advisory Service (<u>id.</u> at 9-10, 63-64).

The specific role and function of the RAS unit is to provide advice to "banks and thrifts about compliance, credit, capital, and other areas of regulatory concern" (Tab F hereto, at 1842). The RAS practice is self-contained and unique within the firm -- "a small piece of the firm, which is an audit firm" (Tab E hereto, at 169). Since "the career model in [the] firm is skewed to its audit" function (<u>id.</u>), and RAS is a "business advisory unit" that does not fit "the traditional business model of an audit" firm, the contribution

16

and performance of employees and partners in the RAS group cannot be measured by the firm's "typical metrics" (id. at 172-73). The experience, skills and qualifications of RAS partners and employees thus differ from those of partners and employees in the other business units and practices within the firm.

Murphy claims that the discovery record reveals a partnership consideration process at PwC that is "top down," but proceeds to describe a process that is in fact "bottom up" (see Murphy Mem. at 16-17). Murphy thus notes that "the partnership consideration process begins in the practice areas" (id. at 17). The potential candidacy of a particular employee in a practice unit is initiated by the recommendation of a partner in that unit (see id. at 16-17).

Murphy testified at deposition that he worked in RAS throughout his tenure with the firm, that the managing partner of RAS (until his retirement on July 1, 2003) was Robert Bench, and that all promotions of RAS employees would have to be "approved" by Bench (Tab G hereto, at 894). Murphy thus understood that the partnership consideration process for employees in RAS would have to be initiated, if at all, by Bench (id. at 895):

> Q.    When you say approved by Mr. Bench, do you mean the process would have to be initiated by Mr. Bench?
>
> A.    That was my understanding.
>
> Q.    Okay.  So that for any promotions for professional employees [in] RAS, Mr. Bench would have to initiate a process and make a recommendation before anything could happen?
>
> A.    That was my understanding.

17

Following Bench's retirement on July 1, 2003, the partnership consideration process for employees in RAS would be initiated by the four remaining partners in RAS (id. at 895-96).

Murphy was never recommended as a candidate for partner at PwC (Murphy Mem. at 5). Murphy was thus never subject to the partnership admissions process. It bears mention that Murphy readily admitted that Bench did not discriminate against him (Tab G hereto, at 414):

> Q.    Do you believe that Mr. Bench discriminated against you by not recommending you as a candidate for promotion to partner?
>
> A.    No.

Murphy's claim of discrimination is allegedly based on the admission as partners on July 1, 2000 (Case 1) and July 1, 2004 (Case 2) of younger, allegedly less qualified employees in RAS, David Albright and Jeff Lavine, respectively (Murphy Mem. at 4-5). Albright was recommended for partner by Bench (Tab G hereto, at 853-54). As Murphy's co-plaintiff in Case 1 testified (Tab H hereto, at 306-07):

> Q.    *** Is David Albright the individual you believe to be less qualified than you for  admission as partner on July 1, 2000?
>
> A.    That's correct.
>
> Q.    Were there any less qualified individuals in your specialty admitted as partner on July 1, 2001?
>
> A.    Not in my group, no.

It was understood that Murphy and Schuler would be considered as potential partner candidates, along with other employees in RAS, and that employees outside RAS were not similarly situated for purposes of comparison or competition for the

recommendation of Bench or other RAS partners.  In other words, as Schuler expressly admitted, partner candidates and admissions outside the RAS unit are irrelevant to plaintiffs' discrimination claims (id. at 214-15):

> Q.    Referring now to paragraph 1E of your complaint on page 3, would you identify the younger employees who were admitted to partner on or about July 1, 2000?
>
> A.    David Albright.
>
> Q.    Who else?
>
> A.    Others not in our group, but I didn't consider them relevant.  David Albright is the person I have in mind.
>
> Q.    There's one person you have in mind?
>
> A.    Correct.

The appropriate scope of comparator discovery must be considered against this background and record.  Based on the admitted facts that Bench was the sole and final decisionmaker with respect to Murphy's possible candidacy for partner, and that Murphy was similarly situated only to other employees in RAS with respect to partnership consideration, Murphy's requests for discovery encompassing Financial Services employees are substantially overbroad.  The allegedly discriminatory decision at issue was made solely by Bench, and the similarly situated comparators are Albright and Lavine.

