# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| C. WESTBROOK MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action Nos. 02-982 (RJL/DAR) |
| v. | ) | 05-1054 (RJL/DAR) |
| | ) | |
| | ) | |
| PRICEWATERHOUSECOOPERS, LLP, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S MAY 22, 2006 MEMORANDUM ORDER

WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20036
(202) 282-5000

Attorneys for Defendant

# Table of Contents

Page

Preliminary Statement................................................................................................................1

Standard of Review....................................................................................................................4

I.     THE INITIAL SCHEDULING ORDER PROVIDED FOR DISCOVERY ONLY ON
       THE NONPROMOTION CLAIMS NOT SUBJECT TO DEFENDANTS' MOTION
       TO DISMISS .....................................................................................................................4

II.    IN ITS SEPTEMBER 27, 2004 MEMORANDUM ORDER AND OPINION, THE
       TRIAL COURT DID NOT SUGGEST THAT FURTHER DISCOVERY WAS
       NECESSARY OR APPROPRIATE...................................................................................6

       A.  Reports on the Status of Discovery...........................................................................8

       B.  Nature of the Cross-Motions.....................................................................................9

       C.  The Decision on the Cross-Motions.........................................................................11

III.   THE NOVEMBER 22, 2004 ORDER SUSTAINED DEFENDANTS' PRINCIPAL
       CONTENTION THAT PLAINTIFFS HAD COMPLETED ISCOVERY ON THE
       REMAINING NONPROMOTION CLAIMS AND WERE NOT ENTITLED TO
       ANY FURTHER DISCOVERY .......................................................................................12

IV.    THE DISCOVERY REQUESTS AT ISSUE ON RECONSIDERATION .........................14

       Case 1, Document Requests 4 and 9...................................................................................15

       Case 1, Document Request 5 ..............................................................................................15

       Case 1, Interrogatory 13.....................................................................................................16

       Case 1, Document Request 13.............................................................................................17

       Case 2, Document Request 24.............................................................................................18

Conclusion ..................................................................................................................................20

### Preliminary Statement

Defendant PricewaterhouseCoopers LLP ("PwC") respectfully moves this Court (Robinson, M.J.), pursuant to Rule 54(b), Fed.R.Civ.P., for reconsideration of the decision in its Memorandum Order filed May 22, 2006 (Docket No. 143)[1] on PwC's objections based on the November 22, 2004 Order.

In considering PwC's objections pursuant to the prior Order of this Court entered November 22, 2004, the Court properly recognized that, "[i]n order to adequately determine the holding and intent of the [prior] order, a review of the posture of the case at the time the order was entered is required" (Mem. Order, Docket No. 143, at 2-3). The review set forth in the Memorandum Order, however, misapprehends and overlooks certain critical aspects of the procedural history and posture of the litigation. PwC, therefore, respectfully asks this Court to reconsider its interpretation of the November 22, 2004 Order in light of the then posture of the case as clearly reflected in pertinent portions of the record that appear to have been misunderstood or overlooked.[2]

Based on the procedural review in the Memorandum Order, it is clear that this Court's ruling is founded on factually incorrect conclusions. Each of the three reasons stated for the Court's ruling that the November 22, 2004 Order did not foreclose further liability discovery (id. at 6-7) is contrary to the record.

First, the Memorandum Order states that the Scheduling Order filed February 28, 2003 (Docket No. 47) provided for discovery "which principally related to the Plaintiffs' ability to appropriately respond to Defendants' motion to dismiss" (Docket No. 143, Mem. Order at 6). To

---

[1] The Memorandum Order, and the underlying submissions of the parties, were filed in both Case 1 and Case 2. For simplicity, "Docket No." citations herein are only to Case 1 (see Docket No. 143, Mem. Order, at 1 n.1).

[2] Because these points involve this Court's construction of its own Order, and in view of this Court's greater familiarity with and involvement in the development of the discovery record, we believe it appropriate to ask this Court, and not the Trial Court (Leon, J.), to reconsider its decision in the first instance.

the contrary, as detailed below (Point I, *infra*), the record shows that the Scheduling Order provided for discovery only on the claims <u>not</u> subject to Defendants' motion to dismiss.  Indeed, the Scheduling Order was entered five months <u>after</u> Defendants' motion to dismiss was fully briefed and submitted, and was, by its terms, intended to cover the non-promotion claims <u>not</u> addressed by that then pending motion.

