UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| C. Westbrook Murphy, *et al.*<br>　　　Plaintiffs,<br><br>v.<br><br>PricewaterhouseCoopers, LLP, *et al.*<br>　　　Defendants. | Civil Action No. 02-982 (RJL/DAR) |
| C. Westbrook Murphy,<br>　　　Plaintiff,<br><br>v.<br><br>PricewaterhouseCoopers, LLP<br>　　　Defendant. | Civil Action No. 05-1054 (RJL/DAR) |

### DECLARATION IN OPPOSITION TO PLAINTIFF MURPHY'S MOTION FOR EXPEDITED BRIEFING ON HIS MOTION TO REMOVE ATTORNEYS' EYES ONLY RESTRICTION

I, Eric M. Nelson, declare as follows:

1. I am a member of Winston & Strawn LLP, counsel for defendant PricewaterhouseCoopers LLP ("PwC") in these related cases, and have been admitted *pro hac vice* in each of the cases. I am fully familiar with the matters addressed in this declaration, which is respectfully submitted in opposition to Plaintiff Murphy's Motion for Expedited Briefing on His Motion to Remove Attorneys' Eyes Only Restriction that was ordered by this Court on August 21, 2003 (Case 1, Docket No. 61). (A copy of said Order is attached hereto as Exhibit A.)

2. As set forth below, neither the motion to modify nor the motion to expedite briefing is made by plaintiff Murphy in good faith. The motion to modify seeks relief either that PwC had previously agreed to provide or that is otherwise provided in the prior Order. The

motion to expedite briefing on the unnecessary motion to modify is otherwise made after a period of extraordinary, unreasonable and unexplained delay.

3.   Given plaintiff Murphy's disavowal of the parties' agreement, which would have provided him with all the relief to which he might be entitled on his motion to modify, PwC intends to fully oppose the motion on the merits. That opposition will necessarily include briefing various legal issues raised, and marshalling the pertinent facts and background in the record, as well as a factual and legal response to certain collateral issues plaintiff Murphy raises. Moreover, to the extent plaintiff Murphy asserts that PwC bears an affirmative burden of demonstrating the propriety of each and every page designated "For Attorneys of Record Only," a contention PwC believes to be incorrect under the circumstances, PwC's opposition will necessarily be extensive and especially time-consuming to prepare.

4.   As further detailed below, any urgency here is solely the result of plaintiff Murphy's dilatory actions and conduct. Moreover, plaintiff Murphy's motion to modify, made without compliance with LCvR 7.1(m) or the applicable provisions of the protective order at issue, is interposed at a time when PwC's counsel is otherwise fully engaged in preparation for a belated and compressed deposition phase of the litigation. Accordingly, PwC respectfully opposes plaintiff Murphy's motion to expedite briefing and, under the circumstances, reserves the right to seek an extension of time to file its papers in opposition to the motion to modify.

**The Disavowed Agreement**

5.   The issues raised by plaintiff Murphy's motion to modify the prior Order were resolved by agreement on September 11, 2006, the day before the motion was inexplicably filed. On that day, PwC agreed to plaintiff Murphy's proposal to modify the "attorneys' eyes only" restriction to permit plaintiff Murphy "to see (a) sounding records, (b) documents which discuss

2

work on client matters, [and] (c) performance appraisals" for PwC partners David Albright and Jeffrey Lavine (see e-mails attached as Exhibit B hereto). The sole justification offered for plaintiff's motion to "remove" (rather than modify) that restriction is that his counsel needs to review these documents with him for the following reasons (see Case 1, Docket No. 155, Case 2, Docket No. 46, at 7):

> Plaintiff has invaluable experience and knowledge regarding the projects on which they were working. The plaintiff also has specific, important knowledge of the technical language used to describe his and others' work product at PwC, as well as the company-specific promotion and evaluation procedures used to determine who should be promoted.

6. Plaintiff's motion offers no need or justification to review any other information, including personal compensation information, with plaintiff Murphy. Apart from failing to provide any explanation of need on this motion, plaintiff's counsel failed to satisfy his obligation to "meet and confer" on the issue, as required by LCvR 7.1(m), before filing the motion. Had plaintiff's counsel done so, and proffered a legitimate need, PwC was prepared to allow the sharing of compensation information with plaintiff (see Exhibit B hereto).

