Final 3/7/01 (usboardconfcall20701)

**PRIVATE & CONFIDENTIAL**

**MINUTES OF THE**
**US BOARD OF PARTNERS AND PRINCIPALS'**
**CONFERENCE CALL**
**FEBRUARY 7, 2001**
**3:00 PM EST**

### PARTICIPATING:

Samuel A. DiPiazza, Chair
Lawrence H. Anderson
W. Keith Booth
Michael S. Collins
Brian L. Cornell
Robert B. Dubner
Robert H. Herz
Stephen D. Higgins
Craig M. Jacobsen
Richard R. Kilgust
Fredric L. Laughlin
Ronald T. Maheu
Philip P. Mannino
Anthony F. Martin
Dennis M. Nally
Donald T. Nicolaisen
Garrett L. Stauffer
George G. Strong, Jr.
Brett D. Yacker
George J. Yost III

### NOT PARTICIPATING:

J. Frank Brown
Deborah Simpson
Peggy M. Vaughan
Robert K. Waters

### OTHERS:

Dale Baylet
Lisa Feigen Dugal



**PLAINTIFF'S EXHIBIT**
9
P's Opp. Prot. Order

PWC19115

Kathleen Gaffney
Tom Leipzig
Ann MacDougall
David McLean

The US Board of Partners and Principals of PricewaterhouseCoopers LLP met via
conference call to be updated on two matters--US governance and a new initiative,
Operational Readiness.

## US GOVERNANCE UPDATE

### *Overview*

Samuel A. DiPiazza provided the Board with an overview of upcoming US governance
activities relative to the US and global governance systems, including the upcoming US
and global Board elections. He thanked Dick Kilgust and the other members of the
Governance Task Force for their efforts to date in the governance area.

### *Report from the Governance Task Force*

Dick Kilgust, Chair of both the US Governance Task Force and the US Board's
Governance Committee, summarized US governance deliberations since the last time the
Board was updated on this matter at its December 14, 2000 Board meeting in New York.
These changes were outlined in a joint note from Sam DiPiazza and Dick Kilgust (LN
dated January 30, 2001, "US Governance Proposals"):

The most significant changes are the following:

- Development of a **white paper to be used by the Nominating Committee
  ("Prescriptive Guidance" document)**, which will provide guidance from the Board,
  concerning what is meant by "meaningful consultation with partners" in the context
  of the Committee's process and concerning the requirement to provide a diversity of
  choices on the US Board ballot.

- **Minimum guarantees** will be recommended for the election of Board members,
  which will be handled by the single transferable voting (STV) voting method--ABAS
  (4), MCS (2), TLS (2), and Other LOS (1).

- **Board vacancies caused by a separation of MCS** will be filled by recompiling the
  voting results after eliminating MCS partner voters and MCS candidates.

- **Elimination of the partner ratification vote** on the Nominating Committee slate,
  because the timeline will not allow enough time for a ratification vote on the
  Nominating Committee as originally contemplated.

CONFIDENTIAL

- The **role of the lead director** has been further clarified. Originally, it was proposed that the lead director would review other Board members' compensation for fairness. To provide clarity, it is now proposed that the lead director review each Board member's compensation for consistency with his or her overall role and performance rating.

- Another matter that has now been addressed by the Governance Task Force is the **permanent procedures for Chairman and Senior Partner selection**.

Board members commented on the following relative to the updated governance proposals:

- **The minimum guarantees to be used for the STV election of the US Board and whether the guarantees would also apply for future Board elections**--Kilgust noted that it was contemplated for this first election only and that it would be up to the future Board to decide whether guarantees should be used in future Board elections.

- **Whether the results of the Board ballot process without the use of LoS guarantees can be generated**--Kilgust noted that this information will be available post-election.

- **The decision to go forward with the slate of Nominating Committee members without formal ratification by the partners**--Board members discussed whether there would be sufficient time allowed in the governance timetable for partners to review the US and global governance documents and, therefore, be sufficiently informed to participate in the Nominating Committee process. Kilgust responded by outlining the key dates in the timetable, which would permit partner participation in the process. The timing is tight, he acknowledged, but was needed to enable coordination with the timing of the global governance process so that US Board candidates can also be proposed for Global Board seats. Board members also discussed the impact of starting the Nominating Committee process before the US governance system is voted on by the partners. Some Board members considered it an issue, others did not.

Board members emphasized the need to explain in partner communications the reasons for the aggressive timetable for approving the new US governance system and Board election and, as part of that document, to allay partners' concerns that they are not being "pushed" to approve the proposed governance structures. Partners need to be able to "buy into" the proposed governance systems and it is hoped that planned communications from Sam DiPiazza will address this point. The plan is to transmit a comprehensive partner communication outlining both the US and global processes during the week of February 19th. Board members also agreed that this communication should highlight differences from the prior governance system and the reasons for changes—i.e. why the partners are not ratifying the slate of Nominating Committee members.

CONFIDENTIAL

PWC19117

A Board member suggested that partner conference calls could be scheduled the week of February 19th to address any questions that arise after the DiPiazza governance communication is released.  It appeared to be the consensus of those participating on the conference call that these calls would be worthwhile to schedule.

