

Not Reported in F.Supp.

Not Reported in F.Supp., 1987 WL 11994 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

Page 1

H
Briefs and Other Related Documents
Kuwait Airways Corp. v. American Sec. Bank, N.A.D.D.C.,1987.Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
KUWAIT AIRWAYS CORPORATION, Plaintiff,
v.
AMERICAN SECURITY BANK, N.A. and First American Bank, N.A., Defendants.
Civ. A. No. 86-2542.

May 26, 1987.

Thomas J. Whalen, Robert Silverberg and Robert Ludwig, Jr., Washington, D.C., for plaintiff.
Dale A. Cooter and Nicholas Hantzes, Washington, D.C., for defendants.

*MEMORANDUM-ORDER*
GASCH, District Judge.
*1 This case involves allegations that an individual, named Robert Sensi, area sales manager of plaintiff corporation, converted and stole checks drawn by the Embassy of Kuwait payable to Kuwait Airways Corporation ("KAC") which totalled approximately $2.7 million. American Security Bank, N.A. ("ASB") is alleged to have converted the funds belonging to KAC by permitting Sensi to deposit the stolen checks into an account under the name of plaintiff which, however, Sensi controlled, and collecting the proceeds from the drawer of the bank. American Security has noticed the deposition of Mr. Ahmad Hamad Al Mishari, Chairman and Managing Director of KAC, to be taken in Kuwait on June 6, 7 or 8, 1987. Plaintiff KAC has moved the Court for a protective order to prevent the Al-Mishari deposition pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

According to both parties, Chairman Al-Mishari is the highest ranking official of KAC. KAC adds that Mr. Al-Mishari is not a Kuwait government official. KAC argues that the subject deposition should not be taken because (1) Chairman Al-Mishari has no unique personal knowledge relevant to this case; (2) defendant could discover the information sought from other KAC witnesses who have already testified or will testify; and (3) a request to depose the highest corporate officer *per se* constitutes harassment.

American Security Bank has identified several areas in which it seeks information from Chairman Al-Mishari. First, ASB claims that the Chairman was the primary authorized signer for the Kuwait Airways account with ASB. ASB states that Mr. Al-Mishari corresponded regularly regarding this account. This correspondence concerned other authorized signers for the account and ASB's participation in KAC audits.[FN1] ASB maintains that it is entitled to depose Mr. Al-Mishari regarding any audits of KAC since an adequately performed audit would have uncovered the improper conduct of Mr. Sensi. Additionally, ASB desires to ascertain the scope of Al-Mishari's authority to negotiate funds in the account and whether such authority was exclusive or shared with others.

Second, ASB states that Mr. Al-Mishari's testimony is vital to clarify the relationship between KAC and the Kuwait government. KAC has denied allegations that it is the alter ego of the Kuwait government. The deposition of Chairman Al-Mishari may illuminate the day-to-day relationship between the airline and the government.
[FN2] Third, ASB asserts that the Al-Mishari deposition is sought for the purpose of exploring the relationship between Mr. Sensi and Mr. Al-Mishari. Apparently, George Barrow, the Manager of ASB's Washington Square branch at which KAC business was transacted, testified that Sensi had a "close" relationship with Chairman Al-Mishari and the Royal Family. In an affidavit submitted by plaintiff, Chairman Al-Mishari states: "... I have had and have now no personal relationship

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


PLAINTIFF'S EXHIBIT

Not Reported in F.Supp.

Not Reported in F.Supp., 1987 WL 11994 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

Page 2

whatsoever with Robert Sensi. I am familiar with him only on a professional basis insofar as he was the District/Regional Sales Manager of KAC in the Washington, D.C. area, and know him no better than the many other sales managers in the company." Exhibit C to Plaintiff's Reply at ¶ 5.

*2 In addition to disavowing any personal knowledge of Robert Sensi's activities relating to the case at bar, Mr. Al-Mishari states that he has no personal knowledge of KAC's banking affairs. The Chairman claims that others are more competent to address these financial matters, e.g., KAC's Deputy Director General of Financial and Administrative Affairs.

Upon reviewing the law, the Court overrules plaintiff's motion and permits the scheduled deposition of Mr. Al-Mishari to proceed. Rule 26(c) of the Federal Rules of Civil Procedure allows the issuance of a protective order "for good cause shown." The rule is as follows:

(c) *Protective Orders.* Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had....

