# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - x
                              :
In the Matter of:             :
                              :
C. WESTBROOK MURPHY,          :
                              :
    Plaintiff,                :
                              :
        vs.                   :   Civil Action No. 02-0982
                                  Civil Action No. 05-1054
                              :
PRICEWATERHOUSECOOPERS, LLP,  :
et al.,                       :
                              :
        Defendants.           :
                              :   Washington, D.C.
- - - - - - - - - - - - - - x     December 4, 2006
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:              RICHARD A. SALZMAN, ESQ.
                           TAMMANY MORGAN KRAMER, ESQ.

For co-Plaintiff Schuler:  DAVID L. ROSE, ESQ.

For Defendants:            ERIC M. NELSON, ESQ.

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
**M1458V/bf**

```
 1               P R O C E E D I N G S

 2          THE CLERK:  Civil Case Numbers 05-1054 and

 3  02-982, C. Westbrook Murphy and also Carol Shumer

 4  (inaudible) Plaintiff (inaudible) Price Waterhouse Coopers,

 5  Inc.  Present for Westbrook Murphy in the courtroom is

 6  Richard Salzman and Tammany Kramer.  I just see one other

 7  person and didn't get your name.

 8          MR. MURPHY:  I'm Mr. Murphy.  I'm the villain in

 9  the piece.

10          THE CLERK:  Oh, you're Mr. Murphy, okay.  Then we

11  have _____ Mr. Rosen, Rosen, for Harold Schuler.

12          MR. ROSE:  Rose.

13          THE CLERK:  Is it Row?

14          MR. ROSE:  Rose.

15          THE CLERK:  Rose.  And for PriceWaterhouseCooper

16  it's Eric Nelson.   This is here for a motions hearing.

17          THE MAGISTRATE JUDGE:  Now, good morning to all

18  of you.  The Court set this matter down for a hearing on

19  the Defendant's motion for a protective order barring the

20  deposition of Dennis M. Nally.  I thank all of you for your

21  cooperating in ensuring that the Court could hear this

22  matter today.  That means, of course, that the Plaintiff's

23  time to file an opposition was significantly reduced and

24  the Defendant had no opportunity to file a reply at all.

25          The urgency, of course, is that discovery has
```

1  already closed and you are scheduled for a status

2  conference before Judge Leon at the end of the week, and

3  the Court believes, upon becoming aware of the motion, that

4  this is a matter that should be resolved before you appear

5  on Friday.

6         Because of the urgency, I have endeavored to

7  review your written materials in great detail, and to

8  review the cases that you have cited, paying particular

9  attention to those decided by judges of this Court, because

10  I am confident that this is a matter that we will be able

11  to decide this morning.

12         Having said that, I will hear first from you,

13  Mr. Nelson, because you did not have an opportunity to file

14  a written reply, if you wish to reply to the opposition on

15  the record I will hear your oral reply, and then you may

16  turn your attention to the rest of the motion.

17         I will note for your benefit, Mr. Nelson as well

18  as yours, Mr. Salzman or Ms. Kramer, whoever will address

19  this issue, that the Court's principal concerns are, first,

20  the extent to which the authorities on which the Defendant

21  relies apply in a circumstance such as this where the

22  deponent, or would-be deponent, is not a high-ranking

23  government official at all, and, second, what showing has

24  been made with respect to burden since, even if the Court

25  applies the standard which has been set forth by other

1    judges of this Court in the context of a high-ranking

2    government official, the Court still contemplates a showing

3    of undue burden on the deponent.

4            Because it appears that the Defendant does not

5    contend that Mr. Nally is without any personal knowledge,

6    I will also ask you to address -- and when I say "you,"

7    I mean counsel on both sides -- the issue to which

8    Mr. Nally's deposition, if it is taken, would relate.  In

9    other words, to what issue would the testimony be relevant,

10   since that may well be a part of the Court's consideration

11   of evaluation of undue burden and the availability of the

12   information from other sources if that is the standard that

13   is to be applied in this context at all.

14           Now, Mr. Nelson.  Good morning.

15           MR. NELSON:  Good morning, Your Honor.  Thank

16   you.  Just note, Your Honor, that actually the Plaintiff's

17   time to submit their opposition was shortened.  I just

18   note that for the record.  It was actually, I think it may

19   have been lengthened by thereto, because we filed our

20   motion on November 17th or 18th.  But that's not a

21   problem.  We have had a chance to review Plaintiff's

22   opposition papers which were served late in the day on

23   Friday, and we do wish to reply, principally to clarify

24   certain statements and implications in the opposition that

25   we believe to be inconsistent with the record.

1         First, in terms of the relief sought on this

2    motion, PWC does not contend that its senior partner and

3    chairman, Mr. Nally, is immune from deposition by virtue of

4    his position.  Rather, we are asking only that Mr. Nally be

5    afforded the protections routinely provided by the Courts

6    in cases such as this, namely, that the Plaintiff first

7    propound written interrogatories before seeking to proceed

8    to deposition of a high-ranking official who is without

9    unique personal knowledge of relevant facts at issue.  And

10   to be clear, we're talking about --

11        THE MAGISTRATE JUDGE:  Let me stop you just one

12   moment, Mr. Nelson.  On what authority do you rely for the

13   proposition that there is a -- or, that this Court has

14   interpreted Rule 26 or any other rule to require that a

15   party seeking the deposition of a high-ranking official of

16   a corporation first propound written interrogatories.

17        You don't suggest that the Court has ever held

18   that, do you?

19        MR. NELSON:  I don't believe this Court has

20   addressed it.  The cases that this Court has addressed have

21   dealt with high-ranking officials of government agencies or

22   government officials, primarily, if not exclusively.  I

23   think we point out --

24        THE MAGISTRATE JUDGE:  Do you acknowledge, then,

25   that none of the cases decided by judges of this Court

 1  which you have cited address high-ranking corporate

 2  officials?

 3          MR. NELSON:  I don't believe that issue has been

 4  specifically addressed, Your Honor.

 5          THE MAGISTRATE JUDGE:  And do you also agree that

 6  none of the decisions require or purport to require or

 7  state a rule that a party seeking to depose -- I will just

 8  say a high-ranking official and leave aside for the moment

 9  the use of the world "government" as an adjective -- first

10  propound written interrogatories?  Do you agree there is no

11  such rule that's articulated in any of the cases that you

12  have cited?

13          MR. NELSON:  No, among other cases I believe,

14  Your Honor, that Judge Lamberth's decision in Alexander

15  against the FBI mandated that procedure.

16          THE MAGISTRATE JUDGE:  To what extent was that

17  requirement limited to the facts of that case?  You don't

18  suggest, do you, that Judge Lamberth purported to establish

19  a rule that a party seeking to depose a high-ranking

20  government official first propound written interrogatories?

21          MR. NELSON:  My recollection of the case, Your

22  Honor, is Judge Lamberth followed and cited a case called

23  Mulvay versus Chrysler Corporation, which involved the

24  deposition of the CEO or chairman of Chrysler Corporation

25  for that proposition.

1          So -- and we don't note any distinction in the

2    cases involving non-governmental defendants and non-

3    governmental organizations and government organizations.

4    We don't see any distinction.  It is true that there's

5    an additional factor where the putative deponent is a

6    government official and there's a public policy

7    consideration about disrupting the operations of the

8    government.

9          THE MAGISTRATE JUDGE:  Do you have Alexander

10   before you?

11         MR. NELSON:  I do not, Your Honor.

12         THE MAGISTRATE JUDGE:  Do you have it on your

13   table?

14         MR. NELSON:  I could find it if Your Honor would

15   give me a moment.

16         THE MAGISTRATE JUDGE:  Very well.  I have my copy

17   before me.  I'd like for you to simply state what language

18   it is that you believe suggests that the Court stated a

19   rule that interrogatories must first be propounded before

20   the deposition would be allowed.

21         MR. NELSON:  If Your Honor would give me a

22   moment.

23         THE MAGISTRATE JUDGE:  Very well.

24         MR. NELSON:  Forgive me, Your Honor.  I'm here

25   alone today.

1          THE MAGISTRATE JUDGE:  That's all right.  My

2    question, to rephrase it, is whether you contend that Judge

3    Lamberth stated a rule that before such depositions are

4    allowed interrogatories must be propounded or, instead,

5    whether Judge Lamberth's decision was limited to the unique

6    facts of the case before him, which led him to require

7    interrogatories as a prerequisite for some limited purpose.

8          MR. NELSON:  I don't believe that Judge Lamberth

9    or any other Court has laid down an absolute rule.  I think

10   that in cases involving high-ranking officials of an

11   organization and in situations where that official does not

12   have unique knowledge of facts, it has seemed to routinely

13   follow that procedure.  And that is entirely consistent

14   with Rule 26(b)(2).

15         THE MAGISTRATE JUDGE:  Did Judge Lamberth's

16   decision with regard to written interrogatories turn on

17   whether the would-be deponents had unique knowledge or

18   whether they had any relevant knowledge?

19         I'm reading now from, I believe it is page 15 of

20   the opinion, page 5 on the printed Lexis cite, which reads,

21   "Accordingly, the depositions of these individuals are

22   temporarily stayed until such time as interrogatories have

23   been lodged and answered and plaintiffs present evidence

24   demonstrating that these individuals have some relevant

25   knowledge.  At that point, the Court will revisit the issue

1   of whether depositions would be appropriate."

2          Does that not suggest that the Court's concern

3   was whether the individuals had any relevant knowledge and

4   that that was the purpose?

5          MR. NELSON:  In that case, those appear to have

6   been the facts, Your Honor.

7          THE MAGISTRATE JUDGE:  Now, you don't suggest

8   that Mr. Nally has no personal knowledge, I gather, based

9   upon what you concluded in your --

10         MR. NELSON:  Well, I haven't spoken to the issues

11   on which they contend they have a need to take his

12   deposition.  I think that the issues on which they wish to

13   depose Mr. Nally are either irrelevant, entirely

14   irrelevant, or they are cumulative, duplicative and they

15   don't involve matters on which he has any superior or

16   unique knowledge.

17         THE MAGISTRATE JUDGE:  So is it correct, then,

18   that you do not contend that Mr. Nally is without personal

19   knowledge?

20         MR. NELSON:  Well, no, I've made no such

21   representations, Your Honor.  I said what I've just said,

22   that Mr. Nally -- I'm still speaking and I want to speak to

23   the issues that the Plaintiffs raise and the issues on

24   which they wish to depose him, that either they are

25   irrelevant and they're non-issues, or -- and talking about

1    the Clackamas -- so-called Clackamas issue, the partner

2    employee issue, that his testimony on that would be, at

3    best, duplicative, cumulative, of a very, very extensive

4    discovery record on Clackamas issues.

5            THE MAGISTRATE JUDGE:  Well, before you do that,

6    let's return to an assertion you made at the time you

7    referred to Judge Lamberth's decision in Alexander, and

8    that is that the plaintiff -- part of the relief you seek

9    is to require the Plaintiff to first propound written

10   interrogatories.  Since the purpose for which Judge

11   Lamberth required written interrogatories in Alexander was

12   to allow the plaintiff to present evidence demonstrating

13   that the would-be deponents had some relevant knowledge,

14   what is the basis of your request that the Court order that

15   as relief here, since you do not dispute that Mr. Nally has

16   some relevant knowledge.

17           MR. NELSON:  I don't dispute that Mr. Nally has

18   some relevant knowledge and every single one of 2,000

19   partners has some relevant knowledge on the partner

20   employee issue.

21           THE MAGISTRATE JUDGE:  Why, then, would the Court

22   order written interrogatories, since that is the only --

23   in reliance upon Alexander, since that's the only purpose

24   for which they were ordered in Alexander.

25           MR. NELSON:  Well, I think in cases involving

 1   high-ranking officials, the Courts have routinely done that

 2   and they've been wary of attempts to depose high-ranking

 3   officials and have applied Rule 26(b)(2) to afford some

 4   protection.  Not immunity, Your Honor.  But some

 5   protection.

 6          THE MAGISTRATE JUDGE:  In the instances in which

 7   the Court has so ordered, has that been for any purpose

 8   other than to allow the party who wishes to take the

 9   deposition an opportunity to demonstrate that the would-be

10   deponent has personal knowledge?

11          MR. NELSON:  I believe, Your Honor, there have

12   been some cases where it's been for the purpose of

13   determining whether or not the knowledge is unique, whether

14   it's superior, or whether the testimony would be

15   duplicative or cumulative, and also whether or not the

16   information sought is available from other sources.

17          THE MAGISTRATE JUDGE:  Now, which of the cases

18   that you cited so holds?

