# **<u>EXHIBIT B</u>**

```
1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF COLUMBIA

3    C. WESTBROOK MURPHY, et. al.,   .

4                       Plaintiff,      . Docket No. CV 05-01054

5    vs.                              . Washington, D.C.

6    PRICEWATERHOUSECOOPERS, LLP     . December 5, 2006

7    ...............................

8                    TRANSCRIPT OF STATUS CONFERENCE

9       BEFORE THE HONORABLE MAISTRATE JUDGE DEBORAH ROBINSON

10                   UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For Plaintiff Murphy:  RICHARD A. SALZMAN, Esquire

13                          TAMMANY MORGAN KRAMER, Esquire

14                          Heller, Huron, Chertkof, Lerner,

15                          Simon & Salzman, PLLC

16                          1730 M Street, N.W., Suite 412

17                          Washington, D.C. 20036

18   For Plaintiff Schuler: DAVID L. ROSE, Esquire

19                          ROSE & ROSE, P.C.

20                          1320 19th Street, N.W., Suite 601

21                          Washington, D.C. 20036-1203

22

23

24

25
```

```
1    APPEARANCES: [Cont'd]

2    For the Defendants:  ERIC M. NELSON, Esquire

3                        Winston & Strawn LLP

4                        200 Park Avenue

5                        New York, New York 10166

6

7    Court Reporter:     Cathryn J. Jones, RPR

8                        Official Court Reporter

9                        Room 6427, U.S. District Court

10                       333 Constitution Avenue, N.W.

11                       Washington, D.C. 20001

12

13   Proceedings recorded by machine shorthand, transcript

14   produced by computer-aided transcription.

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2           THE DEPUTY CLERK:  Civil case number 05-1054 and

3    02-982.  This is in the matter of C. Westbrook Murphy and

4    Harold Schuler versus PriceWaterhouseCoopers, LLP.  For the

5    West Cooper Murphy present on a telephone conference is

6    Richard Salzman, Tammany Morgan Kramer and Josh Rose for

7    Harold Schuler.  And for PriceWaterhouseCoopers, LLP we have

8    Eric Nelson.

9           MR. ROSE:  I think you have my son's name there.

10          THE DEPUTY CLERK:  I'm sorry, Mr. David Rosen is

11   present on the phone.  This is here for a status hearing.

12          THE COURT:  Now good afternoon to all you have.

13   The record in this case of course reflects that yesterday

14   the court held a lengthy hearing and made extensive findings

15   on the record with respect to the defendant's motion for

16   protective order to preclude the deposition of Mr. Nally.

17          At the end of the hearing the court directed

18   counsel to meet and confer in an effort to agree upon a date

19   and time for the deposition and ordered that the deposition

20   be completed by December 20th.  It was only at that time

21   that the court became aware that the parties had a

22   difference of opinion or difference of recollection with

23   respect to whether or not there had been an agreement to

24   limit the duration of the deposition of Mr. Nally to a

25   period of less than or fewer than seven hours.

```
 1              In order to allow counsel, particularly counsel

 2      for defendant who made the request, an opportunity to review

 3      e-mails and other records of correspondence to verify that

 4      there was in fact an agreement, the court allowed counsel

 5      until this morning that is today, December 5th at

 6      11:00 a.m., to review records of correspondence and continue

 7      to confer in an effort to verify whether or not there was an

 8      agreement.

 9              After the telephone conference which the, for

10      which the court provided yesterday that conference beginning

11      at about 11 today and taking place off the record, the court

12      upon learning that the dispute was more extensive than the

13      one that the court contemplated and that it may be the case

14      that counsel for defendant in the event of a determination

15      by the court that there was no agreement if that is indeed

16      what the court determines might contemplate further

17      proceedings with respect to that finding.  The court

18      continued the hearing until this afternoon so that it could

19      take place on the record in the event of a determination by

20      the court that there was no agreement.

