# **EXHIBIT E**

Case 1:05-cv-01054-RJL    Document 57-9    Filed 12/22/2006    Page 1 of 8

2006 WL 1780930 (D.D.C.)                                                                                   Page 1
**(Cite as: 2006 WL 1780930)**

United States District Court, District of Columbia.
INTEX RECREATION CORP., Plaintiff/Counterclaim-Defendant,
v.
TEAM WORLDWIDE CORPORATION, Defendant/Counterclaim-Plaintiff.
No. 1:04 CV 01785 PLF/DAR.
104CV01785PLFDARMay 15, 2006.

Defendant Team Worldwide Corporation's Opposition to Plaintiff Intex Recreation Corp.'s Emergency Motion for a Protective Order (Redacted)

Linda Liu Kordziel, D.C. Bar No. 446386, Fish & Richardson P.C., 1425 K Street, N.W., 11th Floor, Washington, DC 20005, Telephone: 202-783-5070, Facsimile: 202-783-2331, Kurt L. Glitzenstein, Laura R. Braden, Michael. S. Forman, Fish & Richardson P.C., 225 Franklin Street, Boston, MA 02110, Telephone: 617-542-5070, Facsimile: 617-542-8906, Counsel for Defendant, TWW Corporation.

Defendant Team Worldwide Corporation ("TWW") hereby opposes the emergency motion of Plaintiff Intex Recreation Corp. ("IRC") for a protective order prohibiting the deposition of the president of IRC, Mr. Tien Zee.

**I. Introduction And Summary Of Argument**

IRC's motion seeks to prohibit TWW from taking the deposition of IRC's president, Mr. Tien Zee. IRC's request is for a form of relief that is highly disfavored in this District. IRC's motion should be denied for the simple reason that it offers virtually no *evidence* showing that Mr. Zee should be exempt from a deposition. IRC cannot carry its heavy burden on this motion solely though attorney argument. Moreover, contrary to IRC's attorney argument, the record developed to date in this case shows that Mr. Zee is likely to have unique knowledge of multiple issues relevant to this litigation, issues on which TWW has not been able to obtain discovery through other sources.

**II. Background**

This case concerns TWW's U.S. Patent No. 6,793,469 ("the '469 patent"). Shortly after the '469 patent issued on September 21, 2004, TWW's counsel sent a letter to Mr. Zee informing him of the issuance of the patent, and stating TWW's belief that certain IRC products would infringe the patent if made, used, imported, offered or sold in the United States. (Ex. 1, October 8, 2004 letter from Mr. Quintero to Mr. Zee.) IRC used this letter to Mr. Zee as a basis to file the present declaratory judgment action against TWW and its '469 patent. TWW counterclaimed, alleging that IRC infringes and willfully infringes the '469 patent.

IRC is not a big company. IRC employs only about 100 people, mostly at a single location in Southern California. (Ex. 2, D&B Business Information Report on IRC.) Discovery to date has shown that Mr. Zee is extensively involved in the management and administration of IRC.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED**

He is apparently the only person at IRC with the authority to stop shipment of the accused products in this case. (Ex. 11 to the Kiddé Decl.,[FN1] 129:8-15; Ex. 5, IRC Deposition Tr.,142:25-143:4.) In short, discovery has shown that he is a hands-on executive deeply involved in running his small company.

> FN1. "Kiddé' Decl." refers to the Declaration of Thomas S. Kiddé in Support of Plaintiff Intex Recreation Corp.'s Emergency Motion for a Protective Order.

### III. Argument

#### A. Prohibiting a Deposition is Extraordinary Relief that is Highly Disfavored

The relief sought by IRC--to prohibit the deposition of Mr. Zee--is highly disfavored in this District. *See Kuwait Airways Corp. v. American Security Bank, N.A., et al., 1987 WL 11994, at *2 (D.D.C. March 26, 1987)* ("In light of the general philosophy favoring full discovery of relevant facts, it is difficult to show sufficient grounds to prohibit the taking of a deposition. Courts deny most requests of this kind."); *see also Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)* ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."), *quoted in Taylor v. National Consumer Cooperative Bank, 1996 WL 525322, at *1 (D.D.C. Sept. 10, 1996)* (denying a motion for a protective order prohibiting the deposition of defendant's president and CEO). A deposition should be permitted if the individual sought to be deposed may have information relevant to the issues in the case. *Fisher v. Goord, 184 F.R.D. 45, 46 (W.D.N.Y. 1999)* ("It is basic that federal law permits discovery of information relevant to claims and defenses and that such discovery includes the taking of oral deposition.").

