# Exhibit C

# PRICEWATERHOUSECOOPERS LLP

## PARTNERS and PRINCIPALS AGREEMENT
### As in effect April 1, 2001



## TABLE OF CONTENTS

| ARTICLE | | | Page |
|---|---|---|---|
| I | DEFINITIONS | | 1 |
| II | PRACTICE | | 3 |
| | Section 2.1. | Firm Name | 3 |
| | Section 2.2. | Practice | 3 |
| | Section 2.3. | Limitation on Authority | 4 |
| | Section 2.4. | International Arrangements | 4 |
| III | TERM | | 4 |
| | Section 3.1. | Continuation | 4 |
| | Section 3.2. | No Dissolution | 4 |
| IV | AUTHORITY OF PARTNERS AND PRINCIPALS | | 5 |
| | Section 4.1. | Authority of Partners and Principals | 5 |
| | Section 4.2. | Action by Partners and Principals | 5 |
| V | BOARD OF PARTNERS AND PRINCIPALS | | 7 |
| | Section 5.1. | Composition of Board of Partners and Principals | 7 |
| | Section 5.2. | Term of Office and Number of Members-at-large | 7 |
| | Section 5.3. | Election of Members-at-large; Vacancies | 7 |
| | Section 5.4. | Removal of Members of the Board of Partners and Principals | 9 |
| | Section 5.5. | Representation on Board of Partners and Principals | 9 |
| | Section 5.6. | Authority of Board of Partners and Principals | 9 |
| | Section 5.7. | Action by Board of Partners and Principals | 11 |
| | Section 5.8. | Votes of Board of Partners and Principals on Accountancy Matters | 12 |
| | Section 5.9. | Committees of Board of Partners and Principals | 12 |
| | Section 5.10. | Lead Director | 13 |
| VI | OFFICERS OF THE FIRM | | 14 |
| | Section 6.1. | Authority of Senior Partner | 14 |
| | Section 6.2. | Election of Senior Partner | 14 |
| VII | ACCOUNTS | | 16 |
| | Section 7.1. | Finality | 16 |

NY P&PA as of 4 1 2001.doc i

ii

VIII  PARTICIPATION ....................................................................................16
    Section 8.1.    Participation...............................................................16
    Section 8.2.    Liability of Individuals ...............................................16
    Section 8.3.    Termination of Participation ......................................17

IX    CAPITAL.........................................................................................17
    Section 9.1.    Capital Requirement ..................................................17
    Section 9.2.    Capital Withholding ...................................................17
    Section 9.3.    Capital Accounts.........................................................17
    Section 9.4.    Rate of Return.............................................................17
    Section 9.5.    Repayment ...................................................................17
    Section 9.6.    Capital Financing........................................................17

X     RETIREMENT .................................................................................18
    Section 10.1.   Retirement...................................................................18
    Section 10.2.   Early Retirement .........................................................18
    Section 10.3.   Conduct After Retirement ..........................................18

XI    WITHDRAWAL ...............................................................................19
    Section 11.1.   Election by Individual ................................................19
    Section 11.2.   Required Withdrawal...................................................19
    Section 11.3.   Withdrawal for Cause..................................................20
    Section 11.4.   Inapplicability of Section 11.2 For a Limited Period. ...................20
    Section 11.5.   Conduct After Withdrawal .........................................21

XII   CLAIMS OR CONTROVERSIES ....................................................22
    Section 12.1.   General ........................................................................22
    Section 12.2.   Payments......................................................................23

XIII  GENERAL PROVISIONS .................................................................23
    Section 13.1.   Interest of an Individual..............................................23
    Section 13.2.   Indemnification...........................................................23
    Section 13.3.   Obligations to Be Just and Faithful ...........................23
    Section 13.4.   Severability; Waivers; Right of Set-Off; Records ................24
    Section 13.5.   Confidentiality ...........................................................24
    Section 13.6.   Counterparts................................................................24
    Section 13.7.   Execution.....................................................................24
    Section 13.8.   Governing Law ............................................................24
    Section 13.9.   Notice...........................................................................25
    Section 13.10.  Inurement ....................................................................25
    Section 13.11.  Section Headings ........................................................25
    Section 13.12.  Amendment .................................................................25

Confidential          PwC00003

## PRICEWATERHOUSECOOPERS LLP

### PARTNERS and PRINCIPALS AGREEMENT
as of April 1, 2001

## WITNESSETH:

WHEREAS, the Partners and Principals of the Firm have declared that this Partners and Principals Agreement is the amended and restated Partners and Principals Agreement of PricewaterhouseCoopers LLP; and

WHEREAS, the parties hereto recognize that the provisions hereof are equitable and necessary to the preservation and continuance of the Firm; and

WHEREAS, any word herein connoting gender shall be deemed to be of the gender applicable to the specific person concerned;

NOW, THEREFORE, it is hereby agreed as follows:

### ARTICLE I

#### DEFINITIONS

*"Agreement"* shall mean this Partners and Principals Agreement as amended from time to time.

*"Associated"* or *"association"* shall mean being a Partner or a Principal.

*"Designated Member of Management"* shall mean: (i) the Senior Partner; (ii) an Individual reporting directly to the Senior Partner; (iii) the Governance Entity Chief Executive Officer; and (iv) any other person holding a management position in the Firm or with the Governance Entity determined from time to time by the Board of Partners and Principals to make its holder ineligible to serve on the Board of Partners and Principals.

*"Early Retirement Age"* shall mean such age as shall be designated from time to time by the Board of Partners and Principals as the minimum age at which an Individual may take early retirement.

*"Firm"* shall mean the registered limited liability partnership of PricewaterhouseCoopers LLP that is organized and existing under an agreement governed by the laws of the State of Delaware.

*"Fiscal Year"* shall mean the fiscal year of the Firm which shall commence on July 1 and end on June 30 or on such other dates as may be determined from time to time by the Board of Partners and Principals.

*"Former Individual"* shall mean a person who was at any time a Partner or Principal.

*"Global Oversight Board"* shall mean the Board of the Governance Entity.

NY P&PA as of 4 1 2001.doc i

*"Governance Entity"* shall mean PricewaterhouseCoopers International Limited, an English private company limited by guarantee, and its successors.

*"Governance Entity Chairman"* shall mean the Board Chairman of the Global Oversight Board (or the person holding a successor office with similar authority).

*"Governance Entity Chief Executive Officer"* shall mean the Chief Executive Officer of the Governance Entity (or the person holding a successor office with similar authority).

*"Individual"* shall mean a person who is either a Partner or a Principal.

*"International Arrangements"* shall mean the Organizational Documents and the other agreements and other arrangements entered into by the Firm and the other Member Firms of the Governance Entity in respect of the enhanced international integration arrangements in which they participate.

*"Lead Director"* shall mean the Member-at-large elected to such position.

*"Members-at-large"* shall mean all the members of the Board of Partners and Principals other than the Senior Partner.

*"Net Deficit"* shall mean the loss of the Firm for its Fiscal Year or any portion thereof as approved by the Board of Partners and Principals.

*"Net Profit"* shall mean the profit of the Firm for its Fiscal Year or any portion thereof as approved by the Board of Partners and Principals.

*"Normal Retirement"* or *"Normal Retirement Date"* shall mean the end of the Fiscal Year in which an Individual attains age 60.

*"Organizational Documents"* shall mean the Regulations, Accession Agreement, Memorandum of Association, Articles of Association and other similar and successor instruments of the Governance Entity, as in effect from time to time.

*"Partners"* shall mean the persons designated as partners of the Firm, plus such additional persons as may be admitted as partners of the Firm, but excluding such present or future partners as may retire, withdraw or die.

*"Predecessor Firm"* shall mean Coopers & Lybrand L.L.P. (formerly Coopers & Lybrand and prior thereto Lybrand, Ross Bros. & Montgomery) and/or (as the context shall require) Price Waterhouse LLP (formerly Price Waterhouse).

*"Principals"* shall mean the persons designated as principals of the Firm, plus such additional persons as may be admitted as principals of the Firm, but excluding such present or future principals as may retire, withdraw or die.

*"Retired Persons"* shall mean those persons who were, immediately prior to their retirement, Partners or Principals, but excluding such present or future Retired Persons as may die or have their benefits terminated. A Retired Person is not a Partner, Principal or employee of the Firm.

NY P&PA as of 4 1 2001.doc i
Revised P&PA

Confidential                    PwC00005

*"Senior Partner"* shall mean the Individual elected to such position.

