# Exhibit Q

To:    File
From:  Westbrook Murphy
Re:    PwC partnership admissions
Date:  February 1, 2002

On January 29, 2002, Darlene Shea (who manages PwC's human resources ABAS/Financial Services staff) confirmed to Gary Welsh (an RAS professional services Director, aged 54) the following facts affecting the promotion to partner of a senior PwC professional employee:

1. PwC partners have a separate retirement plan. A partner must have participated in this plan for 5 years before these retirement benefits vest.

2. Under the medical insurance plan for partners, benefits do not continue after the partner retires *unless* the partner's retirement benefits have vested. Thus, someone must have been a partner for at least 5 years to continue PwC partner medical benefits after retirement.

3. A newly admitted partner—even one with many years experience—would be in the lowest compensation "band." (Currently, this is about $200,000 annually—or less than Gary earns as an employee. Gary has some indication that Darlene may be misinformed on this point, in that, when David Albright became an RAS partner in 2000, his initial partnership compensation was adjusted to reflect that his salary as an RAS director already was above that of an entering audit partner.)

4. If an employee aged 55 were admitted partnership, PwC for the next 5 years would deduct a substantial portion (perhaps 25%) of his or her compensation for contributions to the partner retirement plan.

From other sources I know that:

- The PwC partnership agreement requires a partner to retire at age 60, and
- A PwC employee must either reach age 65 or satisfy the "rule of 80" to retire under the PwC retirement plan and receive medical benefits a PwC retiree. For Gary Hal Schuler and me, that appears to be age 65; for Gary age 64.

The practical effect of these PwC personnel policies is to block an employee aged 56 or older from being considered for promotion to partner. An employee aged 56 or older would suffer the following disadvantages:

1. He or she (depending on his or salary as an employee) might take a noticeable cut in compensation, and a severe cut in take home pay.

2. He or she would be forced to retire at age 60, but apparently could not receive retirement benefits (including medical insurance) until he or she became eligible to receive the retirement benefits he or she previously had accumulated under the PwC

1

DEFENDANT'S EXHIBIT 75

Murphy-03506

employee retirement plan. Thus, if he or she would be likely to have a hiatus of several years between the time he or she was forced to retire as a partner, and the time he or she could begin receiving retirement benefits as a former employee. And even then, the lapse of several years between the person's leaving PwC and his or her becoming eligible for retirement benefits may foreclose the availability of the heath benefits normally available to former PwC employees (the answer to this question is unclear).

Additionally, at the meeting with Tim Ryan on January 24, 2002, RAS staff learned that only 2 to 4 senior employees in Financial Services are likely to be promoted to partner in any given year. Since the Financial Services practice includes hundreds of senior managers or directors, most of whom are in their 30s and—if promoted—could be a partner for 20 years or more, it seems highly improbable that either Financial Services or PwC would be likely to "waste" one of these coveted positions on someone who could occupy it only for 5 years because of the partners' mandatory retirement age.

Murphy-03507