PwC has produced the personnel files and other records concerning Albright and Lavine.  Moreover, Murphy's counsel deposed Bench for two days, and elicited no testimony to suggest that he acted pursuant to instructions or a policy from above, or that he even conferred with any other partners in deciding not to recommend Murphy as a candidate for partnership.

It is settled law in this Circuit that evidence of discriminatory animus of non-decisionmakers is irrelevant (see Point II, infra).  Based on that fundamental rule, courts routinely limit discovery to the department or unit at the employer accordingly (id.).

## G.    Murphy's Discovery Requests

Judge Leon conducted two status and scheduling hearings since the commencement of Case 2, the first on October 18, 2005 (Murphy Motion, Tab 3) and the second on December 8, 2005 (Murphy Motion, Tab 7).

At the October 18 hearing, counsel for PwC stated that discovery "probably could be completed in six months," noting that discovery on liability on the nonpromotion claims in Case 1 "has been extensive" (Murphy Motion, Tab 3, at 8).  PwC's counsel further noted that the Clackamas issue would be dispositive of the claims in both actions (id. at 10-11), and that plaintiffs had previously moved for summary judgment on the issue based on what they presumably thought to be a complete discovery record, but had recently stated a purported need for further discovery on the allegation that PwC partners should be deemed employees (id. at 11).  PwC's counsel nonetheless urged that, if plaintiffs wanted more discovery on this issue, they should proceed with it so that the issue could be resolved on summary judgment at an early juncture (id.).

At the December 8 hearing, PwC's counsel reiterated that the parties "have had quite extensive discovery" in Case 1, which is applicable to Case 2 and Case 3 (Murphy motion, Tab 7 at 12).  Judge Leon urged that counsel in all three cases proceed "with maximum efficiency" and keep the litigation "streamlined" (id. at 14).  PwC's counsel suggested that plaintiffs promptly "seek whatever additional discovery they believe they need on . . . the issue of whether a partner should be deemed an employee" (id. at 8).

20

Murphy's counsel noted that both sides expected discovery "early on" on that issue, "so we are going to be [sending] some interrogatories and document requests" (id. at 5).

Murphy's counsel served discovery requests immediately following the December 8 hearing, before counsel had left the Courtroom.  But the requests go far beyond the Clackamas issues, and include a total of 122 separate interrogatories and document requests, exclusive of subparts (Murphy Motion, Tab 1).  Further contrary to Judge Leon's request for "maximum efficiency" in the related actions, separate and, in many instances, redundant and overlapping requests were served in each of Case 1 (14 interrogatories and 31 requests for documents) and Case 2 (21 interrogatories and 56 requests for documents) (id.).

## H.    **Discovery Conferences Between Counsel**

Murphy's counsel agreed to extend PwC's time to serve formal responses and objections, provided that PwC's counsel informally and preliminarily advised Murphy's counsel by January 20, 2006 of its intended objections.  PwC's counsel so advised Murphy's counsel by email on that date, and suggested that counsel meet and confer (Tab I hereto):

> Most importantly, we strongly believe that a face-to-face meeting to discuss the issues would serve to minimize our differences and facilitate our formal responses.  Please let me know when you would be available to meet.

PwC's counsel reiterated that request by email on January 26, 2006 (id.).

> The burden of responding to well over 100 separate requests, exclusive of subparts, would be increased substantially and unnecessarily if PwC had to respond piecemeal, without our having made a good faith effort to iron out our differences in advance.  Again, we are prepared to meet with you in D.C. at your convenience.

21

Counsel met in Murphy's counsel's offices on January 31, 2006.  Regrettably, virtually none of the areas of disagreement were resolved at that meeting.  It was agreed that PwC would serve its formal responses and objections on February 3, 2006, and that counsel would thereafter produce discovery materials on a rolling basis as they were located, gathered and received from various sources within PwC.

By letter dated February 2, 2006, PwC's counsel alerted Murphy's counsel of its intention to adhere to the November 22, 2004 Order, expressing disappointment that the meet and confer accomplished little to "limit the enormous burden and expense of responding to such voluminous discovery requests in each of the two related actions * * * at this stage of a litigation that has been pending for nearly four years" (Tab C hereto). That letter further noted that "discovery on liability in the '02 action was concluded in 2004 in accordance with the initial scheduling order; and a substitution of counsel does not afford a party the right to start over again by relitigating matters that have already been completed" (id.).  The letter concluded with an offer to again "confer in person or by telephone regarding any of these matters" (id.).  Murphy's counsel did not respond.