The second basis for this Court's interpretation of the November 22, 2004 Order is its conclusion that the Trial Court had suggested that Plaintiffs needed further discovery as to the "particular circumstances" under which they "were not advanced to partnership" (Mem. Order at 6-7, quoting (<u>Murphy v. PricewaterhouseCoopers LLP</u>, 357 F.Supp.2d 230, 249 (D.D.C. 2004)). While the language of the Trial Court could be construed to make that suggestion, the context clearly reveals otherwise.  As detailed below (Point II, *infra*), the Trial Court had been advised repeatedly that Plaintiffs had completed their discovery and, in light of the parties' submissions on the substantive motions decided by the Trial Court, the Memorandum Opinion and Order (Docket No. 104) cannot otherwise be read to make any suggestions or observations concerning the conduct of discovery.

The third, and final, stated reason for this Court's conclusion that the November 22, 2004 Order was intended only to stay discovery, is based on the Court's understanding of an argument made by Defendants in the joint report of the parties underlying that prior Order (Mem. Order at 7).  While the precise argument to which the Court refers is unclear, the Memorandum Order overlooks the fact that Defendants' stated seven separate reasons for its position that <u>Plaintiffs were not entitled to any further liability discovery on their remaining nonpromotion claims</u>, and then argued, only <u>in the alternative</u>, that it would <u>otherwise</u> be appropriate to stay or defer further discovery pending resolution of Defendants' then contemplated dispositive motion on Plaintiffs'

remaining claims.  The Memorandum Order further overlooks the fact that the transcript of the

hearing on the issues decided in the November 22, 2004 Order clearly identifies and confirms the

positions then advanced by the Defendants; and, that the November 22, 2004 Order itself

unambiguously sustained Defendants' position that further discovery was not warranted and that

a stay would be appropriate "even if such discovery was otherwise warranted" (Docket No. 115

at 2).  (See Point III, *infra*).

Recognizing that this litigation has a long and convoluted history, PwC respectfully

requests that this Court reconsider its ruling based on facts that the Court appears to have

misapprehended or overlooked in the procedural review it properly deemed necessary to resolve

PwC's objection to further Case 1 discovery under the terms of the November 22, 2004 Order.

PwC does not take this motion lightly.  The current ruling on the November 22, 2004

Order allows replacement counsel for Plaintiff Murphy to reconduct discovery that was taken

and completed in Case 1 by his initial counsel of choice at a great cost and burden to PwC.  It

further allows Plaintiff Murphy to take Case 1 discovery under the guise of Case 2 requests.

The completed Case 1 discovery was extensive.  Plaintiff Murphy acknowledges that he

had not "slept on his rights" in that his initial counsel "vigorously pursued discovery" (Murphy

Reply, Docket No. 137 at 7).  Indeed, his counsel advised the Trial Court at the April 12, 2004

motion hearing that "discovery is finished" (Docket No. 125, Exh. B at 86).  Moreover, the

November 22, 2004 Order notes that Plaintiffs did not dispute that discovery on their remaining

claims "has concluded" (Docket No. 115 at 2).  Plaintiff Murphy does not now seek to reopen

discovery on a showing of "good cause" pursuant to Rule 16(b), Fed.R.Civ.P. (see Hussain v.

Nicholson, 435 F.3d 359, 363-64 (D.C. Cir. 2006)).  That Plaintiff Murphy's new counsel would

have conducted discovery differently does not allow Murphy to start discovery all over again.

**Standard of Review**

Rule 54(b), Fed.R.Civ.P., governs the disposition of this motion for reconsideration (see Cobell v. Norton, 355 F.Supp.2d 531, 539 (D.D.C. 2005)). On reconsideration, the Memorandum Order is subject to revision "as justice requires" where, for example, the Court has made an "error of apprehension" or "misunderstood a party" (Singh v. George Washington University, 383 F.Supp.2d 99, 101 (D.D.C. 2005); cf. Burkhart v. Washington Metropolitan Transit Authority, 1996 WL 813280 (D.D.C. June 26, 1996) (motion to reconsider under Rule 59(e), Fed.R.Civ.P., may be granted on errors of fact)). In the interests of justice, as more fully set forth below, PwC submits that reconsideration of the Memorandum Order is warranted here based on pertinent facts not considered in the Court's review of the procedural history and posture of the case at the time of entry of the November 22, 2004 Order.

While PwC respectfully disagrees with the Court's rulings on other issues, this motion seeks reconsideration only of the discovery requests subject to objections based on the November 22, 2004 Order (specified in Point IV, infra).

**I.    THE INITIAL SCHEDULING ORDER PROVIDED FOR DISCOVERY ONLY ON THE NONPROMOTION CLAIMS NOT SUBJECT TO DEFENDANTS' MOTION TO DISMISS**

The first reason for the Court's interpretation of the November 22, 2004 Order, as stated in the Memorandum Order, is based on the premise that "the scheduling order only set forth the required discovery for the initial phase of discovery, which principally related to the Plaintiff's ability to appropriately respond to Defendants' motion to dismiss" (Docket No. 143, Mem. Order at 6) (emphasis supplied). That is not correct. To the contrary, the February 28, 2003 Scheduling Order (Docket No. 47) provided for discovery only on the claims not subject to Defendants' motion to dismiss.