7. Apart from seeking modification to allow plaintiff Murphy to review information PwC previously agreed to allow him to review, plaintiff's motion also purports to seek the right to share certain "For Attorneys of Record Only" information with experts (Case 1, Docket No. 155, Case 2, Docket No. 46, at 7). But the Order at issue expressly allows disclosure of such information to "such *bona fide* outside consultants and experts as counsel may, in good faith, retain to provide assistance in the conduct of this action" (Exhibit A, ¶ (2)(ii)(b)). Before filing the motion to modify, plaintiff Murphy's counsel never made any mention of any issue regarding experts.

8.    Accordingly, plaintiff Murphy's motion seeks a judicial resolution of issues that have been resolved by agreement and seeks other relief that is expressly permitted by the Order he purportedly seeks to modify. As plaintiff Murphy has disavowed that agreement, PwC intends to oppose the motion on the merits.

**The Motion to Expedite Briefing**

9.    Without regard to the apparent tactical reasons for plaintiff Murphy's motion to expedite briefing on an unnecessary motion for modification of the prior Order, PwC opposes the motion to expedite on several grounds.

10.    In the first instance, the motion is dilatory. The documents at issue (i.e., records concerning Messrs. Albright and Lavine, Bates-stamped PwC 03582 through PwC 05000), were voluntarily produced by PwC on February 17, 2006 (see Exhibit C hereto).[1] Those documents were produced in an expedited response to a specific e-mail request from Mr. Salzman on February 10, 2006 that PwC provide "the personnel files and soundings of Messrs. Albright and Lavine."

11.    At some point in March 2006, Mr. Salzman mentioned to me in a telephone conversation that he wished to discuss a possible modification of the "Attorneys of Record Only" designation so that he could discuss with his client the matters now described in his motion to modify (see ¶ 5, supra). I responded that his request seemed reasonable, and asked Mr. Salzman to make a specific proposal. Mr. Salzman thanked me, and said he would get back to me as there was no urgency.

12.    Thereafter, Mr. Salzman made no mention of any "attorneys' eyes only" issue until August 25, 2006, when he sent me an e-mail noting that, "I know we spoke about this once

---

[1] Plaintiff Murphy's motion to modify falsely implies that the documents were not produced until sometime after August 16, 2006 (see Case 1, Docket No. 155, Case 2, Docket No. 46, at 3).

4

before," and proposing a modification of the "attorneys' eyes only" designations for certain information contained in the Albright and Lavine personnel records.

13. After several e-mails and telephone calls in which Mr. Salzman declined to provide copies of the documents at issue, redacted to show the content he wished to disclose to Mr. Murphy, Mr. Salzman made the proposal in his e-mail of Friday, September 8 that PwC agreed to on Monday, September 11 (see Exhibit B hereto). The next day, September 12, Mr. Salzman called me to advise that, notwithstanding PwC's agreement to the proposal Mr. Murphy had authorized just a few days earlier, Mr. Murphy had instructed him to make the motion to modify that was filed later that day. In response to my questions and surprise, Mr. Salzman stated that he would be willing to meet and confer only after he filed the motion.

14. In sum, the documents in question were produced by PwC in February 2006, and PwC had communicated its willingness in March to discuss modification "Attorneys of Record Only" designations. After an unexplained hiatus of several months, plaintiff's counsel did not seek to engage in any such discussion until August 25, 2006. Then, after PwC had agreed on September 11 to a modification proposed by plaintiff Murphy on September 8, Mr. Murphy inexplicably decided to file a motion anyway, and his counsel declined to confer further before filing that motion.

15. Having failed, without explanation, to discuss the issue for several months, plaintiff Murphy now purports to move on an emergency basis, on the eve of depositions, to expedite and shorten PwC's briefing time to five days. If there is any urgency here in seeking relief that PwC has already agreed to, it is solely as a result of plaintiff's own unreasonable delay.

16. Apart from the dilatory nature of plaintiff's motion to modify, shortening PwC's time to respond to the motion would be unduly prejudicial. As plaintiff Murphy and his counsel

are well aware, PwC's attorneys are now fully engaged in preparing for a deposition phase in this litigation that has been severely compressed as a result of plaintiff's actions and inaction. In late July, plaintiff's counsel asked for the availability in September of ten partners and employees they wished to depose, inexplicably skipping the entire month of August despite an October 6, 2006 fact discovery completion date. At the same time, plaintiff Murphy failed to produce his documents pursuant to the February 28, 2003 and January 9, 2006 Orders until September 1, 2006, thus precluding his deposition in Case 2 until this month. In addition, plaintiff Schuler's counsel has advised that he will not be producing his documents until the end of this week, at the earliest. (For these reasons, PwC has joined in plaintiff Murphy's recent motions to extend the impending fact discovery deadline to early November.)