### *Formation of the Nominating Committee and Role of the Selection Committee*

DiPiazza noted that, regarding the formation of the Nominating Committee, the five Board members who are not eligible to stand for reelection to the Board have been asked to serve as the group who will propose the slate for serving on the Nominating Committee--the Selection Committee.  These Board members are:  L. Anderson, R. Dubner, F. Laughlin, R. Maheu, and R. Waters.  This group will propose a slate of Nominating Committee members for US Board approval at its February 16th conference call.  There will also be a recommendation that no more than two Board members may serve on the Nominating Committee. In response to a Board member's question, DiPiazza confirmed that there would be one Chair named for the Nominating Committee.  Board members indicated their support for one Chair being named.

DiPiazza said that one of the members of the Selection Committee would also be asked to serve as Board representative overseeing the US Board election process.   The name of this individual will be identified shortly.

### *Role of the Lead Director*

Board members commented on the proposed role of the Lead Director and, in particular, the recommendation that this individual review each Board member's compensation for consistency with his or her overall role and performance rating:

- **Why this needs to be articulated as a function of the Lead Director**--Kilgust noted that it was the view of the Governance Task Force that it was important to ensure that a Board member not be advantaged or disadvantaged financially by service on the Board.  Some Board members seemed to feel that the perception of such a role could be negative; it "sounds like you are protecting the compensation of the Board," according to the view of one Board member.  Kilgust went on to say that this role was recommended to ensure that the Board members' compensation was consistent with his or her primary role and performance rating.   It is not thought to be serving as a "judgmental" role.  A Board member (also a member of the Governance Task Force) further described the role of the Lead Director as envisioned was to address the concerns expressed by some partners that Board members aren't independent of management.  The idea was that the Lead Director could take an independent look at the compensation of Board members to make sure that mapping in the New Partner Income System (NPIS) is consistent with the primary role of the Board member and not influenced by management.

CONFIDENTIAL

- **Why the Lead Director would review Board members' compensation versus the role of the Partner Affairs Committee in that review**--Several Board members indicated that it might be better for the Lead Director to work with the PAC on Board compensation review to confirm that the compensation of the Board members has not been positively or negatively impacted by Board service.

  DiPiazza said that Board members should consider this issue prior to the February 16th conference call; the hope is to resolve this matter by that time.

- **Releasing the compensation information of all Board members to partners**-- Board members discussed whether this would be a worthwhile option to consider. Other Board members did not seem to agree this would be helpful, since Board members will likely be mapped to different levels in the NPIS.

DiPiazza also commented on some of the other governance proposals, including:

- **Determination of the partner equity unit to be used for the vote on the US and global governance systems**--Since this first vote is an economic vote, as defined by the P&PA, it is proposed that it be based on "share equivalents" or equity units in the new partner income system (NPIS).   He went on to say that these equity units are based on targeted income.

- **The need to agree to terminate the 20% voting cap with regard to the limited equity partner group**--MacDougall noted that this will need to be done at the February 16th conference call.   She also pointed out that this action needs to be done by the legacy firms' US Firm representatives versus the full PwC Board.

- **Legacy parity as it relates to voting**--This still remains an outstanding issue. Further efforts to reach a conclusion will take place and the plan is to resolve this issue by the February 16th Board conference call.

Kilgust and MacDougall also responded to Board members questions' on the nature of the proposed changes to the P&PA document.  They noted that the overall areas of change in the P&PA have to do with the Board, governance and the TSP election, as well as post-withdrawal conduct.

### *Vendor for US Elections Process*

Lisa F. Dugal updated the Board on the nonprofit organization, the Center for Voting and Democracy (CVD), that is proposed to manage and oversee the US elections process, as well as serve as independent teller.  Dugal described how the partners will access voting through PwC's existing Partner Portal.   In response to a Board member's question on plans to educate partners on the Single Transferable Voting method to be used for the US Board vote, Dugal noted that PwC will be working with CVD on providing partners with STV background and that there will also be efforts to work with the global governance team to ensure a consistent message.  Board members requested that, as part of the due

CONFIDENTIAL

diligence process relative to CVD, the organization be checked for independence conflicts and for any service relationships with PwC; also, the Board asked for assurance that no PwC person serves on its Board. Dugal noted that the process of finalizing the appropriate checks had not yet been concluded.

### _Deliverables and Board Action for the February 16th Conference Call_

Kilgust outlined what the Board would be receiving in advance of the next scheduled Board conference call on governance, currently scheduled for 10 am ET on Friday, February 16, 2001:

--The proposed slate of Nominating Committee members;
--The draft "Prescriptive Guidance" document to be provided to the Nominating Committee on guidelines to be followed for their deliberations;
--The timeline for US governance actions in a clear, high-level format;
--A draft summary memorandum on key features of the governance system--the "Explanatory Memorandum"; and
--A working draft version of the PwC LLP Partners and Principals Agreement.

He noted that the Board will only be asked to approve two items on February 16--the proposed slate of Nominating Committee members and the "Prescriptive Guidelines" document.

### OPERATIONAL READINESS INITIATIVE

Dennis Nally and Thomas Leipzig reported to the Board on a new initiative, Operational Readiness for MCS. Operational Readiness focuses on the managerial, financial and ownership issues that must be resolved in order to separate MCS and on developing a plan to effect the necessary transaction at the appropriate time. Leipzig described the various PwC workstreams which have been established to focus on key areas towards the objective of Operational Readiness. The Board will be regularly updated on further progress.

******

There being no further business, the meeting via conference call was adjourned.


Kathleen C. Gaffney

CONFIDENTIAL