Fed.R.Civ.P. 26(c). In this matter, the burden is on movant to establish "good cause" for a protective order. *See General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162 (1974). In light of the general philosophy favoring full discovery of relevant facts, it is difficult to show sufficient grounds to prohibit the taking of a deposition. Courts deny most requests of this kind. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2037 (1986 Supp.); *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979) (very unusual for trial court to prohibit the taking of a deposition altogether, and absent extraordinary circumstances, such order would likely be in error); *Cooper v. Welch Foods, Inc.,* 105 F.R.D. 4, 6 (W.D.N.Y.1984) (courts rarely order that a deposition not be taken); *Grinnell Corp. v. Hackett,* 70 F.R.D. 326, 333 (S.D.N.Y.1976) (request to vacate notice of deposition is unusual and unfavorable and, typically, is denied).

In the matter at bar, plaintiff has offered no good cause why the deposition of Chairman Al-Mishari should be prevented. Overwhelming authority indicates that an alleged lack of knowledge is an insufficient ground to prohibit the taking of a deposition. *See Cooper v. Welch Foods, Inc.,* 105 F.R.D. at 6 (allegation that deponent knows little does not prohibit the taking of his or her deposition); *Digital Equipment Corp. v. System Industries, Inc.,* 108 F.R.D. 742, 744 (D.Mass.1986) (claimed lack of knowledge is insufficient ground for protective order); *Detweiler Bros., Inc. v. John Graham & Co.,* 412 F.Supp. 416, 422 (E.D.Wa.1976) (plaintiff could not properly prevent deposition of employee on ground that employee had no knowledge of issues).[FN3]

Furthermore, the mere possibility of repetition of testimony is not by itself sufficient to justify a protective order, even where the persons best qualified to testify on the issue have already testified. *Cooper v. Welch Foods, Inc.,* 105 F.R.D. at 6. The reason why alleged lack of knowledge is not a sufficient ground to prevent a deposition is obvious. The very purpose of the deposition discovery is to test the extent of the deponent's knowledge and claims of ignorance. *See Amherst Leasing Corp.,* 65 F.R.D. at 122 (opposing party is permitted to test a claim of ignorance by deposing the witness).

*3 Plaintiff further suggests that a special rule exists wherein noticing the deposition of a high level corporate executive constitutes *per se* harassment and annoyance. There is no such special rule in the common law of this country. Research indicates that most courts reject the claims of high corporate officials who aver they are too unknowledgeable or busy to be deposed. *See CBS, Inc. v. Ahern,* 102 F.R.D. 820, 822 (S.D.N.Y.1984) (that corporate president had a busy schedule, that he had little firsthand knowledge, and that other corporate officials were more knowledgeable were not grounds for preventing deposition); *Amherst*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1987 WL 11994 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

*Leasing Corp.*, 65 F.R.D. at 122 (general rule is that courts reject claims of ignorance by corporate officials seeking to avoid being deposed); *Less v. Taber Instrument Corp.*, 53 F.R.D. 645, 647 (W.D.N.Y.1971) (no cause for protective order to bar deposition of corporate chairman who was "a very busy executive" with no knowledge of relevant facts).[FN4]

To prevent harassment, a few courts have required the examining party to settle for corporate officers other than those noticed. *Amherst Leasing Corp.*, 65 F.R.D. at 122. Plaintiff cites to the case of *M.A. Porazzi Co. v. S.S. Mormaclark*, 16 F.R.D. 383 (S.D.N.Y.1951), where the court vacated the notice to depose a corporate vice president when it appeared that the executive would contribute nothing that could not be learned from the company's general claims agent. The court's order to vacate, however, was without prejudice to renewal of the notice to depose the vice president should it be necessary following the deposition of the claims agent. *Id.* at 383-84. Similarly, in *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir.1979), the Fifth Circuit found that the trial judge did not abuse his discretion by requiring other Upjohn employees to be deposed before deposing the corporate president of Upjohn. The Circuit Court found that the lower court's ruling was not a total prohibition but only an effort to control the timing of depositions. *Id.* at 651.