19          MR. NELSON:  Well, they all have different facts,

20   and at the tend of the day this is an exercise of Your

21   Honor's discretion.

22          THE MAGISTRATE JUDGE:  I have the cases that you

23   cited, or copies of them, here before me.  You just

24   represented that Courts have provided for written

25   interrogatories prior to a deposition to test whether or

1    not the person has unique knowledge or whether the

2    discovery is available from other sources.  What are the

3    cases that you --

4            MR. NELSON:  Or whether the interrogatories would

5    suffice.

6            THE MAGISTRATE JUDGE:  Okay, which cases of the

7    ones you cited are the ones on which you rely?  Which of

8    the D.C. cases.

9            MR. NELSON:  Of the D.C. cases, Your Honor?

10   We've also cited a case called Lowe v. Whitman, it was a

11   Judge Facciola decision, 2002.  And that was an employment

12   case where the high-ranking official did not participate in

13   the employment decision at issue, and the Court concluded

14   that the only relevant testimony -- and he could give

15   relevant testimony -- the only relevant testimony he could

16   give appeared to have been explored thoroughly in other

17   depositions.

18           We also cite, Your Honor, Springfield Terminal --

19           THE MAGISTRATE JUDGE:  Well, where in Lowe is

20   there a statement of a rule that the interrogatories are

21   required in order to allow the moving party to -- or to

22   facilitate a showing by the party who wishes to take the

23   deposition that the deponent or would-be deponent has

24   unique knowledge?

25           MR. NELSON:  There is no requirement, Your Honor.

1   We're talking about an exercise of discretion and a

2   balancing of the factors on the Rule 26(b)(2).  There's

3   absolutely no requirement.  There's an exercise of

4   discretion, and what we're saying is that the Courts have

5   routinely -- not just in this District but elsewhere --

6   follow that procedure.

7              THE MAGISTRATE JUDGE:  Well, where in Lowe is

8   there any discussion of written interrogatories?

9              MR. NELSON:  Well, in that case I think the Court

10  granted -- absolutely granted the protective order.  But --

11  and I believe it was without prejudice, Your Honor, to

12  exhausting other means of discovery and then coming back to

13  ask or to proceed with the deposition.

14             THE MAGISTRATE JUDGE:  Did the Court in Lowe deny

15  -- grant the motion for protective order outright or give

16  the plaintiff an opportunity to provide or present

17  transcripts to give the Court an opportunity to reconsider?

18             MR. NELSON:  I believe that the Court granted the

19  protective order without prejudice to the plaintiff making

20  an application.  I'm looking at that case right now.  It

21  granted the protective order and then noted, at the very

22  end of that decision, Your Honor, that -- I'll read from

23  the last sentence, "If plaintiff can establish from those

24  transcripts or elsewhere a compelling case that Spears can

25  be expected to provide information that no one else has,

1  namely, unique information, I would certainly reconsider my

2  decision," so I think --

3       THE MAGISTRATE JUDGE:  Did you misspeak, then,

4  when you said that the Court denied the motion outright?

5  Since --

6       MR. NELSON:  No, I'm sorry, I did misspeak, Your

7  Honor.  I think the Court granted the protective order

8  without prejudice to the plaintiff seeking the deposition

9  if after exhausting other means of discovery could

10  establish that the putative deponent had a unique

11  knowledge.  He refers to providing information that no one

12  else has.

13       So I believe that, to answer your earlier

14  question, that Lowe v. Whitman is a precedent or some

15  authority for the proposition that other means of discovery

16  should be exhausted before the high-ranking official is

17  deposed and that if the other means of discovery shows that

18  the would-be deponent has knowledge that no one else has or

19  if there are other circumstances which warrant the

20  deposition, then at least in Lowe v. Whitman the Court

21  indicated that it would revisit the decision granting the

22  protective order.

23       We've also cited Springfield Terminal Railway Co.

24  against United Transportation Union, which is a decision of

25  this Court, 1989, where the Court similarly granted a

1  protective order and it required the plaintiffs, quote,

2  "to proceed first by the less burdensome means of

3  interrogatories in order to attempt to avoid the need for

4  any deposition."

5          THE MAGISTRATE JUDGE:  Did the Court in that case

6  not take into account that the would-be deponent was a

7  member of Congress who was not a party to the lawsuit?

8          MR. NELSON:  I believe it did.  I don't have that

9  decision in front of me, Your Honor, and I recognize that

10 in cases involving government agencies there is an

11 additional consideration, a public policy consideration,

12 about disrupting the operations of a government agency or

13 of the government by subjecting a government official to

14 deposition.

15         THE MAGISTRATE JUDGE:  So do you agree that to

16 the extent that that has been a concern of the Court's in

17 granting motions for protective order to preclude the

18 deposition of high-ranking government officials that that

19 doesn't apply here?

20         MR. NELSON:  No, I believe it absolutely applies

21 here, Your Honor.  I think, you know --

22         THE MAGISTRATE JUDGE:  Well, what showing have

23 you made regarding any operations that will be disrupted or

24 any other burden if the Court denies the motion for

25 protective order.

1          MR. NELSON:  I don't think the cases require that

2    showing, Your Honor.  I do not think that.  I think the

3    cases assume that the most senior officials of any large

4    organization, you know, work 24/7 and that a deposition

5    that is unnecessary would disrupt the operations of that

6    organization to a greater or lesser extent.  And I think in

7    a case such as the one here, where the Plaintiff's

8    acknowledged that he initially named Mr. Nally as a

9    defendant purely for psychological effect, that's the kind

10   of thing -- that's the reason why Courts have been wary.

11          I haven't addressed yet -- I'd like to address

12   the, you know, the issues on which the Plaintiffs claim a

13   need to depose Mr. Nally, if I may, but --

14          THE MAGISTRATE JUDGE:  Well, I want to hear that.

15   I want you to address the other issues first, however.

16   You've said that there's no requirement that there be any

17   showing of disruption of operations.  Didn't Judge

18   Lamberth, in one of the cases you cited, Flanagan, Wright,

19   quote, "Courts generally employ a balancing test, weighing

20   the burdensomeness to the moving party against the

21   deponent's need for and the relevance of the information

22   being sought."

23          MR. NELSON:  I don't believe that's a case we've

24   cited.  It may be a case the Plaintiff cited.  And I

25   recognize that the Courts, in considering motions for

1   protective order, always balance various factors.  And I

2   think that's a test that Magistrate Judge Facciola applied

3   in Lowe against Whitman.

4           THE MAGISTRATE JUDGE:  I'm reading now from Judge

5   Lamberth's opinion in Flanagan.  Do you dispute that

6   burdensomeness to the moving party is a factor that the

7   Court has to consider?

8           MR. NELSON:  I think burdensome to moving parties

9   is a factor that the Court can consider, yes, and often

10  does consider.  I think there are other issues that the

11  Courts also consider in cases of this sort, and the

12  questions are whether or not -- and this is, you know,

13  directly out of Rule 26(b)(2) -- whether the testimony

14  sought is burdensome, cumulative, whether it's available

15  from some other means that is more reasonable.

16          THE MAGISTRATE JUDGE:  Well, what is your

17  contention regarding burdensomeness to the moving party?

18          MR. NELSON:  Our contention is that Mr. Nally,

19  as the senior partner and chairman of a large firm, would

20  have his function disrupted by this and, more importantly,

21  that if in a case of this sort where he really doesn't have

22  unique knowledge, superior knowledge, and where the issues

23  on which he's going to be deposed are, at best, of remote

24  relevance, then that kind of a precedent here would have

25  Mr. Nally testifying in cases throughout the country all

1    the time.  We're also concerned about the precedent.

2            And I think the Courts recognize that, and I

3    think that that is why Courts have been more protective,

4    if you will, of high-ranking officials, both of government

5    agencies, the government, as well as private organizations.

6            THE MAGISTRATE JUDGE:  Is there authority for the

7    proposition that a Trial Court should consider the extent

8    to which a deposition would be precedent in ruling on a

9    motion for a protective order?

10           MR. NELSON:  I can't quote you here and cite you

11   to that proposition, but the proposition is that a high-

12   ranking official, particularly the top person, the CEO, the

13   chairman, the senior partner, is a target often of the

14   deposition for other reasons.  And that that official

15   should be given some protection, or at least the Court

16   should look at the need for that deposition and balance the

17   need against other factors.  And I think there are cases

18   which do refer to -- and I can't give it to you as I stand

19   here; I could if we could submit a reply.  I've had this

20   weekend to look at this, and I cannot give you a citation

21   to that proposition, but I am quite certain that I have

22   seen it.  And whether it's in the treatises, in the

23   commentary, in the cases.

24           THE MAGISTRATE JUDGE:  Do you concede that it is

25   not in any of the cases that you cited in your motion?

1          MR. NELSON:  I really can't make a representation

2     about that, Your Honor, as I stand here now.  If we had the

3     time to submit a reply, I certainly could do that.  I

4     honestly do not know.  I know that the proposition has been

5     stated and I think it makes sense.

6          THE MAGISTRATE JUDGE:  What is the proposition

7     that you believe has been stated?

8          MR. NELSON:  The proposition that high-ranking

9     officials of defendant organizations are often the target

10    of depositions for other reasons, on very collateral or

11    remotely relevant issues, and that if those would-be

12    defendants are subjected to depositions on that kind of a

13    showing, that they would be spending an enormous amount of

14    time testifying in cases throughout the country or just in

15    -- we're talking about a large organization, Your Honor.

16    And we're talking about the senior official of a very large

17    organization that's got 36 offices around the country and

18    over 20,000 employees, and more than 2,000 partners.  And

19    I think in probably any case a plaintiff could say that he

20    has knowledge of something.  The question is, you know, how

21    important is that knowledge.  Is it unique.  Is it -- or

22    would it simply be cumulative.  Is it a critical issue.

23          We're not saying, by the way -- I want to make

24    clear we're not saying that these officials cannot be

25    deposed.  We're simply asking the Court to follow the

1  procedure that seems to have been followed in many, many,

2  many, many cases, including cases in this Court that before

3  subjecting that official to deposition, that other means be

4  exhausted.  And specifically, here, that the Plaintiffs

5  first serve written interrogatories, which this witness

6  would personally swear to, to determine the scope of the

7  witness's knowledge or the individual's knowledge and the

8  substance.

9        THE MAGISTRATE JUDGE:  Well, Mr. Nelson, you

10  continue to refer to a "procedure" in this Court.  Where is

11  the procedure articulated in the four D.C. Court opinions

12  on which you appear to principally rely?  Those being Lowe,

13  Springfield Terminal Railway Corporation, Alexander and

14  Alliance for Global Justice -- where is the procedure to

15  which you have referred articulated?

16        MR. NELSON:  The procedure is not mandated, Your

17  Honor.  I think I made that clear.  It is a procedure that

18  seems to be routinely followed.  In each of those cases a

19  protective order was granted and the plaintiff was given

20  leave to first serve interrogatories.  That is my

21  understanding.  I'm not saying that there's a black and

22  white rule, Your Honor.  The Court has discretion.  I'm

23  saying it's a procedure or approach that the Courts appear

24  to have routinely followed here and elsewhere.  I recognize

25  that the cases in this district mostly or perhaps entirely

1    primarily or entirely involve government officials.  Those

2    are the types of cases we see in this Court.

3            Judge Lamberth, in Alexander against the FBI,

4    relied upon Mulvay v. Chrysler Corporation in deciding the

5    motion.  Mulvay against Chrysler Corporation did not

6    involve a government official.  It involved, I believe, the

7    chairman or the CEO of Chrysler Corporation.  That factor

8    wasn't present.

9            Another case in this district, an early case,

10   Community Federal Savings and Loan Association, decided by

11   this Court in 1983, I believe did precisely the same thing,

12   and that case has been decided in cases involving non-

13   governmental officials.  For example, that case was

14   followed in Vane against General Motors, which is a very

15   frequently cited case in this area.  It was a Middle

16   District of Alabama case that was cited, it was followed,

17   it was discussed.

18           So that the same rule has been applied to both

19   private as well as government defendants.

20           THE MAGISTRATE JUDGE:  Very well.  You may

21   continue.

22           MR. NELSON:  And I'm sorry, Your Honor, I will

23   continue, thank you.  But also the Community Federal

24   Savings and Loan case of this case in 1983, also referred

25   to unique knowledge and the need for a showing that the

1   high-ranking officials had unique personal knowledge

2   concerning the decision at issue.  So I think there is

3   authority, there is precedent.  I want to make clear, Your

4   Honor, that Your Honor has discretion here.  There is no

5   black and white rule.