21              Accordingly, a court reporter is present.  We've

22      determined that everyone can be heard by the court reporter

23      through the speaker phone.  And my only request is that

24      before you speak even if I have identified you by name or

25      asked for a response from any of you that you please state
```

1    your name for the record.  With that background, Mr. Nelson

2    I will hear from you first.

3         MR. NELSON:  This is Mr. Nelson.  The e-mail

4    correspondence between counsel reflects that PWC asked for

5    limits and plaintiff agreed to limits on the duration of

6    certain depositions.  As to Mr. Nally the agreement to limit

7    his deposition to a half day is reflected in a chain of

8    e-mail correspondence beginning with an e-mail from

9    Mr. Salzman to me on July 26th, requesting dates between

10   September 5th and October 6th for the depositions of ten

11   witnesses including Mr. Nally, who had previously been

12   identified by the plaintiff.

13        My response on July 27th, stated that and I'm

14   quoting from my e-mail of July 27th, "I think you would

15   agree that you are requesting an unusually large number of

16   depositions for a straightforward non-motion case,

17   especially since plaintiffs previously disposed at length

18   four PWC partners on the assumption that you will conclude

19   most of these examinations in substantially less than the

20   one day of seven hours limit.

21        We have requested the availability in September of

22   the persons you have listed with two exceptions paren Dennis

23   Nally and Robert Bench close paren."

24        These two e-mails, your Honor, are attached I

25   believe as Exhibit F to PWC's motion for protective order.

1          THE COURT:  The court is aware.  And in addition I

2    will note that those e-mails, the e-mail to which you just

3    referred were among the e-mails that you read during our

4    telephone conference earlier today which was of course off

5    the record.

6          MR. NELSON:  Yes.  We had that dress rehearsal so

7    to speak.  Continuing as suggested by my July 27th e-mail

8    given the plaintiff was seeking a total of 14 depositions,

9    PWC would have moved for protective order in the absence of

10   an agreement limiting the duration of some of the

11   depositions.

12         Now in an e-mail to Mr. Salzman dated August 9th,

13   I specifically requested that he quote, "Identify the

14   witnesses you believe you can depose in less than a full

15   seven hour day," close quote.  That was in response to a

16   short e-mail from Mr. Salzman the day before on August 8th,

17   asking whether I had heard back from my client as to

18   available dates for some depositions.

19         Your Honor, I do not believe that this exchange on

20   August 8th and 9 is attached to our motion papers.

21         THE COURT:  I do not recall seeing it as an

22   exhibit.  You may continue.

23         MR. NELSON:  Mr. Salzman initially responded to my

24   August 9 e-mail on October 25 by stating that the deposition

25   of Darlene Shea will be limited to quote "a half a day,"

1    close quote.  And stating as to Mr. Nally quote, "I'm not

2    yet sure how long but probably less than a full day," close

3    quote.  Your Honor, that e-mail of October 25 is included in

4    Exhibit H to our protective motion.

5            MR. SALZMAN:  I'm sorry to interrupt.  You said

6    October 25 --

7            THE COURT:  Counsel, counsel your name.  Just one

8    moment, Mr. Salzman, you just spoke and didn't identify

9    yourself.

10            MR. SALZMAN:  I'm sorry, your Honor.  This is

11    Richard Salzman.  And I was just stating that I think that

12    Mr. Nelson meant August 25th, but had said October 25th, but

13    he accurately read the e-mail correctly.

14            MR. NELSON:  This is Mr. Nelson and I stand

15    corrected.  Thank you, Mr. Salzman.

16            Continuing now, on August 30, I e-mailed that

17    quote, "we expect to be able to schedule Shea and Nally for

18    the first week in October paren probably 10-3 and 10-4,"

19    close quote.  Mr. Salzman's e-mail response on August 31

20    stated quote, "As to Shea and Nally, October 3 and 4 are

21    fine.  But I think we could combine them on one day so that

22    we might have more time available to schedule some of the

23    longer depositions," close quote.

24            Your Honor, these e-mails I believe are included

25    in Exhibit I to PWC's protective order.

1          THE COURT:  I have them in front of me now.

2          MR. NELSON:  Thank you.  Mr. Salzman and I had

3    extensive telephone conversations in September on scheduling

4    matters.  During the course of those conversations

5    Mr. Salzman stated his expectation that he could, that he

6    could complete the Nally deposition in two hours.  I'm not

7    sure whether that is mentioned in any e-mails, but do not

8    contend there is an agreement to limit the deposition to two

9    hours.

10          In accordance with various agreements reached on

11    scheduling matters in e-mails, mails and telephone

12    conversations plaintiffs, Plaintiff Murphy served various

13    deposition notices in mid-September.  In a notice of

14    deposition served by plaintiff on September 15, Mr. Nally's

15    deposition would be noticed for 10:00, a.m., on October 3,

16    quote, "or upon such other dates and times as mutually

17    agreed upon" close quote.

18          In a notice served on September 18, plaintiff's

19    noticed Ms. Shea's deposition for 2:30 p.m., on the same day

20    on October 3.  These notices in accordance with counsel's

21    agreements and understandings would have allowed up to three