The cases that IRC cites from this District are not to the contrary. Each of those cases involved requests to depose one or more high-ranking officials of a *government agency*. As stated in *Community Federal Savings and Loan Ass'n v. Federal Home Loan Bank Board, 96 F.R.D. 619, 621 (D.D.C. 1983)*, cited at pages 4-5 of IRC's memorandum, there is a public policy against deposing high-ranking government agency officials: "The reasons for the *Morgan* policy are obvious. Not only must the integrity of the administrative process be protected, but public policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Id*. This policy concern was echoed in *Low v. Whitman, 207 F.R.D. 9 (D.D.C. 2002)*.[FN2] Because this matter does not involve high-ranking government officials, the cases that IRC cites are not applicable.

> FN2. The third case from this District cited by IRC is *Johnson v. Chao, 2005 WL 1492378 (D.D.C. June 23, 2005)*. This case also involved an effort to depose a high-level official at a federal government agency. The court did not resolve that issue, but instead instructed the parties to discuss the issue further.

#### B. IRC Has Provided Virtually No Evidence Showing That Mr. Zee Lacks Unique Knowledge Relevant to the Litigation

ERC bears the burden of showing good cause for prohibiting the deposition of Mr. Zee. *Kuwait Airways Corp., 1987 WL 11994, at * 2*. This burden is a heavy one. IRC's motion should be denied because it has failed to point to any *evidence* supporting its allegations about what Mr. Zee knows, and what he does not know. IRC's motion is based almost entirely on attorney argument. ERC has not even offered a declaration from Mr. Zee, even though a party seeking a protective order prohibiting a deposition "typically provides an affidavit from the person who seeks to avoid being deposed[.]" *General Star Indemnity Co. v. Platinum Indemnity Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002)*.[FN3]

> FN3. In another patent infringement lawsuit involving some of the same products at issue in this case, IRC likewise objected to the deposition of Mr. Zee. (Ex. 6, Acre's Reply in Support of its Motion to Compel Deposition Testimony.) That effort failed, including because IRC did not offer a declaration from Mr. Zee attesting to his alleged lack of knowledge. (Ex. 7, Minute Order Granting Aero's Motion to Compel Deposition Testimony.)

### C. Even If Taken At Face Value, IRC's Attorney Argument Does Not Support Prohibiting Mr. Zee's Deposition

ERC's attorney argument in support of its motion falls into three categories: (1) the allegation that TWW has already examined ERC's Rule 30(b)(6) corporate designees as to "the issues pertinent to this action" (ERC Mem., at 7); (2) the allegation that TWW has "blanketed IRC with discovery requests as to all of the pertinent issues in this action" (*Id*. at 8); and (3) the allegation that Mr. Zee "has no unique knowledge of the products at issue ... [or] of this litigation" (*Id*. at 8-9).

As discussed in the following section, TWW disputes these assertions. However, none of these bases warrants the extraordinary remedy of preclusion. Neither an alleged lack of knowledge nor "the mere possibility of repetition of testimony" is sufficient to justify the protective order IRC seeks. *Kuwait Airways Corp., 1987 WL 11994, at * 2*.

The cases cited in IRC's brief do not support its position. Of the cases IRC cites from other Districts, two held that the party seeking to avoid having a high ranking official deposed had not met its "heavy burden" of showing why the depositions should not go forward and ordered the depositions to proceed. *Blankenship v. Hearst Corp. et al., 519 F.2d 418, 429 (9th Cir. 1975)* (overruling district court's order); *CBS, Inc. v. Ahern, et al., 102 F.R.D. 820, 822 (S.D.N.Y. 1984)*. Most of the cases in which the depositions of a high-ranking official were denied either involved senior executives of much larger companies than IRC,[FN4] and/or were decided at least in part based on procedural deficiencies in the deposition notices.[FN5]

> FN4. See *Mulvey v. Chrysler Corp., et al., 106 F.R.D. 364 (D.R.I. 1985)* (denying motion to depose Lee Iococca, chairman of the board of Chrysler Corp., without prejudice to a subsequent deposition if answers to interrogatories warranted); *Baine v. General Motors Corp., 141 F.R.D. 332, 335 (M.D. Ala. 1991)* (vacating notice of deposition to the top executive of GM's Buick Division without prejudice to plaintiffs' right to take it after pursuing al-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ternative discovery devices); *Consolidated Rail Corp. v. Primary Industries Corp., 1993 WL 364471 (S.D.N.Y. Sept. 10. 1993)* (deferring depositions of three highly ranking Conrail executives); *Patterson v. Avery Dennison Corp., 281 F.3d 676, 681-82 (7th Cir. 2002)*(upholding district court's refusal to compel deposition of high-ranking executive of Avery Dennison).