*"Shares or Share Equivalents"* shall mean the units or other measure determined pursuant to policies approved by the Board of Partners and Principals to reasonably represent the economic interest of Individuals in the Firm for purposes of votes under this Agreement where economic interest is relevant.

*"Specified Individuals"* shall mean C&L Individuals and PW Individuals (as defined in Addendum No. 1 to the Partners and Principals Agreement dated as of July 1, 1998) whose admission to Price Waterhouse LLP or Coopers & Lybrand L.L.P. occurred on or prior to November 1, 1997.

*"Three-Fourths of the Partners and Principals"* shall mean (i) three-fourths of the Partners and Principals who shall vote on a matter and (ii) Partners and Principals to whom have been allocated three-fourths of the Shares or Share Equivalents allocated to all Partners and Principals who shall vote on the matter; provided, however, that the Partners and Principals who shall vote or shall deliver ballots relating to such matter shall constitute at least (x) a majority of the Partners and Principals and (y) Partners and Principals to whom have been allocated a majority of the total number of Shares or Share Equivalents allocated to all Partners and Principals.

*"Withdraw"*, *"withdrawal"* or *"withdrawn"* shall mean the dissociation of an Individual from the Firm other than by retirement or death.

*"Withdrawal Date"* shall mean the effective date of an Individual's withdrawal from the Firm.

## ARTICLE II

### PRACTICE

Section 2.1.    *Firm Name.* The parties hereto shall be associated under the Firm name and style of "PricewaterhouseCoopers LLP", which shall conduct the practice of public accounting and all other activities carried on by the Firm together with related activities and such other significant activities as shall from time to time be approved by the Board of Partners and Principals in the United States of America, including its territories and possessions, and such other geographic locations as may be determined from time to time.  Each Individual agrees that he or she shall not have any (and the Firm shall retain all of its) right, title and interest in and to the Firm name and the names "Price Waterhouse", "Coopers & Lybrand" and "Lybrand, Ross Bros. & Montgomery" and derivatives thereof.

Section 2.2.    *Practice.* This Agreement and the policies adopted in accordance with its provisions shall be binding upon the parties hereto including all Individuals and shall govern the practice and business of the Firm.  Each Individual's entire professional time and effort shall be devoted to the practice and business of the Firm, on behalf of the Firm and for its benefit, and all fees attributable to an Individual's services shall belong to the Firm, in each case except to the extent otherwise determined by the Board of Partners and Principals with the advice of the Partner Affairs Committee and communicated in writing and except that an Individual may serve with the Governance Entity pursuant to arrangements established by the Board of Partners and Principals.

NY P&PA as of 4 1 2001.doc i
Revised P&PA

Confidential    PwC00006

Section 2.3.    *Limitation on Authority.*  No Principal shall be held out or hold himself or herself out to the public as a Partner.  In directories or other publications, the name of any Principal shall not be set forth in such manner as to indicate or appear to indicate that he or she is a Partner.  A Principal shall not sign the name of the Firm on or be designated as the person directly in charge of any operation or function of the Firm which shall issue or render an audit opinion, a report or other writing that expresses an opinion on the financial statements of a client of the Firm, nor directly or indirectly perform any other services which may be rendered only by a certified public accountant. Principals shall not vote nor be counted for voting purposes with respect to any decision related to the foregoing.  If at any time any Partner shall not hold an appropriate authorization to practice as a certified public accountant under the laws of at least one jurisdiction of the United States, his or her status as a Partner shall automatically change to that of a Principal, provided, however, that if such Partner shall obtain such authorization, he or she shall be automatically reinstated as a Partner of the Firm.

Section 2.4.    *International Arrangements.*  Each Individual acknowledges and agrees that the Firm shall comply with all of its obligations as a Member Firm of the Governance Entity or otherwise under or in connection with the International Arrangements to which it is a party, and, in exercising the powers and responsibilities delegated to each of them hereunder, the Board of Partners and Principals, committees of the Board of Partners and Principals, the Senior Partner and any other authorized officer of the Firm shall exercise such powers and responsibilities so far as is possible with a view to securing the fulfillment of these obligations.  The Board of Partners and Principals, committees of the Board of Partners and Principals, the Senior Partner and any other authorized officer of the Firm shall consult with the Governance Entity Chief Executive Officer and other members of management of the Governance Entity, and with the Governance Entity Chairman and other members of the Global Oversight Board or committees thereof, concerning matters of interest to Individuals relating to the Organizational Documents and the other International Arrangements and the activities contemplated thereunder.

Nothing in the preceding paragraph or otherwise in this Agreement shall be deemed to require the Firm or any Individual to violate any law, treaty, rule or regulation or any determination of an arbitrator or a court or other governmental authority or professional or regulatory body.

ARTICLE III

TERM

Section 3.1.    *Continuation.*  This Agreement shall continue in effect unless terminated by the Partners and Principals.

Section 3.2.    *No Dissolution.*  The retirement, withdrawal, death or other dissociation of an Individual, or the admission of additional Individuals, shall not terminate this Agreement, or result in the dissolution or winding up of the Firm or its business or affairs.

Confidential                    PwC00007

5

## ARTICLE IV

### AUTHORITY OF PARTNERS AND PRINCIPALS

Section 4.1.        *Authority of Partners and Principals.*  The Partners and Principals reserve to themselves the authority to:

(a)    Elect the Members-at-large.

(b)    Ratify removal of Members-at-large from the Board of Partners and Principals by the Board of Partners and Principals.

(c)    Elect the Senior Partner.

(d)    Ratify the removal of the Senior Partner by the Board of Partners and Principals.

(e)    Ratify the withdrawal of Specified Individuals required to withdraw pursuant to Section 11.2.

(f)    Amend this Agreement, subject to the right of the Board of Partners and Principals to amend this Agreement pursuant to Section 5.6(i).

(g)    Approve any matter required by the Organizational Documents to be approved by a vote of the Member Firms (as defined in the Organizational Documents) of the Governance Entity (other than the admission of a Member Firm).

(h)    Terminate the Firm and determine the disposition of its assets.

(i)    Approve any other matter submitted to the Partners and Principals for a vote by the Board of Partners and Principals.

Section 4.2.        *Action by Partners and Principals.*

(a)    Except as set forth in Section 4.2(b) through (d), in all matters each Individual shall have the number of votes equal to the number of Shares or Share Equivalents allocated to such Individual as of the first of the month in which the ballots are distributed (or such other time as the Board of Partners and Principals may determine), and the matter shall be decided by two-thirds of the votes cast.  Such vote shall require a quorum of a majority of Shares or Share Equivalents allocated to Individuals as of the first of the month in which the ballots are distributed (or such other time as the Board of Partners and Principals may determine).

(b)    Election of Members-at-large and ratification of appointments to Board Nominating Committees and Senior Partner Nominating Committees shall be decided by a vote of Individuals (on a head-count basis) using a system of voting determined by the Board of Partners and Principals. The requisite vote and quorum shall be determined by the Board of Partners and Principals from time to time.

(c)    The system of voting (and other matters such as any requisite vote and quorum) applicable to votes pursuant to Section 4.1(g) shall be determined by the Board of Partners and Principals from time to time.

NY P&PA as of 4 1 2001.doc i
Revised P&PA

(d)    Election of the Senior Partner where there is more than one candidate, ratification of the removal of the Senior Partner by the Board of Partners and Principals and ratification of the removal of Members-at-large by the Board of Partners and Principals shall be decided by a majority in number of the Individuals (on a head-count basis) who shall vote. Election of the Senior Partner where there is only one candidate shall be decided by a vote of two-thirds of the number of the Individuals (on a head-count basis) who shall vote. Ratification of removal of Specified Individuals who are required to withdraw pursuant to Section 11.2 shall be decided by a vote of Three-Fourths of the Partners and Principals. In all matters to be decided by the Partners and Principals by a vote of a majority or two-thirds in number of the Individuals who shall vote as provided in this paragraph, such vote shall require a quorum of a majority in number of all Individuals.

(e)    Subject to the provisions of this Agreement, the Board of Partners and Principals shall from time to time determine voting procedures to be followed in votes of Partners and Principals pursuant to this Article IV. All voting by Partners and Principals shall be by written or verifiable electronic ballot. Written ballots shall be signed and delivered to the teller appointed by the Board of Partners and Principals. All ballots shall indicate the date by which they must be received by the teller. As indicated in the ballot, each Individual shall have a minimum of two weeks to cast his or her vote on any matter submitted, during which period any vote previously cast by such Individual on the matter may be changed; provided, however, that the Board of Partners and Principals may shorten such minimum period of time if, in its judgment, the circumstances require a shorter period of time for the vote. Ballots not received by the specified date shall not be counted. After each balloting the teller shall certify to the Board of Partners and Principals the results of such balloting. The teller shall not disclose the contents of any Individual's ballot. The Board of Partners and Principals in its discretion may, but shall not be obligated to, appoint an independent teller.