PwC served its formal responses and objections on February 3, 2006 (Murphy Motion, Tab 1).  In subsequent emails, Murphy's counsel objected to the pace of PwC's discovery production, and PwC's counsel responded and elaborated on their position (Tab J hereto).  Murphy's counsel did not respond to PwC's counsel's repeated suggestions that counsel confer with respect to these matters (see id., emails from Eric Nelson dated February 10, 2006 and February 13, 2006), other than to advise that they were preparing a motion to compel discovery, which was eventually filed on March 15, 2006.

22

In the meantime, PwC continues to provide requested discovery on a rolling

basis.

## Argument

### I.

### THE NOVEMBER 22, 2004 ORDER BARS FURTHER FACT DISCOVERY ON LIABILITY IN CASE 1 AND LIMITS SUCH DISCOVERY IN CASE 2

The November 22, 2004 Order denied Murphy's request for leave to take further

discovery in Case 1 based on the following finding of the Court (Tab B hereto, at 2):

> The undersigned finds that Plaintiffs have failed to
> demonstrate that further discovery is warranted.  Plaintiffs do
> not dispute that the discovery for which the initial scheduling
> order provided has concluded, and that the trial court's
> September 27, 2004 Memorandum Opinion and Order
> limited Plaintiffs' claims to those as to which discovery was
> conducted pursuant to the initial scheduling order.  Plaintiffs
> have not demonstrated that "the discovery had to date was
> incomplete"; nor have they offered authority for the
> proposition that the initial scheduling order was "a starting
> point, not a limitation."

That Order precludes further fact discovery on liability on Murphy's remaining

nonpromotion claims for 2000 and 2001, such discovery having been concluded in

accordance with the initial scheduling order.  The discovery provided by PwC included

the production of documents and information concerning various matters, including,

among other things, personnel records, extensive statistics on new partner admissions,

and documents concerning the partner admissions process.  Murphy's counsel

stipulated in the Supplemental Joint Report that "PwC produced all documents in its

possession, custody or control that were specified in the Scheduling Order and the Joint

Report" on which the initial scheduling order was based, and had produced for

depositions the two partners (Robert Bench and Timothy Ryan) designated in that

scheduling order (Tab A hereto, at 2-3).  Murphy's counsel further stipulated that "PwC voluntarily produced additional documents not specified in the Scheduling Order and the Joint Report, and produced two additional partners for deposition, Robert Moritz and Paul Sullivan" (id. at 3).

Indeed, Bench -- the managing partner of RAS and Murphy's immediate supervisor -- was deposed for two days.  The other partners deposed at Murphy's request were Ryan (head of Banking), Moritz (head of Financial Services) and Sullivan (a member of the Board of Partners and Principals and its admissions committee).

In the normal course, it would have been reasonable to expect Murphy to amend his complaint in Case 1 to assert his new claim for nonpromotion in 2004.  Case 1 initially joined claims for nonpromotion in 1999, 2000 and 2001, and each of Murphy's nonpromotion claims (including 2004) are based primarily on PwC's partner retirement provision and on partner admissions statistics.  But Murphy, for undisclosed reasons, elected to instead assert his 2004 nonpromotion claim by commencing Case 2 as a separate, related case.

As more fully set forth above, to preclude Murphy from improperly using Case 2 as a vehicle for duplicative discovery or as a means of circumventing the discovery and protective orders entered in Case 1, counsel agreed in joint reports and proposed scheduling orders that all discovery taken, and all protective and discovery orders entered, in Case 1 be deemed applicable to Case 2, as if taken and entered in Case 2. On consent, those provisions were included in Scheduling Orders entered January 9, 2006 in each of Case 1 and Case 2.

Murphy simply ignored the pertinent provisions of the November 22, 2004 Order and the January 9, 2006 Scheduling Orders in preparing his blunderbuss discovery requests and in now moving to compel discovery pursuant to those requests. His motion thus makes no mention of the decretal provision in the November 22, 2004 Order denying leave to take further discovery in Case 1, or to the stipulations and findings on which that Order is based, and similarly omits any reference to the provisions in the recent Scheduling Orders extending the application of the November 22, 2004 Order to Case 2. Moreover, Murphy suggests no basis for disregarding or modifying those Orders.