4

In its review of the procedural history and posture of the case set forth in the Memorandum Order (Docket No. 143, Mem. Order at 3-6), the Court appears to have overlooked the fact that Defendants' motion to dismiss was fully submitted and *sub judice* since the filing of Defendants' reply memorandum on October 1, 2002 (Docket No. 36). The initial Scheduling Order was <u>thereafter</u> filed on February 28, 2003 (Docket No. 47). That Scheduling Order embodied the provisions of the First Supplemental Joint Report of the Parties on Planning Conference filed February 25, 2003 ("First Supplemental Joint Report") (Docket No. 46) (<u>see</u> Mem. Order at 3).

In the First Supplemental Joint Report, the parties jointly agreed that "the initial phase of discovery should proceed during the pendency of defendants' motion to dismiss and be limited to discovery relating to plaintiffs' promotion claims against PwC under the ADEA" (<u>see</u> Mem. Order at 3, quoting Docket No. 46 at 2). The Scheduling Order so provides (Docket No. 47). In the Second Supplemental Joint Report (Docket No. 111)[3], the parties stipulated that, in the First Supplemental Joint Report, "the parties agreed to proceed during the pendency of the motion to dismiss with an initial phase of discovery 'limited to discovery relating to Plaintiffs' promotion claim against PwC' -- <u>the only claims not addressed by the then pending dispositive motion</u>" (<u>id.</u> at 2, citing Docket No. 46 at 2) (emphasis supplied).

The parties further agreed in the Second Supplemental Joint Report that Judge Leon's Memorandum Order and Opinion dated September 27, 2004 (Docket No. 104), had "dismiss[ed] all claims against PwC except certain individual non-promotion claims[,]" and that "the only claims remaining against PwC are the claims that were subject to discovery pursuant to the

---

[3] The posture of the case at the time of the November 22, 2004 Order is comprehensively set forth in the Second Supplemental Joint Report of the Parties on Planning Conference filed October 27, 2004 ("Second Supplemental Joint Report") (Docket No. 111), and in the Transcript of the Discovery and Status Hearing held on November 4, 2004 (Murphy Motion to Compel, Docket No. 134, Tab 2). The November 22, 2004 Order was based on the parties' statements in that joint report and at that hearing (<u>see</u> Docket No. 115).

Scheduling Order and the [First Supplemental] Joint Report" (Docket No. 111 at 5); (see Mem.

Order at 4) ("Plaintiff's 2000 and 2001 non-promotion claims . . . were the sole claims

remaining"). The November 22, 2004 Order thus noted that "Plaintiffs do not dispute . . . that

the trial court's September 27, 2004 Memorandum Opinion and Order limited Plaintiff's claims

to those as to which discovery was conducted pursuant to the initial scheduling order" (Docket

No. 115 at 2) (emphasis supplied). Moreover, the November 22, 2004 Order further noted that

"Plaintiffs do not dispute that the discovery for which the initial scheduling order provided has

concluded  . . ." (id.).

     Accordingly, this Court's first reason for concluding that the November 22, 2004 Order

did not foreclose further discovery -- namely, that discovery under the February 28, 2003

Scheduling Order "principally related to the Plaintiffs' ability to appropriately respond to

Defendants' motion to dismiss" (Mem. Order at 6) -- misapprehends the procedural history of the

case.

## II.    IN ITS SEPTEMBER 27, 2004 MEMORANDUM ORDER AND OPINION, THE TRIAL COURT DID NOT SUGGEST THAT FURTHER DISCOVERY WAS NECESSARY OR APPROPRIATE

     As a second reason for the conclusion that the November 22, 2004 Order did not

foreclose further discovery in Case 1, this Court's Memorandum Order states that Judge Leon's

Memorandum Order and Opinion dated September 22, 2004 "expressly provides that 'the record

is, as of yet, not fully developed regarding the particular circumstances under which the two

plaintiffs were not advanced to partnership [ ]' and as a result there were genuine issues of

material fact relating to the 'disparate treatment' theory thereby precluding both parties' motions

for summary judgment" (Docket No. 143, Mem. Order at 6-7). This Court thus concluded that

Judge Leon's "acknowledgement that the record has not been fully developed regarding the

reasons for Schuler and Murphy's non-promotion to partnership support Plaintiff Murphy's contention that further liability discovery is necessary" in Case 1 (id. at 7).