17. Unless plaintiff Murphy elects to immediately withdraw his motion to modify and to a resolution of the issue as previously agreed, PwC does not intend to waive its right to have the motion decided on a complete record with full briefing. Plaintiff's memorandum in support appears to confuse the appropriate standard of review on the motion, which merely recycles and reasserts the same arguments based on the same cases submitted in opposition to the motion giving rise to the protective order at issue in August 2003. Plaintiff's memorandum further appears to misrepresent certain cases on which it relies (including a protective order entered <u>on consent</u> by Magistrate Judge Robinson in a case in 1989 which plaintiff Murphy presents as a "holding").

18. In addition, while plaintiff relies heavily on his voluntarily retirement from PwC as a changed circumstance, he makes related assertions that are subject to serious question. For example, there is reason to doubt his contention that his "past conduct" does not suggest that he will "abuse" confidential information (<u>see</u> Case 1, Docket No. 155, Case 2, Docket No. 46, at 6).

6

In this regard, PwC's counsel needs to review, and believes the record should reflect, plaintiff's extensive deposition testimony that he discussed this litigation with a substantial number of PwC employees in various locations within the firm, and unsuccessfully solicited the intervention of many of them, while providing documents and other information to some. On information and belief, Mr. Murphy remains in communication with many of these PwC employees and others, and does not represent otherwise.

19. Moreover, additional issues are raised by plaintiff's acknowledgment that he is "highly involved in his case" as "an attorney in his own right," and is bound to abide by the Rules of Professional Responsibility (id.). The discovery record reflects material breaches of those ethical rules by Murphy's extensive direct communication with partners and employees of PwC, during the pendency of this litigation, in an unsuccessful effort to inappropriately elicit admissions and information relating to his claims in the litigation, without notice to PwC's counsel. PwC intends to carefully review the documented facts, as well as the applicable ethical rules and opinions, to respond to the issue raised by plaintiff Murphy in support of his motion.[2] Hence, PwC does not derive sufficient comfort from plaintiff's counsel's conclusory references to plaintiff's "past conduct" and his status as an attorney.

20. Moreover, PwC's opposition to plaintiff Murphy's motion to remove the "Attorneys of Record Only" designation will describe how PwC's briefing in support of the Order adopting that designation in the summer of 2003 did not hinge on plaintiff's status as a

---

[2] As one example, shortly after plaintiff Murphy commenced this litigation in May 2002 against PwC and the individual members of its Board, including Samuel A. DiPiazza, plaintiff Murphy (with his retained counsel present as his guest) attended a nationally televised event at the National Press Club where Mr. DiPiazza was the featured speaker to discuss issues confronting the accounting profession in the aftermath of the Enron/Arthur Anderson debacle. Without notice to Mr. DiPiazza's counsel in this litigation, Mr. Murphy submitted a written question to Mr. DiPiazza on an entirely different subject -- mandatory retirement provisions for partners at accounting firms, an issue raised in his complaint against Mr. DiPiazza -- and obtained a transcript of Mr. DiPiazza's response to his question.

current PwC employee. Rather, it was based principally on the recognized privacy rights of non-party employees, especially where those employees are known to the party litigant. The latter circumstance has not changed by reason of plaintiff Murphy's retirement from the firm.

21. It is unclear what, if any, information beyond what PwC agreed to allow him to see, plaintiff Murphy seeks access to on his motion to modify. Exhibit 1 to his motion attaches six pages from PwC's expedited 1,418-page production of Albright and Lavine's personnel records on February 17, 2006. At most, those six pages reveal the overbreadth of certain discovery requests PwC has complied with. These documents are totally irrelevant, but plaintiff ignores this and instead suggests they should not remain confidential (see Case 1, Docket No. 155, Case 2, Docket No. 46, at 8).