In the matter at bar, defendant is traveling a great distance in order to depose Mr. Al-Mishari. This is not a situation where, following the depositions of other KAC corporate officials, defendant could easily renew the notice to depose Chairman Al-Mishari should it be necessary. Great expense and organizational effort are involved in scheduling a trip to Mr. Al-Mishari's country.

Plaintiff also cites to a line of cases ruling that a court must closely control the deposition taking of high level *government* officials. *See Halperin v. Kissinger*, 606 F.2d 1192, 1209-10 n. 120 (D.C.Cir.1979) (courts must closely control detailed discovery of confidential discussion among high level decision-makers in Executive Branch); *aff'd in part*, 452 U.S. 713 (1981); *Peoples v. USDA*, 427 F.2d 561, 567 (D.C.Cir.1970) (subjecting cabinet officer to oral deposition is not normally countenanced); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir.1979) (heads of government agencies are not normally subject to oral deposition). This line of cases, nevertheless, has no bearing on this case since Mr. Al-Mishari admits that he is not, and never has been, a Kuwait government official. *See* Al-Mishari Affidavit at ¶ 6.

*4 In short, high ranking corporate executives are not automatically given special treatment which excuses them from being deposed. Defendant has not served a "shotgun" notice which names a multitude of corporate officers to be deposed for little reason. *See Armstrong Cork Co. v. Niagara Mohawk Power Corp.*, 16 F.R.D. 389, 390-91 (S.D.N.Y.1954). Mr. Al-Mishari's deposition is only one of four depositions to be taken in Kuwait. Nor is this deposition notice unduly burdensome on the proposed deponent. American Security Bank has chosen a place and time convenient for Mr. Al-Mishari. Lastly, nothing on the record indicates that defendant desires merely to waste Mr. Al-Mishari's time for no good reason. On the contrary, defendant has proposed three very adequate reasons why it believes the testimony of Mr. Al-Mishari may shed light on the controversy at hand.

Upon consideration of plaintiff's motion for a protective order, defendant's opposition thereto, and there being no good cause shown why Mr. Al-Mishari's deposition should not be taken, it is by the Court this 26th day of May, 1987,

ORDERED that plaintiff's motion for a protective order be, and hereby is, overruled; and it is further

ORDERED that the deposition of Mr. Ahmad Hamad Al-Mishari will be taken at a location agreeable to the parties or, if the parties are unable to agree on a location, at a place to be fixed by the Court on June 6, 7, or 8, 1987.

FN1. ASB has attached copies of numerous letters addressed to American

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.          Page 4
Not Reported in F.Supp., 1987 WL 11994 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

Security and signed by Chairman Al-Mishari. *See* Defendant's Exhibits A-D.

FN2. ASB notes that a determination of an alter ego relationship between KAC and Kuwait may include an examination of the way money is transferred between the two entities, the amount of government subsidies provided, commingling of funds, and the criteria used for hiring employees. Defendant's Opposition at 8-9.

FN3. *See also Anderson v. Air West, Inc.,* 542 F.2d 1090, 1092-93 (9th Cir.1976); *Culp v. Devlin,* 78 F.R.D. 136, 141 (E.D.Pa.1978); *Amherst Leasing Corp. v. Emhart Corp.,* 65 F.R.D. 121, 122 (D.Conn.1974).

FN4. *See also Transcontinental Motors, Inc. v. NSU Motorenwerke Aktiengesellschaft,* 45 F.R.D. 37, 37 (S.D.N.Y.1968); *Frasier v. Twentieth Century-Fox Film Corp.,* 22 F.R.D. 194, 195-96 (D.Neb.1958); *Overseas Exchange Corp. v. Inwood Motors, Inc.,* 20 F.R.D. 228, 229 (S.D.N.Y.1956). But see *Hughes v. General Motors Corp.,* 18 Fed.R.Serv.2d 1249 (S.D.N.Y.1974); *Reliable Volkswagen Sales and Service Co. v. World-Wide Auto. Corp.,* 26 F.R.D. 592 (D.N.J.1960).

D.D.C.,1987.
Kuwait Airways Corp. v. American Sec. Bank, N.A.
Not Reported in F.Supp., 1987 WL 11994 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:86cv02542 (Docket) (Sep. 12, 1986)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.