6          In their opposition brief, the Plaintiff

7   professes a need to depose Mr. Nally essentially on two

8   points.  They wish to depose him as to the reasons for

9   PWC's retirement provision for partners and, secondly, they

10  wish to depose him on the so-called partner employee issue,

11  the Clackamas issue.

12         As to the reasons for PWC's retirement provision

13  for partners, I think in determining the relevance and

14  significance of the proposed inquiries, it's important to

15  identify and consider the claims asserted and the issues

16  raised by the Plaintiff's claims here.  This is a non-

17  promotion case.

18         THE MAGISTRATE JUDGE:  Am I correct, Mr. Nelson,

19  that your client, or you on behalf of your client, intend

20  to file a dispositive motion?

21         MR. NELSON:  At some point we do, yes.  We are

22  appearing before Judge Leon for a status hearing on Friday,

23  and I think that one of the matters to be discussed with

24  Judge Leon on Friday is the next stage of discovery, which

25  is expert discovery, and the question of the timing of

1    dispositive motions.  We've made very clear that we intend

2    to move for summary judgment; in fact, the Plaintiff

3    previously moved for summary judgment on the so-called

4    Clackamas issue.

5            THE MAGISTRATE JUDGE:  And do you contemplate

6    that one of the issues that you will raise in the motion

7    for summary judgment which you file will be that there is

8    a legitimate, nondiscriminatory reason for the retirement

9    policy that's at issue in this lawsuit?

10            MR. NELSON:  No.  That's what I was about to

11    speak to.  Absolutely not.  That is not an issue.  That is

12    not an issue, and I would like to clarify what we

13    understand to be the issues.  If I may.

14            THE MAGISTRATE JUDGE:  Very well.

15            MR. NELSON:  And as I said, this is a non --

16    there are collateral issues here and there are very

17    important issues outside of this, but this is basically a

18    non-promotion case.  Plaintiff claims he was denied

19    admission as a partner because of his age.  He alleges that

20    he was denied admission while similarly situated and

21    allegedly less qualified younger employees were admitted.

22    So the alleged discriminatory act, the discriminatory act,

23    is Plaintiff's non-promotion.

24            The Plaintiff's opposition to this motion appears

25    to assume -- and I believe so states -- that the

1    discriminatory act at issue was the adoption of PWC's

2    age 60 retirement provision for partners in its partnership

3    agreement.  That's not an issue here.  Plaintiff was not a

4    partner and was not subject to mandatory retirement at any

5    age; in fact, Plaintiff Murphy retired voluntarily at

6    age 60 -- I'm sorry, at age 66 -- and all things being

7    equal, he could have continued his employment at PWC

8    indefinitely as an employee; that the Plaintiff was not

9    subject to mandatory retirement at any age.

10            The Plaintiff states in his opposition brief that

11    PWC will undoubtedly argue that its retirement provision

12    for partners is not unlawful as applied to partners.

13    That's not a fair statement, Your Honor.  And we believe

14    it's somewhat misleading in the context of this motion,

15    because all parties recognize -- both sides recognize --

16    that mandatory retirement provisions for partners are

17    lawful, since partners are outside the coverage of the

18    federal statute as well as the D.C. statute.

19            If Plaintiff had been admitted as a partner at

20    age 60, he would have been subject to immediate retirement.

21    He would have been out of a job that would otherwise have

22    continued indefinitely.  So Plaintiff alleges that PWC

23    partners should be deemed, quote/unquote, "employees" under

24    the standard set forth by the Supreme Court in the

25    Clackamas case, which I'll get to in a moment.

1          But to be clear, the issue in this case

2   concerning the retirement provision for partners is not

3   whether it's lawful or discriminatory.  It is by its terms

4   age-based.  It's an age-based provision.  So by its terms

5   it's discriminatory and it's admittedly lawful in that it

6   is applicable only to partners.  So the upshot is that the

7   reason for the inclusion of that provision in PWC's

8   partnership agreement is not relevant.  It's just not an

9   issue.  Whatever the reason for its inclusion, it is lawful

10  as to partners and would be unlawful if applied to

11  employees.

12          In any event, Your Honor, there is no mystery or

13  issue here in response to a question by Mr. Murphy at a

14  nationally televised press conference in June of 2002, the

15  then-head of PWC's global firm, Sam DiPiaza, who was also

16  then a named Defendant in this lawsuit, stated that

17  mandatory retirement provisions for partners at PWC and

18  its predecessor firms was a long tradition and that its

19  fundamental purpose was to make room for new partners.

20          The Plaintiff did not seek to depose Mr. DiPiaza

21  or question that statement; indeed, Plaintiff acquired a

22  transcript and quoted Mr. DiPiaza's response to his

23  question in substantive motions.

24          And, moreover, the testimony of each of the

25  partners who has been deposed by Mr. Murphy -- there have

1    been nine partners.  The testimony of each of those

2    partners who had an understanding as to the purpose of the

3    partner retirement provision was the same.  On page 4 of

4    Plaintiff's opposition brief, Plaintiff misstates that John

5    Carter -- John Carter is a PWC partner, he was a National

6    Partner Affairs Leader.  They state in the brief, at

7    page 4, that Mr. Carter testified that he merely believed

8    that the retirement provision related for the need for

9    vitality.

10           Mr. Carter clearly testified that the reason for

11    mandatory retirement of partners was, quote, "to continue

12    the growth and prospects for admission," and quote, "allow

13    for mobility and continued admissions."  This is

14    Plaintiff's Exhibit 2 at 222, the testimony is on that

15    page.  That testimony is consistent with everyone else's

16    testimony as to the reason for the provision.  Which is not

17    an issue, in any event.

18           That provision has been in place for decades.

19    Indeed, Mr. Murphy testified that all major accounting

20    firms have such provisions, and Judge Leon stated on the

21    record that he could take judicial notice that most law

22    firms also have mandatory retirement provisions for

23    partners.

24           The upshot, Your Honor, is that there is no basis

25    for Mr. Murphy's contention that Mr. Nally, as a member of

1    the initial board of partners after PWC was formed on

2    July 1, 1998, by the merger of Price Waterhouse and Coopers

3    and Lybrand, each of which had mandatory retirement

4    provisions, should be deposed as to the continuation of

5    that provision in the PWC partnership agreement.

6          In any event, Mr. Nally was one of more than

7    30 board members at that time.  The minutes of the first

8    PWC board meeting, in September 1998, which Plaintiff

9    attaches as Exhibit 4, reflects that 31 board members and

10   eight others were in attendance, and it does not reflect

11   any statements by Mr. Nally and does not indicate that he

12   held any particular position at that time.  Plaintiff's

13   reference to Mr. Nally as a quote/unquote "founding

14   partner" who participated in quote/unquote "deliberations

15   concerning the continuation of the partner retirement

16   provision" has no basis in fact.  And no basis based on

17   anything in this record.

18          Plaintiff also quotes a reference in the

19   minutes --

20          THE MAGISTRATE JUDGE:  Well, let me interrupt you

21   just one moment.  You referred to Plaintiff's Exhibit 4,

22   which I have before me.  You don't dispute, do you, that

23   Mr. Nally, whose name is on the list of those present, was

24   in fact present, do you?

25          MR. NELSON:  No, I have no basis for disputing

1    that.  I assume he was present along with the 30 other

2    board members who were present and eight invited guests.

3    What I'm saying is that there's no indication in those

4    minutes that, first of all, Mr. Nally said anything, that

5    Mr. Nally had any particular position at that time, or that

6    the retirement provision for partners was discussed.  No

7    indication.  There was never any controversy over that

8    provision.  It had been in place for decades.

9        But they quote a reference in the minutes, and

10   this is a mistaken reference, to a need to, quote,

11   "harmonize withdrawing partner provisions."  That's at

12   page 3 of Plaintiff's opposition brief.  This is a

13   reference to Article 11 of the partnership agreement which

14   is next as Plaintiff's Exhibit 7, not to Article 10, which

15   contains the partner retirement provision.  There is

16   nothing in the minutes to suggest that the retirement

17   provision was discussed at that meeting or at any other

18   board meeting, for that matter.

19       It does allude to the question of why the

20   partners opted for age 60 rather than age 62 or any other

21   retirement age in 1998 when the firm was formed.  That's

22   the only purported issue mentioned by the Plaintiff.  And

23   it's totally irrelevant to any issue in this case.

24       In any event, Mr. Nally could respond, as was

25   indicated, to written interrogatories as to his

1    recollection, if any, of any discussion at the board

2    meeting or any understanding of the reason for continuing

3    the tradition of mandatory retirement for partners, and it

4    could detail his role, if any, in any of this.

5            And then, as we've said, Your Honor, if the

6    Plaintiff then believes there's a basis or need to take his

7    deposition they're free to pursue it after reviewing

8    Mr. Nally's sworn written answers.

9            On the same point, there's a reference to a

10   comment by Mr. Nally at a conference in 2005 that some

11   consideration was then being given to changing the

12   retirement provision for partners.  And that is similarly

13   irrelevant here, Your Honor.  Mr. Murphy cites to his own

14   memo to file supposedly documenting Mr. Nally's response to

15   Mr. Murphy's question at this conference in the summer of

16   2005.  Mr. Murphy turned 60 in January 2000, and would have

17   long since been retired by 2005.

18           The unremarkable acknowledgment that there is a

19   business downside to a partner retirement provision has no

20   bearing on any issue of this case.  None.  Whether or not

21   that downside outweighs the business justification for the

22   provision adopted by PWC and all other major accounting

23   firms and most law firms to make room for more partners is

24   irrelevant.  This case has nothing to do with the business

25   judgment exercised by thousands of partners in agreeing to

1  retire at age 60.  As I said, without any dispute a

2  mandatory retirement provision is lawful among partners and

3  would be unlawful if applied to employees, no matter what

4  its intended purpose.

5           In any event, Your Honor, according to

6  Mr. Murphy's memo to file there were more than 100 managing

7  directors and a number of partners present at the meeting

8  where Mr. Nally made the remark summarized in Mr. Murphy's

9  memo.  And again, Mr. Nally is prepared to answer written

10  interrogatories as to the substance and basis for his

11  comments at that meeting.

12          We're not saying any of this is relevant.  We

13  think it's all irrelevant.

14          The second point made in Plaintiff's opposition

15  is that the Plaintiff claims a need to depose Mr. Nally on

16  the Clackamas issue.  Partner employee issue.  If I could

17  have a drink of water?  No?  I'm sorry.

18          THE MAGISTRATE JUDGE:  Very well.  That's all

19  right.  Ms. Miller has agreed to get a glass from our

20  cooler.

21          MR. NELSON:  Thank you, Your Honor.

22          THE MAGISTRATE JUDGE:  Do you wish to have a seat

23  while you're waiting?

24          MR. NELSON:  No, I can continue, I think.

25          THE MAGISTRATE JUDGE:  Very well.

1          MR. NELSON:  Resolution of the Clackamas issue

2    turns principally on the terms and provisions of the

3    partnership agreement which details the respective rights

4    and obligations of the partners, the board members, and the

5    senior partner.  It also details the procedure for election

6    of the board and of the senior partner, it specifies term

7    limits, contains protections against expulsions, addresses

8    capital requirements, personal liability of partners, and

9    the like.  These are the details of how the firm operates

10   and its structure that Mr. Murphy testified Clackamas is

11   concerned with.

12          So the partnership agreement itself provides

13   answers to the Clackamas inquiries and governing

14   partnership agreements of what the Clackamas partnership

15   cases consider.  That is why Mr. Murphy himself moved for

16   summary judgment on the issue back in August of 2003.

17          But apart from that, Plaintiff has already

18   deposed nine PWC partners and questioned each of them about

19   the provisions of the partnership agreement as well as

20   about various written policies and procedures applicable to

21   partners, all of which have been produced by PWC.

22          The partner deponents have included Paul

23   Sullivan, who has served his two-term limit as a member of

24   the board; included John Carter, who had served for many

25   years as the National Partner Affairs Leader and as a long-

1    time member of the U.S. Management Committee.  They've

2    deposed two managing partners of the Regulatory Advisory

3    Services Unit in which Mr. Murphy had been employed; have

4    deposed the head of the Banking Practice.  They've deposed

5    the head of the Financial Services Practice.  They've

6    deposed the National Benefits Leader.  They've deposed a

7    recently admitted partner, among others.

8         There is extensive testimony about various

9    provisions of the partnership agreement as well as about

10   procedures, policies and practices applicable to partners.