22    and a half hours, half a day for the deposition of Mr. Nally

23    that counsel expected to be able to conclude in two hours.

24          THE COURT:  I'm going to interrupt only to note

25    that the two notices of deposition are the notices that you

1    handed the court yesterday and that I still have at your

2    request.

3             MR. NELSON:  Thank you, your Honor.  I was about

4    to note the same things.

5             THE COURT:  You may continue.

6             MR. NELSON:  The notice of deposition of Mr. Nally

7    for a half day on October 3 was thereafter adjourned twice

8    by mutual agreement.  Those mutually agreed upon adjourned

9    dates were each confirmed for a half day.  By an exchange of

10   e-mails dated October 3, counsel confirmed agreement to

11   adjourn the deposition of Mr. Nally to, as stated in my

12   e-mail of October 3 quote, "the afternoon of November 6th,"

13   close quote.

14            Then by an exchange of e-mails on October 25,

15   counsel confirmed agreement to December 5 quote "on the

16   afternoon of that day" close quote, which happens to be

17   today.  Based on the September deposition notices we

18   understood that an afternoon deposition was to begin at

19   2:30.

20            Now a local rule I think it's 26.2(c) does not

21   specify how an agreement as to the length of a deposition

22   may or should be documented, but we submit your Honor that

23   the e-mails between counsel clearly documents an agreement

24   that Mr. Nally's deposition be limited to a half a day.

25   It's also documented by the deposition notices and the

1    mutually agreed upon half day adjourn dates.

2         Apart from all else we do not believe PWC needs to

3    move to limit the deposition that was already limited by the

4    notices.  PWC moved for a protective order with respect to

5    the quote "notices deposition," close quote of Mr. Nally as

6    stated in the first sentence of PWC's memorandum in support.

7    Your Honor denied that motion yesterday.  Accordingly, the

8    deposition is now to proceed as noticed which is indicated,

9    which was for a half day.

10        THE COURT:  Mr. Nelson, the court asked a question

11   of you during our off-the-record telephone conference

12   earlier today which I will repeat at this time.  The

13   question is as follows, to what extent might the more

14   reasonable inference be that instead of an agreement to

15   limit the duration of the deposition these e-mails to which

16   you referred instead address only scheduling issues?  That

17   is, the question of when the depositions would start and not

18   how long they would last once they commenced.

19        MR. NELSON:  I don't recall that question from

20   this morning.  But in any event to answer it now the, I

21   think the e-mails that I just reviewed clearly indicate that

22   Mr. Quinn's counsel initially contemplated that the

23   depositions take less than a full day.  And then plaintiff's

24   counsel asked that Mr. Nally's deposition be taken on the

25   same day as the deposition of Ms. Shea and then proceeded to

1    notice Mr. Nally's deposition to begin at 10:00, a.m., on

2    October 3 and at the same time to notice Ms. Shea's

3    deposition to begin at 2:30.

4         And the understanding was and the implication from

5    the notices certainly was that Mr. Nally's deposition would

6    conclude before the next notice of deposition and, you know,

7    typically the parties take an hour for lunch.  That's the

8    three and a half hours which includes the cushion over what

9    I understood the plaintiff's counsel thought would be needed

10   for this deposition.

11        THE COURT:  To what extent is the argument you

12   just made inconsistent with the notice of deposition which

13   reads quote, and I'm omitting the beginning language.

14   Quote, "and will continue from day-to-day, Saturdays,

15   Sundays and holidays excluded or upon such other dates and

16   times as mutually agreed upon until completed," close quote.

17        Does that not suggest that or do you not agree

18   that the notice of deposition does not indicate that the

19   deposition would be concluded on the day it commenced and

20   that in fact, the party that noticed it, the party who

21   noticed it indicates that it will continue until it's

22   completed?

23        MR. NELSON:  Your Honor, the standard language in

24   a deposition notice that a deposition continues from

25   day-to-day until completed can't override the seven hour

**12/5/2006  Magistrate Robinson Status Conference**

1    presumptive limit for the deposition or an agreement

2    imposing some other temporal limitation.

3            THE COURT:  Do you acknowledge --

4            MR. NELSON:  I don't think that overrides any

5    agreement or the rule provision as to the duration of the

6    deposition.

7            With respect to the -- I don't have the language

8    in front of me.  The other language in the notice that the

9    deposition proceed on a specified date or on such other date

10   and time mutually agreed upon is generally standard language

11   as well, but the subsequent adjournments of that deposition

12   were by mutual agreement and they were for half days instead

13   of a morning.  They were adjourned first November 6th in the

14   afternoon and then to December 5 in the afternoon.

15           And that's all consistent with our understanding

16   and agreement.

17           THE COURT:  Do you acknowledge that you have not

18   produced any e-mail or other written correspondence

19   exchanged between you and Mr. Salzman in which the term

20   agreement is used?  In other words, that there is no e-mail

21   that indicates this is to acknowledge the agreement that you