FN5. *See Harris vs. Computer Associates Int'l, Inc., 204 F.R.D. 44 (E.D.N.Y. 2001)* (plaintiff failed to move to compel deposition until after the close of discovery); *Salter v. Upjohn Co., 593 F.2d 649 (5th Cir. 1979)* (following indication from trial judge that deposition would be allowed if other testimony was unsatisfactory, plaintiff never again properly gave notice of the deposition); *Thomas v. IBM, 48 F.3d 478 (10th Cir. 1995)* (deposition notice violated local rules). IRC's final case, *M.A. Porazzi Co. v. The Mormaclark et al., 16 F.R.D. 383 (S.D.N.Y. 1951)*, is a two-page decision under maritime law that provides limited explanation for the rationale underlying the decision, which contemplates that the deposition of the vice-president in question might proceed at a later point in time.

### D. Discovery to Date Shows That Mr. Zee May Be Able To Offer Testimony Relevant To The Issues In This Case

Discovery obtained to date plainly shows--notwithstanding IRC's repeated assertions that Mr. Zee is ignorant of all issues germane to this lawsuit--that Mr. Zee is in fact likely to have discoverable knowledge of a variety of issues relevant to this lawsuit. The following subjects are illustrative of the deep and broad connections that Mr. Zee appears to have to the issues in this case.

#### 1. Willful Infringement

TWW alleges that IRC has infringed claims of TWW's patent, and that this infringement is and continues to be in willful disregard of IRC's patent rights. Courts consider the willfulness of a party's infringement in deciding whether a prevailing patentee is entitled to enhanced damages. The willfulness inquiry centers on whether the accused infringer deliberately disregarded the patentee's rights. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp., 383 F.3d 1337, 1342-43 (Fed. Cir. 2004)* (en banc). "Whether infringement is 'willful' is by definition a question of the infringer's intent." *Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992)*. Once an infringer has notice of the patentee's rights, the infringer has an affirmative duty to exercise due care to avoid infringement. *nCube Corp. v. Seachange Int'l, Inc., 436 F.3d 1317, 1324 (Fed. Cir. 2006)*. Failure to fulfill that duty shows willful infringement.

Mr. Zee is apparently the only person at IRC with the authority to halt sales of IRC's products that are accused of infringement. (Ex. 11 to Kiddé Decl., 129:8-22.) As such, his reason, if any, for his decision to keep selling these products in the face of TWW's patent rights is highly probative of IRC's willful infringement. *See Kloster Speedsteel AB v. Crucible, Inc., 793 F.2d 1565, 1580 n. 11 (Fed. Cir. 1986)* ("An alleged infringer who intentionally blinds himself to the facts and law, continues to infringe, and employs the judicial process with no solidly-based expecta-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion of success, can hardly be surprised when his infringement is found to have been willful."). Indeed, IRC's assertion on this motion that Mr. Zee is wholly ignorant of the issues in this lawsuit is in and of itself relevant to willful infringement, and TWW is thus entitled to explore that professed lack of knowledge.[FN6] *Kuwait Airways Corp.*, 1987 WL 11994, at *2 ("The reason why alleged lack of knowledge is not a sufficient ground to prevent a deposition is obvious. The very purpose of deposition discovery is to test the extent of the deponent's knowledge and claims of ignorance.").

> FN6. IRC's most recent response to TWW's interrogatory directed to the issue of "Intex's first knowledge of the '469 patent and the steps, if any, Intex contends it has taken to investigate or analyze its liability or potential liability for infringement of the '469 patent" states that another officer of IRC, Mr. Smith, received oral advice from IRC's litigation counsel that its products did not infringe the '469 patent. (Ex. 8, IRC's May 11, 2006 Fourth Supplemental Response to First Set of Interrogatories, p. 6). There is no evidence that Mr. Smith has authority to decide whether or not to continue sales of the products accused of infringement, and IRC's response is silent on the subject of whether the advice Mr. Smith received was communicated to Mr. Zee.