(f)    Any matter to be determined by the Partners and Principals shall be submitted to them by the Board of Partners and Principals:

　　　　(i)    By a ballot initiated by the Board of Partners and Principals;

　　　　or

　　　　(ii)    Except in elections of the Senior Partner or Members-at-large, ratification of appointments to Board Nominating Committees and Senior Partner Nominating Committees, ratification of the removal of the Senior Partner or Members-at-large by the Board of Partners and Principals, ratification of the withdrawal of Specified Individuals required to withdraw pursuant to Section 11.2 and votes pursuant to Section 4.1(g), by a ballot prepared after the Board of Partners and Principals' consideration of a petition signed by 20 percent of the number of Individuals as of the first of the month in which the petition is first circulated. If a petition does not receive the signatures of the required 20 percent within 60 days of the last day of the month in which the petition is first circulated or if the proposed amendment which is the subject of the petition is not adopted, then the matter shall not be subject to any petition within one year of the end of the 60-day period.

(g)    The Board of Partners and Principals shall consider any petition satisfying the requirements of this Section within 60 days of its receipt. The Board of Partners and Principals shall thereafter submit the matter to the Partners and Principals in the form presented to it, together with its recommendation (which may be an alternative proposal).

NY P&PA as of 4 1 2001.doc i
Revised P&PA

7

## ARTICLE V

### BOARD OF PARTNERS AND PRINCIPALS

**Section 5.1.** *Composition of Board of Partners and Principals.* There shall be a Board of Partners and Principals of the Firm, whose members shall include the Senior Partner and Members-at-large elected by the Partners and Principals. Designated Members of Management shall not be eligible for election as Members-at-large.

**Section 5.2.** *Term of Office and Number of Members-at-large.* The term of office of Members-at-large shall be four years, provided that the Board of Partners and Principals may at any time prior to or during such term (i) increase the term by up to three months or (ii) increase or decrease the term by such period as is necessary so that the end of such term coincides with the Fiscal Year end occurring closest to the date on which the term originally was scheduled to end. The Board of Partners and Principals shall determine the number of Members-at-large, which shall not exceed eighteen and shall not be less than twelve. A Member-at-large shall vacate his or her office at such time as he or she ceases to be an Individual or becomes a Designated Member of Management (for this purpose, any position so designated at the time of the election of the Member-at-large whose seat has been vacated or a substantially equivalent position).

**Section 5.3.** *Election of Members-at-large; Vacancies.* (a) Each Member-at-large shall be elected for an initial full term or for a second full term or (in the case of a second term) for such number of years less than a full term as shall remain until his or her Normal Retirement Date, except as otherwise provided herein and subject to such requirements for eligibility and other criteria as the Board of Partners and Principals shall establish; provided, however, that (i) a person appointed or elected as a Member-at-large to fill a vacancy shall commence his or her term on a date determined by the Board of Partners and Principals and such term shall, subject to clause (ii) of this sentence, consist of a period of time not more than the period ending on the last day of the full term of the Member-at-large vacating the seat filled by such person, (ii) no Individual shall serve as a Member-at-large beyond his or her Normal Retirement Date, (iii) a Member-at-large may not be elected for more than two terms (whether or not consecutive), (iv) a Member-at-large may not be elected for a second term if his or her Normal Retirement Date would occur prior to the third anniversary of the commencement of such second term, or in the case of an Individual appointed or elected to fill a vacancy, such Individual would not have been eligible to stand for election as a Member-at-large (as a result of the timing of his or her Normal Retirement Date) at the time of the election of the Member-at-large vacating his or her seat, and (v) a Member-at-large of the Transition Board (as defined in Addendum No. 1 to the Partners and Principals Agreement dated as of July 1, 1998) may be elected for one full term following the end of the term of the Transition Board so long as his or her Normal Retirement Date would occur after the end of such new term. To the extent that the period of time that an Individual serves as a Member-at-large in respect of a term first filled as a result of a vacancy does not exceed two years, such service by that Individual shall not be considered for purposes of the two term limit specified in clause (iii) above.

(b)   Subject to the provisions of this Agreement, procedures for electing Members-at-large shall be established by the Board of Partners and Principals from time to time. The Board of Partners and Principals shall appoint a Board Nominating Committee comprised of such number of Individuals as the Board of Partners and Principals shall determine from time to time, no more than two of whom (which shall be a minority) may be Members-at-large and none of whom may be (i) candidates for election as Members-at-large or (ii) Designated Members of Management.

8

Appointments to a Board Nominating Committee shall be submitted to a vote of Partners and Principals for ratification, provided that the Board of Partners and Principals may determine (by a vote of two-thirds of all members of the Board of Partners and Principals) not to submit such appointments to a ratification vote of Partners and Principals if it concludes that such ratification vote would be impracticable in light of the desired timetable for the election of Members-at-large or such other considerations that the Board of Partners and Principals decides are relevant. Once an Individual has accepted appointment to a Board Nominating Committee in respect of a particular election, he or she shall be ineligible to stand for election as a Member-at-large in such election. The Board of Partners and Principals shall establish procedures and guidelines for the selection of candidates to be followed by the Board Nominating Committee. The Board Nominating Committee shall be responsible for soliciting, vetting and proposing to the Board of Partners and Principals candidates for Members-at-large. Those candidates approved by a vote of the Board of Partners and Principals shall then be voted upon by the Partners and Principals.

(c)    In the event of the resignation, retirement, withdrawal, disqualification (by reason of becoming a Designated Member of Management), death, permanent incapacity or removal of a Member-at-large, the vacancy shall be filled (for the remainder of the term of the Member-at-large who vacated his or her office) in accordance with the following procedures:

(i)    In the event that the seat of any Member-at-large is vacated for any reason prior to the third anniversary of the date on which the relevant Board of Partners and Principals was constituted (other than as referred to in subparagraph (ii) below), the Board of Partners and Principals may determine to fill the vacancy (or, if as a result of such vacancy the number of Members-at-large would be less than twelve, the Board of Partners and Principals shall fill the vacancy) by reviewing the votes cast in the election in which such Member-at-large was elected in accordance with the election procedures established for such election. In such review, each Individual elected as a Member-at-large (whether or not then serving) in such election, each candidate who is no longer an Individual, each candidate who is a Designated Member of Management (for this purpose, any position so designated at the time of the election of the Member-at-large whose seat has been vacated or a substantially equivalent position), and each candidate who indicates to the Board of Partners and Principals that he or she does not wish to be considered in such review shall be excluded. The review shall identify the candidate who would have won such election (after giving effect to the exclusion of candidates provided for in the previous sentence) and whose appointment will not conflict with and will continue to satisfy this Agreement and any arrangements designed to ensure Board of Partners and Principals representation established by the Board of Partners and Principals in the relevant election (as such arrangements may be amended by the Board of Partners and Principals from time to time). Such candidate shall be appointed to the Board of Partners and Principals to fill such vacancy. In the event that none of the candidates from the previous election satisfies all the criteria set out above in this subparagraph (i), an Individual may be appointed (or, if as a result of such vacancy the number of Members-at-large would be less than twelve, an Individual shall be appointed) by the Board of Partners and Principals to fill such vacancy with due regard to this Agreement and any arrangements to ensure Board of Partners and Principals representation established by the Board of Partners and Principals in the election of the Member-at-large vacating his or her office (as such arrangements may be amended by the Board of Partners and Principals from time to time) or, if the Board of Partners and Principals so determines, a new election may be held to fill such vacancy.

(ii)    If, as a result of an event or events which the Board of Partners and Principals determines to be material (including by way of example, the disposal of a significant part of the business of the Firm), three or more Members-at-large cease to hold office prior to the third anniversary of the commencement of the term of the relevant Board of Partners and Principals, the vacancy shall be filled in accordance with subparagraph (i) above (including the last sentence thereof, if applicable), except that the votes of Individuals who have ceased to be Individuals as a result of the material change shall be excluded.