Murphy's engagement and substitution of new counsel in early 2005 does not relieve him of his obligation to abide by the November 22, 2004 Order. As stated in PwC's counsel's February 2, 2006 letter to Murphy's present attorneys: "While we appreciate that substituted counsel in an ongoing litigation often disagree to some extent with the manner in which predecessor counsel had litigated the case, and would not have proceeded in precisely the same way, the represented party is nonetheless bound by the actions and conduct of retained counsel" (Tab C hereto).

Murphy has not moved to reopen discovery under Rule 16(b), F.R.C.P., which permits courts to modify scheduling orders upon a showing of "good cause" (see Hussain v. Nicholson, 435 F.3d 359, 363 (D.C. Cir. 2006)). In Hussain, the D.C. Circuit considered the District Court's denial of the plaintiff's motion to reopen discovery made by replacement counsel on the ground that predecessor counsel had failed to conduct any discovery in the time provided in the scheduling order in that case (id. at 362-63). In affirming the denial of the motion based on attorney neglect, the D.C. Circuit noted

25

the general rule that a client is held accountable for the conduct of his voluntarily chosen counsel (id. at 364) (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962)).

In contrast to Hussain -- where plaintiff's counsel had conducted no discovery in the litigation, but had taken several depositions during administrative proceedings -- Murphy's initial counsel stipulated that PwC had fully complied with its discovery obligations under the initial scheduling order by producing documents and four of its partners for deposition.[2]  The depositions included two days for Murphy's immediate supervisor and a day for each of three other partners up the line to a partner who had served on PwC's Board of Partners and Principals and its admissions committee.[3]

In its November 22, 2004 Order, this Court denied Murphy's request to reopen discovery to allow for any of the eight further depositions or 27 additional categories of document production then sought (see Tab B hereto, at 2 n.6, citing Olgyay v. Society of Environmental Graphic Design, Inc., 169 F.R.D. 219, 220 (D.D.C. 1996)).  Murphy chose not to seek review of that Order by Judge Leon, none of the circumstances have since changed, and the substitution of new counsel does not afford a basis for reopening discovery now.

---

[2] Unlike Hussain, there is no suggestion here that Murphy's initial counsel was neglectful in the conduct of discovery.

[3] Like many of Murphy's 122 discovery requests, his request for production of the personnel files of witnesses he deposed is not only barred by the November 22, 2004 Order, but overbroad and harassing (see Waters v. United States Capitol Police Board, 216 F.R.D. 153, 164 (D.D.C. 2003) ("The only material information in the personnel files would be information that bears on the witness' honesty or credibility or which disclose a discriminatory or retaliatory intent."); see also Macintosh v. Building Owners & Managers Association International, 231 F.R.D. 106, 108-09 (D.D.C. 2005) ("a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove his case")).

Accordingly, Murphy is precluded by the November 22, 2004 Order and the January 9, 2006 Scheduling Orders from taking discovery in either of Case 1 or Case 2 that was sought or could have been sought under the initial scheduling order in Case 1.

## II.

## DISCOVERY ON MURPHY'S NONPROMOTION CLAIMS SHOULD BE LIMITED TO THE RAS UNIT IN WHICH MURPHY WAS EMPLOYED

In disparate treatment cases, it is axiomatic that evidence of discriminatory animus on the part of persons who were not decisionmakers with respect to the employment action at issue is irrelevant (Holcomb v. Powell, 433 F.3d 889, 900 (D.C. Cir. 2006) (evidence of discriminatory animus on the part of supervisor who did not play any role in the decision at issue of no probative value); Carter v. George Washington University, 387 F.3d 872, 880 (D.C. Cir. 2004) (where decision was made by a committee, allegations of discriminatory intent on the part of individual who was "not a decision-maker at the committee level" is irrelevant)).

The application of this fundamental rule is well illustrated in Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997), where the plaintiff claimed the defendant law firm failed to consider him for partnership because of his race.  The defendant firm had a partnership admissions process similar to that at PwC (id.):

> [Plaintiff] introduced evidence that department heads would confer with other partners in their departments to recommend particular associates for partnership.  The recommendation[ ] [is] then passed through several more committees -- the committee comprised of all the department heads, the partnership review committee, the executive committee, and finally the board of directors -- with names being screened out along the way.

27

Like the process at PwC (see pp. 17-19, supra), "associates are screened out from consideration at the first round, when the department head and/or the partners in that department decide not to nominate certain associates to the committee of department heads" (Mungin, 116 F.3d at 1557).