In the context of the proceedings at the time of the issuance of the Memorandum Order and Opinion on September 27, 2004, however, the only further development of the <u>discovery</u> record Judge Leon might have then anticipated was the concluding sessions of Plaintiffs' depositions. Judge Leon had been advised repeatedly, as early as the Status Hearing held on October 24, 2003, that the parties had completed discovery under the initial Scheduling Order, except for the concluding sessions of Plaintiffs' depositions. Moreover, Judge Leon had no reason to consider that Plaintiffs might otherwise require further discovery as to the reasons for their non-promotion since the cross-motions for summary judgment, decided by the Memorandum Order and Opinion of September 27, 2004, addressed only a "pattern or practice" theory of recovery, and the particular circumstances underlying Plaintiffs' non-promotion to partnership were not at issue and not briefed by the parties.

PwC's memorandum on the cross-motions asserted that Plaintiffs' motion on the "pattern or practice" disparate treatment claims was calculated to preempt PwC's contemplated motion for summary judgment on Plaintiffs' individual disparate treatment claims (Docket No. 68 at 12-14). PwC had previously announced its intention to make that motion after the Plaintiffs' depositions were concluded (id. at 13-14). PwC noted that discovery under the initial Scheduling Order had been limited to Plaintiffs' non-promotion claims, which were the only claims not addressed by Defendants' pending motion to dismiss (id. at 10-11); and that, with the exception of Plaintiffs' depositions, discovery was complete (id. at 13).

After disposing of the cross-motions on the "pattern or practice" disparate treatment claims by ruling that Plaintiffs, as individual, non-class plaintiffs, could not avail themselves of a

pattern or practice theory (Murphy, 357 F.Supp.2d at 246-47), Judge Leon's Memorandum

Opinion concluded by noting that PwC was not then entitled to summary judgment on Plaintiffs'

individual disparate treatment claims: "Second, the Court will not grant summary judgment to

PwC merely on its argument that the plaintiffs' statistical analyses are inadequate, when the

plaintiffs have at least demonstrated that there is a disparity in the ages of individuals promoted

to partnership and the record is, as of yet, not fully developed regarding the particular

circumstances under which the two plaintiffs were not advanced to partnership" (id. at 249). In

context, Judge Leon was clearly opining that if PwC expected to prevail on summary judgment

on Plaintiffs' remaining individual disparate treatment claims, PwC would need to present facts

to the Court as to the "particular circumstances under which the two plaintiffs were not advanced

to partnership." The Court was not, and could not have been, suggesting anything about the

Plaintiffs needing discovery to make a showing on their remaining non-promotion claims.

## A.  **Reports on the Status of Discovery**

The parties had appeared before Judge Leon on two occasions prior to the issuance of the

Court's Memorandum Order and Opinion on September 27, 2004.  At a Status Hearing on

October 24, 2003, PwC's counsel advised Judge Leon that the parties had concluded discovery

under the Scheduling Order, with the exception of two remaining matters:  "PwC needs to

conclude the depositions of the Plaintiffs on documents that were produced after their

depositions and PwC has agreed to produce some additional documents requested by the

Plaintiffs" (Docket No. 92, Exh. M at 7; see also PwC Opp. to Motion to Compel, Tab A at 4).[4]

PwC's counsel further stated the expectation that this remaining discovery "should be concluded

---

[4] Counsel for PwC noted that PwC had agreed to produce those additional documents even though not specified in
the Scheduling Order (id.).

within the next 30 days" (id. at 7-8); (see also id. at 10) ("The conclusion of Discovery on the initial phase . . . should happen in the next 30 days or so").

Plaintiffs' counsel did not take issue with that report to Judge Leon on the status of discovery, and PwC produced the additional documents within 30 days after the Status Hearing, thereby concluding its discovery obligations under the Scheduling Order (see Docket No. 92, Exh. Q at 2). Thereafter, at the Motion Hearing before Judge Leon on April 12, 2004, PwC's counsel stated that the purpose of PwC's pending motions to dismiss certain claims and for partial summary judgment dismissing Plaintiffs' pattern or practice claims was to "clear the decks" so that viability of Plaintiffs' individual non-promotion claims could then be addressed on the merits in a subsequent motion (Docket No. 125, Exh. B at 4). At the conclusion of the hearing on those motions and Plaintiffs' motion for partial summary judgment on a pattern or practice theory, Judge Leon asked Plaintiffs' counsel how much more discovery Plaintiffs needed to take (id. at 85-86). Plaintiffs' counsel responded that, with the exception of Plaintiffs' request for leave to take discovery to support personal jurisdiction over the 20 individual defendants Plaintiffs had named in their complaint,[5] "discovery is finished" (id. at 86).[6]

Accordingly, Judge Leon presumably understood that Plaintiffs had concluded discovery under the Scheduling Order when the Court issued its decision on September 27, 2004.