22. When plaintiff's counsel disclosed to the undersigned the six pages they intended to file under seal, I immediately insisted that they be filed electronically "so as to not unnecessarily burden the parties, the Clerk's Office or Magistrate Judge Robinson" (see e-mails dated 9/12/06 attached as Exhibit D hereto). Plaintiff's counsel initially resisted doing so (id.), and then electronically filed the 6-page Exhibit with a statement that "after plaintiff had filed his motion electronically, counsel for defendant notified plaintiff that PwC withdrew its designation with respect to these documents and asked that plaintiff file the exhibit on the public record" (Case 1, Docket No. 157, Case 2, Docket No. 48). Plaintiff's counsel thereby seeks to leave the erroneous and unfair impression that PwC capitulated, and acknowledged improper designations, only after plaintiff Murphy filed his motion. That is decidedly not the case. The undersigned's e-mail insisting that the exhibit be filed electronically thus stated (see Exhibit D hereto):

> Had you bothered to advise us of your apparently compelling need
> to show these documents to plaintiff Murphy, at any time in the
> past seven months since these documents were produced among
> the 1,418 pages of personnel records of Messrs. Albright and

8

>Lavine on February 17, 2006, we obviously would have consented to your doing so.

23. PwC has previously cited decisions of this Court recognizing the highly sensitive, personal and private nature of personnel records (see Docket No. 146-2 at 19). Plaintiff claims that PwC was indiscriminate in stamping certain pages plaintiff submits to the court out of the context of the personnel files in which they are included. In context, for example, the statement of "equal employment opportunity" (PwC 04291) was part of Mr. Lavine's employment application; and another page (PwC 04238) was included among written applications for insurance, health and other benefits, which reveal such personal and private information as named beneficiaries, social security number and address.[3] In any event, neither plaintiff Murphy nor his counsel have any need to review or use any of these documents that are included in complete personnel files PwC produced in response to plaintiff's request.

24. Plaintiff Murphy not only disregards his obligations under LCvR 7.1(m), but flouts the terms of the protective order he moves to modify. The Stipulation and Protective Order (Case 1, Docket No. 49), later amended by Order to include an "Attorneys of Record Only" designation (Exhibit A hereto), plainly provides that before a party may seek Court intervention to resolve a dispute, that party must first notify the designating party in writing of its objection to a designation of specified discovery material and then seek to resolve the objection by agreement (Case 1, Docket No. 49, ¶ 8). Plaintiff Murphy made no effort to comply with this Order before filing his unnecessary motion.

---

[3] In this regard, plaintiff Murphy adopts a tactic used on his recent motion to compel by making misrepresentations concerning isolated documents presented to the Court as a purported "example" or "sample." That tactic ultimately led to plaintiff Murphy's motion for leave to file a response in which "plaintiff's counsel apologize[d] to the Court for their error" and proceeded to make other misstatements concerning the document in question (see Case 1, Docket No. 150-3).

25. Had plaintiff Murphy complied with his obligations under the protective order with respect to the complete personnel files he had requested and received in February, he would have identified the far more limited universe of potentially <u>relevant</u> documents at issue, and notified PwC of any objections to the designations of that substantially smaller volume of pages. Instead, plaintiff Murphy now asserts that a document by document review of all designated personnel files would be unduly burdensome, and purports to either impose that burden on PwC or simply remove all designations in their entirety (<u>see</u> Case 1, Docket No. 155, Case 2, Docket No. 46, at 7-8). If those are the alternatives, PwC will need to take the time required to meet that purported burden. (Of course, no such burden would have been imposed on either party or the Court under the agreement disavowed by plaintiff Murphy.)

26. PwC's counsel is disappointed and upset by plaintiff Murphy's counsel's apparent determination to manufacture some discovery dispute to bring before Magistrate Judge Robinson, and by the timing and means adopted for this ill-conceived tactic. Under the circumstances, we intend, and do not take this lightly, to seek appropriate sanctions for the conduct of plaintiff Murphy and his counsel in this matter.

## Conclusion

27. For the foregoing reasons, PwC respectfully submits that plaintiff Murphy's motion to expedite the due date of PwC's papers in opposition to his motion to remove attorneys' eyes only restriction be denied, and that PwC opposition papers be due within 11 days of the date of filing of this declaration. In the alternative, PwC respectfully submits that plaintiff Murphy's motion to remove attorneys' eyes only restriction be denied, without prejudice to renewal if deemed necessary after plaintiff Murphy complies with his obligations under LCvR 7.1(m) and paragraph 8 of the Stipulation and Protective Order filed April 24, 2003. (A proposed Order will be filed later today.)

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 15, 2006

                                                          /s/ Eric M. Nelson
                                                           Eric M. Nelson