11   And Plaintiff has already taken discovery on the Clackamas

12   issue in unprecedented detail, far more detail than has

13   been considered in any reported Clackamas cases _____

14   citing any cases where Clackamas has actually been applied.

15   They cite and they discuss Clackamas itself.  In no cases

16   which turn on the -- or require or turn on the testimony of

17   the senior partner of a partnership.

18         THE MAGISTRATE JUDGE:  What is the significance

19   of the observation that you have just made?  That is, that

20   Plaintiff's counsel has taken discovery in great detail --

21         MR. NELSON:  Unprecedented detail.

22         THE MAGISTRATE JUDGE:  Or in unprecedented

23   detail.  The Court, of course, has no means to evaluate the

24   detail, whether it is unprecedented or not unprecedented.

25   My question is, what is the significance of that

1    observation even if it is conceded by the Plaintiff in

2    evaluating the motion for protective order.

3              MR. NELSON:  The significance of that, Your --

4              THE MAGISTRATE JUDGE:  For example, Mr. Salzman

5    could come to the podium and say yes, he has taken

6    discovery in unprecedented detail.  That's his job.  What

7    is the significance of that in evaluating a motion for

8    protective order under Rule 26?

9              MR. NELSON:  Because the significance of that is

10   that they want to take cumulative, duplicative discovery of

11   PWC's senior partner and chairman now.  That's the

12   significance of it.  And that's an issue that's addressed

13   in the cases and it's an issue that's specifically provided

14   for in Rule 26(b)(2).  And I think it's also --

15             THE MAGISTRATE JUDGE:  What is the basis of your

16   contention that the discovery -- or, that the deposition of

17   Mr. Nally would be cumulative?  Let me ask you to just

18   focus on that consideration.

19             MR. NELSON:  Okay.  Well, I just recited the

20   extent in general, and if we would submit reply papers we

21   could provide further detail.  I think, you know, we've

22   produced over 20,000 documents; perhaps more than half of

23   them have related to documents the Plaintiff considers may

24   bear on the Clackamas issue.

25             THE MAGISTRATE JUDGE:  What is the basis of the

1    assertion that you just made that the deposition would be

2    cumulative?

3          MR. NELSON:  Because there's no demonstration

4    that he has any superior or unique knowledge.  Any one of

5    2,000 partners in the firm could testify as to how the firm

6    is structured, how it operates, how it's governed.  The

7    information the Plaintiff claims to need from Nally is

8    irrelevant detail that, if relevant, could be more

9    appropriately obtained, you know, through interrogatories

10   or from lower level witnesses.

11         If Your Honor looks, I think it's at page 10 of

12   their brief, they want Mr. Nally, for example, to identify

13   any partner who may have been subject to involuntary

14   withdrawal under the provisions of Article 11 of the

15   partnership agreement.  That's not relevant here.  The

16   procedures are relevant, and they're laid out in detail.

17   Whether or not -- how they've been applied in the

18   particular circumstance is irrelevant.  Mr. Carter

19   testified as to that provision.  And other witnesses, I

20   believe, have as well.

21         I could make a showing, but I am replying now on

22   a two-day read of the papers and doing the best I can.  But

23   if Your Honor is interested in further detail, we can

24   provide it.

25         As I said, PWC has more than 2,000 partners,

1   perhaps more than 50 of whom have served on the board.

2   Those partners who served on the board since 2001 were all

3   identified, including their committee assignments, in PWC's

4   interrogatory responses.  And Plaintiff repeatedly states

5   in his brief that Mr. Nally presently serves in a unique

6   position in the firm.  Indeed, he does.  There is only one

7   chairman and senior partner at a time.  But what's relevant

8   and dispositive here is that there is no contention or

9   showing that Mr. Nally possesses relevant knowledge that is

10  unique to him.  His position may be unique, but the

11  question is does he have knowledge that's unique to him.

12        And I mentioned before the partner in the firm

13  most knowledgeable on matters of firm governance and

14  structure, which is what the Clackamas addresses, is John

15  Carter, the National Public Affairs Leader, member of the

16  Management Committee for more than six years.  Mr. Carter

17  was deposed for a full day on such matters, and answered

18  all questions asked.  He did not defer any inquiries to

19  Mr. Nally.  Paul Sullivan, a two-term member of the board,

20  was deposed and similarly answered all Clackamas-related

21  inquiries.  The other partners that I mentioned also

22  testified.

23        Mr. Murphy did not assert, either at his

24  deposition in 2003 or at his deposition a couple of weeks

25  ago, that Mr. Nally might have unique knowledge of any

 1   relevant facts bearing on Clackamas.  And at the same time,

 2   Mr. Murphy testified that he had named Mr. Nally as a

 3   defendant in his original complaint purely for, as he put

 4   it, "psychological effect."  And that is precisely why the

 5   Courts are wary of attempts to depose high-ranking

 6   officials and generally require parties to exhaust other

 7   means of discovery before allowing depositions in these

 8   circumstances.

 9          Just make one final point, Your Honor, and I will

10   sit down.  I appreciate your indulgence.

11          THE MAGISTRATE JUDGE:  Very well, you may.

12          MR. NELSON:  I have read the Arkansas State

13   decision, State Court decision, attached to Mr. Murphy's

14   papers, and know nothing more about that case.  I don't

15   consider that case to be any more relevant here than the

16   other Arkansas case cited in Plaintiff's opposition brief

17   referring to the Paula Jones against President Clinton

18   case, but I want to note that the sanctions decision

19   involved representations of counsel.

20          And we're not asking Plaintiff, we're not asking

21   this Court, to rely on any representations of counsel here.

22   Rather than offering representations of counsel, we're

23   offering to have Mr. Nally personally provide sworn answers

24   to written interrogatories on any matters Plaintiff

25   believes to be relevant or may believe him to have unique

1  knowledge.

2          And also, consistent with the case law, we're

3  offering to provide and we've this as a longstanding offer,

4  that discovery to Plaintiffs without prejudice to seeking

5  his deposition if Plaintiff believes it's justified and

6  necessary after reviewing the written responses.

7          We don't see any prejudice whatsoever to

8  Plaintiff by proceeding in this manner, which is another

9  factor which I think needs to be considered in the balance

10  here.  We're not saying preclude the deposition absolutely.

11  We're just asking Your Honor to exercise discretion as to

12  how this discovery is to be taken, and to make the

13  decision, I guess, as to the relevance and the importance

14  of this.

15          THE MAGISTRATE JUDGE:  Very well.  Thank you very

16  much, Mr. Nelson.

17          MR. NELSON:  Thank you.

18          THE MAGISTRATE JUDGE:  Mr. Salzman.

19          MR. SALZMAN:  Yes, thank you, Your Honor.

20          THE MAGISTRATE JUDGE:  Good morning.

21          MR. SALZMAN:  Good morning.  Your Honor, I would

22  note that we believe, as we argued in the brief, that all

23  of the cases from this jurisdiction that deal with

24  providing any sort of presumed accommodation towards an

25  official from deposition have dealt with government

1   officials where the issue of the impact on the

2   responsibilities that that government official has to the

3   public might be impacted by a harassing or unnecessary

4   deposition.  Mr. Nelson said that he doesn't believe that

5   this Court has addressed the situation of dealing with a

6   corporate executive where the deposition has been taken.

7   We would refer the Court to the case that we cited in our

8   papers, Kuwait Airways Corporation versus American

9   Securities Bank, in which Judge Gasch dealt precisely with

10  this issue in which there was an effort by the plaintiff to

11  take the -- excuse me, I believe it was by the defendants

12  to take the deposition of the CEO of a corporate plaintiff,

13  and Judge Gasch first discussed the line of cases dealing

14  with government officials and then said, "This line of

15  cases, nevertheless, has no bearing on this case since

16  Mr. Almi Schwari admits that he is not and never has been

17  a Kuwait government official."

18        And Judge Gasch simply applied the standard

19  elements of a protective order issue of whether the

20  defendant can show that there is a need for a protective

21  order in this case, and there is no burden on the plaintiff

22  to try to establish what is very difficult to establish in

23  the abstract, which is the knowledge of the deponent,

24  without having the opportunity to take the deposition.

25        So, Your Honor, we believe that really it's the

1    Kuwait Airways Corporation case that is most analogous to

2    this circumstance.  The cases that Mr. Nelson cited in his

3    brief from the District of Columbia are not relevant

4    because they all deal with high-level government officials.

5              Your Honor, with respect to this issue about,

6    well, why can't we just simply send written interrogatories

7    to Mr. Nally and have him answer those.  A couple of

8    points, Your Honor.  First of all, I don't understand how,

9    if it's truly going to be Mr. Nally answering a number of

10   detailed written interrogatories, how that could be in any

11   way less burdensome than asking him to appear and respond

12   to questions.  I think the problem with written

13   interrogatories you answer, and Judge Lamberth noted this

14   in the Flanagan case, is that you don't get the same type

15   of answers when a witness has the opportunity to sit and

16   reflect upon written interrogatories and consult with his

17   counsel about how to answer them, than you do with respect

18   to a deposition, where the witness has to answer questions

19   as they're posed and the lawyer has an opportunity to

20   follow up.

21             As Judge Lamberth said in the Flanagan case,

22   "This Court has previously explained some of the

23   shortcomings of written declarations as compared to live

24   testimony and that such an approach eschews the opportunity

25   for opposing counsel to probe the veracity and the contours

1    of the statements and denies the opportunity to ask

2    probative follow-up questions.  Deposition testimony

3    permits examination and cross-examination of the live

4    witness by counsel, where there is no opportunity to

5    reflect and carefully shape the information given."

6           And that's the problem, Your Honor, I think,

7    with this idea that we ought to have to send written

8    interrogatories to Mr. Nally and simply then decide whether

9    or not those answers are sufficient.  It is not a

10   sufficient exercise in lieu of a deposition and it's not

11   one where we believe, Your Honor, there's any authority

12   that we're required to go through that so long as it

13   appears that the witness has relevant knowledge.

14          Now, they are not --

15          THE MAGISTRATE JUDGE:  What is your response to

16   Mr. Nelson's contention that knowledge possessed by

17   Mr. Nally is not unique and that there are other

18   individuals who are more knowledgeable about the matters

19   which you contend are relevant.

20          MR. SALZMAN:  Yes, Your Honor.  I have two

21   responses to that.  First of all, we don't believe under

22   the case law as this Court has applied it we're required to

23   show that his knowledge is unique.

24          But second, we do think that he does have unique

25   knowledge because of the positions that he has occupied

1  within the firm.  He was there at the very inception of

2  this firm.  He was on the board, he was present at board

3  meetings where all of the types of issues upon which

4  Clackamas, the Clackamas analysis, turns were discussed.

5  Things like, for example, the Supreme Court identified in

6  the first Clackamas factor whether or not someone who is

7  designated a partner can be fired.

8          And as Mr. Nelson said, there was a discussion at

9  the first -- very first PWC board meeting about the

10  policies and the practices that they would put in place

11  with respect to involuntary partner withdrawals.  And

12  Mr. Nally was present at that meeting.  We obviously would

13  want to get the testimony from him about what his

14  participation was.

15          The minutes, Your Honor, which I would note we

16  only received as a result of this Court's order granting

17  our motion to compel earlier in this case, they reflect the

18  types of topics that were discussed but they do not reflect

19  the details of the discussions, what different policies

20  were discussed, what factors were relied upon.  Mr. Nally,

21  we believe, Your Honor, also has, as we argued in the

22  opposition to the motion, unique knowledge of the reason

23  for the primary -- one of the primary pieces of evidence of

24  age discrimination in this case, the mandatory retirement

25  provision.

1          THE MAGISTRATE JUDGE:  Now, what is your

2   response to Mr. Nelson's contention that discovery of

3   Mr. Nally or discovery by a deposition of Mr. Nally would

4   be cumulative of the exhaustive --

5          MR. SALZMAN:  Unprecedented, Your Honor?

6          THE MAGISTRATE JUDGE:  -- unprecedented,

7   exhaustive discovery that you have already conducted?

8          MR. SALZMAN:  Your Honor, we have taken a good

9   deal of discovery on the Clackamas issue.  I don't deny

10  that.  They have made the Clackamas issue the centerpiece

11  of this case.

12          And just to respond briefly, Your Honor, the

13  reason why the mandatory retirement provision is so

14  important to this case is Mr. Murphy, who was

15  extraordinarily well qualified for partnership, was right

16  on the cusp of turning 50 at the time that a partnership

17  slot opened in his unit.  And instead of recommending

18  Mr. Murphy, a man named David Albright, who was much

19  younger than him, who Mr. Murphy had supervised on a number

20  of occasions, was promoted into the partnership instead.