22   will limit the deposition of Mr. Nally to three and one half

23   hours or thank you for your agreement to limit the

24   deposition to three and one half hours?

25           MR. NELSON:  Your Honor, as I mentioned before

1  your Honor --

2        THE COURT:  Do you agree there is no such e-mail?

3        MR. NELSON:  -- there are e-mail exchanges which

4  does refer to, mentioned an agreement.  I mean for example

5  there was an exchange of e-mails on October 3 that I

6  mentioned.  I have not produced that.  I do not believe that

7  e-mail is before the court in which Mr. Salzman states to me

8  quote, "by agreement we will defer Mr. Nally's deposition

9  date paren I know you may file a motion on the substantive

10  issue of a right to take this deposition, but this is the

11  agreed upon date to November 6th, 2006."  And in response on

12  the same day I stated, "Please note that Mr. Nally's

13  availability paren subject to a ruling on the propriety of

14  the deposition is on the afternoon of November 6th," close

15  quote.

16        That was the exchange reflecting that agreement

17  and that there was no further response from Mr. Salzman.

18  And that was we think that's a clear reflection of the

19  agreement.

20        THE COURT:  And do you --

21        MR. NELSON:  And again, on October 25th,

22  Mr. Salzman sent me an e-mail which states, "We have agreed

23  however to accommodate his travel schedule," referring to

24  Mr. Nally, "by moving his deposition from November 6th to

25  December 5."  And in my response to that on the same day I

1    say, "We can confirm November 29th for Mr. Bench, which is

2    not an issue here and reconfirm December 5 for Mr. Nally.

3    His availability is on the afternoon of that day."  And that

4    was confirming an agreement.

5         There was no response.  There's no -- I didn't get

6    anything back because that was the agreement.  Mr. Salzman

7    didn't say wait a minute, what do you mean it's in the

8    afternoon?  Or you know if we start in the afternoon it's

9    understood that we're going to have to go until nine or ten

10   o'clock.  There was no response.

11        I think those e-mail exchanges along with the

12   others and along with the notice I think clearly reflect

13   that we had an agreement.  It wasn't specifically 3.5 hours.

14   It wasn't stated as an limitation but that was the

15   agreement.  And that was -- we moved for protective order

16   based on the notice which was for a deposition which

17   necessarily was for a half a day.

18        THE COURT:  Very well.  Thank you very much,

19   Mr. Nelson.  Mr. Salzman or Ms. Kramer.

20        MR. SALZMAN:  Yes, thank you, your Honor.  This is

21   Richard Salzman.  Your Honor, as Mr. Nelson read from, from

22   the e-mail exchanges we, we originally identified Mr. Nally

23   as someone who we wanted to depose.  We did not in our

24   letter of May 25, 2006, which is Exhibit 10 to the

25   opposition papers for the motion for protective order.  And

1    we did not in any way suggest that there was any limit to

2    the duration of his deposition in that letter.

3           When we then reinitiated the discussion a couple

4    of months later about trying to schedule the deposition,

5    Mr. Nelson asked us to identify deponents who we thought

6    might take less than a full day, full seven hours.  And

7    trying to be responsive and cooperative, I wrote back as

8    Mr. Nelson read, that with respect to Ms. Shea we

9    anticipated a half day.  With respect to Nally quote, "I'm

10   not yet sure how long but probably less than a full day,"

11   end quote.

12          And as I have said to, you know, your Honor in

13   court yesterday and earlier this morning, and as we said in

14   our opposition papers at page 11 of our memorandum in

15   opposition, I hope and have always anticipated that I can

16   complete Mr. Nally's deposition in less than a full seven

17   hours and I will do my best to do so.

18          But first of all, I represent Mr. Murphy and I'm

19   only asking questions for Mr. Murphy, (comma)Mr. Rose

20   represents Mr. Schuler and has questions to ask as well.

21   And sometimes a lawyer can't really tell until he's in a

22   deposition how directly responsive a witness is going to be

23   and how long the breaks are going to be.  So you know I

24   cannot promise that we'd be able to complete Mr. Nally's

25   deposition with any, within any particular number of hours

1    other than what the rules specified.  And I never

2    represented to Mr. Nelson that I intended to do anything

3    other than my best.  And I certainly never agreed to any

4    specify time limitation.

5         Mr. Nelson did state correctly recite the rest of

6    the e-mails exchanges.  When we suggested coupling Mr. Nally

7    with Darlene Shea the conversations that we had with

8    Mr. Nelson were that because we were traveling to New York

9    city for a number of depositions we would like to try to

10   couple some of the shorter depositions with some of the

11   partners who were difficult to schedule so that we could

12   shorten our stay in New York as much as possible.

13        And we always believed that Ms. Shea's deposition

14   would be quite short.  And when we were trying to talk about

15   scheduling with Mr. Nelson whenever we would talk about

16   scheduling a partner's deposition he told us that it was

17   very difficult to get available dates from them.

18        So I initially proposed with respect to the first

19   week of October that we would start with Mr. Nally at

20   10 a.m., in the morning and we would couple that, that

21   deposition day with Ms. Shea's scheduled for the afternoon.

22   And we initially noticed it for 2:30.  It was always my