As IRC correctly notes, TWW did attempt to depose IRC on "Intex's first knowledge of the '469 patent and the steps, if any, Intex contends it has taken to investigate or analyze its liability or potential liability for infringement of the '469 patent." IRC's 30(b)(6) representatives' knowledge on this high-level topic can hardly substitute for that of the president of the company. *See Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 146 (D. Mass. 1987) (noting that high-ranking executives often have more information on why a particular plan was formulated or administered in a particular way; "[a]nd as the ultimate authority, their views as to why may be of far greater probative value on the issue of intent and motive than the views of the lower-level executives.") Moreover, IRC's corporate designee on this topic, Ms. Bashore, was unprepared to speak to this issue. (Ex. 5, IRC Deposition Tr., 113:11-114:12)

### 2. Design, Development, And Manufacture of the Accused Products

It also appears that Mr. Zee can provide relevant testimony regarding the design, development, and manufacture of the products accused of infringement in this case. In particular, Mr. Zee appears to be uniquely situated to provide testimony regarding IRC's obtaining of the accused products from its manufacturer, and pricing and selling them in the U.S. These issues, which reflect the value IRC places on the accused products, are highly relevant to infringement, willful infringement, and damages. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970).

TWW has obtained very little written discovery from IRC on this subject. For example, in response to TWW's interrogatory asking that IRC "describe in detail the

development and commercialization" of the accused products, IRC has disclaimed knowledge of the design of the products. (Ex. 8, IRC's May 11, 2006 Fourth Supplemental Response to First Set of Interrogatories, p. 5) ("Intex did not design the accused products, or any process for their manufacture"). IRC provided no information about the products' development other than the name of the factory from which they are purchased. (*Id*.)

IRC's 30(b)(6) the corporate representative on "the structure, function, operation, development, motivation for development, demand, marketing, and commercialization of all inflatable air mattresses that include, or can be used with, a built-in air inflation and/or deflation pump," had little in the way of relevant knowledge.

IRC cannot dispute the relevance of this information. Its own initial disclosures in this case acknowledged that people at IRC's manufacturing facility in China (where the products are designed, developed, and manufactured) may have relevant information about the accused products: "IRC does not manufacture the products at issue and such are manufactured in the People's Republic of China. There may be individuals at the manufacturing facility who may have information relevant to issues in this action ..." (Ex. 9, IRC's Initial Disclosure Statement.) Mr. Zee is believed to play a role in the Chinese factory. (Ex. 12 to the Kiddé, 36:11-15.)

As with Mr. Zee's testimony related to willfulness issues, Mr. Zee's testimony on IRC's motive in selling the accused products is likely to be more probative than the testimony of less highly ranked executives. *Travelers Rental Co*. 116 F.R.D. at 146.

### 3. Pricing of the Accused Products

It is also likely that Mr. Zee has relevant information regarding IRC's pricing of the accused products. Pricing information may be relevant to damages issues in this case, and TWW has been unable to obtain all of it from other sources.

Mr. Zee appears to have direct control over the pricing of IRC's products.

TWW subsequently served an interrogatory regarding the FOB price, including how it is established. IRC responded by claiming that it does not know the answer: "[T]he FOB price for the inflatable air mattress products is established by Intex Development [the trading company] and INTEX is advised of that price. INTEX is not advised of the manner in which the FOB price is set by Intex Development." (Ex. 14, IRC's Responses to TWW's Third Set of Interrogatories, p. 5.)

Not only is this response hard to believe, but Mr. Zee is likely to know the answer as to how his company's most substantial cost component is determined. Mr. Zee, in addition to being the president of IRC, has a "director or manager" role with Intex Development Company Limited. (Ex. 12 to the Kiddé Decl., 36:3-10.) Given his direct oversight of pricing of IRC's products and his role with IRC's trading company, Mr. Zee is highly likely to have relevant knowledge regarding the setting of the FOB price, information that TWW has been unable to obtain from other sources. Mr. Zee's testimony on these issues is important for TWW and its experts to consider in assessing the damages to which TWW is entitled.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IV. Conclusion

For the foregoing reasons, TWW respectfully requests that the Court deny IRC's motion for a protective order prohibiting the deposition of Mr. Zee.

Dated: May 15, 2006

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.