(iii)    In the event that the seat of any Member-at-large is vacated for any reason following the third anniversary of the date on which the relevant Board of Partners and Principals was constituted, the vacancy shall not be filled unless as a result of such vacancy the number of Members-at-large would be less than twelve. In such event, an Individual shall be appointed by the Board of Partners and Principals to fill such vacancy with due regard to any arrangements designed to ensure Board of Partners and Principals representation established by the Board of Partners and Principals in the election of the Member-at-large vacating his or her office (as such arrangements may be amended by the Board of Partners and Principals from time to time) or, if the Board of Partners and Principals so determines, a new election may be held to fill such vacancy.

Section 5.4.    *Removal of Members of the Board of Partners and Principals.* In the event that the Senior Partner is removed from office, he or she shall automatically be removed as a member of the Board of Partners and Principals. Any Member-at-large may be removed from the Board of Partners and Principals by the vote of two-thirds of all the other members of the Board of Partners and Principals; provided, however, that any removal by two-thirds vote of the other members of the Board of Partners and Principals shall be promptly submitted to a vote of the Partners and Principals and, if the Partners and Principals shall not approve the removal, the person removed shall thereupon be automatically reinstated as a member of the Board of Partners and Principals.

Section 5.5.    *Representation on Board of Partners and Principals.* The Board of Partners and Principals may from time to time make arrangements to promote in an election representation on the Board of Partners and Principals that, insofar as is reasonably practicable, is representative of the Firm's lines of service and industry practice areas and other constituencies, and also reflects a reasonable demographic and geographic distribution of the Partners and Principals, in each case to such extent as may be determined by the Board of Partners and Principals from time to time. Notwithstanding the foregoing, each member of the Board of Partners and Principals shall act in the best interests of the entire Firm and without bias to any one constituency within the Firm.

Section 5.6.    *Authority of Board of Partners and Principals.* The Partners and Principals hereby grant to the Board of Partners and Principals, acting as their representative, the authority to:

(a)    Approve all policies affecting the rights, responsibilities or obligations of Individuals or Former Individuals and assure that such policies are fairly applied.

(b)    Approve the Firm's philosophy, policies and direction, including: (i) long range strategies; (ii) business plans, budgets, financial statements and accounts; and (iii) major financial commitments, major transactions or other matters that could significantly affect the scope or expansion of the practice and business of the Firm.

(c)     Approve the admission as Partners and Principals of persons upon its own recommendation or upon the recommendation of a committee designated by it, in general focusing on fairness of process and consistency with the Firm's strategy, and such other matters as the Board of Partners and Principals deems appropriate.

(d)     Establish policies for, and review the terms of, withdrawals of Individuals.

(e)     Terminate benefits to a Former Individual for breach of this Agreement.

(f)     Submit to Partners and Principals all matters to be determined by them, including proposed amendments to this Agreement, and oversee the voting on all matters thus submitted.

(g)     Approve retirement, death and disability benefit policies applicable to all Individuals.

(h)     Construe this Agreement.

(i)     Amend this Agreement to: (i) change the jurisdiction in which the Firm is organized and registered as a limited liability partnership; (ii) provide that the law of that jurisdiction will govern this Agreement; and (iii) make such other changes to this Agreement as the Board of Partners and Principals deems necessary or desirable solely to effectuate such change in jurisdiction and governing law. Any such changes shall be given in writing to the Partners and Principals.

(j)     Subject to the provisions of this Agreement, (i) establish and implement requirements for eligibility and criteria for the election of Members-at-large, establish the number of Members-at-large of the Board of Partners and Principals and appoint Individuals to fill vacancies on the Board of Partners and Principals as provided in Section 5.3(c), (ii) approve voting systems, requisite vote and quorum for the election of Members-at-large, and (iii) appoint members of the Board Nominating Committee, waive the requirement that such appointments be submitted to a ratification vote of Partners and Principals, establish procedures and guidelines for the selection of candidates to be followed by the Board Nominating Committee and approve candidate(s) for election as Members-at-large proposed by the Board Nominating Committee to be voted upon by the Partners and Principals.

(k)     Remove any Member-at-large, subject to ratification by a vote of the Partners and Principals.

(l)     Approve the participation and other significant financial arrangements of the Senior Partner and members of his or her senior management team as a group, after a review of and a recommendation regarding such participation and arrangements by the Management Evaluation and Compensation Committee.

(m)     Refer matters to the Senior Partner for his or her consideration.

(n)     Remove the Senior Partner, subject to ratification by a vote of the Partners and Principals.

(o)     Appoint an Individual to serve as acting Senior Partner for a period not to exceed one year if the office of Senior Partner becomes vacant or the Board of Partners and Principals determines that the Senior Partner is unable to serve.

(p)     Ratify the appointment by the Senior Partner of Members-at-large to serve on Board of Partners and Principals committees and to serve as the chairs of such committees, and ratify the

NY P&PA as of 4 I 2001.doc i
Revised P&PA

removal by the Senior Partner of Members-at-large serving on Board of Partners and Principals committees and chairs thereof.

(q)    Subject to the provisions of this Agreement, approve procedures for the election of the Senior Partner proposed by the Governance Committee, appoint members of the Senior Partner Nominating Committee, determine that such appointments shall not be submitted to a ratification vote of Partners and Principals, establish procedures and guidelines for the selection of candidates to be followed by the Senior Partner Nominating Committee, and approve candidate(s) for election as Senior Partner proposed by the Senior Partner Nominating Committee to be voted upon by the Partners and Principals.

(r)    Oversee the Firm's internal audit function.

(s)    Make such determinations as to the Fiscal Year and capital of the Firm as are contemplated by this Agreement and exercise such other authority as is granted to it herein.

(t)    Approve policies for the participation by Individuals in Net Profit or Net Deficit and other significant financial arrangements in respect of Individuals.

(u)    Subject to the provisions of this Agreement, approve voting systems, requisite vote and quorum for votes of Individuals pursuant to Section 4.1(g).

(v)    Subject to the provisions of this Agreement, determine voting procedures to be followed in votes of Partners and Principals pursuant to Article IV.

(w)    Exercise all authority conferred on the Local Representatives (as defined in the Transition Provisions referred to below) under the Transition Provisions (set out as Addendum No. 1 to the June 30, 1998 Partners and Principals Agreement) and the Merger Agreement dated as of June 30, 1998 among Coopers & Lybrand L.L.P., Price Waterhouse LLP and the Firm, in each case only upon termination of paragraph 10(a) of such Transition Provisions.

(x)    Apprise the Partners and Principals periodically concerning the discharge of its responsibilities.

(y)    Exercise all authority not otherwise specifically retained by the Partners and Principals or delegated to others in this Agreement.

Section 5.7.    *Action by Board of Partners and Principals.*  The Board of Partners and Principals shall meet at least four times each year. Meetings may be called at any time by the Senior Partner, the Lead Director, or by a majority of the Members-at-large. Written notice of each meeting of the Board of Partners and Principals stating its time and place shall be given to each member not fewer than five days prior to the date of the meeting. Any such notice may be waived by an instrument in writing or by an electronic transmission in either case before or after the meeting. No member of the Board of Partners and Principals may vote by proxy. A member of the Board of Partners and Principals shall be deemed present at a meeting for all purposes if by telephone or other device he or she shall be able to hear, and be heard by, all the other members present. Any action of the Board of Partners and Principals may also be taken without a meeting upon the requisite written or electronically transcribed approval thereof (for which purpose the requisite vote shall be determined based on the total number of members entitled to vote on the relevant matters). Meetings

12

of the Board of Partners and Principals shall require a quorum of two-thirds of its members. Decisions by the Board of Partners and Principals, except as otherwise expressly stated herein, shall require the affirmative vote of two-thirds of the members of the Board of Partners and Principals voting thereon. Each Member-at-large and the Senior Partner shall have one vote. The Senior Partner shall not vote on the removal or compensation of the Senior Partner.

Section 5.8.    *Votes of Board of Partners and Principals on Accountancy Matters.* Only those members of the Board of Partners and Principals who are certified public accountants may vote on matters involving accounting principles and auditing standards.

Section 5.9.    *Committees of Board of Partners and Principals.*

(a)    The Board of Partners and Principals shall establish four standing committees to assist it in the discharge of its responsibilities:

(i)    The Governance Committee,

(ii)    The Partner Affairs Committee,

(iii)    The Accounting and Auditing Practice Committee, and

(iv)    The Management Evaluation and Compensation Committee.