The plaintiff in Mungin was employed as an associate attorney in the finance and reorganization department at the defendant firm. The Court rejected the plaintiff's attempt to offer proof relating to procedures for recommending partners in the insurance group (id.):

> But the partnership decisions were made by departments, and in [plaintiff's] case, by the finance and reorganization department, not the insurance department. Without any evidence that this department -- the one that chose not to nominate him -- acted discriminatorily, [plaintiff] failed to prove a claim.

While the D.C. Circuit appears not to have considered the application of the basic principle in the context of discovery, other Circuit Courts have. Those Courts have limited discovery in disparate treatment actions to the plaintiff's "employing unit" or "work unit" in cases where the allegedly discriminatory decision was made by supervisors in that unit without direction or ratification by persons outside the unit (see, e.g., Carman v. McDonnell Douglas Corp., 114 F.3d 790, 792 (8th Cir. 1997) (discovery properly limited to the division in which the plaintiff worked "because those who make employment decisions vary across divisions"); (Scales v. J.C. Bradford & Co., 925 F.2d 901, 907-08 (6th Cir. 1991) (where the focus of the complaint was the treatment plaintiff received while working in defendant's municipal bond department in Nashville, discovery was properly limited to employees in that work unit); Earley v. Champion International Corp., 907 F.2d 1077, 1084 (11th Cir. 1990) (where the decision to

terminate plaintiffs in a RIF initiated at the national level was made at the local level, discovery bearing on discriminatory intent was properly limited to the local employing unit); Mack v. Great Atlantic & Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989) (discovery limited with respect to job classifications and geographic area in light of decentralized nature of managerial decision making at defendant's employing units); James v. Newspaper Agency Corp. 591 F.2d 579, 582 (10th Cir. 1979) (where plaintiff was a long-time employee of accounting/credit department, discovery on nonpromotion claim was properly limited to that department); Marshall v. Westinghouse Electric Corp., 576 F.2d 588, 592 (5th Cir. 1978) (in determining appropriate breadth of discovery, "the most natural focus is upon the source of the complained of discrimination . . . the employing unit or work unit")).

As detailed above (pp. 17-19, supra), Murphy testified that, unless the managing partner of the RAS unit recommended him as a candidate for partner, he was screened out from further consideration for partnership, and that no partners from RAS had ever recommended that Murphy proceed as a candidate. Other employees in the RAS unit -- Albright and Lavine -- were recommended and sponsored as partner candidates and, after then proceeding through the partner admissions process, were promoted to partner on July 1, 2000 and July 1, 2004, respectively. Murphy's co-plaintiff admitted that employees outside the RAS unit were not similarly situated to Murphy or other RAS employees with respect to partnership consideration.

Under these circumstances, there are compelling reasons to limit discovery to the RAS unit at PwC (see, e.g., Sundaram v. Brookhaven National Laboratory, No. CV-94-2330 (TCP), 1996 WL 563829 at *2 (E.D.N.Y. Mar. 11, 1996) (for purposes of

discovery, "the typical boundary for gathering information about an employer's practices concerning employees other than the plaintiff is the plaintiff's 'employing unit or work unit' at least to the extent that such a unit acts with sufficient independence regarding the employment decisions that are being challenged")). Thus, in <u>Burns v. Hy-Vee, Inc.</u>, No. 02-254 (JRTFLN), 2002 WL 31718432 at *3 (D. Minn. Nov. 21, 2002), where the decision to terminate the plaintiff was made at the divisional level, discovery was properly limited to that division. In affirming the Order of the Magistrate Judge in <u>Burns</u>, the District Court held that "the discovery of information concerning other employees should be limited to those employees who are similarly situated" (<u>id.</u> at *2).

    <u>Waters v. United States Capitol Police Board</u>, 216 F.R.D. 153, 158 (D.D.C. 2003), on which Murphy relies (Murphy Mem. at 19), is not to the contrary. In <u>Waters</u>, the defendant asked the Court to assume that the decisionmaker had acted independently, without "being influenced by anyone else in the organization" (<u>id.</u>). Here, in contrast, a complete discovery record reveals that Bench alone made the challenged decision not to recommend Murphy for partnership, without the direction, participation or ratification of others.