**B.  Nature of the Cross-Motions**

That the cross-motions only addressed Plaintiffs' claims on a "pattern or practice" theory of recovery is expressly stated in the first sentence of Judge Leon's decision (Murphy, 357 F.Supp.2d  at 232), and noted again in heading "**III.  Cross-Motions for Summary Judgment**

---

[5] In its Memorandum Opinion, the Court ultimately denied plaintiffs' request to pursue that discovery (Murphy, 357 F.Supp. at 243-44).

[6] In its memorandum on the cross-motions, PwC had noted that, with the exception of Plaintiffs' depositions, discovery was complete (Docket No. 68 at 13).

**on the Plaintiffs' 'Pattern and Practice' Claims,**" and the opening sentence under that heading (id. at 245). Moreover, Judge Leon cited to page 33 of Defendants' memorandum on the cross-motions for PwC's argument "that the plaintiffs have not also established a *prima facie* case for 'disparate treatment'" (id. at 246), and in referring to PwC's motion for "summary judgment on the plaintiffs' claims to the extent that they allege a 'disparate treatment' theory" (id. at 249). The point heading on page 33 of PwC's memorandum thus states, "**III.  ON THE UNDISPUTED FACTS, PLAINTIFFS HAVE NOT ESTABLISHED A *PRIMA FACIE* CASE OF 'PATTERN OR PRACTICE' DISPARATE TREATMENT**" (Docket No. 68 at 33). The concluding sentence of that point in PwC's memorandum is "Plaintiffs' pattern or practice claims should, accordingly, be dismissed on PwC's cross-motion for summary judgment" (id. at 47).

Accordingly, PwC cross moved for summary judgment on Plaintiffs' disparate treatment claims only to the extent they were asserted on a pattern or practice theory. Significantly, under that theory, Plaintiffs' motion for partial summary judgment sought to rely on a presumption of discrimination, without addressing the merits of Plaintiffs' individual non-promotion claims. As Judge Leon explained (357 F.Supp.2d at 249 n.13):

> With regard to "pattern or practice" claims, in the seminal case *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court held that "proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made pursuant to that policy." *Id.* at 362, 97 S.Ct. 1843. Thus, in a "pattern and practice" case, the plaintiffs need not establish the merits of their individual discrimination claims under the *McDonnell Douglas* burden-shifting framework, rather it is presumed that as a member of the class, each plaintiff has been the victim of the discriminatory conduct. *Id.* at 362, 97 S.Ct. 1843.

Hence, the particular circumstances concerning the Plaintiffs' individual non-promotion claims were neither at issue nor were briefed by the parties on the cross-motions decided by Judge Leon.

## C. The Decision on the Cross-Motions

In the September 27, 2004 Memorandum Order and Opinion, Judge Leon concluded that the Plaintiffs could not pursue their claims on a "pattern and practice" theory as individual, non-class plaintiffs (Murphy, 357 F.Supp.2d at 246-47), thus granting PwC's motion with respect to Plaintiffs' "pattern or practice" disparate treatment claims on this ground.

Pattern or practice claims are claims of disparate treatment, not disparate impact.[7] Disparate treatment claims require proof of intentional discrimination (id. at 249). On the cross-motions for partial summary judgment, Plaintiffs sought to rely on the presumption of intentional discrimination arising from proof of a "pattern or practice" under the Teamsters standard (see id. at 249 n.13). They did not seek to establish the merits of their individual disparate treatment claims under the McDonnell Douglas framework, and thus did not rely on evidence regarding the particular circumstances under which they, as individual plaintiffs, were not advanced to partnership (see id.), but instead offered purported evidence of general or systemic discrimination through statistics and anecdotes not specific to them (see id. at 248). In its opposition and cross-motion, PwC asserted that Plaintiffs had failed to offer sufficient evidence to establish a *prima facie* case of disparate treatment on a pattern or practice theory, and similarly did not offer evidence of the particular circumstances or specific treatment of the individual Plaintiffs (id. at 249).

---

[7] Judge Leon's ruling that Plaintiffs' claim predicated on the retirement provision in PwC's Partnership Agreement was a disparate impact claim, not actionable under the ADEA, was not based on facts peculiar to Plaintiffs' claims (id. at 247-49).

In sum, neither party offered any evidence of "the particular circumstances under which the two plaintiffs were not advanced to partnership," not because such evidence had not been developed in the discovery record, but because the cross-motions for summary judgment only addressed Plaintiffs' claims on a pattern or practice theory. Against this background, Judge Leon properly declined to grant summary judgment to either side with respect to Plaintiffs' individual disparate treatment claims to the extent those claims were not based on a pattern or practice theory (id.). Under the circumstances, Judge Leon's statement that the record in this regard was not fully developed cannot be read as suggesting that further discovery was necessary. Judge Leon had been informed that discovery had been completed, except for the conclusion of the depositions of the Plaintiffs, and was not otherwise informed as to the details of the discovery that had been completed. While the record submitted on the cross-motions for summary judgment on a pattern or practice theory was plainly insufficient for purposes of summary disposition of Plaintiffs' individual claims under the McDonnell Douglas framework, the discovery record on the particular circumstances regarding Plaintiffs' non-admission as partners was complete in accordance with the initial Scheduling Order.