21          Our contention is that it was because of the

22  mandatory retirement policy that Mr. Murphy's supervisors

23  at PWC, the partners there, knew that there was no way that

24  they could make him a partner at the age of 60, so they

25  didn't even bother to consider him.  They looked for

1  somebody else.  So the mandatory retirement provision, as

2  it impacts employees who are seeking partnership, is very,

3  very important in this case, and that's why the Clackamas

4  issue is so important, because their argument is, "It's

5  entirely lawful for us to have this policy."

6         Now, with respect to the cumulativeness issue,

7  Your Honor, we have deposed several partners, some of them

8  recently admitted partners, the person who they promoted --

9  the persons who they promoted instead of Mr. Murphy.  We

10  have deposed other partners.  No one could say why the

11  board adopted the mandatory retirement policy.

12         Mr. Nally was on the board at the time that PWC

13  harmonized the mandatory retirement policies of the two

14  different firms, of Coopers and Lybrand, which we believe

15  had a 62 -- age 62 policy, and of Price Waterhouse, which

16  had an age 60 policy.  So Mr. Nally was on the board at

17  that time, at the time that they created the PWC policy,

18  and since that time he's been one of only a handful of

19  people who has served as the senior partner who executes

20  the policy.  Under the Partners and Principals Agreement,

21  Your Honor, it is the senior partner who makes a initial

22  recommendation about whether or not an exception to the

23  policy should be had, and then the board votes on that.

24         So -- and I would respond, Your Honor, just

25  briefly to one of the things that Mr. Nelson said.  He

1   said, well, this issue of the reason for the mandatory

2   retirement policy is not really in any way relevant to this

3   case.

4         But in their answer, Your Honor, in paragraph 7

5   of their answer, they say that, "The Partners and

6   Principals Agreement, the mandatory retirement policy of

7   the Partners and Principal Agreement, was adopted based on

8   reasonable factors other than age."

9         They've injected that into this case.  They

10  clearly are going to be arguing that there is some

11  reasonable business justification other than age for them

12  to have this mandatory retirement policy, and we certainly

13  have the right then, Your Honor, to find out from somebody

14  who clearly has personal knowledge, who was there at the

15  time this policy was created, and who has applied this

16  policy since the time it was created, to, you know, what

17  the basis of that policy is.

18        THE MAGISTRATE JUDGE:  Do you recall that when I

19  asked Mr. Nelson whether that was an argument that the

20  Defendant intends to make in moving for summary judgment

21  that Mr. Nelson said it was not?

22        MR. SALZMAN:  I do recall that, Your Honor, and

23  I don't know whether they'll be making that argument on

24  summary judgment.  What they clearly are going to be

25  seeking on summary judgment is a ruling as a matter of law

1    that all of the partners, all of the people who are

2    designated as partners at PWC, all 2,000 of them, are

3    owners who have no rights under the Age Discrimination Act

4    or Title 7 or any of the other employment discrimination

5    statutes.  And of course that turns on an analysis of all

6    of the Clackamas factors.  The Supreme Court in Clackamas

7    made it clear that this is a very fact-intensive inquiry

8    and it ultimately boils down to in what manner the firm

9    controls these people and in what manner these people

10   actually exercise control over the firm.

11          And so Mr. Nally's unique perspective on that,

12   having been someone who helped create the governing

13   structures of PWC and who has, we believe, longer than

14   anyone, served as senior partner of this firm and had a

15   central role in administering the governance of PWC, he

16   certainly has knowledge about all of these issues.

17          THE MAGISTRATE JUDGE:  Now, in determining

18   whether or not discovery with respect to the policy would

19   be relevant, is the Court to be bound by what Mr. Nelson,

20   Defendant's counsel, just said in open Court, or the

21   provision of the answer to which you just referred?

22          MR. SALZMAN:  I would argue the answer, Your

23   Honor.  I believe they have made a statement in a pleading

24   that they believe there are reasonable factors other than

25   age for this policy and that is, like any other issue,

1  discoverable.

2          THE MAGISTRATE JUDGE:  You may continue.

3          MR. SALZMAN:  Your Honor, I don't have much more

4  to say on this topic.  Again, it's our view that the right

5  standard is really to provide no presumption to anyone

6  other than a high-level government official that there

7  needs to be some unique or extraordinary showing in order

8  to justify a deposition.  But even if you ere to apply that

9  standard, Your Honor, we think we meet it.

10          And I would just note, Your Honor, that we have

11  deposed a number of partners in this case.  We have always

12  done it in a respectful manner.  We have tried to do it as

13  efficiently as we can.  PWC has not called the chambers of

14  Your Honor or Judge Leon to say that we've been harassing

15  any of these partners.  We haven't been.  We feel that we

16  have a legitimate need for this information.  It goes to a

17  very important issue in this case.

18          And we have tried very hard to accommodate

19  Mr. Nally's schedule.  We first identified Mr. Nally as

20  somebody who we wanted to depose in May, Your Honor.  We

21  then agreed upon dates for his deposition that were

22  convenient for him, and twice moved those dates to

23  accommodate his schedule.  We will travel to New York, not

24  going to drag him down to our offices; we'll travel to

25  New York to take his deposition.  And we will complete this

1   deposition in as efficient a manner as we possibly can,

2   Your Honor.

3          In a case several years ago in which this issue

4   arose, in a case against WMATA here in D.C., I deposed the

5   chief executive officer of WMATA, Richard White, and WMATA

6   had sought a protective order in advance of that case.  And

7   Judge Robertson ruled that the CEO of WMATA is not the

8   Queen of England.  Mr. Nally is not the Queen of England

9   either, Your Honor.  He is subject to a deposition just as

10  anyone else is if we can demonstrate that he has knowledge

11  that is discoverable.  We think we've done that here.  And

12  so we would ask the Court to deny the motion for protective

13  order.

14         THE MAGISTRATE JUDGE:  Very well.  Thank you,

15  Mr. Salzman.

16         Mr. Nelson.  Do you have your copy of the

17  Defendant's Answer to the Complaint?

18         MR. NELSON:  No, I do not, Your Honor.

19         THE MAGISTRATE JUDGE:  May I ask you to take a

20  moment to review Mr. Salzman's copy, please?

21         MR. SALZMAN:  Paragraph 7.

22         MR. NELSON:  Yes, Your Honor.

23         THE MAGISTRATE JUDGE:  I'd like for you to review

24  it because in response to my question regarding whether or

25  not, in moving for summary judgment, your intention is to

 1   argue that there is a legitimate non-discriminatory

 2   business reason for the policy, you answered that you did

 3   not intend to make that argument.  Is it not correct that

 4   that is an issue that the Defendant has raised nonetheless

 5   by including it in the answer?

 6           MR. NELSON:  Well, all I can say, Your Honor,

 7   is that Mr. Salzman handed me the answer and called my

 8   attention to paragraph 7 of the answer, which is responding

 9   to the allegations contained in paragraph 7 of the

10   complaint.  So I don't know what to say.  It's an

11   allegation and a response to -- it's an answer responding

12   to an allegation of the complaint.  And I don't think

13   they've articulated why it's relevant, other than to --

14   it's turning it on its head here.

15           I also said to Your Honor that there has been

16   extensive testimony on this and there's no evidence that

17   Mr. Nally has any knowledge of it.  He was not a founding

18   partner.  There's no evidence of that.  They've distorted

19   minutes of the first board meeting.  The first board

20   meeting, by the way, after the partnership agreement was in

21   place.  There's nothing to suggest in those minutes that

22   Mr. Nally or anyone else was -- whatever a founding partner

23   means -- or that there were any deliberations, as they put

24   it, concerning this provision.  There was no controversy.

25   Every firm has it.  Both predecessor firms have it.

1  There's nothing in this entire record to suggest that there

2  was any issue.  None.

3       So I don't think there's an issue.  I can't, as

4  I'm standing here now, if Your Honor wants to provide us

5  leave to submit reply papers I think some of what

6  Mr. Salzman is saying is obviously at odds with what I'm

7  saying, and I think it can be clarified, you know, by

8  references to the record.

9       I don't want to prolong this, and in response to

10  Mr. Salzman saying, well, he's going to be deprived of the

11  back and forth of a deposition, I understand that a

12  deposition is different than interrogatories, and we're not

13  saying that he should be absolutely barred from doing it.

14  We're just saying that under the circumstances here, they

15  should -- and I see no prejudice to the Plaintiffs, none.

16  They should first serve interrogatories as to the scope of

17  his knowledge, the substance of it.  They may -- the

18  interrogatories may persuade us that a deposition makes

19  sense.  We don't see it at the moment, Your Honor.  We

20  absolutely don't see it.

21       THE MAGISTRATE JUDGE:  One final question,

22  Mr. Nelson.  You suggested more than once that if the

23  Defendant had an opportunity to file a written reply that

24  there would be either authorities that you would cite that

25  you did not already cite or that there would be some other

1  showing you would make.

2       Do you agree that Rule -- or, do you acknowledge

3  that Rule 26 requires that as the movant, and presumably

4  that means in filing the motion, that the requisite showing

5  be made?  In other words, as of the time that you file the

6  motion?

7       MR. NELSON:  I understand that the movant has a

8  certain burden, I do understand that, Your Honor.  I

9  absolutely do.  I'm must saying that we made the motion,

10 Mr. Salzman _____ Plaintiff Murphy submitted an

11 opposition.  I think actually not on an abbreviated or

12 expedited schedule, it may have given them a few extra

13 days.  I've had a weekend to review the brief.  I think

14 there are many things that I think are inconsistent with

15 the record, and I think there are many factual differences

16 based on what Mr. Salzman just said and what I say and what

17 I think the record will demonstrate.

18      I don't have any cases at the moment that I

19 intend to cite in addition to what we've already cited.

20 I don't read the Plaintiff's case being all that different.

21 I think Your Honor has an exercise of discretion.  I think

22 the precedents could guide that exercise.  I see absolutely

23 no prejudice whatsoever in the Plaintiff's getting written

24 answers.  It's not in lieu of a deposition, Your Honor.

25 We're not saying that.  We never have.  It would have been

1    long since answered and perhaps he would be deposed and

2    perhaps not, but I think that the questions and the issues

3    on which they wish to depose Mr. Nally are, at best, of

4    very remote relevance.  Entirely cumulative, duplicative,

5    and will not elicit any unique knowledge.

6              Thank you.

7              THE MAGISTRATE JUDGE:  Very well.  Thank you,

8    Mr. Nelson.

9              At the outset of the hearing the Court noted that

10   the Court believes it is important to determine this motion

11   on an expedited basis for the reasons that the Court

12   stated.  They are obvious reasons.  At least one phase of

13   discovery has closed, you have a status hearing scheduled

14   for December 8th, and perhaps, more globally, the case has

15   been pending for -- or these related cases have been

16   pending for some time, and discovery should be concluded as

17   expeditiously as is possible under the circumstances.

18             It is correct that the timing of this hearing to

19   some extent precluded the Defendant from filing a written

20   reply.

21             However, the Court finds that the Defendant could

22   not be prejudiced by that circumstance, largely for two

23   reasons.  First, the Defendant is the movant and the

24   applicable rule governing a motion for protective order,

25   Rule 26 of the Federal Rules of Civil Procedure, places the

1   burden on the moving party to make the requisite showing.

2   That means that the showing that the Defendant would have

3   been required to make in accordance with these rules is a

4   showing that should have been made as of the time the

5   motion was filed.

6          Second, the Court allowed both counsel, with

7   counsel for the Defendant taking more time, largely because

8   of the Court's questions, every opportunity to reply

9   orally, and the Court is satisfied that that consideration

10  also indicates that there is no prejudice to the Defendant

11  by being effectively precluded from filing a reply.  The

12  Court, therefore, is ready to proceed, having considered

13  the written motion, the written opposition, the authorities

14  cited by Plaintiff and by Defendant, and your arguments

15  here in Court this afternoon.  The Court has also reviewed

16  the pleadings, most particularly the answer to the

17  complaint at paragraph 7.

18         The Court has been asked by the Defendant to

19  assume that the considerations articulated by this Court

20  which govern to some extent the depositions of high-ranking

21  government officials also apply to so-called high-ranking

22  corporate officials.  This Court is satisfied that there is

23  simply no authority that supports that proposition.