23   intention that if we were not finished with Mr. Nally's

24   deposition by 2:30, we would adjourn Ms. Shea's deposition

25   or start it later that day.  We have frequently gone well

**12/5/2006  Magistrate Robinson Status Conference**

1    passed five or six o'clock in these depositions without

2    objection from either side.  And that my anticipation.

3            I certainly did not intend and I never told

4    Mr. Nelson that that was intended to be a specific

5    limitation on the number of hours that we would be to depose

6    Mr. Nally.  And as the notice of deposition says we noticed

7    the deposition until its completed.

8            Those depositions, your Honor, were cancelled by

9    Mr. Nelson based upon his assertions that the plaintiffs

10   were not in compliance fully with their document responses,

11   which we disagreed with, but those depositions did not take

12   place.  We then rescheduled Mr. Nally's deposition.  And

13   again trying to work to find an agreed upon date, and I sent

14   Mr. Nelson an e-mail on October 3rd, which identifies a

15   number of I believe six of the remaining depositions that we

16   needed to reschedule.

17           And I said, "All of the depositions we are taking

18   will be starting at 10:00 a.m."  And then I listed five

19   depositions, Lavine for October 13th, Carter for

20   October 20th, Shea and Nebe for October 26, Hyman for

21   October 27 and Lewis for November 1.  And then I said, "By

22   agreement we will defer Mr. Nally's deposition date.  Paren,

23   I know you may file a motion on the substantive issue of our

24   right to take this deposition but this is the agreed upon

25   date to November 6th, 2006."

1              It was my expectation that we would start at 10

2     a.m.  And we would finish his deposition when it was

3     completed.  And there was no suggestion of any limitation on

4     the number of hours.  Mr. Nelson responded to that that same

5     day by saying that Mr. Nally was available on the afternoon

6     of November 6th.  Again, I did not take that and I certainly

7     did not intend that to mean that if we weren't finished by

8     five o'clock or by six o'clock that we were done with his

9     deposition.  I was simply trying to accommodate his

10    schedule.

11             I then sent out a second notice of deposition

12    dated October 5th, which I don't believe is in front of you,

13    your Honor.  And I did not recall that yesterday when we

14    were in court but I confirmed that today that we had sent

15    out a second notice of deposition that set Mr. Nally's

16    deposition for November 6th starting at one o'clock without

17    any suggestion or any limitation on the number of hours and

18    with a statement that it would continue from day-to-day

19    until completed.

20             THE COURT:  The court does not have that notice of

21    deposition but I'm happy to accept your representations

22    regarding what is written in the notice.  The only notices I

23    was given yesterday were the notices served on

24    September 15th, 2006 and the notice served on

25    September 18th, 2006.

18

1         MR. SALZMAN:  Your Honor, after we served the

2    notice for the November 6th deposition, Mr. Nelson wrote to

3    me saying that Mr. Nally would be out of the country on

4    November 6th.  Could we reschedule his deposition?  Again we

5    accommodated Mr. Nally's schedule and we agreed to move the

6    deposition to December 5th.  Mr. Nelson then wrote me saying

7    that Mr. Nally's availability on December 5th was in the

8    afternoon.  Again, there was no discussion.  Nothing in

9    writing to suggest that there was a limit on the duration of

10   the deposition.

11        And the last thing that I would note, your Honor,

12   is that there have been two instances where we did reach a

13   specific agreement with respect to discovery matters.  One

14   of them with respect to the attorney side only provision and

15   how we would modify that provision.  And one of them with

16   respect to the deposition of Mr. Bench, what substantive

17   areas we would get into in the deposition of Mr. Bench.  And

18   in both of those instances after conferring and reaching a

19   specific agreement on the telephone both sides confirmed

20   that, those specific agreements in writing by e-mails.

21        There was nothing like that with respect to

22   Mr. Nally's deposition.  Because what I was trying to do was

23   both accommodate Mr. Nally's schedule recognizing that he is

24   the senior partner and CEO and that that is something that

25   we should try to do.  And trying to be responsive to

19

1    Mr. Nelson's request that we at least consider being able to

2    take his deposition in less than seven hours.

3            I certainly will try to do that.  And I intend to

4    try to do that, but if you know as sometimes happens we get

5    into the deposition and we are not completed by any specific

6    time frame.  We believe that we have the right to finish the

7    deposition in accordance with the rules.

8            THE COURT:  Thank you, Mr. Salzman.

9            Mr. Rose, do you wish to be heard?

10           MR. ROSE:  Only to say that I agree with

11    Mr. Salzman's argument.  And note that there was never any

12    agreement between Mr. Nelson and me as to any length of

13    time.  I think there was an assumption which is basically

14    correct that Mr. Salzman and I would work things out so the

15    questions I thought important got asked and that has

16    happened in other depositions.  And we will certainly try to

17    do it as quickly as we can.  Thank you.

18           THE COURT:  Thank you, Mr. Rose.  Mr. Nelson, do

19    you wish a brief reply?