(b)    The Board of Partners and Principals may establish such additional standing or other committees as it shall from time to time determine (such as Admissions, Finance and Risk Management committees) to assist the Board of Partners and Principals in the discharge of its responsibilities. Each committee shall consist of not fewer than three Members-at-large.

(c)    The members and chairs of the Governance Committee, the Partner Affairs Committee, the Accounting and Auditing Practice Committee and any other committee of the Board of Partners and Principals shall be appointed by the Senior Partner in consultation with the Lead Director. The members and chairs of the Management Evaluation and Compensation Committee shall be appointed by the Lead Director in consultation with the Senior Partner. Members of standing and other committees of the Board of Partners and Principals and chairs thereof may be removed by the Senior Partner in consultation with the Lead Director (except that the members and chairs of the Management Evaluation and Compensation Committee may be removed by the Lead Director in consultation with the Senior Partner). The appointment and removal of committee members and chairs shall in all cases be subject to ratification by a vote of the Board of Partners and Principals.

(d)    The Accounting and Auditing Practice Committee will provide oversight to assure that the accounting and auditing practice of the Firm has (i) developed appropriate policies and procedures designed to ensure the high quality of the practice's service and to minimize and manage the risks associated with that practice and (ii) maintained ongoing programs that review and inspect the implementation of those programs.  Only Partners shall be members of the Accounting and Auditing Practice Committee.

(e)    Each committee shall meet as often as the interests of the Firm may require upon: (i) the call of the committee chairman; (ii) the call of the Senior Partner or Lead Director; or (iii) the request of a majority of the committee members.  A majority of the members of a committee shall constitute

13

a quorum for the transaction of any business. The vote of two-thirds of the members of a committee voting shall be the act of such committee.

(f)     No committee of the Board of Partners and Principals shall have a member who is not a Member-at-large.

(g)     All committees of the Board of Partners and Principals shall report periodically to the Board of Partners and Principals.

Section 5.10.     *Lead Director*

The Members-at-large shall (by a vote of a majority of all Members-at-large) elect a Member-at-large to serve as Lead Director. The term of the Lead Director shall be two years (or such longer or shorter term as may be determined by the Board of Partners and Principals from time to time). A Member-at-large may be elected to one or more terms as a Lead Director. A Member-at-large serving as Lead Director shall no longer be Lead Director if he ceases to be a Member-at-large. The Lead Director, acting on behalf of the Members-at-large, shall have the authority to:

(a)     Consult with the Senior Partner concerning the agenda for meetings of the Board of Partners and Principals.

(b)     Call meetings of the Board of Partners and Principals.

(c)     Appoint and remove the members and chairs of the Management Evaluation and Compensation Committee in consultation with the Senior Partner, subject to ratification by a vote of the Board of Partners and Principals. Consult with the Senior Partner concerning the appointment and removal of the members and chairs of the other committees of the Board of Partners and Principals, subject to ratification by a vote of the Board of Partners and Principals.

(d)     Act as chair of the executive session of the Members-at-large of each meeting of the Board of Partners and Principals, and preside at meetings of the Board of Partners and Principals when it is deciding any of the matters referred to in Sections 5.6(l) and 5.6(n) relating to the Senior Partner.

(e)     Collaborate with the Senior Partner in reporting periodically to the Partners and Principals in apprising the Partners and Principals concerning the discharge by the Board of Partners and Principals of its responsibilities.

(f)     Participate in the evaluation of the Senior Partner and his or her compensation arrangements.

(g)     Participate in the evaluation of other Members-at-large and review the compensation of such other Members-at-large for consistency with their overall role and performance rating.

NY P&PA as of 4 1 2001.doc i
Revised P&PA

## ARTICLE VI

### OFFICERS OF THE FIRM

**Section 6.1.**    *Authority of Senior Partner.* The Partners and Principals hereby grant to the Senior Partner and to any acting Senior Partner the authority, acting in accordance with the Firm's philosophy, policies and direction, to:

(a)    Function as the Chief Executive Officer and Chairman of the Board of Partners and Principals.

(b)    Manage the Firm's practice and business.

(c)    Provide the Board of Partners and Principals with initiatives for the Firm's philosophy, policies and direction.

(d)    Inform the Board of Partners and Principals of matters necessary for it to perform its responsibilities and, in consultation with the Lead Director, prepare the agenda for meetings of the Board of Partners and Principals.

(e)    Appoint other persons and committees to assist in the performance of the Senior Partner's responsibilities, empower persons to execute documents related to the administration of the Firm and designate Individuals to serve on or with other entities.

(f)    Call and preside at general meetings of Partners and Principals and meetings of the Board of Partners and Principals (subject to Section 5.10(d)).

(g)    Communicate or designate others to communicate to an Individual, Former Individual or legal representative of an Individual or Former Individual any decision of the Partners and Principals or the Board of Partners and Principals or any committee thereof with respect to such person. Such decision, as so communicated, shall be conclusive and binding.

(h)    Consult with the Governance Entity Chief Executive Officer, the Governance Entity Chairman and other members of the Global Oversight Board or committees thereof.

(i)    Except as provided in Sections 5.9(c) and 5.10(c), appoint and remove Members-at-large as members of committees of the Board of Partners and Principals and the chairs of committees in consultation with the Lead Director, subject to ratification by a vote of the Board of Partners and Principals.

(j)    Report periodically to the Partners and Principals on the state of the Firm and its practice and business.

**Section 6.2.**    *Election of Senior Partner.*

(a)    A Senior Partner shall be elected to serve a term of four years, provided that the Board of Partners and Principals may at any time prior to or during such term (i) increase the term by up to three months or (ii) increase or decrease the term by such period as is necessary so that the end of such term coincides with the Fiscal Year end occurring closest to the date on which the term originally was scheduled to end. Notwithstanding the preceding sentence, the term of office of the

Senior Partner initially elected in 2000 shall be five years. An Individual who cannot complete the first full term by his or her Normal Retirement Date shall be ineligible for election as Senior Partner. A Senior Partner who cannot complete a second full term by his or her Normal Retirement Date may be elected to serve a second term of fewer than four but not fewer than two years that ends upon his or her Normal Retirement Date. No Individual shall serve more than two terms (whether or not consecutive) as Senior Partner nor serve as Senior Partner following his or her Normal Retirement Date. Service as acting Senior Partner shall not count towards the foregoing limitation.

(b)     Subject to Section 6.2(a), the Board of Partners and Principals shall establish eligibility requirements for candidates for election as Senior Partner. The Governance Entity Chief Executive Officer shall not be eligible to be a candidate for election as Senior Partner while he or she continues in such office.

(c)     The Board of Partners and Principals shall establish procedures for the election of the Senior Partner. The Board of Partners and Principals shall appoint a Senior Partner Nominating Committee comprised of such number of Individuals as the Board of Partners and Principals shall determine, no more than two of whom (which shall be a minority) may be Members-at-large and none of whom may be candidates for election as Senior Partner or Designated Members of Management. Appointments to a Senior Partner Nominating Committee shall be submitted to a vote of Partners and Principals for ratification, provided that the Board of Partners and Principals may determine (by a vote of two-thirds of all members of the Board of Partners and Principals) not to submit such appointments to a ratification vote of Partners and Principals if it concludes that such ratification vote would be impracticable in light of the desired timetable for the Senior Partner election or such other considerations that the Board of Partners and Principals determines are relevant. Once an Individual has accepted appointment to a Senior Partner Nominating Committee in respect of a particular election, he or she shall be ineligible to stand for election as Senior Partner in such election. The Board of Partners and Principals shall establish procedures and guidelines for the selection of candidate(s) to be followed by the Senior Partner Nominating Committee. The Senior Partner Nominating Committee shall be responsible for soliciting, vetting and proposing (by a seventy-five percent vote of all members of the Senior Partner Nominating Committee, in the case of one candidate, and a majority vote of all members of the Senior Partner Nominating Committee, in the case of more than one candidate) a candidate or candidates (but no more than three candidates) for Senior Partner to be approved by a vote of the Board of Partners and Principals and, if so approved, to be voted upon by Partners and Principals.

(d)     An acting Senior Partner appointed to fill a vacancy shall hold such office until a new Senior Partner is elected. An acting Senior Partner appointed due to the inability of the Senior Partner to serve shall hold office until the Senior Partner resumes his or her duties or a new Senior Partner is elected. A special election for Senior Partner shall be held so that no acting Senior Partner shall serve, and no vacancy in the office of Senior Partner or inability of the Senior Partner to serve shall continue, for more than one year. The term to which a Senior Partner has been so elected shall be a period of four years from the commencement of the Fiscal Year nearest the date on which such Individual takes office (provided that such term may be increased by the Board of Partners and Principals at any time prior to or during such term by up to three months or be increased or decreased by the Board of Partners and Principals by such period as is necessary so that the end of such term coincides with the Fiscal Year end occurring closest to the date on which the term originally was scheduled to end).