    Bench was deposed for two days. Murphy had an unrestricted opportunity to inquire, among other things, as to the reasons Bench never recommended Murphy as a candidate for partner and decided to propose Albright as a candidate. It is disingenuous, at best, for Murphy to now assert, as he does, that PwC has "refused to provide" information allowing a comparison of Murphy's record at PwC with "similarly situated, but younger professionals promoted past him" (Murphy Mem. at 6).

PwC previously produced, and recently updated the production of, Murphy's entire personnel file.  Moreover, in response to the discovery requests at issue in Case 1, PwC voluntarily produced Albright's personnel records, including the documents concerning his recommendation as a partnership candidate, and PwC's favorable consideration of his candidacy through the admissions process.  In addition to Bench, Murphy deposed three other partners, including the head of Banking, the head of Financial Services, and a member of the Board of Partners and Principals and its admissions committee.

PwC has produced similar documentation in Case 2 for Lavine, an employee in the RAS unit, and his successful candidacy for partner in the July 1, 2004 admissions cycle.  There is no factual or legal basis for Murphy's requests for "comparative" information concerning all employees in Financial Services.  Indeed, as detailed above, there is no basis for any such discovery beyond the RAS unit.  Murphy has received all the discovery to which he is entitled regarding similarly situated comparators, having been provided with discovery concerning the successful candidates for partner from the RAS unit in the relevant time frame (see Byers v. Illinois State Police, No. 99 C 8105, 2002 WL 1264004 at *6-8 (N.D. Ill. Jun. 3, 2002)).

Murphy's requests for discovery of other age discrimination complaints are similarly overbroad (id. at *9) ("Like any discovery request, the discovery of prior discrimination complaints against the defendant must be tailored to the legal issues involved in each particular case.").  Applying that principle, the court concluded in Byers that "[c]laims of discrimination at other districts that do not implicate the [decisionmakers] are too remote from the allegations involved in this case to warrant

31

discovery" (id.; accord Pleasants v. Allbaugh, 208 F.R.D. 7, 15 (D.D.C. 2002) ("As with other discovery requests, the proper scope of discovery seeking other complaints of discrimination against defendants must be limited in time, type of action complained of or type of discrimination alleged. . . .  Consequently, interrogatories should be limited to complaints based on race and in the particular division(s) where plaintiff worked"); Mitchell v. National Railroad Passenger Corp., 208 F.R.D. 455, 460 (D.D.C. 2002) ("other claims of discrimination against a defendant are discoverable if limited to the same form of discrimination claimed by plaintiff, if limited to the same department or agency where plaintiff worked, and if limited to a reasonable time before and after the discrimination complained of")).  Under the circumstances presented here, Murphy is entitled to no more than age discrimination complaints of other employees in RAS or directly implicating a RAS partner.

III.

## THE "DAMAGES" DISCOVERY SOUGHT IS OVERBROAD AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

### A.    Back Pay/Compensatory Damages

Since damages discovery was deferred pursuant to the August 21, 2003 Order (Case 1, Docket No. 61), the November 22, 2004 Order does not preclude such discovery.  However, Murphy fails to note that the August 21, 2003 Order also denied without prejudice Murphy's contested motion for discovery of the compensation of other PwC employees and partners.  Most significantly, Murphy simply ignores the issues raised by PwC's opposition to that motion (see Docket Nos. 55 at 15-18; Docket No. 58 at 1-6) in again moving to compel similar discovery.

32

PwC's opposition and objections were and are based on two Affidavits of Elizabeth Carol Nebe, a Director of Partner Affairs at PwC who describes the manner in which partner compensation, including the compensation of newly admitted partners, is determined at PwC (Tab D hereto). Under PwC's policies and practices, partner compensation is not established by reference to the compensation of any other partners. Hence, Murphy is seeking information and data that has no relevance whatsoever to any determination of what Murphy would have earned at PwC had he been admitted as a partner.