In light of the foregoing, the concluding paragraph of Judge Leon's Memorandum Order and Opinion cannot be read to support Plaintiff Murphy's contention that further liability discovery is necessary.

## III.    THE NOVEMBER 22, 2004 ORDER SUSTAINED DEFENDANTS' PRINCIPAL CONTENTION THAT PLAINTIFFS HAD COMPLETED ISCOVERY ON THE REMAINING NONPROMOTION CLAIMS AND WERE NOT ENTITLED TO ANY FURTHER DISCOVERY

This Court's "review of the posture of the case" is also incorrect and incomplete in several material respects relating to the parties' positions as set forth in the Second Supplemental Joint Report. The Memorandum Order states: "Defendants opposed Plaintiffs' request for further

discovery by arguing that it had 'provided all discovery specified in the Scheduling Order[,]' and

that 'none of the additional discovery now sought by plaintiffs from PwC is relevant to or needed

to permit Plaintiffs to oppose PwC's [soon to be filed] dispositive motions'" (Docket No. 143,

Mem. Order at 5, citing Second Supplemental Joint Report (Docket No. 111 at 8, 11)).  In citing

to "8, 11" of that Joint Report, the Memorandum Order inexplicably omits reference to seven

separate grounds, set forth on pages 9 and 10, proffered in support of Defendants' primary

position that Plaintiffs were not entitled to any further discovery (see Docket No. 111 at 9-10).

     Moreover, the Memorandum Order suggests that the thrust of PwC's position was that

discovery should be deferred pending resolution of its then contemplated dispositive motion.

But this, again, misapprehends PwC's stay position, which is set forth in the Second

Supplemental Joint Report as a secondary and alternative contention (id. at 10-11).

     Further, while the Memorandum Order notes in passing that the parties argued their

respective positions at a conference on November 4, 2004, the transcript of that "hearing" reveals

that counsel for both sides extensively addressed the issue of entitlement to any further discovery

(see Murphy Motion to Compel (Docket No. 134, Tab. 2 at 1-37), and that counsel for PwC only

briefly noted PwC's alternative position that a stay would otherwise be appropriate (id. at 39-40).

On the latter point, PwC's counsel emphasized that "even if [Plaintiffs] were entitled to

additional discovery on their remaining claims . . . at some point before a possible trial, which

we submit they are not, this presents a classic situation warranting a stay of further discovery

pending resolution of PwC's dispositive motion" (id.) (emphasis supplied).

     Finally, in reciting Plaintiff's position in support of their request for additional discovery

in the Second Supplemental Joint Report, the Memorandum Order (Docket No. 143 at 5) omits

Plaintiffs' principal arguments (cf. Docket No. 111 at 6-7).  Moreover, the Memorandum Order

appears to have also overlooked that the Court, in its November 22, 2004 Order, expressly found "that Plaintiffs have failed to demonstrate that further discovery is warranted," and expressly rejected Plaintiffs' principal arguments that "the discovery had to date was incomplete" and that the initial Scheduling Order "was a starting point, not a limitation" (Docket No. 115 at 2).

Accordingly, in the November 22, 2004 Order, the Court ORDERED only that "Plaintiffs' request for leave to take further discovery is denied," and merely noted that "further discovery, even if such discovery were otherwise warranted, is appropriately stayed pending the determination of the dispositive motion" (Docket No. 115 at 2) (emphasis supplied).[8]

## IV.    THE DISCOVERY REQUESTS AT ISSUE ON RECONSIDERATION

PwC has provided extensive discovery in response to Plaintiff Murphy's recent requests. This discovery has included production of substantial documents responsive to Murphy's various requests purportedly bearing on the partner/employee (Clackamas) issue, thus mooting a large number of requests subject to the motion to compel in both Case 1 and Case 2. Among other things, PwC also produced personnel files, soundings records, and partner admissions files for all comparators in the RAS unit for both Case 1 and Case 2.

Of the disputed requests at issue, identified by Plaintiff Murphy in the Joint Statement Concerning Plaintiff Murphy's Motion to Compel Discovery Responses filed May 11, 2006 (Docket No. 142), PwC objected to following requests on the ground that they are barred, in whole or in part, by the November 22, 2004 Order in Case 1, and the January 9, 2006 Scheduling Orders in Case 2:  Case 1 -- Interrogatory 13, and Document Requests 4, 5, 9, 10 and 13; Case 2 -- Document Request 24.