24         The Court is aware that there is authority to the

25  contrary, but because that authority is somewhat dated and

1    is in the form of an unpublished opinion, the Court would

2    not wish to rely upon it exclusively as the basis of

3    articulating any rule that the standards governing -- or,

4    the considerations governing the depositions of high-

5    ranking government officials do not apply to corporate

6    officials.  The Court will therefore decline to make such a

7    holding but note that on a more practical level the Court

8    need not resolve that question because in actuality the

9    considerations which have been discussed in the context of

10   depositions of high-ranking government officials are not

11   separate rules at all, and instead simply point out some of

12   the issues which are important in evaluation of motions for

13   protective order where the deponents are in fact high-

14   ranking government officials.

15            Even if we assume that those considerations are

16   equally applicable, with the understanding that the Court

17   hasn't found that they are and that there is some authority

18   that they are not, that means that the motion here is still

19   governed by Rule 26(c) of the Federal Rules of Civil

20   Procedure.  That means, of course, that the movant -- in

21   this case, the Defendant -- must show good cause.

22            The Court has held -- I'm referring now in my

23   quote to Alexander versus Federal Bureau of Investigation,

24   186 Federal Rules Decision 1, a 1998 decision of a judge

25   of this Court, that, quote, "Good cause exists under

1   Rule 26(c) when justice requires the protection of a party

2   or a person from any annoyance, embarrassment, oppression

3   or undue burden or expense."

4        The Court finds that in this case the Defendant

5   has simply fallen short of demonstrating the existence of

6   good cause.

7        The Court has also held that in determining good

8   cause a Court has broad discretion and must balance the

9   burdensomeness to the moving party against the deponent's

10  need for, and the relevance of, the information being

11  sought.  Applying that standard, the Court finds that the

12  Defendant has failed to make the requisite showing.  In

13  this case, the Defendant has not alleged any undue -- in

14  the written motion, the Defendant made no reference

15  whatsoever to any undue burden upon Mr. Nally.  Here in

16  Court Defendant's counsel argued only, in addressing -- or

17  in responding to the Court's question about burdensomeness

18  to Mr. Nally, that the corporate operations would be

19  disrupted.  That was the first ground.  And the second, of

20  course, concerned precedent for allowing such a deposition.

21       The Court finds that there is simply no evidence

22  with respect to the first claim; that is, the Defendant has

23  offered no evidence and the time to have done so is at the

24  time the motion was filed, of any disruption of corporate

25  operations which would occur should Mr. Nally be deposed.

1          With respect to precedent, the Court finds that

2    there is simply no authority for the proposition that in

3    ruling on a motion for protective order the Court should

4    consider that future litigants may seek to depose the same

5    person.  The Court's ruling is limited only to the facts

6    presented in the Defendant's motion and the Plaintiff's

7    opposition, and the Court's finding is only that in this

8    case there has been no showing of undue burden and that,

9    in addition, the Plaintiff has demonstrated a need for, and

10   the relevance of, the information being sought through the

11   deposition of Mr. Nally.

12          The Defendant offers essentially three grounds

13   in support of the motion for protective order.  The first

14   is that Mr. Nally does not have knowledge which is unique

15   and, indeed, is not the most knowledgeable person that is

16   knowledgeable with respect to either the policy which is

17   challenged in this action or the so-called Clackamas

18   factors.

19          However, the Court finds that none of the

20   authorities on which the Defendant relies stand for the

21   proposition that a party must show that a deponent or

22   would-be deponent is the most knowledgeable person or has

23   unique knowledge.  While it is correct that judges of this

24   Court have made findings that an individual who -- I will

25   call such a person a would-be deponent -- typically a high-

1    ranking government official does not have unique knowledge,

2    there is no case that holds that there is a standard.

3         The Court believes that those authorities must be

4    read as suggesting, as is clear when the cases are read as

5    a whole, that the Court was concerned that perhaps the

6    deponent had no personal knowledge at all, and the Court's

7    intermediate, or any intermediate measures that were

8    ordered, such as an opportunity to make a further showing

9    through transcripts of other proceedings, for example, was

10   with an eye toward determining whether the deponent or

11   would-be deponent had any knowledge at all.  There is

12   simply no requirement that to take a deposition a party

13   must show that a person has unique knowledge or superior

14   knowledge.

15        Second, Defendant argues through its counsel that

16   the discovery now sought is cumulative.  The Court finds

17   that the suggestion that the discovery sought is cumulative

18   is merely conclusory in this instance because the Defendant

19   has offered no evidence that it is cumulative.  Defendant

20   has referred to the number of depositions that have been

21   taken thus far, and the number of documents that have been

22   produced, but there has simply been no reference to any

23   discovery from any other source which is cumulative of that

24   which the Plaintiff seeks through the deposition of

25   Mr. Nally.

1           The time to have made the showing that the

2    discovery is cumulative was as of the time the motion was

3    filed, and this issue was simply not the subject of any

4    affidavit, declaration, transcript or any other evidence

5    from which the Court could find that a deposition of

6    Mr. Nally would be cumulative.

7           Finally, the Defendant argues that the discovery

8    is not relevant.  Again, the Court finds that the argument

9    regarding relevance is largely conclusory.  The Plaintiff

10   argues that the discovery is relevant to two issues.

11   First, the policy which is challenged and, second, to the

12   so-called Clackamas factors.

13          As to the first factor, while Defendant's counsel

14   suggests that the Defendant does not intend to argue in any

15   dispositive motion that the policy which is challenged has

16   a legitimate business reason, the assertion is inconsistent

17   with paragraph 7 of the Defendant's answer, where the

18   Defendant interjected that issue through the following

19   language.  That is, Defendant, quote, "avers that the

20   provision of Section 10.1 of the P and PA were adopted

21   based on reasonable factors other than age."

22          The Court finds that the policy and the manner

23   in which the policy was implemented or considered are

24   therefore relevant and the Defendant has said as much in

25   averring, as it did in paragraph 7, that the policy was

1    adopted based on reasonable factors other than age.

2          With respect to the Clackamas issues, similarly

3    the Defendant does not suggest that such issues are not

4    relevant but only that the Defendant has taken extensive

5    discovery on the issue.  That is certainly not tantamount

6    to a suggestion that the Clackamas issues are not relevant,

7    nor does it necessarily demonstrate that discovery

8    regarding those issues is not cumulative.  It is an

9    observation which the Court believes is simply of no moment

10   in assessing a motion for protective order under

11   Rule 26(c).

12         Finally, the Court notes that Defendant

13   emphasizes that it does not seek to absolutely preclude the

14   deposition but only to require that at least in the first

15   instance the Plaintiff proceed by interrogatories.  The

16   Court finds that there is simply no authority for that

17   request.  While it is correct that there is a decision of a

18   judge of this Court -- there may be a decision of a judge

19   of this Court in which the Court considered that it may be

20   prudent and an exercise of discretion to require some

21   further written discovery in the first instance, it is

22   clear that the context had to do with a concern that the

23   deponents or would-be deponents had no personal knowledge,

24   and that is simply not a contention that has been advanced

25   by the Defendant here.

1        Thus, this Court has considered that to the

2   extent that some judges have so ordered, the basis for

3   doing so has been an effort to allow or facilitate a

4   determination of whether or not the would-be deponent had

5   personal knowledge.  For that reason, there is simply no

6   basis for so ordering here.

7        For these reasons, the motion for protective

8   order is denied and the Court will order that before all

9   of you leave here that you agree upon a date and time for

10  the deposition.  My order that you do so before you leave

11  this afternoon is so that you will be prepared when you

12  appear before Judge Leon for your status hearing, to

13  address the date and time of the deposition should the

14  Court be concerned about the timing of the remaining

15  discovery, so that the Court can set other dates.  I

16  imagine that will be a significant part of the Court's

17  undertaking on the 8th.

18       I will not attempt to set a date and time myself,

19  and will fix only an outside deadline, which I believe is

20  reasonable under the circumstances, and that is that the

21  deposition be completed by December 20th.

22       There will be no written order.  I'm satisfied

23  that I have articulated the findings in sufficient detail

24  that should there be any occasion for further review of my

25  order the transcript will provide the findings that I have

1  made.  So the docket entry will simply indicate that the

2  motion for protective order is denied for the reasons set

3  forth on the record and that the deposition of Mr. Nally is

4  to be completed by December 20th, 2006.

5           I do not believe the docket entry should refer to

6  the fact that I have told you to stay until you agree upon

7  a date and time, but that is a part of the Court's order.

8           Now, is there anything further in this matter

9  this afternoon?  Mr. Nelson?  Anything further on behalf of

10  the Defendant?

11           MR. NELSON:  No, Your Honor.

12           THE MAGISTRATE JUDGE:  Mr. Salzman?

13           MR. SALZMAN:  No.

14           THE MAGISTRATE JUDGE:  Very well.  Thank you.  We

15  will recess now.  You are to remain, as I said, until you

16  agree upon the date and time.  You're welcome to use the

17  phone in the courtroom, and I imagine that you may have

18  some difficulty with your cell phones, so Ms. Miller will

19  assist you in making any calls you need to make to check

20  your own calendars or the schedule of the deponent.

21           MR. NELSON:  Your Honor?

22           THE MAGISTRATE JUDGE:  Mr. Nelson.

23           MR. NELSON:  May I leave the courthouse, to

24  return, to make a call to -- is that permissible?  I'm not

25  going to leave the District.

1          THE MAGISTRATE JUDGE:  You mean return to make a
2     call to Mr. Salzman?
3          MR. NELSON:  No, I need to make some phone calls
4     in connection with the discussion that Mr. Salzman and I
5     are directed to have.  So --.
6          THE MAGISTRATE JUDGE:  I assume you have no
7     objection?
8          MR. SALZMAN:  No, Your Honor.  That's fine.
9          THE MAGISTRATE JUDGE:  Very well.  I will modify
10    that provision, then, to require that by 5:00 o'clock you
11    agree upon -- and that's today -- 5:00 o'clock today you
12    agree upon a date and time and place.
13         MR. NELSON:  And to be clear, Your Honor wants us
14    to advise Judge Leon of that on Friday at the conference,
15    or--?  What was (inaudible)?
16         THE MAGISTRATE JUDGE:  I certainly expect that
17    you will be prepared to, if he has an interest in that
18    fact.  My greater concern is that you agree upon a date
19    and time.  I guess you don't need to address place,
20    because you've already indicated, Mr. Salzman, that you
21    would be willing to take the deposition in New York.  Is
22    that still the case?
23         MR. SALZMAN:  Yes, Your Honor.
24         THE MAGISTRATE JUDGE:  Then that leaves only the
25    question of date and time, but my order would be quickly

1    rendered a nullity if another period of the equivalent of

2    from May through December passes and you still don't have

3    a date and time.  I use the reference May-December not to

4    refer to marriages, but because you said that is when this

5    conversation first commenced.  Am I correct?

6            MR. SALZMAN:  Yes.

7            THE MAGISTRATE JUDGE:  Very well.  So I don't

8    want another seven months to go by.  I want you to have an

9    agreement by 5:00 o'clock regarding when the deposition is

10   going to occur.  Is there some reason that you can't do

11   that?

12           MR. NELSON:  Well, I obviously need to be able to

13   reach my client and Mr. Nally in order to do that, and it

14   hasn't been all that easy since -- in the past.  And I

15   obviously would like to reach an agreement as soon as

16   possible.

17           I would also like to mention one other issue,

18   Your Honor.

19           THE MAGISTRATE JUDGE:  Yes, let me ask you to use

20   the mike, please, at the podium.  I can hear you, but I

21   simply want to be certain you're being recorded.

22           MR. NELSON:  I'm sorry.  I would like an

23   opportunity and I need an opportunity to contact my client

24   and have Mr. Nally contacted in terms of date and time, and

25   that that may not be possible this afternoon or right now.

1  It may be, it may not be.  So I think -- we may require,

2  you know, 24 hours to find out what's doable here.

3  Otherwise --

4          THE MAGISTRATE JUDGE:  Is it your request that

5  the deadline be extended until tomorrow at 5:00 o'clock --

6          MR. NELSON:  Yes, it is.

7          THE MAGISTRATE JUDGE:  -- that is, by tomorrow?

8          MR. NELSON:  Yes, it is, Your Honor.

9          THE MAGISTRATE JUDGE:  December 5th the parties

10  will have agreed upon a date and time for the deposition.

11          MR. NELSON:  That is my request, and --

12          THE MAGISTRATE JUDGE:  Is that without

13  opposition?

14          MR. SALZMAN:  Yes, Your Honor.  That's fine.

15          MR. NELSON:  I just would like to make one other

16  statement here, and that is that this deposition was

17  noticed originally for October 3rd.  It was always to be

18  a half a day deposition.  It was always to be in New York,

19  I believe it's required to be in New York although we

20  appreciate that.  But it was to be a half day.