20           MR. NELSON:  Yes, your Honor.  Thank you, your

21    Honor, this is Mr. Nelson.  Mr. Salzman notes that his

22    briefing opposition to the protective order motion states

23    that he hoped or maybe expected or hoped that he could

24    conclude the deposition in less than seven hours.  I think

25    the record should reflect our brief in support of that

**12/5/2006  Magistrate Robinson Status Conference**

1    motion states that the deposition was noticed for a half

2    day.  I can't give you a page citation at the moment.

3          That, of course, is consistent at least of our

4    understanding of what the agreement was.  Mr. Salzman stated

5    that the notion of combining Mr. Nally and Ms. Shea's

6    deposition on the same day was discussed in a telephone

7    conversation.  I don't believe that's correct.  And as I

8    noted it was raised by Mr. Salzman in an e-mail in August.

9    And we actually did not have the telephone conversations

10   about scheduling until September.

11         Mr. Salzman stated that he just proceeded on the

12   assumption that if Mr. Nally's deposition wasn't concluded

13   by the time he had noticed Ms. Shea's deposition he would

14   simply at the last minute adjourn that, tell Ms. Shea to go

15   back to her office and reschedule it for another time.  That

16   was, that was -- that's something that either of us would

17   ever do.  Was never discussed.  We never have been agreed

18   upon.  It would not have been acceptable.

19         I also note that there wasn't any days left at

20   that point to reschedule.  But the notion that he noticed

21   the deposition and see whether or not he was finished with

22   the one before that started, I can't accept that.  And it's

23   not reflected anywhere.

24         THE COURT:  Thank you.

25         MR. NELSON:  Mr. Salzman -- one other point, your

**12/5/2006  Magistrate Robinson Status Conference**

1    Honor, I'm sorry.

2              THE COURT:  That's all right.  You may continue.

3              MR. NELSON:  Mr. Salzman referred to an e-mail.  I

4    didn't catch the date stating all depositions would be

5    starting at 10:00 a.m.  And then read from a schedule on

6    that e-mail.  I would just note that the depositions

7    reflected in that e-mail included both Shea and Ms. Nebe

8    both on the same day, so they obviously weren't both going

9    to start at ten.

10             I like Mr. Salzman had forgotten that there was a

11   second notice of deposition that was served to Mr. Nally,

12   but note that Mr. Salzman stated that the notice to that

13   deposition was for 1:00 p.m. on November 6th, which is in

14   the afternoon of that day.  And finally, your Honor,

15   Mr. Salzman states that our practice was to confirm

16   agreements.  And as I mentioned earlier, there is written

17   e-mail confirmation of the agreements adjourning Mr. Nally's

18   deposition till afternoons, that that was confirmed the same

19   way other things were confirmed.

20             And was there no need to confirm anything in

21   response to formal notices that were initially served for

22   the depositions to occur on the same day.  Thank you, your

23   Honor.

24             THE COURT:  Thank you, Mr. Nelson.

25             MR. SALZMAN:  Your Honor, may I make two very

1    quick responses, this is Richard Salzman, just to clarify

2    some of the documents that are not in front of you?

3           THE COURT:  I don't believe that's necessary,

4    Mr. Salzman.  Thank you.

5           The court has listened extensively to the proffers

6    and arguments of counsel regarding the issue of whether or

7    not the parties reached an agreement to limit the duration

8    of the deposition of Mr. Nally.  The court heard preliminary

9    arguments on the record yesterday, arguments off the record

10   during a telephone conference earlier today and the

11   arguments that you have made this afternoon, which included

12   the arguments that you made off the record earlier today as

13   well as some additional arguments.

14           I have also reviewed the written material that the

15   court reviewed in preparation for the hearing yesterday as

16   well as the two, the copies of the notices of deposition

17   which were served on September 15th and September 18th.  I

18   have also heard the recitation of one additional notice of

19   deposition.  And in reaching my finding have accepted as

20   true everything that all of you have said regarding the

21   materials that you read as a part of this hearing.

22           Having done so, the court finds that the defendant

23   has not offered any evidence of any agreement between the

24   parties to limit the duration of the deposition of

25   Mr. Nally.  The court finds that the agreements that the

1    parties did reach prior to today were with respect to the

2    date and time the deposition of Mr. Nally would commence.

3         The court has very carefully considered the

4    contention of defendant's counsel that the deposition of

5    Mr. Nally was quote "noticed for a half day," closed quote.

6    The court finds however that no such language appears in the

7    notices of deposition.  And there is no document, e-mail or

8    otherwise which reflects that the deposition was quote

9    "noticed for a half day."

10         The court is mindful of the observation of

11    defendant's counsel that the scheduling of the deposition

12    suggests that plaintiff intended or plaintiffs intended to

13    limit the questioning to a period of time consistent with

14    one half or so of the seven hours, of the seven hour

15    presumptive limit.  However, the court has also taken into

16    account the language of the notices which indicates as all