(c)     The Senior Partner may be removed by the vote of two-thirds of all the Members-at-large of the Board of Partners and Principals, subject to ratification by a vote of the Partners and Principals.

## ARTICLE VII

### ACCOUNTS

Section 7.1.     *Finality.*  Persons whose association with the Firm has ceased and their respective legal representatives (including his or her estate) shall (a) accept as correct the Firm's accounts and statements prepared therefrom as approved by the Board of Partners and Principals, (b) be deemed to have accepted for all purposes the accounting principles or other basis upon which any such accounts or statements as so approved shall have been prepared and (c) not take, in a tax proceeding or otherwise, any position inconsistent with any such accounts or statements as so approved, or with the accounting principles or other basis upon which such accounts or statements shall have been prepared.  Neither a Former Individual nor any person (including any legal representative) acting on behalf of or otherwise claiming through any Former Individual or Individual shall have any right to examine any books of account or other records of the Firm.

## ARTICLE VIII

### PARTICIPATION

Section 8.1.     *Participation.*

(a)     All Individuals have the right to participate in the Net Profit of the Firm in the manner determined by the Board of Partners and Principals from time to time.

(b)     Subject to Section 8.2(b), any Net Deficit shall be allocated and charged to Individuals' capital accounts in the manner determined by the Board of Partners and Principals.

Section 8.2.     *Liability of Individuals*

(a)     Notwithstanding anything to the contrary in this Article VIII, Article IX or otherwise in this Agreement, no person as a result of his or her current or former status as an Individual, shall be liable to the Firm or to any other person for debts, liabilities or obligations of or chargeable to the Firm, for which such person would not be liable under paragraph (b) of Section 1515 of Title 6 of the Delaware Code or any amendment thereof or successor provisions thereto (including as of January 1, 2002, paragraph (c) of Section 15-306 of Title 6 of the Delaware Code).

(b)     Notwithstanding anything to the contrary in this Article VIII, Article IX or otherwise in this Agreement, an Individual shall have no obligation or liability to the Firm in respect of (i) Net Deficit allocated and charged to such Individual's capital accounts pursuant to Section 8.1(b) or (ii) a deficit or negative balance in such Individual's capital accounts; provided, however, that nothing of the foregoing shall limit such Individual's obligation (x) to contribute the amount of capital required to be contributed by such Individual pursuant to Sections 9.1 and 9.2 or (y) to repay cash distributions and advances made to or on behalf of the Individual in excess of accrual profits credited to the Individual's capital accounts.

17

Section 8.3.    *Termination of Participation.* An Individual's participation shall terminate as of the day of the month in which such Individual ceases to be associated with the Firm or such other date after the Individual ceases to be associated with the Firm as is determined by the Senior Partner.

## ARTICLE IX

### CAPITAL

Section 9.1.    *Capital Requirement.* Each Individual shall be required to contribute to the capital of the Firm pursuant to policies approved by the Board of Partners and Principals from time to time.

Section 9.2.    *Capital Withholding.* If an Individual has failed to contribute the full amount of capital required to be contributed by such Individual pursuant to Section 9.1, there may be withheld and credited to such Individual's capital account such percentage or amount of payments due to him or her as is specified in policies approved by the Board of Partners and Principals from time to time.

Section 9.3.    *Capital Accounts.* The Firm shall maintain in respect of each Individual such capital accounts as specified in policies approved by the Board of Partners and Principals from time to time. Each Individual's capital accounts shall reflect (i) the amount of capital contributed by such Individual, (ii) amounts withheld and credited to such Individual's capital accounts pursuant to Section 9.2, (iii) accrual income credited to such Individual, (iv) any return on the balance in such Individual's capital accounts that is credited to the Individual's capital accounts pursuant to Section 9.4, (v) amounts distributed to such Individual, (v) losses charged to such Individual's capital accounts pursuant to Section 8.1, and (vi) such other credits and charges as are specified in policies approved by the Board of Partners and Principals from time to time.

Section 9.4.    *Rate of Return.* A rate of return on the balance in capital accounts, computed at such rate as the Board of Partners and Principals may determine from time to time, shall be payable to Individuals or credited to their capital accounts at such times as the Board of Partners and Principals may determine from time to time.

Section 9.5.    *Repayment.* The balance in an Individual's capital accounts shall be paid to such Individual, or to his or her legal representative, within a reasonable period of time following the time at which such Individual ceases to be associated with the Firm in accordance with policies approved by the Board of Partners and Principals from time to time (unless such Individual elects otherwise in accordance with policies approved by the Board of Partners and Principals from time to time).

Section 9.6.    *Capital Financing.* Each Individual agrees that the Firm may comply with the provisions of any agreement that it approves in connection with the financing of the capital obligations of Individuals to the Firm, notwithstanding any inconsistency with any provision of this Agreement.

Confidential                    PwC00020

## ARTICLE X

### RETIREMENT

**Section 10.1.**      *Retirement.*

(a)      An Individual's association with the Firm shall cease at the end of the Fiscal Year in which he or she attains age 60.

(b)      Upon the recommendation of the Senior Partner and the approval of the Board of Partners and Principals, an Individual may defer retirement for such periods as the Board of Partners and Principals may determine until the end of the Fiscal Year in which the Individual attains age 61. Thereafter, upon the recommendation of the Senior Partner and the approval of the Board of Partners and Principals, an Individual may further defer retirement of an Individual for such periods as the Board of Partners and Principals may determine until the end of the Fiscal Year in which the Individual attains age 62.

**Section 10.2.**      *Early Retirement.*

(a)      An Individual who wishes to retire early shall give the Firm at least nine months' written notice unless another date is mutually agreed.

(b)      An Individual may elect early retirement at any time after attaining the Early Retirement Age. The Individual's association with the Firm shall cease at the end of the month in which the nine month notice period expires unless another date is mutually agreed.

(c)      No Individual may retire prior to the Early Retirement Age without the express prior approval of the Board of Partners and Principals. Unless such approval is given, any intended retirement prior to the Early Retirement Age shall be deemed a withdrawal from the Firm and shall be treated as specified in Section 11.1. If the retirement is approved, the Individual's association with the Firm shall cease at the end of the month in which the date specified for retirement shall occur.

**Section 10.3.**      *Conduct After Retirement.*

(a)      All rights of an Individual or Former Individual who is receiving payments or benefits from the Firm (or a Predecessor Firm) are expressly conditioned upon his or her acting at all times in the best interest of the Firm. Without limitation of paragraph (b) of this Section 10.3, no person receiving payments or benefits from the Firm shall engage in any activity which in any way directly or indirectly competes with the practice or business of the Firm without the prior written consent of the Board of Partners and Principals.

(b)      During the period of five years immediately following his or her retirement, a Former Individual shall not without the prior written consent of the Board of Partners and Principals engage (either directly or indirectly through any partnership of which he or she shall be a partner, principal or employee or any corporation or other entity of which he or she shall be an officer, director, manager, member, beneficiary, owner or employee) in competition with the Firm either in the metropolitan area of any office of the Firm in which during the five-year period immediately preceding such retirement he or she shall have served as an Individual (including service with any predecessor to the Firm) or, if such service shall not have been centered in a metropolitan area, in the appropriate geographical area served by him or her during such five-year period. For the purpose of

PwC00021

the immediately preceding sentence, competition shall be deemed to be competition with respect to or involving any practice or business similar to that conducted by the Firm at the date of such retirement.

# ARTICLE XI

## WITHDRAWAL

Section 11.1.        *Election by Individual.*  An Individual may withdraw voluntarily from the Firm by giving at least nine months' written notice of his or her intention to do so.  Unless another date is mutually agreed, all interest of such Individual in the Firm, other than the right to receive any payments due pursuant to Section 9.5, shall cease as of the date given in such notice.