In an employment discrimination action for failure to promote, damages are to be determined by calculating the difference between the amount of salary, bonus and benefits the plaintiff-employee would have received had he/she been promoted, and the amounts he/she actually received in the absence of promotion (Daniels v. Goldin, Civ. A. No. 90-1533 (NHJ), 1995 WL 57467, *9 (D.D.C. Jan. 30, 1995)). In such a case, determination of the amounts a plaintiff would have received upon and following promotion must be based on the compensation policies and practices of his/her employer during the period in question (see Vernon v. Port Authority of New York & New Jersey, No. 95 Civ. 4594 (PKL), 2003 WL 1563219 (S.D.N.Y. March 26, 2003) (holding that it is "crucial" that back pay be determined on the basis of the employer's actual compensation policies); Walker v. Dalton, 89 F. Supp. 2d 20, 24 (D.D.C. 2000), quoting Berger v. Iron Workers Reinforced Rodmen Local 201, 170 F.3d 1111, 1119 (D.C. Cir. 1999) ("[i]n calculating a back-pay award, 'a court must, as nearly as possible, recreate the conditions and relationships that would have been, had there been no unlawful discrimination'"); E.E.O.C. v. Colgate-Palmolive Co., 612 F. Supp. 1476, 1479

(S.D.N.Y. 1985) (holding that the appropriate determination of what the plaintiffs "would have been paid" in the positions sought must be made under the defendant's "Salary and Bonus Programs")).

Under PwC's partner compensation program, like the salary and bonus program in the Colgate-Palmolive case, "the relevant consideration is the amount the [plaintiffs] would have received in the positions, not the amount others received in those positions" (612 F. Supp. at 1479).  The latter information is wholly irrelevant.  Having made no attempt to "recreate the conditions and relationships that would have been" had plaintiffs been admitted as partners at PwC (see Berger, 170 F.3d at 1119), Murphy has failed to meet his burden of demonstrating the relevance of the partner compensation information of which he moves to compel production.

PwC has, therefore, objected to Murphy's discovery requests to the extent they seek information concerning the amount of compensation received by others.  At the same time, PwC has produced the requested documents and information concerning PwC's partner compensation system, policies and practices.

**B.    Partner Retirement Benefits**

PwC will produce partner retirement benefit plans, and other documents concerning retirement benefits that will enable Murphy "to explore this area as well as perform his own calculations" (see Murphy Mem. at 12).

**C.    Punitive Damages**

Murphy seeks production of PwC's partnership tax returns and copies of financial statements for 2003-2005, purportedly for purposes of punitive damages on his

supplemental claim under the District of Columbia Human Rights Act.  Murphy cites

Daka v. McCrae, 839 A.2d 682, 684 (D.C. 2003), in support of these requests.

Daka holds that the defendant's net worth -- i.e., the amount by which its assets

exceed its liabilities at the time of trial -- is one of several considerations relevant to

consideration of an award of punitive damages (id. at 694-95).  Murphy's request for the

production of PwC's tax returns and financial statements is premature and overbroad, at

best.

In the first instance, Murphy's complaint does not even allege a basis for a

punitive damages claim.  It is well settled that "the mere finding of discriminatory action,

without more, will not support an award of punitive damages.  A showing of evil motive

or actual malice is also required"  (Arthur Young & Co. v. Sutherland, 631 A.2d 354, 372

(D.C. 1993)).

While Murphy's complaint contains a conclusory allegation that "PwC's actions as

described herein were malicious, wanton and in reckless disregard of Murphy's rights"

(Complaint, ¶ 31), his pleadings are devoid of any factual allegations to support those

bald conclusions.  Indeed, the complaint alleges that "[t]he mandatory partner retirement

age [contained in PwC's partnership agreement] has created an age-based bar to

partnership admission which disqualifies plaintiff from being considered for partnership"

(id. at 20; see ¶ 8, see also Murphy Mem. at 3-4).  On earlier dispositive motions,

Murphy asserted that PwC's partner retirement provision was a "tradition" that had been

in place for decades for the purpose of making room for new partners, not for excluding

older employees who are not subject to mandatory retirement at any age; and, Murphy

himself testified that all the other major accounting firms have similar provisions in their

partnership agreements.  This hardly provides any basis for the required showing of "evil motive" or "actual malice" toward Murphy that might warrant an award of punitive damages in this case.

In Koonce v. Merit Oil Co. of the District of Columbia, Inc., Civ. A. No. 89-2977 (JHG), 1991 WL 102634 (D.D.C. Jun. 4, 1991), this Court denied a motion to compel the defendant to produce its tax returns and financial statements in light of the plaintiff's failure to present "a legally sufficient claim for punitive damages" (id. at *1).  In so ruling, the Court noted that allegations that the defendant acted "outrageously" and "in willful disregard of [plaintiff's] rights" "constitute descriptions, not factual allegations" that might support a claim for punitive damages (id. at *3 n.2; see Chenoweth v. Schaaf, 98 F.R.D. 587, 589 (W.D. Pa. 1983) ("bald allegations of outrageous conduct are insufficient to allow for pretrial discovery" into the financial condition of the defendant)).