---

[8] Notably, the "Docket Text" of Docket No. 115 on the Docket Report recites the Order "that Plaintiffs' request for leave to take further discovery is denied[,]" and makes no mention of the dicta regarding a stay.

**Case 1, Document Requests 4 and 9**

These requests seek files on purported comparators outside the RAS unit for the period 1998-2001.  Request 4 seeks documents on employees in any and all units included within Financial Services, and Request 9 seeks files on all employees of the firm 50 years of age or older who were proposed for partnership.  As noted, PwC has produced files on employee comparators in the RAS unit, and Plaintiff Murphy previously deposed the managing partner of RAS, the head of Banking, the head of Financial Services, and a member of the Board of Partners and Principals and its admissions committee during the course of discovery under the initial Scheduling Order.

Document Requests 4 and 9 are not only barred by the November 22, 2004 Order, but are, at best, of marginal relevance and unduly burdensome to locate.  On the latter point, the database referenced by Plaintiff Murphy's counsel at the motion hearing does not include files for the period 1998-2001, and employee files are not maintained, organized or searchable by age of employees or by organizational unit.[9]

**Case 1, Document Request 5**

Document Request 5 seeks production of a prospectus attached to an April 9, 1999 e-mail that was produced by PwC pursuant to the initial Scheduling Order.  Robert Bench, the sender of that e-mail, was deposed by Plaintiffs' counsel for two days in June 2003 pursuant to the initial Scheduling Order.  Plaintiffs' counsel made an apparent strategic decision not to show Bench the copy of his April 9, 1999 e-mail, or otherwise make any inquiry about it.[10]  Plaintiffs' counsel

---

[9] During the relevant time frame, Financial Services consisted of a conglomeration of diverse business units, such as RAS, and includes employees in various other units and offices throughout the United States.

[10] The e-mail, which was handed to the Court at the May 16, 2006 motion hearing by Plaintiff Murphy's counsel, indicated that it "attached a request to change Wes Murphy's designation from Director to Managing Director within code 23."

chose instead to show Bench a copy of a prospectus from Plaintiff Murphy's own files, apparently drafted by Murphy for the purpose of seeking to change his "designation" to Managing Director. In response to questions from Plaintiffs' counsel, Bench disclaimed authorship of that prospectus, noted that it did not contain his signature, and questioned the accuracy of some of its content.[11]

In seeking to comply with the direction in the Memorandum Order to produce the attached prospectus, we have recently determined that PwC had in fact included multiple copies of the prospectus (with marginalia) in its production of documents pursuant to the initial Scheduling Order (Bates Stamped: PWC01090, PWC01095, PWC03359). Had Plaintiff's counsel bothered to question Bench at his deposition about the April 9, 1999 e-mail and/or the prospectus produced from PwC's files, instead of choosing to limit his examination to a prospectus from Murphy's own files, any confusion about the attachment would likely have been resolved before the conclusion of Case 1 discovery. Rather than constituting an example of a request that should not be barred by the November 22, 2004 Order, as presented to the Court by Plaintiff Murphy's counsel at the May 16, 2006 Motion Hearing, Document Request 5 constitutes an example of why PwC should not be unduly burdened by allowing Plaintiff Murphy's new counsel to reconduct Case 1 discovery that was completed by initial counsel over two years ago under the Scheduling Order.[12]

### Case 1, Interrogatory 13

Interrogatory 13, requesting a written statement of the reasons Plaintiff Murphy was not recommended for partner in 1998-2001, exemplifies the cumulative nature of Plaintiff Murphy's

---

[11] Without noting any of Bench's testimony, Plaintiff Murphy thereafter included the prospectus in submissions on two dispositive motions -- his motion for partial summary judgment (Docket No. 59 at 4), and his opposition to PwC's subsequent motion for summary judgment (Docket No. 121 at 16, Exhs. 6 & 7).

[12] At this point, to avoid any further distraction and controversy over Document Request 5, PwC will stipulate that the prospectus it produced (without the marginalia) was the attachment to the April 9, 1999 e-mail.

recent discovery requests through his new counsel. Plaintiff Murphy testified that Bench -- the managing partner of the RAS unit and Murphy's immediate supervisor until Bench's retirement from the firm on July 1, 2003 -- was the partner with responsibility to decide whether or not to initiate the partner admissions process for Murphy during the period covered by Interrogatory 13 (see PwC Mem., Docket No. 136 at 17). As noted, Plaintiff Murphy deposed Bench for two days in June 2003 with respect to his non-promotion claims subject to discovery under the initial Scheduling Order. Interrogatory 13 would have been appropriate in the inception of discovery, not two years after its completion. Having completed his discovery on those claims under the initial Scheduling Order, Interrogatory 13 is appropriately barred by the November 22, 2004 Order.