21          I have deposition notices.  The deposition was

22  noticed for 10:00 a.m. on October 3rd, initially, and at

23  2:30 on the same day they noticed a deposition of another

24  witness, Darlene Shay.

25          THE MAGISTRATE JUDGE:  What is the basis of your

1  contention, Mr. Nelson, that the deposition was to be half

2  a day?

3          MR. NELSON:  Well, I just stated that.

4  Mr. Salzman indicated that he would be no more than a half

5  a day.  At some point I believe it was two hours, and then

6  the Plaintiff noticed the deposition of Mr. Nally for

7  10:00 a.m. on October 3rd, and at the same time or I think

8  a day or a day --

9          THE MAGISTRATE JUDGE:  Bear with me just one

10  moment, counsel.  You may continue.

11          MR. NELSON:  Then also noticed another

12  deposition, since these were half-day depositions, for

13  2:30 on the same day.  That October 3rd date was initially

14  adjourned to December 5th.  It was intended to be a half a

15  day.  And then it was adjourned until December and it was

16  supposed to be on an afternoon.  There were notices and

17  e-mails to document that.  And I don't know if Mr. Salzman

18  has a different understanding.

19          MR. SALZMAN:  Well, I do, Your Honor.  I've

20  always said that we would try to do it as quickly as we

21  could and it has always been extremely difficult to get PWC

22  to provide available dates and times for many of the

23  partners, and especially Mr. Nally.  But with respect to

24  the last date that we scheduled the deposition for,

25  Mr. Nelson told me that Mr. Nally was not available before

1    2:00 o'clock so we scheduled it, I believe for 2:14,

2    something like that.  But I would, as with all depositions,

3    try to complete it as quickly as possible.

4            I think we are entitled to take a full deposition

5    of him, and it always depends, Your Honor, upon the answers

6    that you get.  And if you have a witness who reads every

7    page of every document that's put in front of them, and

8    answers with long questions and does not provide direct

9    answers to questions, then depositions take a long time.

10   If you have a --

11           THE MAGISTRATE JUDGE:  Let me interrupt you just

12   one moment, Mr. Salzman.

13           Mr. Nelson, do you acknowledge that there is a

14   local rule regarding the presumptive limit on the duration

15   of a deposition?

16           MR. NELSON:  I recognize that there's a Federal

17   Rule that provides for one day of seven hours.  I also

18   recognize, and I can demonstrate this to the Court and I

19   could submit my own affidavit if necessary, that this

20   deposition was noticed for one-half day, not because of

21   Mr. Nally's availability or unavailability.  It was noticed

22   for 10:00 a.m. on October 3rd, 2006, and another witness,

23   Darlene Shay, was noticed for 2:30 p.m. that same day.

24   I believe there's e-mail correspondence between me and

25   Mr. Salzman which indicates that it would be conducted in

1  a half a day.

2      THE MAGISTRATE JUDGE:  Well, this is an issue we

3  should resolve now, and perhaps I will revisit what I said

4  about a time by which the parties must agree upon a date

5  and time because this is a matter that the Court intends to

6  resolve as a part of the ruling on the motion for

7  protective order.

8      Is it your request, Mr. Nelson, that the Court

9  set a time different from the Federal Rules' time, which we

10 do have discretion to do under Local Rule -- Local Civil

11 Rule 26.2(c), or are you asking for something else?

12     MR. NELSON:  I'm advising --

13     THE MAGISTRATE JUDGE:  I'll just simply state

14 this by way of background.  I have heard nothing from

15 either of you, nor read anything in the Plaintiff's --

16 excuse me, in the Defendant's motion for protective order

17 that would suggest that if the motion for protective order

18 is denied there is a reason for the deposition to be

19 limited in time in any way that deviates from the

20 application federal or local rule.

21     MR. NELSON:  Well, I'm saying, Your Honor --

22     THE MAGISTRATE JUDGE:  Our local rule provides

23 that the Court may authorize or the parties may agree to

24 different time limits on the length of a deposition.  I

25 gather, based on what you've said in the last ten minutes,

1    that you don't agree.  So that means we have to move to the

2    question of what the Court may authorize.  And I'm not

3    certain that I know what it is that you request,

4    Mr. Nelson.

5            MR. NELSON:  What I am saying is that this

6    deposition was noticed for a half a day, it was an

7    agreement that it would be no more than a half a day, and

8    if Mr. Salzman has changed his mind then so be it.  I don't

9    know what to say about it.

10           I think also in terms of presumptive --

11           THE MAGISTRATE JUDGE:  Where is the agreement to

12   which you refer?  Is it among any of the exhibits to your

13   motion for protective order?

14           MR. NELSON:  No, it is not, Your Honor.  I didn't

15   think this was an area in dispute.  And I can show Your

16   Honor the notices for the deposition and I don't know if I

17   have all the e-mails with me.  If it makes a difference.

18           I also note, in terms of presumptive limits, that

19   this is, I think, the fourteenth deposition, and in our

20   view there should be a ten-deposition limit.  But we've

21   never stood on that.  We've tried to resolve things

22   amicably and by agreement.  This is the first time I've

23   come to seek relief from Your Honor in this case.

24           THE MAGISTRATE JUDGE:  What is your request,

25   Mr. Nelson, since Mr. Salzman now says -- now represents

1    that there was no agreement.  Or at least there is no

2    agreement at this point.  Is it your request that the Court

3    authorize a different limit?  And if so, what, and more

4    importantly, why.

5         MR. NELSON:  My request is that I thought

6    Mr. Salzman would abide by the agreement.  This deposition

7    was noticed for one-half day.  I can show that, if it

8    matters.  If Mr. Salzman has a compelling reason to now

9    proceed further, I don't know what it is.  As Your Honor is

10   aware, we don't believe this deposition is necessary at

11   all.  And I indicated to Your Honor that this is very

12   disruptive.  Your Honor said I haven't proved it, but

13   that's my representation to the Court, so a full day is

14   much more disruptive than a half day.  A full day is more

15   difficult to schedule for this particular witness.

16        THE MAGISTRATE JUDGE:  Very well.  Thank you,

17   Mr. Nelson.

18        Mr. Salzman?

19        MR. SALZMAN:  Your Honor, when we were trying to

20   schedule these depositions, as I mentioned before, it was

21   very difficult to get available dates.  We did try to work

22   with available times.  And we did schedule initially two

23   people for the same day, with Mr. Nally going first.  It

24   was never my intention that we were entering into an

25   agreement as to a specific period of time for Mr. Nally's

1    deposition.  As I said, if we are able to complete his

2    deposition in two hours, I would rather it be in two hours

3    than in four hours.  But I can never know that until we

4    start taking someone's deposition and find out whether or

5    not they're going to answer questions directly or whether

6    they're not.

7              THE MAGISTRATE JUDGE:  Do you recall the notice

8    of deposition to which Mr. Nelson just referred?

9              MR. SALZMAN:  I do recall it, Your Honor.  I

10   believe that we had scheduled Darlene Shay, who was a

11   personnel specialist, who we thought would be a very short

12   deposition for the afternoon on the same day that Mr. Nally

13   was to be scheduled in the morning.  Which I believe was

14   the last day of the available discovery period, Your Honor.

15   And I think was the only day the Defendant said that

16   Mr. Nally was available within the original discovery

17   deadline.

18             So I believe that that is correct, that we had

19   two deponents scheduled for that day and that my intention

20   was we would start with Mr. Nally and I would finish

21   Mr. Nally and then, if we had time, we would complete

22   Ms. Shay.  And I still would hope that I could take

23   Mr. Nally's deposition in a half a day, but again, I do not

24   know that to be the case until we start taking a witness's

25   deposition, and I have never agreed and I don't believe

1  that Mr. Nelson can point to an agreement in which we've

2  said that Mr. Nally's deposition would be limited to a

3  particular number of hours.

4        THE MAGISTRATE JUDGE:  Well, I see that

5  Mr. Nelson has something -- a document or documents in his

6  hand that I believe he may wish to show you.  And what I

7  will do is take a five-minute recess so that the two of you

8  can look at the same materials.  My expectation is that you

9  will quickly agree upon a date and time, because -- well,

10  partly because that's what I ordered you to do, but more

11  importantly I believe you do have a common interest in

12  resolving this -- or concluding this deposition as

13  expeditiously as possible.

14        In addressing this question regarding the

15  duration of the deposition, however, I must be guided by

16  Local Rule 26.2(c), which permits me to authorize a

17  different limit on the length of a deposition.  By

18  different, I mean different than the one for which Federal

19  Rule of Civil Procedure 26 provides.  Thus far, I haven't

20  been given a reason to deviate from the presumptive limit

21  other than it appears that at some point there was an

22  expectation, if not an agreement, that the deposition would

23  be concluded in a few hours rather than perhaps twice that

24  long.

25        So why don't you take a moment, counsel, and

1    review the materials that you just located, Mr. Nelson, and

2    if you cannot reach an agreement on a limit then I will

3    hear any further arguments that you have.

4              Very well.  You may remain seated.

5              (Whereupon, a brief recess was taken.)

6              THE CLERK:  We're back on the record, Your Honor.

7              THE MAGISTRATE JUDGE:  Now, counsel, were you

8    able to reach an agreement this afternoon regarding the

9    duration of the deposition of Mr. Nally?  Mr. Nelson?

10             MR. NELSON:  Your Honor, we have a prior

11   agreement and I don't know that we have -- that that

12   agreement is being recognized at this point by Mr. Salzman.

13             THE MAGISTRATE JUDGE:  Courts, of course,

14   encounter difficulty in this circumstance because I have no

15   means -- perhaps I should say in a circumstance in which

16   the Court is being asked to determine whether there was an

17   agreement regarding something such as the duration of a

18   deposition.  My hope was that perhaps there was some

19   written communication that the parties or their counsel

20   exchanged which indicated, you know, "We agree that the

21   deposition will take no longer than four hours."  And that

22   that would be the basis -- such written communication,

23   e-mail or snail mail, would be the basis of the contention

24   that there is an agreement.

25             What I have been presented is an argument

1    regarding an inference which might be drawn from a notice

2    of deposition that because the deposition was not scheduled

3    to begin until a certain time, that that must have meant it

4    would be limited to some period of less than seven hours.

5    I cannot conclude, based upon what I have heard from both

6    of you, however, that the scheduling represented an

7    agreement.

8            Rather, the scheduling appeared to represent an

9    effort to accommodate Mr. Nally, who said that he would not

10   be available until the time for which the deposition was

11   noticed.  And in the absence of any e-mail, communication,

12   written memorandum, or other document which suggests that

13   the parties did in fact agree to limit the deposition to

14   two hours or three hours or some period shorter than seven,

15   I have no basis upon which to find that there was an

16   agreement.

17           That means that I am authorized to shorten the

18   time but, of course, require some showing.

19           MR. NELSON:  I have --

20           THE MAGISTRATE JUDGE:  The rule does not state

21   what showing that is.  I can only assume that the showing

22   is good cause, since we're talking about Rule 26.  Or, in

23   this instance, you know, Local Rule 26.2, Subsection (c).

24           MR. NELSON:  I -- sorry, Your Honor.  I do have

25   with me some documentary evidence, and there are e-mails

1  that I can't access right now, but what I have is this,

2  and I can hand it up.  On September 15th, 2006, Plaintiff

3  noticed a number of depositions, including the deposition

4  of Dennis Nally.  The date was October 3, 2006, time 10:00

5  a.m.  That was noticed on September 15th, for 10:00 a.m.

6  on October 3rd.

7          Three days later, on September 18th, 2006, the

8  Plaintiff noticed the deposition of Darlene Shay, an

9  employee of PWC, for 2:30 p.m. on October 3rd, 2006.

10          Prior to that, the Plaintiff's counsel -- and

11  this is what I can probably find an e-mail, if it matters,

12  it stated that -- and it was always understood -- that

13  Mr. Nally's deposition would not exceed two hours,

14  actually, but it was always scheduled for a half day.  The

15  October 3rd date was adjourned, I think until November 5th.

16  November 5th date was adjourned until December 5th -- I'm

17  sorry, yes, until December 5th, and it was set for the

18  afternoon.  That's tomorrow in the afternoon.  This is my

19  e-mail to Mr. Salzman reconfirming December 5th for

20  Mr. Nally in the afternoon of that day.

21          THE MAGISTRATE JUDGE:  How is that probative of

22  whether there was an agreement that the deposition would be

23  limited to seven hours, since I do not know what the

24  parties -- nor have any of you told me what the parties

25  intended regarding such matters as how late in the day you

1  would remain or whether you would continue on the following

2  day until all relevant inquiries had been exhausted.