17    of you recognize, that the deposition would continue

18    day-to-day until it was concluded.

19         Therefore, the court cannot infer from the fact

20    that a deposition was scheduled for one part of the day

21    while another deposition was scheduled for another part of

22    the day means that the deposition, means that the parties

23    agreed that the deposition would conclude during that

24    period.  The notices of depositions state something else.

25    And there is simply no writing that has been produced or

1    indeed any reference to a conversation that has been made

2    that suggested that there was any agreement.

3            Counsel for Plaintiff Murphy has acknowledged that

4    at various points he indicated that his hope or indicated in

5    conversations with defendant's counsel that his hope was to

6    conclude the deposition of Mr. Nally in less than a full

7    day.  However, the court cannot find that plaintiff's

8    counsel's hope or expectation is tantamount to an agreement

9    that the deposition would be limited to some period that is

10   less than a full day.

11           Finally, the court has noted that the very, very

12   extensive e-mail correspondence between counsel much of

13   which is included as exhibits to the motion for protective

14   order and the opposition to the motion suggests that had

15   there been an agreement one or the other counsel most

16   certainly would have referred to it in the extensive e-mail

17   exchanges since every other agreement was the subject of or

18   it appears to the court based on what you have submitted

19   that since every other agreement or accommodation was

20   referred to in these e-mails that certainly an agreement to

21   limit the deposition of Mr. Nally would have been included

22   in those exchanges.

23           For all of these reasons the court finds that

24   there was no agreement between parties.  There is no

25   agreement between the parties to limit the duration of the

1    deposition.  The court noted yesterday that the strictures

2    of Rule 26.2(c) indicate that the duration of the deposition

3    might be limited with the agreement of the parties or by

4    order of the court.  The court has been presented with no

5    request to limit the duration for any reason other than the

6    fact that there was an agreement.  Having found that there

7    was no agreement the court's ruling is that the duration of

8    the deposition will not be limited other than by the

9    presumptive limit embodied in the applicable federal and

10   local rules.

11           These findings are the order of the court with

12   respect to this issue and there will be no written order.

13   If you believe that you require the transcript for purposes

14   of further review of this narrow issue once we adjourn you

15   will be free to speak with the court reporter, who I will

16   ask to please remain long enough to ensure that you know how

17   to contact her should you require the transcript.

18           Finally, the court ordered yesterday that you

19   endeavor to agree upon a date and time for the deposition of

20   Mr. Nally.  Indeed, the court ordered you to do so before

21   you left the courtroom yesterday at a little bit after 12

22   noon.  When the court became aware at that time that there

23   was an issue regarding the duration of the deposition, I

24   extended the time until 5:00 p.m. yesterday and then

25   extended it until 5:00 p.m. today.  It is now approximately

**12/5/2006  Magistrate Robinson Status Conference**

1    2:30 p.m.  I urge you to remain in touch with each other so

2    that you can discuss your schedules.  And that by 5:30 today

3    you will agree upon a date and time for the deposition of

4    Mr. Nally.

5          If you are unable to agree then the court assumes

6    that plaintiffs will file a notice of deposition in

7    accordance with the applicable federal and local rules and

8    that that will be accomplished.  That is, that the notice

9    will be served prior to the time that you appear before

10   Judge Leon for the status hearing on Friday.  Is there

11   anything further with respect to discovery in this matter

12   this afternoon?  Mr. Salzman, Ms. Kramer, anything further

13   on behalf of Mr. Murphy?

14         MR. SALZMAN:  No, Your Honor.

15         THE COURT:  Mr. Rose, anything further on behalf

16   of Mr. Schuler?

17         MR. ROSE:  We have a discussion with the defendant

18   your Honor, but it's not appropriate, nothing has occurred

19   yet that warrants any motion to you or action on your part.

20         THE COURT:  Very well.  Thank you, Mr. Rose.

21   Mr. Nelson, is there anything further in this matter this

22   afternoon?

23         MR. NELSON:  This is Mr. Nelson.  No, your Honor,

24   not this afternoon.  I would just like -- I appreciate your

25   Honor allowing us to make a record today.  I would just like

**12/5/2006 Magistrate Robinson Status Conference**

1    the record to reflect if it doesn't already PWC's objection

2    to being deprived of its right to submit written reply to

3    the protective order motion.  I just, may be clear but I

4    just wanted the order to reflect that we would serve just so

5    your Honor is aware late today or Friday.  We have the

6    hearing Monday morning.

7        THE COURT:  Well the court addressed this matter

8    on the record yesterday but I will note again that the court

9    like you found itself limited, found itself under

10   significant time constraints to prepare for the hearing.

11   While it is not desirable that counsel take a weekend to

12   prepare a reply, I don't believe the review of the calendar

13   would suggest that the defendant was precluded from filing