Section 11.2.        *Required Withdrawal.*

(a)        Notwithstanding any provision of this Agreement, the provisions of paragraphs (a) through (c) of this Section 11.2 shall be applicable to any required withdrawal of Specified Individuals.  If at any time the Senior Partner shall determine to recommend that it is in the best interests of the Firm that any Specified Individual should withdraw, the Senior Partner shall submit his or her recommendation to that effect in writing, together with a statement of the reasons for such recommendation, to the Partner Affairs Committee and shall send a copy of such recommendation and statement to such Specified Individual.  The reasons for any such recommendation shall be limited to (i) the sustained performance by such Specified Individual at a level significantly below the performance of his or her peers of comparable experience and seniority of the duties assigned to, and expected of, him or her as an Individual, (ii) the willful violation of his or her material obligations under this Agreement or any amendment thereof or (iii) any action or non-action by him or her which is inconsistent with the standard of personal conduct expected of an Individual or which would cause him or her or the Firm to be held in public disrepute.

(b)        Prior to its formal consideration of such recommendation the Partner Affairs Committee shall afford the Individual access to any documents relevant to the recommendation of the Senior Partner.  The Partner Affairs Committee shall also afford him or her the opportunity to respond to the recommendation of the Senior Partner or to any statements, documents or other material considered . by the Partner Affairs Committee by a statement or statements in writing to the Partner Affairs Committee and, if he or she shall so elect, an appearance in person, accompanied by counsel if he or she shall choose to be so represented, before a meeting thereof.  The Senior Partner, or any other officer designated by him or her, accompanied by counsel, may appear before the Partner Affairs Committee to support the recommendation of the Senior Partner.  Any question of procedure with respect to any aspect of the proceedings for the withdrawal of such Individual or as to the conduct of such proceedings or the compliance of such proceedings with this Section 11.2 shall be determined by a three-fourths vote of the Partner Affairs Committee.

(c)        The decision of the Partner Affairs Committee with respect to recommended withdrawal, together with a statement of the reasons therefor, shall be delivered in writing to such Individual.  If by a unanimous vote of the members of the Partner Affairs Committee the recommendation shall be approved, the recommendation of the Senior Partner, along with the decision of the Partner Affairs Committee (including its reasons for its decision) and any written statement that such Individual shall desire to have included, shall be submitted to the Partners and Principals for a vote conducted by secret ballot.  If by such vote the decision of the Partner Affairs Committee shall be approved by

NY P&PA as of 4 1 2001.doc i
Revised P&PA

Confidential                    PwC00022

20

Three-Fourths of the Partners and Principals, then, upon notice in writing to such Individual of at least six months, or such lesser period of time as shall have been determined by the Partner Affairs Committee, such Individual shall automatically withdraw; provided, however, that solely for the purpose of determining payments to be made in liquidation of such Partner's or Principal's interest pursuant to Section 9.5, such withdrawal shall be deemed to occur six months after such notice.

(d)    Notwithstanding any provision of this Agreement, the provisions of paragraphs (d) through (f) of this Section 11.2 shall be applicable only to the required withdrawal of Individuals who are not Specified Individuals. If at any time the Senior Partner shall determine to recommend that it is in the best interest of the Firm that any such Individual should withdraw, the Senior Partner shall submit his or her recommendation to that effect in writing, together with a statement of the relevant practice, performance or business reasons for such recommendation, to the Partner Affairs Committee and shall send a copy of such recommendation and statement to such Individual.

(e)    Prior to its formal consideration of such recommendation the Partner Affairs Committee shall afford the Individual the opportunity to respond to the recommendation of the Senior Partner by a statement or statements in writing to the Partner Affairs Committee and, if he or she shall so elect, an appearance in person, accompanied by counsel if he or she shall choose to be so represented, before a meeting thereof. The Senior Partner or any other person designated by him or her, accompanied by counsel, may appear before the Partner Affairs Committee to support the recommendation of the Senior Partner. Any question of procedure with respect to any aspect of the proceedings for the withdrawal of such Individual or as to the conduct of such proceedings or the compliance of such proceedings with this Section 11.2 shall be determined by a three-fourths vote of the Partner Affairs Committee.

(f)    The decision of the Partner Affairs Committee with respect to recommended withdrawal, together with a statement of the reasons therefor, shall be delivered in writing to such Individual. If a vote to that effect shall be approved by three-fourths of the Partner Affairs Committee, such Individual shall automatically withdraw; provided, however, that solely for the purpose of determining the payments to be made in liquidation of the interest of such Individual pursuant to Section 9.5, such withdrawal shall be deemed to occur as of the date determined by the Partner Affairs Committee.

(g)    It is specifically agreed by all Individuals that any decision of the Partner Affairs Committee as to required withdrawal, any determination by the Partner Affairs Committee of questions or issues arising under this Section 11.2, including, without limitation, questions of procedure, conduct of the proceedings, compliance with this Section 11.2, and any vote of the Partners and Principals on required withdrawal shall be final and not subject to challenge in any arbitration or other proceeding.

Section 11.3.    *Withdrawal for Cause.* Except as required by applicable statutes, no benefits shall be payable if the Board of Partners and Principals specifically states that an Individual's withdrawal is for cause.

Section 11.4.    *Inapplicability of Section 11.2 For a Limited Period.* Pursuant to policies established by the Board of Partners and Principals for admission of persons in unusual circumstances, the procedures set forth in Section 11.2 hereof shall not be available to any Individual who, in connection with his or her admission pursuant to Section 5.6(c) (or relevant admission provision in the Restated Agreement of Price Waterhouse LLP), shall have received notice that he or

she shall not be entitled to the procedures set forth in such Section 11.2 (or similar provision in the Restated Agreement of Price Waterhouse LLP) until a date specified by the Board of Partners and Principals which shall not be later than the fifth anniversary of his or her initial admission as a Partner or Principal. Upon request of the Senior Partner with the approval of the Board of Partners and Principals prior to such specified date (which request may be with or without cause), such Partner or Principal shall forthwith withdraw without resort to the procedures set forth in Section 11.2 hereof or any other action. Any such request to withdraw shall be final and not subject to challenge in any arbitration or other proceeding.

Section 11.5.    *Conduct After Withdrawal.*

(a)    For a period of two years from his or her Withdrawal Date, a withdrawn Individual shall not directly or indirectly agree to perform or perform Services for any Client, make a solicitation for that purpose or assist any third party to do either of the foregoing.

(b)    A withdrawn Individual shall pay to the Firm an amount equal to twenty-five percent of the gross fees paid to such Individual or to a third party for Services performed or solicited in violation of Section 11.5(a). Such percentage shall be paid in respect of all such Services rendered to such Client during a period of five years commencing from the date of acceptance of the Client by such withdrawn Individual or third party. Payment shall be made to the Firm within thirty days after each such payment of fees is made by the Client.

(c)    For a period of two years from his or her Withdrawal Date, a withdrawn Individual shall not directly or indirectly solicit or directly or indirectly facilitate the retention of any Solicited Person to become Affiliated with or render Services on behalf of the withdrawn Individual or a third party, nor assist any third party in the making of or preparation for such solicitation or retention.

(d)    A withdrawn Individual who directly or indirectly facilitates the retention of, or assists in the retention of, a Solicited Person in violation of Section 11.5(c) or whose solicitation, or assistance in a solicitation, in violation of Section 11.5(c) is followed within twelve months (or, if later, on or prior to the second anniversary of the Withdrawal Date) by a Solicited Person becoming Affiliated with the withdrawn Individual or the third party for whose benefit the solicitation was made or the assistance provided, shall pay to the Firm an amount equal to twice the annual participation or compensation of such Solicited Person in respect of the last twelve months of his or her service to the Firm. Payment shall be made to the Firm no later than thirty days from the mailing of written notice to the withdrawn Individual advising of the amount due.

(e)    A withdrawn Individual whose conduct violates Section 11.5(c) shall pay to the Firm the amounts that would be payable under Sections 11.5(b) and 11.5(d) if subsequent acts committed by the Solicited Person had been committed by the withdrawn Individual.

(f)    No preference or decision of a Client concerning who should perform Services shall be relevant to the application of this Section or Section 10.3, nor shall the obligations of an Individual or Former Individual be diminished if a Client is also a client of a third party with which any such person becomes Affiliated. No evidence of any such matter shall be introduced in any dispute arising under this Section or Section 10.3.

(g)    No formal proceedings shall be instituted by the Firm to enforce its rights under this Section 11.5 without the prior authorization of the Partner Affairs Committee which shall report

NY P&PA as of 4 1 2001.doc i
Revised P&PA

periodically to the Board of Partners and Principals concerning the discharge of its responsibilities under this paragraph (g).