Murphy's request is, in any event, premature.  Assuming Murphy had alleged and could prove a basis for an award of punitive damages, the case on which Murphy relies holds merely that the defendant's net worth "at the time of trial" may be a relevant consideration (Daka, 839 A.2d at 694-95) (emphasis supplied).  Discovery of such financial information, while relevant, "should not be revealed until necessary" to prove punitive damages (Peskoff v. Faber, 230 F.R.D. 25, 30 (D.D.C. 2005), citing John Does I-IV v. Yogi, 110 F.R.D. 629, 633 (D.D.C. 1986)).

Moreover, under Daka, the defendant should not be required to reveal anything more than its "net worth" -- i.e., the amount by which its assets exceed its liabilities at the time of trial" (Daka, 839 A.2d at 694-95; see Security Insurance Co. of Hartford v. Meyer Trading Co., Inc., 1987 WL 8207, at *1 (E.D. Pa. 1987) (requiring "disclosure of

the financial circumstances of the defendant by way of a general statement of the

individual's net worth"); see also Hazeldine v. Beverage Media, Ltd., No. 94 CIV. 3466

(CSH), 1997 WL 362229 (S.D.N.Y. Jun. 27, 1997) ("plaintiff needs no more to establish

her punitive damages claim")).

## IV.

## PWC HAS AGREED TO PROVIDE, AND HAS PROVIDED, ADDITIONAL DISCOVERY ON CLACKAMAS ISSUES

As noted above, Murphy fully briefed the partner/employee issue under the

Clackamas standard on his motion for partial summary judgment filed on August 12,

2003 (Case 1, Docket No. 59 at 18-22), and PwC cross-moved for summary judgment

on that issue (see Docket No. 68 at 50-53).  In filing that dispositive motion, Murphy

presumably considered the discovery record to then be complete.

The Court (Leon, J.) did not reach the issue in its decision on those motions (see

Docket No. 104), having dismissed the claim then at issue on other grounds.  PwC is of

the view that the briefing on the issue overwhelmingly demonstrated that there is no

merit to Murphy's position that PwC partners should be deemed employees under the

Clackamas standard.  Murphy apparently shares that view, and seeks to reopen

discovery on the issue.

Further discovery on the partner/employee issue is, in any event, barred by the

November 22, 2004 Order.  But because PwC considers that issue to be dispositive of

Murphy's claims in both actions -- and despite Murphy's apparent strategy to bury the

Court in minutia on the point -- PwC has offered to provide reasonable additional

discovery Murphy believes to be relevant under the Clackamas standard.  Accordingly,

PwC is endeavoring to comply with Murphy's various requests on the issue, has

provided and will continue to provide additional discovery in this regard, including specification of documents from which the answers to interrogatories may be ascertained.

PwC's willingness to voluntarily provide reasonable additional discovery on the Clackamas issue is not without limits. Especially in light of the November 22, 2004 Order and Murphy's prior motion for summary judgment on the issue, PwC objects to Murphy's assertion that his Clackamas allegation provides him with a wide-ranging and intrusive license to overburden PwC with innumerable and free-wheeling requests for confidential information on the pretext that he is entitled to see "how the firm runs itself" (Murphy Mem. at 24). A resolution of the Clackamas issue does not turn on the degree of detail Murphy appears to be seeking (see Docket No. 68 at 50-63).

## Conclusion

Based on the foregoing, counsel will be prepared at the hearing on Murphy's motion, presently scheduled for April 18, 2006, to address the specific discovery requests to which PwC has objected.  PwC's counsel also remains prepared to meet and confer with Murphy's counsel at the request of counsel or the Court.

For the reasons stated herein and in PwC's responses and objections to Murphy's discovery requests, it is respectfully submitted that Murphy's motion to compel discovery responses should be denied.

Dated:  April 7, 2006

Respectfully submitted,

WINSTON & STRAWN LLP


/s/ Eric M. Nelson
Eric M. Nelson (admitted *pro hac vice*)
Stephen L. Sheinfeld (admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
(212) 294-6700

Thomas M. Buchanan # 337907
WINSTON & STRAWN LLP
1400 L Street, N.W.
Washington, D.C.  20005
(202) 371-5700

Counsel for the Defendant