### Case 1, Document Request 13

This request seeks complete minutes of all meetings of the Board of Partners and Principals for 1998-2001. The initial Scheduling Order (Docket No. 47) required PwC to produce, among other things, "minutes of meetings of the PwC Admissions Committee or the Board [of Partners and Principals], if any, concerning the consideration of plaintiffs for admission as partners" (id. at 2). That specific request reflected Plaintiffs' recognition that a broader request for minutes was inappropriate. In response, PwC searched and reviewed all the minutes, and there were no minutes responsive to Plaintiffs' targeted request specifically included in the Scheduling Order.

PwC having previously responded to a specific request for minutes on a particular subject matter, Plaintiff Murphy's most recent request for all minutes, regardless of the subject matters addressed, is appropriately barred by the November 22, 2004 Order. Under the circumstances, this request is not only unreasonably cumulative, but overbroad. While not including any references to the subject specified in Plaintiffs' previous request under the initial Scheduling

Order, the Board minutes largely address confidential and highly sensitive business and financial matters having no bearing whatsoever on any issues in this litigation.

Plaintiff Murphy now speculates that the minutes "likely contain contemporaneous information about the qualifications that the firm was seeking in partner candidates" (see Docket No. 143, Mem. Order at 14), but does not limit his request to that subject matter. In that regard, PwC has produced contemporaneous soundings and partner admissions records on all RAS employees recommended and considered for partnership from 1998 through the July 1, 2004 admissions cycle at issue in Case 2. In addition, Plaintiff Murphy fully deposed four PwC partners pursuant to the Scheduling Order in Case 1, from the managing partner of the RAS unit up to a partner on the Board of Partners and Principals and its admissions committee, and had a complete and unrestricted opportunity to inquire about the qualifications of partner candidates. Application of the November 22, 2004 Order to foreclose a request for the minutes would thus result in no prejudice to Plaintiff Murphy.

To the extent Plaintiff Murphy is suggesting that the minutes "may also contain direct evidence regarding bias against older candidates" (see Docket No. 143, Mem. Order at 14), that is pure speculation unsupported by any facts. Even recognizing the broad standard of relevance for discovery purposes, Plaintiff Murphy's unsupported speculation cannot justify a warrant to search Board minutes that otherwise contain highly confidential and sensitive information completely unrelated to any issue in this case.

## Case 2, Document Request 24

The Memorandum Order notes that, in addition to the November 22, 2004 Order, PwC objected on other grounds to Document Request 24, requesting the production of performance appraisals from personnel files for non-party witnesses Robert Bench, Robert Moritz and Timothy Ryan, each of whom had been deposed by Plaintiff Murphy under the initial Scheduling

Order. The Memorandum Order ruled that PwC's asserted objections were "unsupported by argument or authority and therefore the undersigned finds that they are without merit" (Docket No. 143, Mem. Order at 8, n.2). That is not correct.

Albeit in a footnote that does not identify the document request by number, PwC's Memorandum in Opposition to Plaintiff Murphy's Motion to Compel includes the following argument and authority (Docket No. 136 at 26, n.3):

> Like many of Murphy's 122 discovery requests, his request for production of the personnel files of witnesses he deposed is not only barred by the November 22, 2004 Order, but overbroad and harassing (see Waters v. United States Capitol Police Board, 216 F.R.D. 153, 164 (D.D.C. 2003) ("The only material information in the personnel files would be information that bears on the witness' honesty or credibility or which disclose a discriminatory or retaliatory intent."); see also Macintosh v. Building Owners & Managers Association International, 231 F.R.D. 106, 108-09 (D.D.C. 2005) ("a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove his case")).

Plaintiff Murphy's Reply Memorandum (Docket No. 137) does not respond to this argument and authority, and makes no mention of Document Request 24 or otherwise attempt to support his belated request for personnel files of witnesses he deposed under the initial Scheduling Order. Upon reconsideration, PwC's objections should be sustained.

## Conclusion

For the reasons stated, PwC respectfully requests that the Court reconsider its

Memorandum Order filed May 22, 2006, and revise its rulings on objections based on the

November 22, 2004 Order.

Dated:  June 2, 2006

Respectfully submitted,

_____/s/_____
Thomas M. Buchanan, Esq. #337907
Julie A. Klusas Gasper, Esq. #D00244
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20036
(202) 282-5000
Facsimile (202) 282-5100

Eric M. Nelson, Esq. (admitted *pro hac vice*)
Stephen L. Sheinfeld, Esq. (admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
(212) 294-6700
Facsimile (212) 294-4700

Counsel for Defendant
PricewaterhouseCoopers LLP