3          MR. NELSON:  As I mentioned, Your Honor, the

4  initial notice of Mr. Nally's deposition for 10:00 a.m. on

5  October 3rd was served by Plaintiff on September 15th.

6  Three days later, not at our insistence but pursuant to an

7  earlier agreement and an understanding that the deposition

8  would be a half a day, they noticed the deposition of

9  Darlene Shay at 2:30 p.m. on the same day.  And that would

10  contemplate concluding Mr. Nally well before then.  The

11  parties typically have lunch, so that was what the

12  agreement was.  If Mr. Salzman wants to change it or Your

13  Honor wants to change it, there's nothing I can do about

14  it.  That was the agreement.

15          THE MAGISTRATE JUDGE:  Well, my question,

16  Mr. Nelson, is how this scheduling issue to which you have

17  referred -- that is, a start time of 10:00 a.m. for

18  Mr. Nally and a start time of 2:30 for Ms. Shay is

19  dispositive of whether there was an agreement that

20  Mr. Nally's deposition would be over by lunchtime.  Put

21  another way, what basis do I have to conclude that that was

22  the intention rather than the intention to conclude Ms.

23  Shay's deposition and go back to Mr. Nally, or resume

24  Mr. Nally --

25          MR. NELSON:  On the same day?

```
 1              THE MAGISTRATE JUDGE:  -- the next morning.
 2              MR. NELSON:  On the same day?  There was no
 3   agreement to resume Mr. Nally the next morning.  I will
 4   tell you, as a matter of practice, we have had depositions
 5   that have gone over the seven-hour limit.  We haven't
 6   asserted that seven-hour limit, and if Mr. Nally were being
 7   deposed and he was giving relevant testimony and whatever
 8   time it took to continue it, we wouldn't say, "Uh-uh, the
 9   bell rang, you're done."  We've been reasonable throughout,
10   Your Honor.
11              THE MAGISTRATE JUDGE:  Well, if other depositions
12   have --
13              MR. NELSON:  And if the deposition proceeded for
14   a half a day and in good faith it wasn't finished and it
15   was giving relevant testimony to appropriate inquiries, we
16   wouldn't say, "Too bad, it's done, you're forever barred."
17   That's not been our practice.  It's never been our
18   practice.
19              THE MAGISTRATE JUDGE:  Well, is the e-mail which
20   you indicated that you cannot access right now e-mail that
21   you recall suggests that there was an agreement that the
22   deposition would take no more than half a day?
23              MR. NELSON:  Your Honor, I have a recollection of
24   an e-mail from Mr. Salzman stating that he needed Mr. Nally
25   for a half a day.  The, the, the --
```

1          THE MAGISTRATE JUDGE:  May I suggest the

2    following, then --

3          MR. NELSON:  The notices that were thereafter

4    served by the Plaintiff are entirely consistent with that

5    understanding.  That's what I'm saying.

6          I'm also saying that if Your Honor wants to rule

7    differently, then Your Honor will rule differently.  I

8    can't -- that's all I'm saying.  I don't want to make a big

9    case out of a hearing about it.  I have this documentary

10   evidence if Your Honor wants to see it.

11         THE MAGISTRATE JUDGE:  When will you be able to

12   access your e-mail, Mr. Nelson?

13         MR. NELSON:  Your Honor, we had extensive e-mail

14   correspondence in August and September, and I will be able

15   to access it when I return to my office.  I don't have it

16   on my Blackberry.  I can't access it from here.

17         THE MAGISTRATE JUDGE:  Will that be later today

18   or tomorrow?

19         MR. NELSON:  I would hope it would be later

20   today, Judge.  The reason I'm raising this, I'm not trying

21   to cut anyone short.  I mean, scheduling has been

22   difficult, I understand that Your Honor says that I hadn't

23   met my burden of showing what the chairman's schedule is

24   like, but I can represent to Your Honor that scheduling has

25   been very, very, very difficult.  He's out there 24/7, and

1    it's difficult.  So it makes a difference -- which is why I

2    asked for us just to have a day to try to set a date.  It

3    makes a big difference.  We thought we were talking and we

4    were always talking about a half a day, which is a bit

5    easier than a full day.

6              THE MAGISTRATE JUDGE:  Well, I will --

7              MR. NELSON:  A lot easier.

8              THE MAGISTRATE JUDGE:  The --

9              MR. NELSON:  It's the only reason I raised it.

10              THE MAGISTRATE JUDGE:  Bear with me one moment,

11    please, while I confer with the deputy clerk.

12              I believe w all recognize that Local Rule 26.2,

13    Subsection (c) allows the Court to authorize a time

14    different than the one that the rules would otherwise

15    require in a circumstance where there is no agreement to do

16    so.  Defendant's counsel represents that there was an

17    agreement and that is, of course, a proposition that the

18    Plaintiff disputes.  Defendant's counsel states that he

19    recalls that there is an e-mail exchange regarding an

20    agreement, that they cannot access the e-mail this

21    afternoon.

22              The Court will schedule a brief status conference

23    by telephone tomorrow.  Ms. Miller has indicated we could

24    set that for 11:00 a.m., if both of you are available at

25    11:00.  And if you have located the e-mail at that point,

1    Mr. Nelson, I'll just ask you to make sure that you get a

2    copy of it to Mr. Salzman or Ms. Kramer beforehand, and I

3    do not need to see it.  In other words, no one need fax it

4    to chambers.  I'll just have you read it, one of you, if

5    you haven't by that time reached an agreement and I will

6    then make an assessment of whether there was an agreement

7    some time ago.  If there was, then obviously you're bound

8    by the agreement.

9         Because we will not be on the record at the time

10   I have that conference, however, I do want t hear any

11   further argument you have, Mr. Nelson, about why the Court

12   should authorize a different limit.  So if we assume for

13   the moment that there is no agreement and at the moment I

14   have no other assumption to make, and that your request is

15   that I authorize a different limit, what is your request --

16   what is the basis of your request that I authorize a

17   different limit.  And I will assume for the moment, since

18   the local rule 26.2(c) does not articulate a standard, that

19   the good cause standard that applies to other Rule 26

20   considerations applies here.

21        What is your argument regarding good cause for

22   shortening the time, or from imposing a limit other than

23   the presumptive limit.

24        MR. NELSON:  Your Honor, in opposition to the

25   motion that Your Honor decided today, Mr. Murphy identified

1  two areas where he wishes to depose Mr. Nally.  One was

2  with respect to the original incorporation of the mandatory

3  retirement provision and, relatedly, a statement made about

4  a consideration being given in 2005 of changing that

5  provision, and the other area was some Clackamas inquiries.

6  I think they were detailed on page 10 of the opposition

7  brief, and in the footnote on that page.

8          That was the proffer of relevance.  I believe the

9  party _____ of discovery has the burden of showing

10  relevance.  Your Honor found that it was relevance.  I

11  gather that they met that burden.  And I'm saying that the

12  discovery which they have proffered as relevant and

13  necessary to depose Mr. Nally shouldn't take very long.

14  And the rest of what I would say if I had an opportunity to

15  make an application is what I've said and Your Honor also

16  said that I did not meet my burden of showing that the

17  senior partner and chairman's schedule and the business of

18  the firm would be disrupted by taking the chairman out of

19  commission for that period of time.  It would be the same

20  showing.

21          All I'm saying, Judge, is that there is an

22  agreement.  If I can hand this up, since we won't be able

23  to do this on the telephone tomorrow at 11:00 if we don't

24  reach agreement, are the notices which were served by the

25  Plaintiff that I mentioned earlier, which clearly reflect

1    that agreement, and if the deposition -- if we had not made

2    the motion, the deposition was scheduled to proceed in an

3    afternoon.

4            THE MAGISTRATE JUDGE:  Are those the same

5    materials that you already showed Plaintiff's counsel?

6            MR. NELSON:  Yes, these --

7            THE MAGISTRATE JUDGE:  Very well.  You may hand

8    them to Ms. Miller.

9            MR. NELSON:  These just -- so the record's clear,

10   I'm handing up a notice of deposition of Mr. Nally that was

11   served on September 15th, 2006 --

12           THE MAGISTRATE JUDGE:  That's for 10:00 a.m.

13           MR. NELSON:  Correct, by Mr. Salzman, and then

14   the second notice was served by Plaintiff's counsel,

15   Ms. Kramer signed the certificate of service on September

16   18th, which among other things scheduled the deposition of

17   Darlene Shay for 2:30 p.m. on October 3rd, 2006.  This

18   reflects the agreement.  This was the notice.

19           THE MAGISTRATE JUDGE:  Very well.  You may hand

20   it to Ms. Miller.  Thank you.

21           Will both of you be available tomorrow at 11:00?

22   I should have asked that question.

23           MR. SALZMAN:  I am, Your Honor.  Thank you.

24           MR. NELSON:  By telephone, Judge?

25           THE MAGISTRATE JUDGE:  Yes.

1          MR. NELSON:  I can find a telephone at 11:00.

2     I'm hopeful we can reach some sort of agreement here.  My

3     problem, frankly, is it's not easy to schedule.  This

4     (inaudible) scheduling, we have until 5:00 o'clock to --

5          THE MAGISTRATE JUDGE:  Very well.  I simply

6     wanted to know will you both be available at 11:00 so that

7     if there is an e-mail that one or the other of you wants

8     to read, I can hear it.  All right.  Thank you.

9          Now, Mr. Salzman.  Anything further?

10         MR. SALZMAN:  Just very briefly, Your Honor.

11    I just want to say I completely agree that we did have a

12    schedule that we tried to put in place when we were trying

13    to work with available dates as they were proffered to us

14    by Mr. Nelson of Mr. Nally and other witnesses.  And I

15    still hope and believe that I can take his deposition in

16    less than a full day, as we said in our opposition.  On

17    page 11 of our opposition we said we didn't see how it

18    would be burdensome for Mr. Nally to attend a deposition

19    whose duration is "limited to a maximum of seven hours by

20    rules of this Court and would very likely take

21    considerably less time."

22         But we do have two Plaintiffs in this case, Your

23    Honor.  I'm' only asking questions for Mr. Murphy.

24    Mr. Schuler has separate counsel, Mr. Rose, who has a

25    right to be at the deposition and to ask questions, as

1  well.  And we never do know for sure until we start a

2  deposition whether it's going to be a relatively

3  straightforward deposition or one where we have to delve

4  much deeper because of the types of answers that we're

5  given.

6           I don't understand what Mr. Nelson says that

7  he's not intending there to be a hard and fast time limit,

8  and I never understood there to be any hard and fast time

9  limit in our discussions about scheduling.  And assuming

10  that there is no hard and fast time limit, I don't

11  understand how he envisions it would work if we only had

12  Mr. Nally scheduled for three hours and we believed that

13  we needed four and a half or five.

14           So my proposal would be that we schedule

15  Mr. Nally for a date that is available to him, that we

16  start in the morning and we would endeavor, as we have

17  said that we would, to complete the deposition as quickly

18  as possible and -- but in which we could complete the

19  deposition one way or another that day, so that if it ran

20  four and a half hours, five hours, six hours, whatever it

21  runs, we can complete it that day and finish up fact

22  discovery in this case.

23           I never intended and I do not believe that there

24  is any writing that reflects an agreement as to a specified

25  number of hours for Mr. Nally's deposition.

1          THE MAGISTRATE JUDGE:  Very well.  Thank you,

2    Mr. Salzman.

3          I have reviewed the two notices of deposition, I

4    will permit you, Mr. Nelson, and opportunity to look

5    through your e-mails and I will hear you tomorrow at

6    11:00.  I will ask that the two of you please make

7    arrangements to determine which phone number you wish to

8    use for purposes of this call, since I realize you may not

9    be in your offices, and I will ask that one of you place

10   the call to chambers and we will proceed at that point.

11         If there is an agreement, then of course you are

12   bound by the agreement.  If there is no agreement, I've

13   already heard your arguments regarding why the Court

14   should or should not authorize a deviation from the

15   presumptive limit of seven hours.

16         Very well.  Thank you very much.  All of you

17   have a good afternoon.  You may be excused.

18         (Whereupon, the proceedings were concluded.)

19

20

21

```
UNITED STATES OF AMERICA )
                         ) Civil Action No. 02-0982
                         ) Civil Action No. 05-1054
DISTRICT OF COLUMBIA     )
```

I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

_____
                         PAUL R. CUTLER

I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

_____
                         BONNIE FURLONG