14   one.  One could have been prepared and filed over the

15   weekend.  And I say that not suggesting that that is

16   desirable but that it is not impossible.  So the court finds

17   that there's no basis to conclude that PWC was deprived of

18   the opportunity to file a written reply.

19       In any event, the court allowed you and other

20   counsel all the time that you needed yesterday to reply and

21   respond and reply again orally on the record with respect to

22   the motion.  So while it is true that no written reply was

23   filed I have already found that there is no reason that one

24   could not have been filed, but more importantly, PWC had

25   every opportunity to reply orally on the record.

28

1          Finally, the court noted yesterday that the

2    matters that you indicated you would address in a reply if

3    you had the opportunity were matters that should have been

4    addressed in the motion in the first instance since PWC as

5    the moving party had the burden of demonstrating good cause

6    for the request.  And the court determined that the time to

7    do that is of course at the time the motion is filed.

8          MR. SALZMAN:  Your Honor, just since, this is

9    Mr. Salzman.  Since we are putting this on the record for

10   plaintiff, Mr. Murphy, I would just like to note that

11   because I think the record indicates that we first

12   identified Mr. Nally as a deponent someone that we wished to

13   depose back in May of this year.  And PWC -- and we had

14   discussions about filing protective orders really all

15   throughout that e-mail exchange.

16         PWC did not file its motion for protective order

17   until I believe just before Thanksgiving, your Honor, which

18   is what caused sort of the abbreviated schedule.  If PWC had

19   filed the motion for protective order at any point earlier

20   than that I don't believe there would have been any issue

21   with respect to the reply brief.

22         THE COURT:  Thank you, Mr. Salzman.  The record

23   should also be clear that the urgency of scheduling the

24   hearing for yesterday and indeed for proceeding this

25   afternoon is that the assigned district judge scheduled a

**12/5/2006 Magistrate Robinson Status Conference**

1   status hearing for December 8th.  It is indeed an apt

2   observation that since the motion was not filed until the

3   eve of the hearing the court had little alternative but to

4   consider it on an expedited basis.

5           It would therefore seem unfounded that any

6   inconvenience associated with the expedited consideration

7   would be laid at the feet of any other participant in this

8   process.

9           MR. NELSON:  Your Honor, Mr. Nelson, if I may?

10          THE COURT:  You may.

11          MR. NELSON:  I understand that the practice in

12  this court, and I guess I'm asking the question what your

13  Honor's practice is, is to stay discovery as to which a

14  party is seeking review of a magistrate judge's order by the

15  district judge.  We haven't made any determination as to

16  whether we wish to ask Judge Leon to review your order of

17  yesterday and your order of today.  Indeed, we haven't

18  gotten the transcript.  We will order it expedited, both

19  transcripts.  And we haven't had a chance to even confer

20  with our clients given the timing of all this.

21          My question is, if we determine we wish to have

22  Judge Leon review any of this do we have to come back to you

23  for a stay, to your Honor I should say?

24          THE COURT:  I will suggest that counsel consult

25  the local rules for the applicable procedures.  I will note

1    that there is no motion for a stay pending at this time.

2    And I will also note that this court does not intend to

3    consider an oral motion to stay.  When I say "to stay," I

4    mean the order entered yesterday denying the motion for

5    protective order and the effect of the ruling today finding

6    that there is no agreement between the parties to limit the

7    duration of the deposition.  There is no motion pending, no

8    motion to stay those rulings and I do not intend to rule on

9    an oral motion.

10           MR. NELSON:  I'm making no such motion, your

11   Honor.  My question was merely procedural.  I indicated that

12   we needed to consider the orders with our client.  And we

13   haven't had an opportunity to do that yet.  We don't have a

14   transcript yet.  I was not asking and I was not making an

15   oral motion.

16           THE COURT:  Very well.  I will suggest that you

17   comply with the local rules.  Thank you very much, counsel.

18   We will recess at this time.  And if Ms. Jones is able to

19   accommodate you she will remain so that if you need her

20   contact information you can obtain it.

21           MR. NELSON:  Yes, I would like that.  Thank you,

22   Your Honor.

23           MR. SALZMAN:  Thank you, your Honor.

24           [Thereupon, the proceedings adjourned at 2:40

25           p.m.]

```
1                         CERTIFICATE

2            I, Cathryn J. Jones, an Official Court Reporter

3    for the United States District Court of the District of

4    Columbia, do hereby certify that I reported, by machine

5    shorthand, the proceedings had and testimony adduced in the

6    above case.

7            I further certify that the foregoing 31 pages

8    constitute the official transcript of said proceedings as

9    transcribed from my machine shorthand notes.

10           In witness whereof, I have hereto subscribed my

11   name, this the 11th day of December, 2006.

12

13

14

15

16                          _____

                            Cathryn J. Jones, RPR

17                          Official Court Reporter

18

19

20

21

22

23

24

25
```