(h)    As used in this Section 11.5:

(i)    *"Services"* shall mean services of a type rendered by the Firm or by Individuals for the benefit of the Firm;

(ii)    *"Client"* shall mean one or more third parties for whose benefit or at whose direction Services were performed during the twelve months prior to the Withdrawal Date of a withdrawn Individual by: (i) such Individual; or (ii) an office or unit of the Firm in which such Individual practiced or over which such Individual had supervisory authority, or which was located within fifty miles of the office in which such Individual practiced. "Client" shall also include those who paid the Firm for or engaged the Firm to provide such Services. No Client shall be deemed a client of any Individual for any purpose;

(iii)    *"Solicited Person"* shall mean any:    (x) Individual or employee of the Firm, or (y) Former Individual, person who was a partner, principal, limited equity partner or limited equity principal of a Predecessor Firm or employee of the Firm (or any Predecessor Firm) who became or becomes such within twelve months before or after the Withdrawal Date of such withdrawn Individual; and

(iv)    *"Affiliated"* shall include status as agent, employee, officer, director, partner, joint venturer, consultant, shareholder, owner or proprietor.

### ARTICLE XII

### CLAIMS OR CONTROVERSIES

Section 12.1.    *General.*

(a)    Any claim or controversy (including without limitation a claim or controversy involving a Former Individual) arising out of the provisions of this Agreement, the interpretation thereof or the practice, business or affairs of the Firm shall be settled by arbitration conducted by the American Arbitration Association ("AAA") in the City of New York in accordance with the Commercial Arbitration Rules of the AAA then in effect. The Supreme Court of the State of New York, New York County, shall have jurisdiction over any proceeding related to any arbitration under this Agreement and judgment on any award rendered in such arbitration may be entered in that court or in any other court having jurisdiction. Neither AAA nor the arbitrators shall have authority to conduct hearings or receive proof, except in the City of New York.

(b)    Without prejudice to the requirement for arbitration, each Individual agrees that the Firm may seek provisional relief from a court of competent jurisdiction (in each case whether such Individual is at the time such relief is sought an Individual or a Former Individual): (i) in aid of such arbitration or to prevent any award sought from being rendered ineffectual; or (ii) to protect Information (as defined in Section 13.5).

NY P&PA as of 4 1 2001.doc i
Revised P&PA

Confidential    PwC 00025

(c)     In the event that a party to this Agreement has violated any provision hereof, any other party hereto who has suffered damages as a result of such breach shall be entitled only to direct damages and the party who has violated this Agreement shall not be liable to any other party for indirect, consequential, punitive, exemplary or special damages.

Section 12.2.     *Payments.*

(a)     Each Individual agrees that the Firm has a valid interest in avoiding the examination of its books by competitors.

(b)     The acceptance of any of the following by an Individual, Former Individual or legal representative of an Individual or Former Individual shall forever release and discharge the Firm from any claims with respect to, or any accountability for any payment purporting to be: (i) the final payment of the return on the balance in a capital account for any Fiscal Year; (ii) the final distribution in respect of profit for any Fiscal Year; or (iii) the final distribution of capital.

## ARTICLE XIII

### GENERAL PROVISIONS

Section 13.1.     *Interest of an Individual.*

(a)     An Individual's sole interest in the Firm (including its practice, business, assets and profits) shall be the balance in such Individual's capital account and any return thereon, such Individual's interest in undistributed profits and such Individual's right, if any, to receive payments or benefits provided in this Agreement.

(b)     Except as otherwise authorized by the Board of Partners and Principals, no Individual shall directly or indirectly sell, assign or encumber his or her interest in the Firm, nor permit such interest in the Firm to be directly or indirectly sold, assigned or encumbered. Any purported transfer in violation of the provisions of this Agreement shall be null and void.

(c)     No person whose association with the Firm shall have ceased, nor any person claiming in his or her behalf, shall have any interest in the Firm's practice, business, assets or profits other than for payments specifically provided for herein.

Section 13.2.     *Indemnification.*   The Senior Partner may from time to time designate Individuals to serve on or with other entities. Any person serving pursuant to such designation shall be indemnified by the Firm and saved harmless from and against any liability, loss, cost or expense arising in respect of any act or omission in the performance of such person's duties as such designee. Any profits or losses arising from such service shall be deemed to be profits or losses of the Firm and such designee's right to receive payments hereunder shall be adjusted accordingly.

Section 13.3.     *Obligations to Be Just and Faithful.*   Each Individual shall be just and faithful to the other Individuals in all transactions relating to the practice of the Firm and shall give a true account of such transactions to them when and so often as an account thereof shall be reasonably required. Each Individual shall at all times duly and punctually pay and discharge his or her separate and private debts and obligations and keep indemnified the Firm and its property against all and any of the same and against all expense and risk on account thereof.

NY P&PA as of 4 1 2001.doc i
Revised P&PA

**Section 13.4.**     *Severability; Waivers; Right of Set-Off; Records.*

(a)     In the event any provision of this Agreement shall be held invalid or unenforceable by any arbitrator or court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.  To the extent permitted by applicable law, each party to this Agreement waives any provision of law that renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

(b)     No modification or waiver of or failure to enforce any of the provisions of this Agreement in one instance shall be relevant in any other instance.

(c)     Each Individual agrees that the Firm shall have the right to withhold amounts payable by or benefits due from the Firm to or for the benefit of an Individual, Former Individual or other person pending the final disposition of any non-frivolous claims asserted in good faith against such person by the Firm or by anyone providing financing for the capital contributions of Individuals to the Firm and shall have the right to apply any such amounts or benefits to satisfy any liabilities of such person to the Firm or to such provider of capital financing.

(d)     An Individual or Former Individual shall make available for inspection by the Firm all books, billing records or other documents requested by the Firm to assist it in determining the extent of the obligations incurred under this Agreement.

**Section 13.5.**     *Confidentiality.*  Individuals and Former Individuals will receive information and materials relating to the Firm or its clients that are not publicly available ("Information").  Individuals and Former Individuals shall neither copy, disclose, utilize nor exploit any Information except as is strictly necessary to serve the Firm or the disclosing client.  All inventions and developments made by Individuals during their association with or employment by the Firm which in any manner relate to the Firm's practice or business are the exclusive property of and are patentable or copyrightable (or made subject to other intellectual property rights) only by or on behalf of the Firm.  The Firm's professional, technical and administrative manuals and associated data, forms, processes, methodologies, computer software, business plans and strategies and all copies thereof are included in these restrictions and may not be taken with or utilized by Individuals upon or after their withdrawal or retirement from the Firm.

**Section 13.6.**     *Counterparts.*  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same agreement.

**Section 13.7.**     *Execution.*  Each Partner and Principal shall execute a counterpart of, or an undertaking to be bound by, this Agreement, as amended from time to time.  Such execution may be by electronic transmission.  Such counterpart, or undertaking to be bound by this Agreement, shall be filed in the Executive Office of the Firm.  Notwithstanding the foregoing, a Partner or Principal shall be deemed a party to and bound by this Agreement from and after his or her admission to the Firm, whether or not such Individual has executed this Agreement or such undertaking.  Partnership agreements, other documentation and governmental filings in connection with the Firm's practice and business may be executed on behalf of Partners and Principals by the Senior Partner or the Senior Partner's designee at the direction of the Board of Partners and Principals.

**Section 13.8.**     *Governing Law.*  This Agreement shall be governed by the laws of the State of Delaware.

NY P&PA as of 4 1 2001.doc l
Revised P&PA

Section 13.9.    *Notice.* Notice to an Individual, Former Individual or legal representative of an Individual shall be sent by first class mail to the last known address appearing on the Firm's records. Notice to the Firm shall be sent by first class mail addressed to the Senior Partner at the Firm's Executive Office in New York, New York.

Section 13.10.    *Inurement.* This Agreement as amended from time to time shall be binding upon the parties hereto and their legal representatives, heirs and successors and the provisions of this Agreement shall inure to the benefit of the Firm and its successors and assigns.

Section 13.11.    *Section Headings.* Section headings in this Agreement are for ease of reference only and are not intended to affect the substance of this Agreement.

Section 13.12.    *Amendment.* This Agreement shall be amended only in accordance with its terms and each such amendment to this Agreement shall be binding upon each party hereto (and such party's legal representatives, heirs and successors).

IN WITNESS WHEREOF, this Agreement has been executed on behalf of the Partners and Principals pursuant to Section 13.7 in accordance with the vote of Partners and Principals.

_____

as of April 1, 2001

NY P&PA as of 4 1 2001.doc i
Revised P&PA

Confidential    PwC00028